UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       -against-<br><br>AMERICAN SOCIETY OF COMPOSERS,<br>AUTHORS AND PUBLISHERS, et al.,<br><br>              Defendants,<br><br>In the Matter of the Application of POST-<br>NEWSWEEK STATIONS, INC., et al.,<br><br>              Applicants,<br><br>For the Determination of Reasonable License Fees. | 41 CV 1395 (DLC)(MHD) |

## DECLARATION OF RAY SCHWIND

I, **RAY SCHWIND,** declare as follows:

1.      I am Vice President and Director of Broadcast Licensing of the American Society of Composers, Authors and Publishers ("ASCAP").  I submit this declaration in support of ASCAP's motion to enforce this Court's November 17, 2004 Final Order against Weigel Broadcasting Company, Madison Halsted LLC, WCIU-TV Limited Partnership and WDJT-TV Limited Partnership.

## BACKGROUND

2.      On November 17, 2004, this Court entered an Order in the *Post-Newsweek Stations* proceeding, approving the ASCAP Blanket and Per Program

Licenses. (*See* Order in *In the Matter of the Application of Post-Newsweek Stations, Inc., et al.* dated November 17, 2004 (the "2004 Order"), attached hereto as Ex. 1, ¶3).

3.      The 2004 Order also directed each "Bound Station" to pay license fees to ASCAP in an amount calculated by the Television Music License Committee ("TMLC") in accordance with a fee allocation formula approved by this Court. (*Id.*).

4.      On October 27, 2005, upon the TMLC's showing of good cause, the Court issued an Order revising the fee allocation formula governing the industry-wide license fees to be paid to ASCAP pursuant to the ASCAP Blanket and Per Program Licenses. (*See* Ex. 2).

5.      The 2004 Order entered in the *Post-Newsweek Stations* proceeding required that ASCAP mail the new ASCAP Blanket and Per Program Licenses to each Applicant or "other local television station owner that has agreed to be bound by the outcome of this proceeding or negotiation on behalf of Applicants by the Television Music License Committee (the 'TMLC') (collectively, 'Bound Stations')." (*See* Ex. 1, ¶2).

6.      The 2004 Order also provided that "if any Bound Station fails to return either of such agreements to ASCAP, said Applicant shall be deemed to have elected to be licensed under the form of License it operated under as of the date of this Order." (*See* Exhibit 1 at ¶2).

7.      Under Paragraph 4 of the 2004 Order, the Court retained jurisdiction for the purpose of "entering money judgments, on ASCAP's application, against designated Applicants on account of license fees due and owing under the terms of the Licenses." (*See* Ex. 1 at ¶4). Paragraph 5 of the 2004 Order also provides that the

Court retains continuing jurisdiction "for the purpose of enforcing this Order and the terms, conditions and obligations of the Licenses." (*See* Ex. 1 at ¶5).

8.      For the interim license period beginning April 1, 1998, while ASCAP and the TMLC were engaged in negotiations, most television stations were represented by the TMLC.

9.      In 2004, ASCAP and the TMLC concluded their negotiations and requested that this Court enter its 2004 Order.  At the same time, ASCAP provided the TMLC with a list of local television stations, including the Stations that were then paying fees pursuant to the then-effective ASCAP blanket licenses. (*See* Ex. 5, my October 4, 2004 email to the TMLC's Alix Steier, attaching a list of stations, including WDJT-TV and WCIU-TV, to be included in the TMLC's initial fee allocation formula provided for in the 2004 Order).

10.     Shortly after the Court entered its 2004 Order, the TMLC provided ASCAP with the stations' allocated monthly license fees for December 1, 2004 to December 31, 2005.  (*See* Ex. 6, a November 29, 2004 email from Ms. Steier, attaching a list of stations, including WDJT-TV and WCIU-TV, and their corresponding license fees under the 2004 ASCAP Blanket License).

11.     On December 17, 2004, ASCAP mailed to all stations on the TMLC's list, including WDJT-TV and WCIU-TV, the new ASCAP Blanket and Per Program Licenses. In compliance with the Court's 2004 Order, I sent letters to the Stations, including copies of the ASCAP Local Blanket and Per Program Licenses (*See* Ex. 7).

## WEIGEL BROADCASTING COMPANY AND ASCAP

12.     According to F.C.C. records, WCIU-TV Limited Partnership is the F.C.C. licensee of television station WCIU-TV in Chicago, Illinois.  WDJT-TV Limited Partnership is the F.C.C. licensee of television station WDJT-TV, in Milwaukee, Wisconsin.  Also according to F.C.C. records, Madison Halsted LLC is the owner of the Stations.  Howard Shapiro is the Chairman and Director of Madison Halsted LLC; his son, Norman Shapiro is the President.

13.     Both WCIU-TV and WDJT-TV (collectively "the Stations") held an ASCAP Local Station Blanket Television License Agreement for the license term ending March 31, 1998.  (Exs. 3 and 4, ASCAP licenses for the Stations executed by Weigel Broadcasting Company).  Despite having executed these licenses, Weigel failed to pay ASCAP license fees for the Stations pursuant to the TMLC allocation formula.

14.     On May 12, 1998, Weigel requested an ASCAP license for the Stations, but took the position that it was not represented by the TMLC and therefore, was not bound by any agreement negotiated by the TMLC with ASCAP. (*See* Ex. 8, May 12, 1998 letter from Joel H. Levy, Weigel's attorney, to ASCAP's Ray Schwind).

15.     For the period beginning April 1, 1998 and in response to Weigel's request for a license, ASCAP offered Weigel the option of continuing to be licensed under the terms of the blanket license ending March 31, 1998, and paying interim license fees calculated in accordance with those fees.  (*See* Ex. 9, June 9, 1998 letter from R. Reimer (in-house counsel for ASCAP) to Joel Levy, attorney for Weigel).  Under this proposal, the interim license fees would be subject to retroactive adjustment for the period beginning April 1, 1998 under any new agreement between ASCAP and Weigel,

4

or pursuant to court order. (*Id.*) Weigel rejected these offers and refused to pay ASCAP according to the TMLC's industry wide fee allocation formula, arguing that the Stations should be treated differently and that the TMLC's fee allocation formula was inappropriate.

16.     From 1998 until present, ASCAP has attempted—unsuccessfully—to persuade Weigel to pay the TMLC allocated license fees on a timely basis. ASCAP advised Mr. Shapiro that: "WDJT-TV and WCIU-TV are local, commercial television stations that are similarly situated with other local, commercial television stations in their respective markets. As such, they should be treated in the same manner as all other licensed local commercial television stations." (Ex. 10, April 12, 1999, Letter to Weigel Chairman Howard Shapiro from Ray Schwind; *see also* Exs. 11-14, letters from ASCAP to Weigel attempting to persuade Weigel to pay the required license fees to ASCAP).

17.     Under the 2004 ASCAP Blanket License and TMLC's fee allocation formulae, the total license fees posted to the Stations' ASCAP accounts from April 1, 1998 through July 31, 2009 are $3,015,976.00 ($2,395,588.00 for WCIU-TV and $620,388.00 for WDJT-TV); Weigel has paid a total of $1,649,147.60. (*See* Ex. 15, summary of amounts owed by Weigel through July 31, 2009 and accompanying accounting statements for the Stations). In addition, the Stations owe ASCAP $124,781.45 in late payment charges ($121,966.85 for WCIU-TV and $2,814.60 for WDJT-TV) and $22,568.00 for the TMLC allocation adjustment ($20,365.00 for WCIU-TV and $2,203.00 for WDJT-TV), bringing the total amount owed to ASCAP for the Stations to $1,514,177.85. (*Id.*).

18.     Beginning May 1, 2008, WDJT-TV has been operating under the 2004 ASCAP Per Program License.  (*See* Ex. 16, August 15, 2008 letter to William Lyall reflecting WDJT-TV's switch to a per program license).  Nonetheless, Weigel still owes license fees for WDJT-TV pursuant to the 2004 ASCAP Blanket License, under which it was operating until May 1, 2008.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of August, 2009 in New York, New York.

_____
RAY SCHWIND