

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF MOBITV, INC. f/k/a IDETIC, INC. | Civil Action No. 09-7071 (DLC) (MHD) |
| *Related to* | |
| UNITED STATES OF AMERICA, | Civil Action No. 41-1395 (DLC) ECF Case |
| Plaintiff, | |
| *v.* | [PENDING COURT RULING ON CONFIDENTIAL INFORMATION] |
| AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, | |
| Defendant. | |

## [PROPOSED] JUDGMENT ORDER

WHEREAS, applicant MobiTV, Inc. ("MobiTV") applied to defendant American Society of Composers, Authors and Publishers ("ASCAP") for a through-to-the-audience blanket license authorizing the public performance of musical works in the ASCAP repertory in connection with the Licensed Products (as defined herein), insofar as such works are embodied in MobiTV-Sourced Content (as defined herein);

WHEREAS, ASCAP granted MobiTV a blanket license for the public performance of musical works in the ASCAP repertory in connection with the Licensed Products (as defined herein) in accordance with Section VI of the Second Amended Final Judgment ("AFJ2") entered in *United States v. Am. Soc'y Composers, Authors & Publishers*, No. 09 Civ. 1395, 2001 WL 1589999 (S.D.N.Y. June 11, 2001);

WHEREAS, to date, MobiTV has paid ASCAP interim fees in the amount of $2,000,000 pursuant to the Court's February 20, 2009 Interim Fee Order; and

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/6/10

WHEREAS, the Court held a trial on these matters between April 12 and April 26, 2010,
and, upon due consideration of all the evidence and argument submitted by the parties, issued its
Opinion and Order on May 6, 2010 (the "Opinion and Order") determining the reasonable
blanket license fees payable for public performances of ASCAP repertory music in connection
with the Licensed Products (as defined herein) for the period November 11, 2003 through
December 31, 2011 (the "License Term"); therefore

It is hereby ORDERED, ADJUDGED, and DECREED that:

1. **Definitions**

   a. "Content Providers" are parties that enter into license agreements with
      MobiTV granting MobiTV the rights to distribute those parties'
      audiovisual and/or audio content in connection with the Licensed Products
      (as defined herein).

   b. "MobiTV-Sourced Content" means audiovisual and/or audio content that
      MobiTV has either created or licensed from Content Providers for
      distribution by means of the Licensed Products (as defined herein),
      whether on a linear, clip-linear, or video-on-demand (VOD) basis.

   c. The "Licensed Products" means the MobiTV-Sourced Content available
      for transmission only within the United States, its territories and
      possessions, by means of the following products: MobiTV; MobiTV en
      Espanol; Mobi4Biz; MobiRadio; MobiVJ; Sprint TV (Free); Sprint TV
      Access; Sprint TV Basic; Sprint TV Complete; Sprint TV Enhanced;
      Sprint TV Plus; Sprint TV Ultimate; Sprint TV Live/Sprint TV Xtra;
      Sprint TV Premier; Sprint TV en Vivo; Sprint TV 4 Biz; Sprint Music

2

Pack; certain Sprint TV Premium Channels (ABC News Now;

Accuweather; Action Pack; After Dark; Anime; Astrology; Comedy Time;

Cracked.com; Daily Word; DC Comics; Dream Girls; E! Wild On; Ecko

TV; Es Musica; ESPN; Faith TV; FHM; FrequencyMusic; Fun Little

Movies; Hip Hop Official; Hollywood Insider; Hooters; Just Nutz;

Lifestyles; Looney Tunes; Los Looney Tunes; Maxim; Maxx Sports TV;

mFlix; Mobile Ministry; Models in Motion; mSpot Movies; My Local TV

'NOW'; Peanuts; Pix/Crackle; Playboy; Rock on Attitude; Saturday

Morning TV; Scooby Doo & Friends; Short Films Channel; Sports Xtra;

Sprint TV Kids Zone; Super Channel; True Country; and Vixen Girls);

Alltel Radio Connect; Alltel TV Connect; Axcess TV/Alltel TV; Axcess

TV en Espanol/Alltel TV en Espanol; Axcess Radio/Alltel Radio; Alltel

My Plan Radio; Alltel Radio Connect; Broadband MobiTV Service; WiFi

MobiTV Service; PCTV; CBS College Sports; March Madness on

Demand; MLB; MSO TV Service; MarketNOW TV; NBA; Notre Dame;

UFC; and The Club; and any newly launched products ("New Products,"

as defined in Paragraph 12 below) during the License Term, subject to the

provisions of Paragraph 12 below. For the avoidance of doubt, the

Licensed Products do not include any identically- or similarly-named

products that are not both MobiTV-Sourced Content and distributed by

MobiTV (e.g., Cracked.com, Comedy Time, CBS Sports, ESPN, and

March Madness).

d. "MobiTV Programmed" channels or content refer to the following:

3

    i.  Linear or clip-linear channels for which MobiTV (a) produces the content (e.g., MobiTV creates or directs others to create the content, or bears the production costs of creating the programming); or (b) includes programming from more than one Content Provider on a single channel; or (c) controls the branding of the channel (e.g., MobiTV selects the name of the channel, or owns or controls the rights to the name of the channel); or (d) controls the sequence of the programs displayed on the channel, without a right by the Content Provider to reject MobiTV's decision. In the event that the sequencing is determined by the order in which the programming is delivered to MobiTV by the Content Provider or by automated randomizing technology, then this paragraph 1.d.i.(d) shall not apply. The exception in the preceding sentence of paragraph 1.d.i.(d) applies only to MobiTV and shall have no precedential effect beyond the length of this judgment or as to any other entity.

    ii.  Video-on-demand content which MobiTV creates or directs others to create, or for which MobiTV bears the production costs of creating the programming.

e.  "Payments" means all payments, whether in the form of cash payments or the fair market value of any other non-cash form of consideration, including but not limited to: license fees, affiliate fees, a share of advertising revenue or other monies received from sponsors (less

advertising agency commissions not to exceed fifteen percent (15%) of

those fees actually incurred), trade, barter, promotional consideration,

trade-outs, consideration received for the provision or sale of time on the

Licensed Products, or the fair market value of any other merchandise or

anything of service or value that accrues to the Programmer (i.e., the

Content Provider, in the case of non-MobiTV Programmed channels or

content, or MobiTV, in the case of MobiTV Programmed channels or

content) or to someone else on behalf of or at the direction of the

Programmer, or is received by the Programmer or by someone else on

behalf of or at the direction of the Programmer in lieu of cash

consideration for the provision of programming for distribution of the

Programmer's programming via the Licensed Products.

**License Fees and Payments**

2.   For the period November 11, 2003, through March 31, 2010, MobiTV shall pay

ASCAP, for a through-to-the-audience blanket license for the public performance of ASCAP

compositions in connection with the Licensed Products, final license fees ("License Fees") of

$405,000.  As MobiTV has already paid ASCAP $2,000,000 in Interim Fees, ASCAP shall remit

$1,595,000, *i.e.*, the difference between the Interim Fees paid by MobiTV to ASCAP and the

License Fees payable under this Paragraph, within 30 days of the entry of this Judgment Order.

3.   For the period from April 1, 2010, through December 31, 2011, MobiTV shall

pay ASCAP, for a through-to-the-audience blanket license for the public performance of ASCAP

compositions in connection with the Licensed Products, License Fees calculated as follows:

a. For content on a Licensed Product that is not MobiTV Programmed (whether transmitted on a live, clip-linear, or video-on-demand basis),

   i. All Payments received by Content Providers (or any other party with whom a Content Provider has an economic relationship), from, or on behalf of MobiTV as consideration for the licensing of MobiTV-Sourced Content to MobiTV, plus any additional Payments attributable to the sale of advertising inserted into the MobiTV-Sourced Content for distribution over the Licensed Products (allocated, if necessary, in accordance with Paragraph 3.c) multiplied by the percentage rate applicable to that Content Provider ("License Rate") pursuant to Paragraph 4, below.

   ii. The Payments in Paragraph 3.a.i shall not include Payments to the Content Provider if it has been demonstrated to ASCAP that the Content Provider (or any other party) has paid, or is obligated to pay, ASCAP a fee based on the Payments the Content Provider has received attributable to the Licensed Products, pursuant to an ASCAP license agreement. ASCAP shall disclose to MobiTV those circumstances, if any, where ASCAP has received information reflecting that a Content Provider has included Payments associated with distribution via MobiTV in its ASCAP license fee.

b. For any content on a Licensed Product that is MobiTV Programmed,

6

i.   All Payments received by, on behalf of, or at the direction of MobiTV from, or on behalf of, wireless carriers, broadband providers, or consumers as consideration for the MobiTV Programmed content ("MobiTV Programmer Affiliate Fees"), plus any additional Payments attributable to the sale of advertising inserted into the MobiTV Programmed content for distribution over the Licensed Products (allocated, if necessary, in accordance with Paragraph 3.c), multiplied by the percentage rate applicable to that MobiTV Programmed content pursuant to Paragraph 4 below.

ii.  For purposes of calculating the MobiTV Programmer Affiliate Fees set forth in Paragraph 3.b.i above, the revenue base shall be determined as follows:

1.   For MobiTV Programmed content licensed to wireless carriers or broadband providers on an à la carte basis (*e.g.*, Sprint Music Pack and Saturday Morning TV), Payments received by MobiTV for the Licensed Products.

2.   For each Licensed Product where MobiTV Programmed content is included within a larger package of channels (*e.g.*, The Mic Hip Hop, Toon World, Horror Classics), an amount equal to Payments received by MobiTV for the Licensed Product, multiplied by a fraction consisting of the minutes of MobiTV Programmed content transmitted to consumers divided by the total minutes of any content

7

transmitted to consumers on the Licensed Product. For the avoidance of doubt, such Payments received by MobiTV for the Licensed Products shall not include Payments to MobiTV exclusively for technology/hosting services. The Parties agree that, as of the date of Judgment, the only Licensed Products in connection with which Payments were made to MobiTV exclusively for technology/hosting services are certain of the "Sprint TV" Licensed Products, and only for certain periods of time.

c. For any advertising revenue received in connection with the insertion of advertisements into the Licensed Products but not received by Content Providers as Payments under Paragraph 3.a.i or MobiTV Programmer Affiliate Fees under Paragraph 3.b.ii., the advertising revenue shall be allocated amongst the channels on the Licensed Products and multiplied by the percentage rate applicable to the channel pursuant to Paragraph 4 below. Advertising revenue shall be allocated amongst the channels on the Licensed Products on the basis of how many times the advertisement ran on the particular channel (e.g., if an advertisement ran 10 out of 100 total times on Animal Planet, then 10% of the revenue received by MobiTV for that advertisement will be allocated to Animal Planet).

d. For the avoidance of doubt, nothing in this Order shall be construed to provide for the double counting of any monies for the purpose of calculating the License Fees.

8

4.  The License Rate applicable to the Licensed Products is as follows:

    a.  The License Rate for each Content Provider that provides news, sports, and/or weather content and/or for MobiTV Programmed news, sports, and/or weather content is 0.1375%;

    b.  The License Rate for each Content Provider that provides general entertainment content and/or for MobiTV Programmed general entertainment content is 0.375%;

    c.  The License Rate for each Content Provider that provides music intensive audiovisual content and/or for MobiTV Programmed music intensive content is 0.9%; and

    d.  The License Rate for each Content Provider that provides audio-only music content and/or for MobiTV Programmed audio-only music content is 2.5%.

5.  Beginning with the quarter ending June 30, 2010, MobiTV shall report to ASCAP any amounts owing under Paragraph 3 above on a quarterly basis, on or before forty-five (45) calendar days after the end of each calendar quarter associated with the amount.

6.  MobiTV shall pay a late payment charge of one-and-one-half percent (1.5%) per month from the due date on any required payment that is not made within thirty (30) days of its due date.

**License Fee Reports**

7.  According to the schedule set forth in Paragraph 5, together with its License Fee payments, MobiTV shall simultaneously provide ASCAP with statements setting forth for the applicable license period:

9

a. for content on each Licensed Product that is <u>not</u> MobiTV Programmed, the Payments received by Content Providers (even if any such Payments to a specific Content Provider total $0), by month, by Content Provider, and (if available) by Licensed Product;

b. for each Licensed Product that is entirely MobiTV Programmed and licensed to wireless carriers or broadband providers on an à la carte basis, the Payments received by MobiTV for the specific Licensed Product, by month;

c. for each Licensed Product where MobiTV Programmed content is included within a larger package of channels, the Payments MobiTV received for the specific Licensed Product, the minutes of MobiTV Programmed content transmitted to consumers on each Licensed Product, and the total minutes of any content transmitted to consumers on the Licensed Product, all by month;

d. Payments attributable to advertising generated from the Licensed Products, by month, by advertiser, by channel (if available), and the apportionment of any advertising revenue in accordance with Paragraph 3.c; to the extent reported by Content Providers to MobiTV, this will include any revenues for advertising generated by the Content Provider specific to distribution via the Licensed Products and not otherwise reported to ASCAP;

e. a complete listing of the channels available for transmission on each Licensed Product;

      f.  for each such channel on each such Licensed Product, the Content Provider or Content Providers of the channel;

      g.  to the extent known to MobiTV, for each such channel on each such Licensed Product, identification of whether the Content Provider or Content Providers included or inserted any advertising into the programming on the Licensed Products in connection with which MobiTV does not receive any Payments; and

      h.  identification of any changes to the names or branding of any Licensed Product since the prior such report.

    8.  The data contained in MobiTV's License Fee Reports shall be derived from documents kept by MobiTV in the ordinary course of its regularly conducted business, and an officer of MobiTV shall certify MobiTV's License Fee Reports.

## Music Use Reports

    9.  Upon ASCAP's written request, MobiTV shall provide ASCAP with the following data, in an electronic format agreed upon by the parties or ordered by the Court that is sufficient for ASCAP to make distributions to its members: program identification and/or music use information (if MobiTV has both program identification and music use information, MobiTV shall provide both sets of information to ASCAP) regarding the musical works contained in MobiTV's audio-only, music video, and other audiovisual streams in a calendar quarter, as well as a complete listing of the channels available for transmission on each Licensed Product (the "Music Use Reports"). With regard to channels or content that are not MobiTV Programmed, to the extent that the data necessary for the Music Use Reports is not in MobiTV's possession, or MobiTV does not have the

11

data in electronic form, MobiTV shall use commercially reasonable efforts to obtain such
information, or obtain it in electronic form, from relevant third parties.

**Audits**

10. ASCAP and its authorized representatives may, at any time during customary
business hours and upon thirty (30) days prior written notice, examine the books, records, and
electronic files of accounts in the custody or control of MobiTV solely to the extent necessary to
verify the License Fees, License Fee Reports, Music Use Reports, and any other statements
rendered and accountings made by MobiTV to ASCAP. Any information ASCAP may obtain
from such audits shall be treated as confidential. ASCAP shall have the right to conduct one
complete audit of MobiTV per year. ASCAP may initiate more than one audit in a year if
ASCAP was unable to complete an earlier audit at the request of or due to the actions of
MobiTV. ASCAP shall not have the right to audit MobiTV for any time period before April 1,
2010.

11. In the event that an audit reveals that MobiTV underpaid ASCAP by ten percent
(10%) or more over a period of at least twelve (12) months, then MobiTV shall pay a late
payment charge on the additional fees due as a result of the audit of one-and-one-half percent
(1.5%) per month, from the dates the fees should have been paid. In the event that an audit
reveals that MobiTV underpaid ASCAP by less than ten percent (10%), then MobiTV shall pay
a late payment charge on the additional fees due as a result of the audit of one-and-a-half percent
(1.5%) per month from the date ASCAP bills MobiTV for such additional fees.

**Miscellaneous**

12. MobiTV shall promptly notify ASCAP in writing of any new MobiTV
subscription packages, wireless carriers, broadband cable television providers, distributors, sites

or services that publicly perform music that are not part of the Licensed Products as of the date
of this Judgment ("New Products"). For the avoidance of doubt, if MobiTV makes changes to
one of the Licensed Products, so that the Licensed Product is materially different from the way it
exists at the date of Judgment, or if MobiTV uses one of the product names listed in Paragraph
1.c. above in connection with a product that is materially different from the Licensed Products
that exist at the date of the Judgment, such product or products are New Products. Conversely, if
MobiTV changes only the name or branding of a Licensed Product without any material changes
to the Licensed Product, such product shall not constitute a New Product for purposes of this
Judgment Order. MobiTV shall promptly notify ASCAP in writing if it changes the name or
branding of a Licensed Product. ASCAP reserves the right to petition the Court for a
determination that a New Product is materially different from the Licensed Products and that
such material difference warrants licensing the New Product on a different basis than that
contained in this Judgment Order. ASCAP shall bear the burden of so demonstrating; and in the
event that the Court determines that a New Product is materially different and thus not licensed
pursuant to the terms of this Judgment Order, MobiTV's notification to ASCAP shall operate as
a request for a license for the New Product under Article IX of AFJ2.

   13. This Court retains continuing jurisdiction over the above-captioned proceeding
for the purpose of hearing applications and making orders necessary or appropriate for this Judgment
Order, including but not necessarily limited to resolving disagreements concerning: (i) the proper
rate to be applied to a particular Content Provider or type of MobiTV Programmed content; (ii)
whether something constitutes a Payment; (iii) whether a channel or content is MobiTV-Sourced
or MobiTV Programmed; (iv) whether a New Product is governed by the rate provisions of this

Judgment; and (v) the reasonable fee for a license for a New Product not governed by the rate provisions of this Judgment.

14. Nothing herein shall be deemed to affect or limit either Party's right to appeal this Judgment or any prior Order or Opinion of the Court in this matter. In no event, however, shall ASCAP seek to stay or otherwise delay its obligation under Paragraph 2 to remit $1,595,000 to MobiTV within 30 days of the entry of this Judgment Order.

SO ORDERED.

Dated: New York, New York
      July 6, 2010

Hon. Denise Cote
United States District Judge

14