UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE APPLICATION OF THP CAPSTAR
ACQUISITION CORP. (NOW KNOWN AS DMX, INC.)

for the Determination of Reasonable
License Fees.

09 Civ. 7069 (DLC)

---

Related to

UNITED STATES OF AMERICA,

         Plaintiff,

v.

AMERICAN SOCIETY OF COMPOSERS, AUTHORS
AND PUBLISHERS,

         Defendant.

[PROPOSED] JUDGMENT ORDER

41 Civ. 1395 (DLC)

---

  WHEREAS DMX, Inc. f/k/a THP Capstar Acquisition Corp. ("DMX") applied to ASCAP for an adjustable fee blanket license ("AFBL") for its commercial background/foreground music service (the "Service") effective as of June 3, 2005;

  WHEREAS American Society of Composers, Authors and Publishers ("ASCAP") applied to this Court for a determination of license fees pursuant to Section IX of the Second Amended Final Judgment herein for the Service for the period beginning June 3, 2005 through December 31, 2012; and

  WHEREAS the Court, following a bench trial held from November 15, 2010 to November 23, 2010, issued an Opinion and Order dated December 1, 2010 determining the reasonable fees for the Service; it is hereby

ORDERED:

1.  For the period June 3, 2005, through December 31, 2012, DMX. Inc. ("DMX") shall pay annual license fees to ASCAP for the Service for each of its licensed locations calculated in accordance with the following formula:

Annual Per-Location Fee = $13.74 - ($10.74 x Direct License Ratio)

2.  Fees owed to ASCAP are to be calculated monthly based on the number of commercial subscriber locations as of the last day of the month for which such fees are owed. Accordingly, the monthly fee owed to ASCAP for each DMX licensed location is to be calculated in accordance with the following formula:

Monthly Per-Location Fee = $1.145 - ($0.895 x Direct License Ratio)

3.  The Direct License Ratio is to be calculated using all ASCAP works transmitted on DMX's satellite-delivered service during each monthly period. ASCAP works shall include works in the ASCAP repertory for which ASCAP represents all or a portion of the publisher share of the song.

4.  The numerator of the Direct License Ratio is to consist of the total number of ASCAP works transmitted by DMX via its satellite-delivered service for which DMX has a direct license with at least one publisher of the work. Each transmission included in the numerator will be weighted/pro-rated as necessary to reflect the ownership share(s) of the directly-licensed ASCAP-affiliated publisher(s). The denominator of the Direct License Ratio is to consist of the total number of ASCAP works transmitted by DMX via its satellite-delivered service, weighted/pro-rated to reflect the share of the song's ownership affiliated with ASCAP.

5. For purposes of calculating the Direct License Ratio, 48% of transmitted works for which DMX cannot identify the Performing Rights Organization affiliation ("unidentified" works) should be counted in the denominator of the Direct License Ratio as ASCAP works and 0% of such unidentified works should be counted in the numerator of the Direct License Ratio as directly licensed. If ASCAP is able to identify the publisher and Performing Rights Organization affiliation of any unidentified works, it shall provide such information to DMX according to and as part of the data reconciliation procedures described in paragraph 9 below and DMX shall recalculate the Direct License Ratio using such information.

6. ASCAP will credit DMX with both the writer's share and the publisher's share of a performance on the basis of a direct license between DMX and that publisher.

7. For direct licenses signed by DMX subsequent to entry of this judgment, ASCAP will, upon provision of a copy of each such license pursuant to paragraph 14 below, credit DMX for all transmissions of directly-licensed ASCAP works made after the effective date of the direct license for such works, provided, however, that no such credit shall be provided for transmissions made prior to the quarter in which the direct license was signed by both parties.

8. DMX shall provide ASCAP, within forty-five (45) days of the close of each quarter, full payment for the three months in the quarter, calculated according to the formula in paragraph 2 above. DMX shall provide at the same time a report, in an electronic format to be agreed upon between the parties, containing, for each month in the quarter, (a) the number of DMX commercial subscriber locations as of the last day of the month, (b) the total number of transmissions of ASCAP works made by DMX via its

satellite-delivered service, (c) the total number of transmissions of ASCAP works made by DMX via its satellite-delivered service on a share-weighted basis, (d) the total number of transmissions of directly-licensed ASCAP works made by DMX via its satellite-delivered service, (e) the total number of transmissions of directly-licensed ASCAP works made by DMX via its satellite-delivered service on a share-weighted basis, (f) the resulting Direct License Ratio, (g) adjustments for newly identified directly licensed performances from prior quarters, and (h) the total fee owed to ASCAP.

9. If, within forty-five (45) days of receiving the report identified in paragraph 8 above, ASCAP disputes in good faith the accuracy of information contained in the report or the validity of a direct license, ASCAP will provide to DMX an adjusted report, in an electronic format to be agreed upon between the parties, sufficient to substantiate the specific nature of the dispute, and, if possible, compute and advise DMX of any additional fees owing or credits due.

10. If DMX disputes in good faith any adjusted monthly fee computed by ASCAP, DMX will respond to ASCAP within forty-five (45) days of its receipt of the adjusted report and notice of the adjusted fee by identifying the specific nature of any remaining disputes and providing to ASCAP supporting documents in support of its position. The parties shall thereafter work in good faith to resolve any remaining disputes.

11. Where the monthly fee reported and paid by DMX exceeds any adjusted monthly fee agreed upon pursuant to the process described in paragraphs 9-10, ASCAP will credit DMX's account for the amount of any such excess fee or, if DMX requests in writing, ASCAP will refund to DMX the amount of any such excess fee. Where the

adjusted monthly fee exceeds the fee reported and paid by DMX, DMX will remit the payment of any such excess fee promptly.

12. With respect to periods from June 3, 2005 to October 31, 2010, ASCAP shall pay DMX the following amounts no later than January 15, 2011: (1) $12,112,248, which is the difference between the interim fees paid by DMX to ASCAP between June 3, 2005, and October 31, 2010, and the fees owed for the same period at a rate of $13.74 per location (i.e., prior to any carve-out for directly licensed transmissions); plus (2) $3,280,193 in simple annual interest at nine (9) percent, pursuant to N.Y. Civ. Proc. L. & R. § 5004.

13. The additional refund amount for periods from June 3, 2005 to October 31, 2010 to reflect the allowable carve-out for directly licensed transmissions shall be calculated according to the formula and terms described in paragraphs 1-6 and 8-10 above, except that (a) DMX shall provide the required reports to calculate the carve-out credit for these past periods by January 15, 2011; (b) adjustments shall be completed and calculated by April 15, 2011; and (c) the resulting amount, plus prejudgment interest, shall be refunded to DMX not later than May 15, 2011.

14. DMX shall provide ASCAP, within forty-five (45) days of the close of each quarter, a list indicating the entities or individuals with which DMX has, in that quarter, entered into, renewed, not renewed, or terminated direct license agreements, together with a copy, in electronic "pdf" format, of all such agreements and written notices of renewal, non-renewal, or termination for each of those entities or individuals. DMX shall be entitled to redact from such copies the financial terms of the direct license agreements. ASCAP shall treat the direct license agreements as confidential, and shall

not disclose such agreements to any third-party (other than its employees, directors, attorneys and officers, in their capacity as such, on a need-to-know basis).

15. During the term of this license, DMX will provide access to ASCAP, without charge, of its satellite transmissions on the Service for the sole purpose of ASCAP verifying the music use data provided by DMX.

16. The parties shall negotiate in good faith such other terms and conditions as appropriate and necessary to effectuate this Judgment Order, including but not limited to the terms and conditions upon which ASCAP is entitled to audit DMX's books and records.

17. This Court retains continuing jurisdiction over the above-captioned proceeding for the purpose of hearing applications and making orders necessary or appropriate for this Judgment Order. Nothing herein shall be deemed to affect or limit either party's right to appeal this Judgment Order or any prior Order or Opinion of the Court in this matter.

SO ORDERED.

New York, New York
December 20, 2010

_____
Denise L. Cote
United States District Judge