**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of ERICSSON INC., | Civil Action No. 09-cv-7076 (DLC) |
| Related to | |
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. 41-cv-1395 (DLC) |
| v. | |
| AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, | |
| Defendant. | |

## STIPULATION AND ORDER OF DISMISSAL

WHEREAS, the parties have reached a complete settlement of the issues raised in the above-captioned proceeding:

IT IS HEREBY ORDERED THAT:

1.      The May 8, 2009 Application brought by the American Society of Composers, Authors and Publishers ("ASCAP") against Ericsson Inc. for the determination of reasonable license fees (the "ASCAP Ericsson Application") is DISMISSED WITH PREJUDICE, except as set forth in Paragraph 2, below.

2.      The ASCAP Ericsson Application is DISMISSED WITHOUT PREJUDICE to: (i) the Court's retention of jurisdiction to enforce a license agreement concerning Ringback Tones and Previews of Ringback Tones and Ringtones, for the period commencing May 1, 2010 through December 31, 2012 (the "Ringback Tones

License Agreement") entered into by the Parties; and (ii) the Court's retention of jurisdiction concerning setting reasonable license fees for ringtones in the event that the April 2007 Court decision concerning whether downloads constitute public performances is overturned or remanded on appeal of that decision.

3.      The Ringback Tones License Agreement attached hereto as Exhibit 1 is approved as to the parties hereto.

4.      Each side is to bear its own costs and attorneys' fees and costs.

5.      This Stipulation and Order may be executed via facsimile and in counterpart copies.

6.      This proceeding shall be marked CLOSED by the Clerk.

Dated: Washington, D.C.
       January 18, 2011

WILEY REIN LLP

By: _____
       Bruce G. Joseph
1776 K Street NW
Washington, DC  20006
202.719.7000
bjoseph@wileyrein.com

*Attorneys for Ericsson Inc.*

Dated: New York, New York
       January 18, 2011

ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.

By: _____
       David Leichtman
       Hillel I. Parness
       Bryan J. Vogel
601 Lexington Avenue, Suite 3400
New York, New York  10022
212.980.7400
dleichtman@rkmc.com
hiparness@rkmc.com
bjvogel@rkmc.com

So ordered.

Jenny 20, 2011

-and-

Richard H. Reimer
Christine A. Pepe
ASCAP
One Lincoln Plaza
New York, New York 10023
212.621.6200

*Attorneys for American Society of Composers,*
*Authors and Publishers*

SO ORDERED.

Dated: New York, New York
      January __, 2011

_____  _____
The Honorable Judge Denise Cote
United States District Judge

RINGBACK TONES SETTLEMENT, MUTUAL RELEASE AND LICENSE
AGREEMENT

This agreement ("Agreement") dated as of January 14, 2011, is entered by and
between the American Society of Composers, Authors and Publishers ("ASCAP"), with
an address of One Lincoln Plaza, New York, New York 10023, and Ericsson Inc.
("Ericsson"), with an address of 6300 Legacy Drive, Plano, TX 75024.  ASCAP and
Ericsson are sometimes referred to in this Agreement collectively as the "Parties," and
individually as a "Party."

WHEREAS, the Parties desire fully and finally to resolve amicably the May 8,
2009, Rate Court Proceeding initiated by ASCAP, Civil Action No. 09-7076, for a
determination of reasonable license fees (hereinafter referred to as "the Ericsson
Proceeding"), in accordance with Section IX(A) of the Second Amended Final Judgment
entered in *United States v. ASCAP*, Civ. No. 41-1395 (S.D.N.Y. June 11, 2001) ("AFJ2"),
and, accordingly, the Parties have agreed upon final License Fees for the Licensed
Services for the License Term (all as defined herein); and

WHEREAS, concurrent with the execution of this Agreement, the Parties are also
entering into a Settlement, Mutual Release and License Agreement for the period ending
on April 30, 2010 (the "Past Settlement Agreement");

NOW, THEREFORE, for good and valuable consideration, the receipt and
sufficiency of which is acknowledged, the Parties, intending to be legally bound, agree as
follows:

1.      Definitions.

a.  "Licensed Services" means Ericsson Ringback Tones, Previews of Ringback Tones, and Previews of Ringtones.

b.  The "License Term" means the period commencing on May 1, 2010 (the "Effective Date") and ending on December 31, 2012.

c.  "Previews" means audio content transmitted to users in connection with the potential purchase by users of Ringback Tones or Ringtones.

d.  "Ringback Tone" means a musical or other audio work that is sold to, licensed to, or otherwise acquired by a wireless customer to be played to callers, in lieu of the standard "ringing" sound that callers would otherwise hear, when waiting for the customer to answer the phone. The term "Ericsson Ringback Tone" means a Ringback Tone that is provided by Ericsson for sale by its carrier customers and that, as between Ericsson and its carrier customer, Ericsson has undertaken to obtain the rights to the content, including musical composition public performance rights. Ericsson shall give ASCAP written notice, which Ericsson may amend from time to time, identifying Ericsson's wireless carrier customers and the dates with respect to each such carrier for which Ericsson is responsible for obtaining Ringback Tone content rights.

e.  "Ringtone" means a musical or other audio work that is sold to, licensed to, or otherwise acquired by a wireless customer in lieu of the standard "ring" sound on a customer's wireless phone.

2.  ASCAP hereby grants to Ericsson for the License Term a non-exclusive, through-to-the-audience license to make performances to the public in connection with the Licensed Services of musical compositions which, during the License Term are in the ASCAP repertory or as to which ASCAP has or shall have the right to grant such license.

2

Notwithstanding the License Term, the license granted hereby with respect to any Ringback Tone for which a license fee is paid hereunder shall continue in effect for the period for which the customer continues to have the right to use that Ringback Tone for the retail selling price that was covered hereunder.

      3.     The license fees due under this Agreement (the "License Fees") shall be calculated as follows:

      a.     The license fee shall be 2.0% of the Retail Selling Price (as defined herein) of all Ericsson Ringback Tones sold by Ericsson's carrier customers, except that Ringback Tones that Ericsson obtains from a major record company that has undertaken to obtain public performance rights on a catalog-wide basis (whether directly or acting as an agent for the applicable music publishers) on behalf of Ericsson or Ericsson's carrier customers, shall be excluded from the license set forth in Paragraph 2, from the release set forth in Paragraph 5, and from the computation of the license fee due under this Agreement (the "Excluded Ringback Tones"). Ericsson shall notify ASCAP of any changes in the identity of major record companies that have undertaken such obligation and the period for which such obligation has been undertaken.

      b.     The Ringback Tone "Retail Selling Price" means monies or other consideration received by Ericsson's carrier customers on a per-tone basis, or, for Ringback Tones bundled with other products, the Ringback Tone Allocated Retail Selling Price as determined pursuant to subparagraph 3.c. "Retail Selling Price" shall not include monthly recurring charges for access to the Ringback Tone service or transport fees. This definition of Retail Selling Price is not intended to be, and shall not be, applicable to any other subscription-based service. In the event the price of an individual *a la carte*

3

Ringback Tone sold by Ericsson's carrier customers falls below 150% of the monthly recurring charge for access to the Ringback Tone service, the Retail Selling Price for such Ringback Tone shall be deemed to be 150% of the monthly recurring charge (e.g., if the price of an individual *a la carte* Ringback Tone is $1.30 and the monthly recurring charge is $0.99, then the Retail Selling Price for the Ringback Tone shall be deemed to be $1.485). For purposes of the preceding sentence, the term "individual *a la carte* Ringback Tone" does not include tones sold in bundles or provided at no charge on a promotional basis.

       c.    If Ericsson Ringback Tones are sold in a bundle with other products, the "Ringback Tone Allocated Retail Selling Price" shall be determined by allocating all amounts paid by the wireless customer for the product package in accordance with the ratios that the *a la carte* retail prices of individual elements which constitute the package bear to each other. For example, if a customer is charged a $4 fee for a bundle consisting of one Ringback Tone, one Ringtone and one item of wallpaper, and the *a la carte* retail prices for the individual elements are $2.00, $1.00 and $2.00 respectively, then the Ringback Tone Allocated Retail Selling Price for the Ringback Tone shall be $1.60 ($2/$5 * $4). In the event the applicable carrier customer of Ericsson has not, within the past 6 months offered an element of a bundle on an *a la carte* basis, then the Ringback Tone Allocated Retail Selling Price shall be determined by using the *a la carte* retail selling price set for such element by other sellers of such element. If the Parties are unable to construct a retail selling price for an element of a bundle that the carrier customer of Ericsson has not offered on an *a la carte* basis, as set forth in the preceding sentence, they shall negotiate in good faith to determine a Ringback Tone

Allocated Retail Selling Price for the bundle, and failing agreement, may petition ASCAP's Rate Court to request a determination of the Ringback Tone Allocated Retail Selling Price for the bundle.

    4.    This Agreement shall be deemed final and non-appealable.  This Agreement shall be precedential as to Ringback Tones.  This Agreement shall be non-precedential and without prejudice to any Party's position as to whether a license is necessary for Previews of Ringtones or Ringback Tones or as to the appropriate license fee, if any, for such Previews.  In the event that the April 2007 decision of Judge Conner in *United States v. ASCAP (Application of AOL, Inc.)*, 485 F. Supp. 2d 438, 443 (S.D.N.Y. 2007), concerning whether downloads constitute public performances is overturned or remanded on appeal of that decision, the Parties agree to reopen the issue of fees for Ringtones to further negotiations or further proceedings before the Rate Court subsequent to any such reversal or remand in accordance with any opinion related thereto (the "Ringtone Reopener").

    5.    a.    ASCAP hereby does and shall, for itself, its parents, subsidiaries, divisions, affiliates, predecessors, successors and members, and each of their respective officers, directors, past and present employees, consultants, agents, representatives, insurers, attorneys, shareholders and heirs (collectively, the "ASCAP Parties"), irrevocably and unconditionally release, acquit and forever discharge Ericsson and Ericsson's carrier customers and their respective parents, subsidiaries, divisions, affiliates, predecessors and successors, and each of their respective officers, directors, past and present employees, consultants, agents, representatives, insurers, attorneys, shareholders and heirs (collectively, the "Ericsson Parties"), from all actions, suits, debts,

5

dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants,

controversies, agreements, promises, variances, trespasses, damages, judgments, extents,

executions, claims and demands whatsoever, known or unknown, in law or equity, which

against them or any of them, whether jointly or severally, ASCAP or any of the other

ASCAP Parties ever had, now has or hereafter can, shall or may have for, upon, or by

reason of any matter, cause or thing whatsoever arising out of, related to, or regarding (i)

the public performance of music via the Licensed Services during the License Term,

except to the extent of Ericsson's obligations under this Agreement, including but not

limited to its obligation to pay License Fees pursuant to Paragraph 3 above; (ii) the public

performance of music by the providing of Ringtones, subject to the Ringtone Reopener;

and (iii) the negotiation of and entry into the May 21, 2010 Binding Term Sheet, this

Agreement, and the Past Settlement Agreement Agreement.  In the event that the

Ringtone Reopener occurs, the release set forth in item (ii) in the preceding sentence shall

be null and void.

      b.    Ericsson hereby does and shall, for itself and the other Ericsson

Parties irrevocably and unconditionally release, acquit and forever discharge ASCAP and

the other ASCAP Parties, from all actions, suits, debts, dues, sums of money, accounts,

reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises,

variances, trespasses, damages, judgments, extents, executions, claims and demands

whatsoever, known or unknown, in law or equity, which against them or any of them,

whether jointly or severally, Ericsson or any of the other Ericsson Parties ever had, now

has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or

thing whatsoever arising out of (i) ASCAP's licensing of the public performance of

6

music via the Licensed Services during the License Term, except to the extent of ASCAP's obligations under this Agreement; and (ii) the negotiation of and entry into the May 21, 2010 Binding Term Sheet, this Agreement, and the Past Settlement Agreement.

6. Except as explicitly set forth herein, this Agreement licenses any and all public performances of copyrighted musical works in the ASCAP repertory for which a license is or may be required by Ericsson or Ericsson's carrier customers by means of the Licensed Services during the License Term. The Parties nonetheless reserve all their rights, positions and defenses in respect of whether particular transmissions of music by means of the Licensed Services require licensing. This Agreement does not license or release any third parties or affect ASCAP's ability to pursue any applicable license fees from any third party, with respect to any services other than the Licensed Services.

7. License Fee Reports. Ericsson shall provide to ASCAP quarterly statements (the "License Fee Reports") setting forth, by calendar quarter (i) the number of Ericsson Ringback Tones other than Excluded Ringback Tones sold by Ericsson's carrier customers and the Retail Selling Price received by Ericsson's carrier customers for the sale of such Ringback Tones; and (ii) the License Fee due pursuant to Paragraph 3 of this Agreement. License Fee Reports shall be due sixty (60) days following the close of the quarter to which they apply. Information pertaining to May and June, 2010, shall be included in the License Fee Report for the third quarter of 2010. Comparable data relating to the License Term provided by Ericsson to ASCAP prior to the execution of this Agreement shall be treated as "License Fee Reports" provided pursuant to this Paragraph.

7

8.     Within sixty (60) days of ASCAP's written request, which may only be made once per calendar quarter for one or more preceding calendar quarters during the License Term, Ericsson shall provide to ASCAP the following usage information (the "Usage Information"), quarterly, in electronic format (*e.g.*, by transmittal of a native format spreadsheet), on a per track basis: (i) the title of each musical work sold by Ericsson's carrier customers as an Ericsson Ringback Tone; (ii) the featured artist who recorded each such work; (iii) the record label or other provider that provided such work to Ericsson; (iv) the ISRC code, if in Ericsson's possession or the possession of a party working at the direction of Ericsson; and (v) the total number of each Ericsson Ringback Tone sold during the quarter, all in form and substance comparable to that provided by Ericsson to ASCAP pursuant to the Interim Fee Agreement dated as of January 19, 2010. Comparable data relating to the License Term provided by Ericsson to ASCAP prior to the execution of this Agreement shall be treated as "Usage Information" provided pursuant to this Paragraph.

9.     This Agreement shall be filed with the Court as part of the Stipulation of Dismissal attached as Exhibit B to the Past Settlement Agreement.

10.    ASCAP agrees that the License Fee Reports provided to ASCAP pursuant to Paragraph 7, and the Usage Information provided to ASCAP pursuant to Paragraph 8, are the highly confidential and proprietary information of Ericsson (the "Ericsson Confidential Information").

a.     Disclosure and Use Restrictions. ASCAP acknowledges and agrees that, except as expressly provided in Subparagraph 10(b) below, it shall not: (i) use Ericsson Confidential Information for any purposes, including its own internal use or

8

commercial benefit, including, by way of example and not limitation, using Ericsson

Confidential Information in connection with negotiations with other ASCAP licensees or

potential licensees or in future negotiations with Ericsson; (ii) commercially exploit the

Ericsson Confidential Information, including, by way of example and not limitation,

selling or disclosing the Ericsson Confidential Information for purposes of indicating the

popularity of certain genres of copyrighted musical works or individual works; and (iii)

disclose or permit disclosure of Ericsson Confidential Information to any third party

without Ericsson's prior written approval.  Further, ASCAP shall: (i) not remove any

proprietary notice of Ericsson on or in any Ericsson Confidential Information or remove

any trademark, trade name, logo or notice affixed to such Ericsson Confidential

Information other than as may be necessary for ASCAP to process the Ericsson

Confidential Information electronically as permitted herein; (ii) take all reasonable

measures to protect the secrecy of Ericsson Confidential Information and to avoid

disclosure or use of Ericsson Confidential Information to prevent it from falling into the

public domain or into the possession of persons other than those persons authorized under

this Paragraph 10 to have such information; (iii) notify Ericsson in writing of any misuse

or misappropriation of Ericsson Confidential Information which comes to ASCAP's

attention; and (iv) notify Ericsson if disclosure of Ericsson Confidential Information by

ASCAP is necessary to comply with the requirements of any law, government order,

regulation or legal process prior to such disclosure and, at Ericsson's request, use best

efforts to seek an appropriate protective order in connection with such legal process and,

if unsuccessful, to use best efforts to assure that confidential treatment will be granted to

Ericsson Confidential Information.

9

b.      Permitted Disclosure. ASCAP shall only have the right to disclose Ericsson Confidential Information: (i) in disaggregated form, to its music publisher, songwriter and composer members and affiliated society members solely in conjunction with the determination of the applicable royalty payable by ASCAP to such members based on Ericsson's public performance of the applicable work; (ii) in aggregated form with other ASCAP licensed Ringback Tone services to prospective members for the purposes of estimating what royalties might be payable to such persons if they were to become ASCAP members; (iii) to any ASCAP employees or outside consultants of ASCAP, such as ASCAP's survey and econometric consultants or outside counsel, who have a need to access Ericsson Confidential Information in order to prepare the royalty disbursements or reports to ASCAP members or affiliated society members as permitted in this Subparagraph 10(b); (iv) to any ASCAP employees or outside consultants of ASCAP who have a need to access Ericsson Confidential Information in connection with future negotiations with Ericsson; or (v) to any ASCAP employees or outside attorneys or consultants of ASCAP who have a need to access Ericsson Confidential Information in connection with future legal proceedings before the Rate Court, or to the Rate Court or other parties to such legal proceedings, provided that reasonably prior to disclosure to the Rate Court or to such other parties, ASCAP shall notify Ericsson in order to permit Ericsson to object to such use and to seek protection of such information, and ASCAP shall use its best efforts to seek an appropriate protective order in connection with such legal proceedings to protect the Ericsson Confidential Information and, if unsuccessful, shall use its best efforts to assure that confidential treatment will be granted to Ericsson Confidential Information.

c.      Return of Ericsson Confidential Information. Any Ericsson

Confidential Information which is furnished by Ericsson to ASCAP, or reproduced by

ASCAP, will be returned to Ericsson, accompanied by all copies of such Ericsson

Confidential Information within thirty (30) days of receipt of a written request for the

return of such Ericsson Confidential Information by Ericsson.  In the event of any such

request, ASCAP shall certify to Ericsson that any and all copies, duplicates, repetitions or

excerpts of any Ericsson Confidential Information received and any written memoranda

or notes of Ericsson Confidential Information have been destroyed.  Notwithstanding

anything to the contrary in this Paragraph 10, ASCAP may retain the numbers included in

the Ericsson Confidential Information in the form in which they are maintained for

ASCAP's income accounting and survey and distribution purposes in accordance with

ASCAP's normal records retention policies, to enable ASCAP to account for its revenues

and to verify distributions when questions are raised and make adjustments to

distributions, by way of example, necessitated by the receipt of new information.

d.      No Rights Granted. Nothing in this Agreement is intended to grant

any patent, copyright, trade secret, trademark service mark or other proprietary rights to

ASCAP, nor shall this Agreement grant ASCAP any rights in Ericsson Confidential

Information except the limited right to use such Ericsson Confidential Information as

expressly provided in this Paragraph 10. Ericsson remains the sole and exclusive owner

of Ericsson Confidential Information.

e.      Specific Performance and Injunctive Relief. Each Party agrees that

its obligations under this Paragraph 10 are necessary and reasonable in order to protect

Ericsson and its business.  ASCAP acknowledges that it will be impossible to fully

11

measure in money the damages caused to Ericsson by any failure to comply with, or any

breach of, the material terms, promises, agreements and conditions of this Paragraph 10,

and that, in the event of any such failure or breach, Ericsson will not have an adequate

remedy at law or in damages. ASCAP, therefore, consents to the issuance of an

injunction, a decree for specific performance, and the enforcement of other equitable

remedies against it by Ericsson without bond or other security to compel the performance

of all of the material terms of this Paragraph 10. ASCAP hereby waives the defense of

the availability of adequate relief in damages. If a dispute arises over what constitutes

Ericsson Confidential Information subject to this Paragraph 10, ASCAP agrees to treat

any information subject to such dispute (the "Disputed Information") as Ericsson

Confidential Information under this Paragraph 10 until such time as either the Parties can

mutually agree or a court of competent jurisdiction has determined if the Disputed

Information constitutes Ericsson Confidential Information.

   11.  a.  ASCAP agrees to indemnify, save and hold harmless and defend

Ericsson and the other Ericsson Parties from and against any and all claims, demands,

suits, losses, damages, liabilities, deficiencies, judgments, assessments, fines, costs and

other expenses (including reasonable attorneys' fees and costs of suit) (each, a "Claim";

collectively, "Claims") that may be made or brought against, or incurred by, the Ericsson

Parties, or any of them, with respect to the performances licensed under this Agreement

of any compositions in ASCAP's repertory at any time, or from time-to-time, during the

License Term.

    b.  Ericsson agrees to give ASCAP prompt notice of any Claim of the

type specified in Paragraph 11(a), above, and agrees promptly to deliver to ASCAP all

papers pertaining thereto.  ASCAP at its own expense shall have full charge of the defense of any such Claim, and Ericsson shall reasonably cooperate, at ASCAP's expense, with ASCAP in such defense.  Ericsson also shall have the right to engage counsel of its own, at its own expense, who may participate in the defense of any such Claim and with whom counsel for ASCAP shall cooperate.

12.    Each of the Parties represents and warrants that it has taken all necessary actions and has secured the consents of all persons necessary to authorize the execution of this Agreement and performance of all its obligations under this Agreement.  Each Party represents that the person executing this Agreement on its behalf is duly authorized to do so and that this Agreement is and shall be during its term a binding obligation of the Party on behalf of which it is executed.  Each Party represents to the other that the execution and performance of this Agreement is not barred, prohibited or impaired by any existing law, rule, regulation, court or administrative order, decree, contract or agreement to which it is now a party or by which it is bound.

13.    The Parties agree that the Court that exercised jurisdiction over the Ericsson Proceeding shall retain jurisdiction to enforce the provisions of this Agreement or should a dispute arise between the Parties concerning its meaning or enforcement.

14.    In the event Ericsson fails to pay any license fees due hereunder, or fails to submit to ASCAP any reports required hereunder, ASCAP shall give Ericsson thirty (30) days' notice in writing to cure such breach or default.  In the event that any such breach or default is capable of commercially reasonable cure and has not been cured, or cure has not commenced, within said thirty (30) days, then ASCAP may give written notice of its intent to terminate this Agreement with such termination effective upon the passage of

13

thirty (30) days after Ericsson's receipt of such notice. In the event that Ericsson disputes

ASCAP's position that the alleged breach justifies termination or is capable of

commercially reasonable cure, either Party may make an application to the Rate Court for

a ruling as to whether the alleged breach justifies termination of this Agreement or is

capable of commercially reasonable cure. If Ericsson makes such an application within

thirty (30) days of the date ASCAP provides notice of its intent to terminate this

Agreement for breach or default, then ASCAP may not terminate this Agreement during

the pendency of Ericsson's application. In the event that the Rate Court determines that

Ericsson has met its obligations under this Agreement or that such breach does not justify

termination, ASCAP shall have no right of termination under this Paragraph with respect

to the matter determined by the Court in such proceeding. In the event that the Rate

Court determines that Ericsson has not satisfied its obligations to ASCAP under this

Agreement and that such breach justifies termination, Ericsson shall thereafter have forty-

five (45) days to cure any such default identified by the Rate Court. In the event Ericsson

does not cure such default within such forty-five (45) day period, this Agreement shall

terminate immediately, and ASCAP may pursue any and all other rights and remedies

available to ASCAP. ASCAP acknowledges that it shall have no right to terminate this

Agreement other than as expressly set forth in this Paragraph 14. Ericsson acknowledges

that this Paragraph is non-precedential and is only being agreed to by ASCAP because

this Agreement is a partial settlement of a litigation.

     15.    a.    All notices, statements and other documents required to be given

under this Agreement shall be duly and properly given if: (i) mailed to the other Party by

registered or certified United States mail, return receipt requested; or (ii) sent by generally recognized same-day or overnight delivery service.

        b.     All notices, statements and other documents required to be given under this Agreement shall be mailed or delivered to the Parties at the following addresses, or such other individuals or addresses as the Parties may by written notice designate:

        If to ASCAP:

> ASCAP
> One Lincoln Plaza
> New York, New York  10023
> Attention: Matthew DeFilippis, Vice President,
> New Media and Technology
> Fax: (678) 239-3580

> Copy to:

> Richard H. Reimer, Esq.
> ASCAP
> One Lincoln Plaza
> New York, New York 10023
> Fax: (212) 787-1381

> And copy to:

> Hillel I. Parness, Esq.
> Robins, Kaplan, Miller & Ciresi L.L.P.
> 601 Lexington Avenue, Suite 3400
> New York, New York 10022
> Fax: (212) 980-7499

        If to Ericsson:

> Rob Balachandran, Esq.
> Ericsson Inc.
> 6300 Legacy Drive
> Plano, TX 75024

> Copy to:

15

Bruce G. Joseph, Esq.
Wiley Rein, LLP
1776 K Street NW
Washington, DC 20006
Fax: (202) 719-7049

16.     This Agreement shall inure to the benefit of and shall be binding upon the

Parties and their respective successors and assigns, but no assignment shall relieve the

Parties of their respective obligations under this Agreement as to performances

transmitted, acts done and obligations incurred prior to the effective date of the

assignment.

17.     This Agreement may be executed in any number of counterparts and by

facsimile signature, each of which shall be deemed to be an original, but all of which

together shall constitute one and the same instrument.

18.     This Agreement constitutes the entire agreement between the Parties with

respect to the subject matter of this Agreement and supersedes all prior agreements and

understandings, whether oral or written, between the Parties as to the subject matter of

this Agreement, except that it does not supersede the Past Settlement Agreement. This

Agreement may not be amended, modified or terminated except by a written instrument

signed by both of the Parties. Neither Party has made any representations or promises to

the other in connection with this Agreement or its subject matter that are not expressly set

forth in this Agreement.

19.     This Agreement shall be governed by and construed in accordance with

the laws of the State of New York pertaining to contracts made and fully performed

therein, without regard to choice of law rules.

16

20.     If any term, covenant or condition of this Agreement is held invalid, illegal or unenforceable in any respect, such provision shall be replaced by an enforceable provision that most closely meets the commercial intent of the Parties, and such holding shall not affect any other provision of this Agreement, which shall be and remain effective as though such invalid, illegal or unenforceable provision has not been contained herein.

21.     Each of the Parties has received independent legal advice concerning both the nature of this Agreement and the Parties' May 21, 2010 Term Sheet, and their legal rights and obligations under this Agreement and the Parties' May 21, 2010 Term Sheet. The Parties have entered into this Agreement voluntarily and of their own free will and accord without any threat of force or duress of any kind. The Parties hereby agree to bear their own costs and attorneys' fees relating to this Agreement.

ERICSSON INC.

By: _____

Name: _Conn Wishington_

Title: _Director of Sales_

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS

By: _____

Name: _____

Title: _____

17

20.     If any term, covenant or condition of this Agreement is held invalid, illegal or unenforceable in any respect, such provision shall be replaced by an enforceable provision that most closely meets the commercial intent of the Parties, and such holding shall not affect any other provision of this Agreement, which shall be and remain effective as though such invalid, illegal or unenforceable provision has not been contained herein.

21.     Each of the Parties has received independent legal advice concerning both the nature of this Agreement and the Parties' May 21, 2010 Term Sheet, and their legal rights and obligations under this Agreement and the Parties' May 21, 2010 Term Sheet. The Parties have entered into this Agreement voluntarily and of their own free will and accord without any threat of force or duress of any kind. The Parties hereby agree to bear their own costs and attorneys' fees relating to this Agreement.

ERICSSON INC.

By:_____

Name:_____

Title:_____

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS

By: _____

Name: CHRISTOPHER AMERITA

Title: SVP BROADCAST OPERATIONS + NEW MEDIA LICENSING

17