# EXHIBIT A

```
                            87GASCAPC.txt                                    1
     87gascapc
  1  UNITED STATES DISTRICT COURT
  1  SOUTHERN DISTRICT OF NEW YORK
  2  ------------------------------------x
  2  UNITED STATES OF AMERICA,
  3
  3                  Plaintiff,
  4                                          Civil Action
  4             v.                           No. 41-1395 (WCC)
  5
  5  AMERICAN SOCIETY OF COMPOSERS,
  6  AUTHORS AND PUBLISHERS, et al.,
  6
  7                  Defendants.
  7  ------------------------------------x
  8  In the Matter of the Application of
  8  AMERICA ONLINE, INC.,
  9
  9                  Applicant,
 10
 11  for the Determination of Reasonable
 11  License Fees
 12  ------------------------------------x
 12  In the Matter of the Application of
 13  REALNETWORKS, INC.,
 13
 14                  Applicant,
 14
 15  for the Determination of Reasonable
 15  License Fees
 16  ------------------------------------x
 17  In the Matter of the Application of
 17  YAHOO! INC.,
 18
 18                  Applicant,
 19
 20  for the Determination of Reasonable
 20  License Fees.
 21  ------------------------------------x
 21
 22                                          United States Courthouse
 22                                          White Plains, N.Y.
 23                                          July 16, 2008
 24
 25  Before:   THE HONORABLE WILLIAM C. CONNER, District Judge
                  CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                               (914)390-4103
                                                                             2
     87gascapc
  1                               APPEARANCES
  2
  2
  3  WHITE & CASE
  3        Attorneys for ASCAP
  4  CHRISTOPHER GLANCY
  4  STEFAN M. MENTZER
  5
  6
  6  RICHARD H. REIMER
  7        In-house Counsel for ASCAP
  8
  9  WEIL, GOTSHAL & MANGES, LLP
                                 Page 1
```

```
                                     87GASCAPC.txt
     9         Attorneys for Applicants Yahoo!, AOL, RealNetworks
    10    KENNETH L. STEINTHAL
    10    MARCIE KAUFMAN
    11    HARRIS COHEN
    12
    13    WINSTON & STRAWN, LLP
    13         Attorneys for Applicant Yahoo!
    14    THOMAS P. LANE
    15
    16
    17
    18
    19
    20
    21
    22
    23
    24
    25
                    CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                                 (914)390-4103
8                                                                              3
          87gascapc
     1              THE COURT:  Good morning.
     2              I've read ASCAP's and the Applicants' rather
     3    voluminous submissions.  I have briefly scanned ASCAP's
     4    responsive letter to the Applicants' submission.  I didn't have
     5    full time because I had another conference before this one this
     6    morning.
     7              It seems to me you're agreed on everything except the
     8    main thing, and that is the amount of revenue that ought to be
     9    the rate base on which the computation is performed.
    10              I think, as a guiding rule, the only thing that ought
    11    to be excluded from the Applicants' revenues is revenue that is
    12    received for a product or service that is separately charged
    13    for and that is not delivered through the internet portal.
    14    Now, I make one exception to that.  I know that downloads are
    15    delivered through the internet portal, and, according to my
    16    prior ruling, they should not be included in the revenue base
    17    subject to the formula for determining the fees.
    18              I don't know how we should proceed this morning, but I
    19    think one useable or useful thing would be to take
    20    Mr. Steinthal's letter and go through it item by item and let
    21    him convince the Court that this is something that is
    22    separately charged for and is not in any way connected with the
    23    internet portal, with the one exception that I indicated, and
    24    to let ASCAP respond item by item.  But if you've got a better
    25    suggestion, I'm not locked into that procedure.
                    CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                                 (914)390-4103
8                                                                              4
          87gascapc
     1              MR. STEINTHAL:  I'm happy to proceed that way, your
     2    Honor.
     3              THE COURT:  What do you think, Mr. Glancy?
     4              MR. GLANCY:  Well, that's fine, your Honor.
     5              Perhaps it would be worthwhile just having a brief
     6    discussion about what you just said were the guiding principles
     7    of this exercise, because it's not entirely clear to me, then,
     8    although it may just come up in the item-by-item discussion.
     9              THE COURT:  All right.  I'll be glad to hear from you.
    10    Do you want to speak first or do you want to respond to what
    11    Mr. --  you seem to be under the greatest compulsion to speak,
                                        Page 2
```

87GASCAPC.txt
20  overall revenue, when you're using it in the context of what
21  they're paying, you're looking at this overall revenue
22  confining yourself to advertising revenue on their network and
23  nothing else.  And that's why we have an apples to oranges
24  situation here, because we've got businesses that are not just
25  advertising businesses here, but connectivity businesses, you
                CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                            (914)390-4103

                                                                    109
    87gascapc
 1  know, B-to-B services.  That's where the difference lies.
 2          And I know I tried to make this argument and I was not
 3  successful in it during the trial, but I will tell you that
 4  that's where the interpretation issue comes in.  The networks
 5  are looking at what they pay as a percentage of their
 6  advertising revenue, and that's it.
 7          THE COURT:  When you say the advertising revenue,
 8  that's the same as their total revenue.
 9          MR. STEINTHAL:  No, it isn't.  Not if you -- if you
10  make it apples to apples and you look at an enterprise, the
11  licensee, your Honor, in that situation, call it ABC, Inc. or
12  NBC, Inc., that corporation operates a program service called
13  the NBC Network and it operates a number of divisions that are
14  part of the licensee, like a home video business.  When you're
15  looking at percentages of revenue, you are looking at the
16  percentage of advertising only from the program service.  And
17  that's what ASCAP's TV licenses provide for in the definition
18  of revenue.  They don't define it as licensees' revenue.  They
19  define it as programming service revenue.  And a programming
20  service derives revenue from selling ads and whatnot on the
21  distribution of that service.
22          What we have here, because of the nature of the
23  internet, is we've grouped together bunches of revenue that are
24  more than advertising, and that's what's creating, in our view,
25  the big problem.  And I don't believe, in all fairness, a TV
                CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                            (914)390-4103

                                                                    110
    87gascapc
 1  network looks at what they're paying when they look at a
 2  percentage of their ad revenue and makes any kind of relative
 3  assessment of what your decision here is as a percentage of
 4  Yahoo!'s total revenue or AOL's total revenue, because they're
 5  very different businesses.
 6          So it will play out in due time.  But I assure you
 7  people are not looking at your decision and saying, great, now
 8  let's go to ASCAP and try to carve down what we're paying based
 9  on that decision.  That's not going to happen.
10          THE COURT:  Well, this is all an interesting
11  philosophical exercise, but it isn't relevant to what we're
12  doing here today.  It's an argument that I'm sure you'll make
13  to the Court of Appeals, but it's a closed issue here.
14          MR. STEINTHAL:  Understood.
15          THE COURT:  All right.
16          Anything more that needs to be said or done?
17          MR. GLANCY:  Several things, your Honor, if I may.
18          Are we going to address the issue of the stay?
19          MR. STEINTHAL:  Yes.  That's the one last thing.
20          THE COURT:  Oh, all right.
21          I would think that ASCAP is not taking any substantial
22  financial risk in a stay, or if the judgment is stayed pending
23  appeal.  I don't think that AOL or Yahoo! are going to become
24  bankrupt or insolvent during the time of appeal, particularly
                                Page 51

```
                            87GASCAPC.txt
   25    if Mr. Steinthal is able to get an expedited appeal.  At one
                 CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                               (914)390-4103
                                                                       111
         87gascapc
    1    time, there was suggestion that RealNetworks had some financial
    2    problems, but --
    3              MR. STEINTHAL:  Your Honor, I don't know where that
    4    suggestion came from.
    5              THE COURT:  I think that requiring a bond is really an
    6    unnecessary nuisance to the applicants, because I don't think
    7    there's any financial risk involved.  You're going to get paid
    8    in the long run whatever the Court of Appeals decides you're
    9    entitled to.
   10              MR. GLANCY:  Well, your Honor, in these uncertain
   11    times, with the economy the way it's going -- and we've seen
   12    the internet bubble burst in the 2000/2001 time frame and many
   13    solid companies go under.  And ASCAP itself lost money when DMX
   14    declared bankruptcy.  And I don't know whether, you know, a
   15    year prior to that or 18 months prior to that, one could have
   16    looked at DMX and said, well, they're a solid company; they're
   17    not going to go under.
   18              I do know that the Court of Appeals is taking about 18
   19    months to decide things.  And I don't know what the lay of the
   20    land will be in 18 months for these companies.  But I think
   21    that, given the size of their revenues and that they should
   22    really have no difficulty in posting the bond, at least to
   23    protect ASCAP in the event of default or bankruptcy.  It's
   24    required by Rule 62 for obtaining a stay of enforcement of the
   25    money damages.  And I don't think that they can say that it
                 CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                               (914)390-4103
                                                                       112
         87gascapc
    1    creates an undue burden for them.  It may be a nuisance, but,
    2    with all due respect, I mean --
    3              THE COURT:  Well, the amount of money that's involved,
    4    I know that ASCAP made some press releases about the value of
    5    the judgment to them.  I was unable to reconstruct their
    6    figures, but the bond would cost some percentage of that.  I
    7    don't know.
    8              MR. STEINTHAL:  Your Honor, I don't think we're in a
    9    situation of risk here.  In addition, they've just gotten the
   10    benefit of getting the interest compounded instead of simple,
   11    and the combination of the cost of a bond that's largely
   12    unnecessary and giving them the benefit of compound instead of
   13    simple, I just think it's unnecessary.
   14              THE COURT:  I'm inclined to agree.  I don't think
   15    there is any real risk.  Certainly Microsoft would be horrified
   16    to learn that the financial soundness of Yahoo! was being
   17    publicly questioned.  Let's let it go at that.
   18              MR. GLANCY:  Well, as regards to over the next 18
   19    months, we would like to make an application, then, to increase
   20    interim fees, or we could just not stay that portion of the
   21    agreement and they could pay under the judgment as entered by
   22    your Honor during the pendency of the appeal.  But it seems to
   23    me unfair that Yahoo! should still continue to pay something
   24    like $200,000 a year over the next 18 months when we all know
   25    that, at the end of the day, it's -- and they've been paying
                 CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                               (914)390-4103
                                                                       113
         87gascapc
                                Page 52
```

```
                              87GASCAPC.txt
 1     that as interim fees for a while, and, at the end of the day,
 2     they're going to have to pay substantially more than that.
 3              MR. STEINTHAL:  Your Honor, I'm prepared to take to
 4     Yahoo!, if that's their concern, the issue of Yahoo!'s interim
 5     fees, which were set on a lump-sum basis several years ago.
 6     I'm sure we can work something out so that there is an
 7     adjustment in Yahoo!'s interim fee payments to ASCAP.  I have
 8     no problem taking that back.
 9              THE COURT:  Well, if you aren't successful in
10     convincing them to come up to date on the interim fees, I'll
11     reconsider the question about a bond --
12              MR. STEINTHAL:  Fair enough.
13              THE COURT:   -- for supersedeas of the judgment.
14     Anything more?
15              MR. GLANCY:  Just, your Honor, it's on a different
16     matter, but we have a difficulty.  With respect to YouTube and
17     Google, we filed an application for determination of final
18     fees.  With respect to YouTube, we've sent data requests to
19     Google.  They're in the process of retaining counsel.  And I
20     know they've been in discussions with Mr. Steinthal, and I wish
21     him the best of luck in getting that retention, but,
22     apparently, there's some issues there that have not been
23     resolved, and it's been over two months now, almost two months
24     now, since we filed the rate proceeding and issued discovery
25     requests, and we just have no mechanism, really, for moving
                   CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                              (914)390-4103
                                                                     114
       87gascapc
 1     things along here.
 2              MR. STEINTHAL:  Your Honor, let me speak to that.  And
 3     I can't speak technically on behalf of YouTube because we have
 4     not been formally engaged yet.  We were asked by YouTube to
 5     represent them.  There are some conflict issues that are taking
 6     longer than I would have liked to work out.  I believe they
 7     will get resolved shortly, enabling us to represent YouTube.
 8              But the good news is we have conveyed to the inhouse
 9     lawyer at YouTube, two of them, their general counsel and one
10     of their senior lawyers, who used to work with me, the
11     information from the conference of a week ago about what the
12     schedule is in the other cases.  They are busily pulling
13     together internally the information that they're going to need
14     so that they can be on the same schedule as everybody else.
15              So it's not like they're in a fog, waiting until some
16     later date, and not going to be able to act consistent with the
17     schedule that your Honor outlined with the closure of discovery
18     of October 31 and a pretrial conference on October 10.
19              So they are, inhouse, doing the same things that they
20     would be doing whether we were formally engaged or not.  That,
21     I can represent to you.
22              THE COURT:  All right.
23              MR. STEINTHAL:  So we'll try to get this thing
24     resolved.  And I can assure you that the YouTube folks will be
25     in touch directly with ASCAP on these issues pending our
                   CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                              (914)390-4103
                                                                     115
       87gascapc
 1     dealing with our formal issue.
 2              THE COURT:  All right.  Thank you.
 3              MR. GLANCY:  Thank you.
 4              THE COURT:  I'll look forward to getting your
 5     submissions.
                                 Page 53
```