USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4|13|2011

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of AT&T MOBILITY LLC, | Civil Action No. 09-cv-7072 (DLC) |
| Related to | |
| UNITED STATES OF AMERICA, | ~~PROPOSED~~ ORDER AND STIPULATION OF DISMISSAL |
| Plaintiff, | |
| v. | Civil Action No. 41-cv-1395 (DLC) |
| AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, | |
| Defendant. | |

WHEREAS, the Parties have reached a complete settlement of the issues raised in the above-captioned proceeding:

IT IS HEREBY ORDERED THAT:

1. The May 5, 2008 Application brought by the American Society of Composers, Authors and Publishers against AT&T Mobility LLC for the determination of reasonable license fees for the period beginning October 28, 2004, is dismissed with prejudice, except as set forth in Paragraph 2 below.

2. The May 5, 2008 Application brought by the American Society of Composers, Authors and Publishers against AT&T Mobility LLC for the determination of reasonable license fees for the period beginning October 28, 2004, is dismissed without prejudice to (i) the Court's retention of jurisdiction to enforce (a) a settlement

agreement concerning AT&T Mobility's CV Service, Ringback Tone Service and

Previews, and certain AT&T Mobility websites, through July 31, 2010 (the "Past

Settlement Agreement"), (b) a license agreement concerning AT&T Mobility's CV

Service for the period from August 1, 2010 through December 31, 2012 (the "CV License

Agreement"), (c) a license agreement concerning AT&T Mobility's Ringback Tone

Service and AT&T Mobility's Previews from August 1, 2010 through December 31,

2012 (the "Ringback Tones and Previews License Agreement"); and (d) an agreement in

connection with certain third party services entered into by the Parties (the "Third Party

Services Agreement"); and (ii) the Court's retention of jurisdiction concerning setting

reasonable license fees for downloads or ringtones in the event that the April 2007 Court

decision concerning whether downloads constitute public performances is overturned or

remanded on appeal of that decision.

     3.   The Past Settlement Agreement, CV License Agreement, Ringback Tones

and Previews License Agreement, and Third Party Services Agreement are attached

hereto as Exhibits A, B, C and D, respectively.

     4.   This Stipulation and Order shall not be considered or construed to

constitute any expression of opinion by the Court with respect to the contentions of the

respective parties and shall in no way influence or affect the determination of (i) the

scope, nature or extent of any public performance license granted by any of the attached

agreements; (ii) the extent to which a license is necessary for any service provided by

AT&T Mobility LLC; or (iii) what constitutes reasonable license fees.  In entering this

Stipulation and Order, the Court has not weighed the arguments and contentions of any

party as to the nature or extent of the licenses granted by any of the attached agreements

or as to what should constitute reasonable license fees for any service provided by AT&T

Mobility LLC.

     5.  Each side is to bear its own attorneys' fees and costs.

     6.  This Stipulation and Order can be executed via facsimile and in

counterpart copies.

     7.  This proceeding shall be marked CLOSED by the Clerk.

Dated: New York, New York  
       March 24, 2011

KILPATRICK TOWNSEND & STOCKTON
LLP

By:

    Joseph Petersen  
31 West 52nd Street  
14th Floor  
New York, New York  10019  
212.775.8700  
jpetersen@kilpatricktownsend.com

*Attorneys for AT&T Mobility LLC*

Dated: New York, New York  
       March 24, 2011

ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.

By:

    David Leichtman  
    Hillel I. Parness  
    Bryan J. Vogel  
601 Lexington Avenue, Suite 3400  
New York, New York  10022  
212.980.7400  
dleichtman@rkmc.com  
hiparness@rkmc.com  
bjvogel@rkmc.com

-and-

Richard H. Reimer  
Christine A. Pepe  
ASCAP  
One Lincoln Plaza

So ordered.  
Denise Cote  
April 13, 2011

New York, New York 10023
212.621.6200

*Attorneys for American Society of Composers,
Authors and Publishers*

SO ORDERED.

Dated: New York, New York
       March __, 2011

_____

Hon. Denise Cote
United States District Judge

## SETTLEMENT, MUTUAL RELEASE AND LICENSE AGREEMENT

This agreement ("Agreement") dated as of August 1, 2010 (the "Effective Date"), is entered by and between the American Society of Composers, Authors and Publishers ("ASCAP"), with a place of business at One Lincoln Plaza, New York, New York 10023, and AT&T Mobility LLC ("AT&T Mobility"), with a place of business at 1055 Lenox Park Boulevard, Atlanta, Georgia 30319. ASCAP and AT&T Mobility are sometimes referred to in this Agreement collectively as the "Parties," and individually as a "Party."

WHEREAS, AT&T Mobility previously applied to ASCAP for licenses to perform publicly the musical works in the ASCAP repertory by means of certain Internet sites and wireless services, which applications were dated October 28, 2004, November 3, 2004, September 19, 2005, and January 19, 2006;

WHEREAS, by application dated May 5, 2008, ASCAP commenced an action (the "Action") for a determination of the reasonable license fees for the period beginning October 28, 2004 for the licenses AT&T Mobility had applied for, pursuant to Section IX(A) of the Second Amended Final Judgment entered in *United States v. ASCAP*, Civ. No. 41-1395 (S.D.N.Y. June 11, 2001). The Action was subsequently assigned Civil Action No. 09 Civ. 7072;

WHEREAS, the Parties desire fully and finally to resolve amicably the Action, and, accordingly, the Parties have agreed upon final License Fees (as defined herein) for the Licensed Services (as defined herein) for the License Term (as defined herein); and

WHEREAS, concurrent with the execution of this Agreement, the Parties are also entering into (i) a license agreement concerning AT&T Mobility's CV Service (as defined herein) for the period from the Effective Date through December 31, 2012 (the

"CV License Agreement"); (ii) a license agreement concerning AT&T Mobility's Ringback Tone Service (as defined herein) and AT&T Mobility's Previews (as defined herein) from the Effective Date through December 31, 2012 (the "Ringback Tones and Previews License Agreement"); and (iii) an agreement in connection with certain third party services (the "Third Party Services Agreement").

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      Definitions.  Capitalized terms shall have the meaning set forth below or as defined elsewhere in this Agreement.

a.      The "ASCAP Repertory" means all copyrighted musical compositions written or published by ASCAP's members or by the members of affiliated foreign performing rights societies, including without limitation compositions written or published during the term of this Agreement, and for which ASCAP at any time during the term of this Agreement has the right to license non-dramatic public performances.

b.      "AT&T Mobility's CV Service" means AT&T Mobility's "basic" and/or "premium" streaming audiovisual clip service previously referred to by AT&T Mobility as "Cellular Video" and now referred to as "Mobile Video."  For the avoidance of any doubt, "AT&T Mobility's CV Service" does not encompass any other service, including but not limited to AT&T Mobility's U-Verse Mobile service.

c.      "AT&T Mobility Previews" means Previews of Ringback Tones, Ringtones and full track and video clip downloads offered by AT&T Mobility to AT&T Mobility subscribers and/or potential subscribers.

2

   d. "AT&T Mobility's Ringback Tone Service" means Ringback Tones offered by AT&T Mobility to AT&T Mobility subscribers excluding Excluded Ringback Tones.

   e. "AT&T Mobility's Websites" means the following websites: www.rucingular.com, www.cingularextras.com, www.cingularsource.com, www.myvideobattle.com and www.makemedance.com.

   f. "Content Providers" are parties that have entered into license agreements with AT&T Mobility granting AT&T Mobility the rights to provide audiovisual and/or audio content through AT&T Mobility's CV Service.

   g. The "Download Decision" means the Opinion and Order issued by Judge Conner on or about April 25, 2007 in *United States v. ASCAP,* Civ. No. 41-1395, in connection with the license applications of America Online, Inc., RealNetworks, Inc., and Yahoo! Inc. (available at 485 F. Supp. 2d 438).

   h. The "Interim Fee Decision" means the Opinion and Order issued by Judge Conner on or about April 3, 2009 in *United States v. ASCAP,* Civ. No. 41-1395, in connection with the license application of AT&T Mobility (the public version is available at 607 F. Supp. 2d 562).

   i. The "Licensed Services" mean the following services: AT&T Mobility's CV Service, AT&T Mobility's Ringback Tone Service; AT&T Mobility's Previews, and the AT&T Mobility's Websites.

   j. The "License Term" shall commence on the date of inception of each Licensed Service and shall end as to all Licensed Services on 12:01 a.m. of the Effective Date.

k.    The "*MobiTV* Decision" means the Opinion and Order issued by Judge Cote on or about May 6, 2010 (the public version is available at 712 F. Supp. 2d 206), and the Judgment Order issued by Judge Cote on or about July 7, 2010, in *United States v. ASCAP,* Civ. No. 41-1395, in connection with the license application of MobiTV, Inc.

l.    "Monthly Recurring Charge" means the monthly recurring charge imposed by AT&T Mobility upon Ringback Tone subscribers in connection with AT&T Mobility's provision of AT&T Mobility's Ringback Tone Service. For the avoidance of doubt, the Monthly Recurring Charge does not include the Ringback Tone Price.

m.    "Payments" means all payments in connection with AT&T Mobility's CV Service, whether in the form of cash payments or the fair market value of any other non-cash form of consideration, including but not limited to: license fees, affiliate fees, a share of advertising revenue or other monies actually received from sponsors (less advertising agency commissions not to exceed fifteen percent (15%) of those fees actually incurred), trade, barter, promotional consideration, trade-outs, consideration received for the provision or sale of time on AT&T Mobility's CV Service, or the fair market value of any other merchandise or anything of service or value that accrues to or is received in lieu of cash consideration.

n.    "Previews" means audio or audio-visual content performed for users in connection with the potential purchase by users of audio or audio-visual content.

o.    "Rate Court" means the United States District Court for the Southern District of New York and, specifically, the United States District Court judge

4

assigned to preside over *United States v. ASCAP*, Civ. No. 41-1395 or any successor action or proceeding.

p.      "Ringback Tone" means a musical work that is sold to or otherwise acquired by a wireless customer to replace the standard "ringing" sound that callers would otherwise hear when waiting for the customer to answer the phone.

q.      "Ringback Tone Price" shall mean the retail price charged to an AT&T Mobility subscriber in connection with the purchase of an individual *a la carte* Ringback Tone or a bundle consisting only of Ringback Tones (e.g., a bundle of three Ringback Tones). For the avoidance of doubt, "Ringback Tone Price" shall not include: (i) any applicable sales, value added and other taxes and additional regulatory charges assessed by governmental or regulatory agencies; and (ii) Monthly Recurring Charges or Transport Fees. The definitions of Ringback Tone Price, Monthly Recurring Charge, and Transport Fees are not intended to be, and shall not be, applicable to any other subscription-based service.

r.      "Ringtone" means a musical work that is sold to or otherwise acquired by a wireless customer to replace the standard "ring" on a customer's wireless phone.

s.      "Ringtones Decision" means the Opinion and Orders issued by Judge Cote on or about October 14, 2009 in *United States v. ASCAP*, Civ. No. 41-1395, in connection with the license applications of AT&T Mobility and Verizon Wireless (the order in the Verizon Wireless proceeding is available at 663 F. Supp. 2d 363).

t.      "Transport Fee" means the one-time additional charge imposed by AT&T Mobility upon prepaid subscribers who subscribe to the AT&T Mobility

Ringback Tone Service in lieu of a Monthly Recurring Charge.  For the avoidance of doubt, the Transport Fee does not include the Ringback Tone Price.

        u.     "U.S. Territory" means the United States, its commonwealths, territories and possessions, including, without limitation, Puerto Rico.

        2.     ASCAP hereby grants, for the License Term, a non-exclusive license to perform publicly within the U.S. Territory, in and as part of the Licensed Services, all musical works in the ASCAP Repertory.  For the avoidance of doubt, the license granted by the foregoing sentence extends to AT&T Mobility; Content Providers that are eligible for inclusion within Paragraph 3.e, for their role in the provision of content for the Licensed Services; and entities providing technical services in connection with the distribution of the Licensed Services (*e.g.*, hosting the content, transmitting the content, and/or providing payment services in connection with the Licensed Services) that are eligible for inclusion within  Paragraph 3.e, for their role in providing technical services in connection with the Licensed Services.

        3.     The license fee for AT&T Mobility's CV Service shall be calculated as follows:

        a.     All Payments received by Content Providers (or any other party with whom a Content Provider has an economic relationship), from, or on behalf of AT&T Mobility as consideration for the licensing of content for distribution over AT&T Mobility's CV Service, plus any additional Payments attributable to the sale of advertising inserted into content (e.g., commercials or like promotional content) for distribution over AT&T Mobility's CV Service multiplied by the percentage rate applicable to that content ("License Rate") pursuant to Paragraph 4, below.  For the

avoidance of doubt, "Excluded Product Placement and Sponsorship Payments" (as defined below) shall not be included for purposes of this Paragraph 3.a.  "Excluded Product Placement and Sponsorship Payments" shall mean Payments attributable to the sale of product placements and/or sponsorships that are within the content, unless such placements or sponsorships are made specifically for distribution to AT&T Mobility customers (alone or in combination with customers of other wireless carriers) over mobile devices (only to the extent such Payments may reasonably be allocated to distribution to AT&T Mobility customers).  If the Parties are unable to agree on a particular allocation, either Party may bring the issue to the Rate Court for resolution.

             b.     AT&T Mobility represents that the content distributed over the Licensed Services did not contain advertising inserted into the content (e.g., commercials or like promotional content) during the License Term and, as a result, there was no such advertising revenue associated with AT&T Mobility's CV Service.  For the avoidance of doubt, AT&T Mobility does not make any representations as to Excluded Product Placement and Sponsorship Payments.

             c.     The Payments in Paragraph 3.a shall not include Payments to the Content Provider if it has been demonstrated to ASCAP that the Content Provider (or any other party) has paid, or is obligated to pay, ASCAP a fee based on the Payments the Content Provider has received attributable to AT&T Mobility's CV Service, pursuant to an ASCAP license agreement, including when the Content Provider pays ASCAP on a final, flat-fee basis when distribution of content over AT&T Mobility's CV Service is included within the scope of the license.  ASCAP shall disclose to AT&T Mobility those circumstances, if any, where ASCAP has received information reflecting that a Content

7

Provider has included Payments associated with distribution via AT&T Mobility in its ASCAP license fee. ASCAP represents that a complete and final list of Content Providers subject to this exclusion is attached hereto as **Exhibit A**.

        d.      Attached hereto as **Exhibit B** is a table setting forth the agreed applicable rates for the content distributed in connection with AT&T Mobility's CV Service to date.

        e.      For the avoidance of doubt, if AT&T Mobility pays license fees in connection with the performance of content supplied by a Content Provider on AT&T Mobility's CV Service in accordance with this Agreement, ASCAP shall not thereafter seek additional fees from said Content Provider for said performances of said content on AT&T Mobility's CV Service, and in the event AT&T Mobility pays such fees, such Content Provider will be deemed to be included within the scope of the release afforded "AT&T Mobility Parties" set forth in paragraph 10.a below.

        f.      For the avoidance of doubt, nothing in this Agreement shall be construed to provide for the double counting of any monies for the purpose of calculating the License Fees.

        4.      The License Rates applicable to AT&T Mobility's CV Service shall be as follows:

        a.      For content classified as news, sports, and/or weather the license rate shall be 0.1375%;

        b.      For content classified as general entertainment the license rate shall be 0.375%;

c. For content classified as music intensive the license rate shall be 0.9%; and

d. For content classified as audio-only music content the license rate shall be 2.5%.

5. The license fee for AT&T Mobility's Ringback Tone Service and AT&T Mobility Previews shall be calculated as follows:

a. The rate shall be 2.0% of the Ringback Tone Price for all Ringback Tones sold by AT&T Mobility, except for Ringback Tones that AT&T Mobility sources or sourced from parties who have cleared musical composition public performance rights, namely: (i) Ericsson Inc. for the period February 2006 to May 17, 2010 for Universal Music Group Ringback Tones, and February 2006 through February 2010 for all other Ringback Tones; and (ii) Warner Music Group for the period from March 1, 2010 through the end of the license period (the "Excluded Ringback Tones"). The Parties agree that Excluded Ringback Tones shall be excluded from the release afforded "AT&T Mobility Parties" set forth in paragraph 10.a below. The Parties also agree that there shall be no further fee payable in connection with AT&T Mobility's Previews other than the fee set forth in this Paragraph 3.a.

b. In the event the Ringback Tone Price of an individual *a la carte* Ringback Tone sold by AT&T Mobility falls below 150% of the Monthly Recurring Charge for access to the Ringback Tone product, the Ringback Tone Price for such Ringback Tone shall be deemed to be 150% of the Monthly Recurring Charge (e.g., if the Ringback Tone Price of an individual *a la carte* Ringback Tone is $1.30 and the Monthly Recurring Charge is $0.99, then the Ringback Tone Price for the Ringback Tone shall be

9

deemed to be $1.49). The term "individual *a la carte* Ringback Tone" does not include tones sold in bundles or provided at no charge on a promotional basis. With respect to any Ringback Tone for which a license fee is paid hereunder, the license granted by ASCAP shall continue to apply for the period for which the consumer continues to have the right to use that Ringback Tone for the Ringback Tone Price that was covered hereunder.

6.     The license fee for AT&T Mobility's Websites shall be $3,000.

7.     In accordance with Paragraphs 2-6 above, the Parties agree that the total license fees for the License Term ("License Fees") should be $        in respect of AT&T Mobility's CV Service; $        in respect of AT&T Mobility's Ringback Tone Service and AT&T Mobility's Previews; and $3,000 for AT&T Mobility's Websites.

8.     To date, AT&T Mobility has paid ASCAP $2,640,000 in Interim Fees pursuant to the Interim Fee Decision. The difference between the License Fee and the amount paid in Interim Fees is $        (the "Interim Fee Balance"). The Parties agree that AT&T Mobility may cease paying Interim Fees to ASCAP, and ASCAP will be entitled to retain, on a temporary basis, the Interim Fee Balance, in accordance with the terms of the CV License Agreement and the Ringback Tones and Previews License Agreement and the Third Party Services Agreement.

9.     This Agreement shall be deemed final and non-appealable, but experimental and non-precedential in all respects. For the avoidance of doubt, the Parties agree that under no circumstance shall this Agreement be deemed by any court, party, or other entity to have any precedential effect or impact as it may pertain to an appeal of any judgment of the *MobiTV* Decision. In the event that the Download Decision is

10

overturned or remanded on appeal of that decision, the Parties agree to reopen the issue of fees for downloads or Ringtones to further negotiations or further proceedings before the Rate Court subsequent to any such reversal or remand in accordance with any opinion related thereto ("Download and Ringtone Reopener").

        10.    a.    ASCAP hereby does and shall, for itself, its parents, subsidiaries, divisions, affiliates, predecessors, successors and members, and each of their respective officers, directors, past and present employees, consultants, agents, representatives, insurers, attorneys, shareholders and heirs (collectively, the "ASCAP Parties"), irrevocably and unconditionally release, acquit and forever discharge AT&T Mobility and its parents, subsidiaries, divisions, affiliates, predecessors and successors, and each of their respective officers, directors, past and present employees, consultants, agents, representatives, insurers, attorneys, shareholders and heirs (collectively, the "AT&T Mobility Parties"), from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, known or unknown, in law or equity, which against them or any of them, whether jointly or severally, ASCAP or any of the other ASCAP Parties ever had, now has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever arising out of, related to, or regarding the public performance of music via the Licensed Services (except to the extent of AT&T Mobility's obligations under this Agreement, including but not limited to its obligation to pay License Fees pursuant to Paragraphs 2-6 above).

11

b.      AT&T Mobility hereby does and shall, for itself and the other AT&T Mobility Parties irrevocably and unconditionally release, acquit and forever discharge ASCAP and the other ASCAP Parties, from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, known or unknown, in law or equity, which against them or any of them, whether jointly or severally, AT&T Mobility or any of the other AT&T Mobility Parties ever had, now has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever arising out of ASCAP's licensing of the public performance of music via the Licensed Services, except to the extent of ASCAP's obligations under this Agreement.

11.      Except as explicitly set forth herein, this Agreement licenses any and all public performances of copyrighted musical works in the ASCAP Repertory for which a license is or may be required by AT&T Mobility via the Licensed Services during the License Term. The Parties nonetheless reserve all their rights, positions and defenses in respect of whether particular transmissions of music via the Licensed Services require licensing. This Agreement supersedes AT&T Mobility's obligation to make interim license fee payments to ASCAP under the Interim Fee Decision. For the avoidance of doubt, and except as otherwise provided in Paragraphs 3.e and 10.a, this Agreement does not license or release any third parties nor does it affect ASCAP's ability to pursue any applicable license fees from any third party, or any third-party site or service.

12.      Music Use Reports: Within 60 days following the Parties' execution of this Agreement, AT&T Mobility shall, to the extent not provided in discovery in the

12

Action or otherwise furnished to ASCAP, provide ASCAP with music use information in respect of AT&T Mobility's CV Service and AT&T Mobility's Ringback Tone Service in the form required in Paragraph 13 of the CV License Agreement and in Paragraph 10 of the Ringback Tones and Previews License Agreement, respectively. ASCAP acknowledges that AT&T Mobility has already furnished ASCAP with the music use information required for AT&T Mobility's CV Service through January 2011.

13.    Except as otherwise provided within this Paragraph 13, any terms and conditions of this Agreement, and any documents pertaining to this Agreement, that are not publicly filed with the Stipulation of Dismissal shall be kept confidential and shall not be disclosed by either ASCAP or AT&T Mobility, or any of their officers, employees, agents or attorneys, to any third party, except to the extent that the same may be required to be disclosed by any law, governmental order or the rules of any nationally recognized stock exchange, provided that in such case, the Party making the disclosure shall promptly inform the other Party of any such requirement and cooperate with any attempt to procure a protective order or similar treatment of confidential information. Further, ASCAP agrees to maintain the confidentiality of any License Fee and Music Use reports delivered to it by AT&T Mobility and agrees that any such reports shall not be disclosed by ASCAP or any of its officers, employees, agents or attorneys, to any third party, except to the extent that the same may be required to be disclosed by any law, governmental order or the rules of any nationally recognized stock exchange, provided that in such case, ASCAP shall promptly inform AT&T Mobility of any such requirement and cooperate with any attempt to procure a protective order or similar treatment of such information. Notwithstanding the foregoing provisions of this Paragraph 13, ASCAP has

the right to disclose the information contained in License Fee and Music Use Reports: (i) in disaggregated form, to its music publisher, songwriter and composer members and affiliated society members solely in conjunction with the determination of the applicable royalty payable by ASCAP to such members based on AT&T Mobility's public performance of the applicable work; (ii) in aggregated form with other ASCAP licensed services to prospective members for the purposes of estimating what royalties might be payable to such persons if they were to become ASCAP members; and (iii) to any ASCAP employees or outside consultants of ASCAP, such as ASCAP's survey and econometric consultants or outside counsel, who have a need to access music use data in order to prepare the royalty payments or reports to ASCAP members or affiliated society members as permitted herein.  Further, AT&T Mobility may provide outside counsel for Broadcast Music, Inc. with an unredacted copy of this Agreement provided that BMI agrees in writing to maintain the confidentiality of this Agreement on an outside counsel's eyes only basis.

14.    a.      ASCAP agrees to indemnify, save and hold harmless and defend AT&T Mobility and the other AT&T Mobility Parties from and against any and all claims, demands, suits, losses, damages, liabilities, deficiencies, judgments, assessments, fines, costs and other expenses (including reasonable attorneys' fees and costs of suit) (each, a "Claim"; collectively, "Claims") that may be made or brought against, or incurred by AT&T Mobility and the other AT&T Mobility Parties, or any of them, with respect to the performances licensed under this Agreement of any compositions in the ASCAP Repertory at any time during the License Term.

14

b.      AT&T Mobility agrees to give ASCAP prompt notice of any Claim of the type specified in Paragraph 14.a, above, and agrees promptly to deliver to ASCAP all papers pertaining thereto.  ASCAP at its own expense shall have full charge of the defense of any such Claim, and AT&T Mobility shall reasonably cooperate, at ASCAP's expense, with ASCAP in such defense.  AT&T Mobility also shall have the right to engage counsel of its own, at its own expense, who may participate in the defense of any such Claim and with whom counsel for ASCAP shall cooperate.

15.      Each of the Parties represents and warrants that it has taken all necessary actions and has secured the consents of all persons necessary to authorize the execution of this Agreement and performance of all its obligations under this Agreement.  Each Party represents that the person executing this Agreement on its behalf is duly authorized to do so and that this Agreement is and shall be during its term a binding obligation of the Party on behalf of which it is executed.  Each Party represents to the other that the execution and performance of this Agreement is not barred, prohibited or impaired by any existing law, rule, regulation, court or administrative order, decree, contract or agreement to which it is now a party or by which it is bound.

16.      Promptly upon the execution of this Agreement, the CV License Agreement, the Ringback Tones and Previews License Agreement and the Third Party Services Agreement, the Parties will instruct their respective counsel to arrange for the discontinuance of the Action with prejudice, subject to the Rate Court's retention of jurisdiction to enforce this Agreement, the CV License Agreement, the Ringback Tones and Previews License Agreement and the Third Party Services Agreement, and to address the Download and Ringtone Reopener, the Parties to bear all of their own costs including

15

attorneys' fees incurred in connection with the Action.  To effectuate the foregoing, the Parties shall sign the Stipulation for Dismissal attached hereto as **Exhibit C**, which AT&T Mobility shall file with the Court promptly following the complete execution of all of the foregoing Agreements.  Both Parties acknowledge, as this is a settlement of this Action, neither Party has any right of appeal, except as set forth in connection with the Download and Ringtone Reopener.

       17.    a.    All notices, statements and other documents required to be given under this Agreement shall be duly and properly given if: (i) mailed to the other Party by registered or certified United States mail, return receipt requested; (ii) sent by generally recognized same-day or overnight deliver service; (iii) sent by facsimile, with receipt acknowledged or confirmed; or (iv) sent by electronic mail with return confirmation to the sender.

             b.    All notices, statements and other documents required to be given under this Agreement shall be mailed or delivered to the Parties at the following addresses, or such other individuals or addresses as the Parties may by written notice designate:

           If to ASCAP:

                ASCAP
                One Lincoln Plaza
                New York, New York  10023
                Attention: Matthew DeFilippis, Vice President,
                New Media and Technology
                E-Mail: MDefilippis@ascap.com
                Fax: (678) 239-3580

                Copy to:

                Richard H. Reimer, Esq.
                ASCAP

One Lincoln Plaza
New York, New York 10023
E-mail: RReimer@ascap.com
Fax: (212) 787-1381

And copy to:

Hillel I. Parness, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
601 Lexington Avenue, Suite 3400
New York, New York 10022
E-mail: HIParness@rkmc.com
Fax: (212) 980-7499

If to AT&T Mobility:

General Counsel
AT&T Mobility LLC
1055 Lenox Park Boulevard
Atlanta, Georgia 30319

Joshua Zarrow, Esq.
AT&T Mobility LLC
1880 Century Park East
Suite 1101
Los Angeles, CA  90067
E-mail: Joshua.Zarrow@ATT.com
Fax: (310) 552-2244

Catherine Hwang, Esq.
AT&T Mobility LLC
5738 Pacific Center Blvd., 2nd Floor
San Diego, CA 92121
E-mail: ch0171@ATT.com
Fax: (858) 535-7025

Copy to:

Bobby Rosenbloum, Esq.
Greenberg Traurig, LLP
The Forum
3290 Northside Parkway
Suite 400
Atlanta, Georgia  30327
E-mail: Rosenbloumb@gtlaw.com
Fax: (678) 553-2212

17

And copy to:

Joseph Petersen, Esq.
Kilpatrick Townsend & Stockton LLP
31 West 52nd Street, 14th Floor
New York, New York  10019
E-mail: JPetersen@kilpatricktownsend.com
Fax: (212) 775-8815

18.     This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns, but no assignment shall relieve the Parties of their respective obligations under this Agreement as to performances transmitted, acts done and obligations incurred prior to the effective date of the assignment.

19.     This Agreement may be executed in any number of counterparts and by facsimile signature, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

20.     This Agreement, together with all exhibits and schedules, which are incorporated herein by reference, constitutes the entire agreement between the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements and understandings, whether oral or written, between the Parties as to the subject matter of this Agreement, except that it does not supersede the CV License Agreement, or the Ringback Tones and Previews License Agreement or the Third Party Services Agreement.  This Agreement may not be amended, modified or terminated except by a written instrument signed by both of the Parties.   Neither Party has made any representations or promises to the other in connection with this Agreement or its subject matter that are not expressly set forth in this Agreement.

18

21.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York pertaining to contracts made and fully performed therein, without regard to choice of law rules.

22.    If any term, covenant or condition of this Agreement is held invalid, illegal or unenforceable in any respect, such provision shall be replaced by an enforceable provision that most closely meets the commercial intent of the Parties, and such holding shall not affect any other provision of this Agreement, which shall be and remain effective as though such invalid, illegal or unenforceable provision has not been contained herein.

23.    Each of the Parties has received independent legal advice concerning both the nature of this Agreement and the Parties' May 21, 2010 Term Sheet, and their legal rights and obligations under this Agreement and the Parties' May 21, 2010 Term Sheet. The Parties have entered into this Agreement voluntarily and of their own free will and accord without any threat of force or duress of any kind. The Parties hereby agree to bear their own costs and attorneys' fees relating to this Agreement. For the avoidance of any doubt, Paragraph 7 of the Parties' May 21, 2010 Term Sheet is hereby incorporated into this Agreement.

AT&T MOBILITY LLC

By: William Markwell

Name: William MarKweLL

Title: Senior Contract Mgr

Date: 3-23-2011

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS

By: Christ H Amoat

Name: Chris Amenita

Title: SVP Broadcast Operations + New Media

Date: 3-9-11

19

Proprietary/Confidential Information

**Exhibit A**

**Excluded Content Providers**

ABC Television Network (for periods from January 1, 2006 through December 31, 2008 only)

## Exhibit B







**Exhibit C**

**Proposed Order**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of AT&T MOBILITY LLC, | Civil Action No. 09-cv-7072 (DLC) |
| Related to | |
| UNITED STATES OF AMERICA, | **PROPOSED ORDER AND**<br>**STIPULATION OF DISMISSAL** |
| Plaintiff, | |
| v. | Civil Action No. 41-cv-1395 (DLC) |
| AMERICAN SOCIETY OF COMPOSERS,<br>AUTHORS AND PUBLISHERS, | |
| Defendant. | |

WHEREAS, the Parties have reached a complete settlement of the issues raised in the above-captioned proceeding:

IT IS HEREBY ORDERED THAT:

1. The May 5, 2008 Application brought by the American Society of Composers, Authors and Publishers against AT&T Mobility LLC for the determination of reasonable license fees for the period beginning October 28, 2004, is dismissed with prejudice, except as set forth in Paragraph 2 below.

2. The May 5, 2008 Application brought by the American Society of Composers, Authors and Publishers against AT&T Mobility LLC for the determination of reasonable license fees for the period beginning October 28, 2004, is dismissed without prejudice to (i) the Court's retention of jurisdiction to enforce (a) a settlement

agreement concerning AT&T Mobility's CV Service, Ringback Tone Service and

Previews, and certain AT&T Mobility websites, through July 31, 2010 (the "Past

Settlement Agreement"), (b) a license agreement concerning AT&T Mobility's CV

Service for the period from August 1, 2010 through December 31, 2012 (the "CV License

Agreement"), (c) a license agreement concerning AT&T Mobility's Ringback Tone

Service and AT&T Mobility's Previews from August 1, 2010 through December 31,

2012 (the "Ringback Tones and Previews License Agreement"); and (d) an agreement in

connection with certain third party services entered into by the Parties (the "Third Party

Services Agreement"); and (ii) the Court's retention of jurisdiction concerning setting

reasonable license fees for downloads or ringtones in the event that the April 2007 Court

decision concerning whether downloads constitute public performances is overturned or

remanded on appeal of that decision.

   3. The Past Settlement Agreement, CV License Agreement, Ringback Tones

and Previews License Agreement, and Third Party Services Agreement are attached

hereto as Exhibits A, B, C and D, respectively.

   4. This Stipulation and Order shall not be considered or construed to

constitute any expression of opinion by the Court with respect to the contentions of the

respective parties and shall in no way influence or affect the determination of (i) the

scope, nature or extent of any public performance license granted by any of the attached

agreements; (ii) the extent to which a license is necessary for any service provided by

AT&T Mobility LLC; or (iii) what constitutes reasonable license fees. In entering this

Stipulation and Order, the Court has not weighed the arguments and contentions of any

party as to the nature or extent of the licenses granted by any of the attached agreements

or as to what should constitute reasonable license fees for any service provided by AT&T

Mobility LLC.

     5.  Each side is to bear its own attorneys' fees and costs.

     6.  This Stipulation and Order can be executed via facsimile and in

counterpart copies.

     7.  This proceeding shall be marked CLOSED by the Clerk.

Dated: New York, New York           KILPATRICK TOWNSEND & STOCKTON
      March __, 2011              LLP

                             By: _____

                                Joseph Petersen
                           31 West 52nd Street
                           14th Floor
                           New York, New York  10019
                           212.775.8700
                           jpetersen@kilpatricktownsend.com

                           *Attorneys for AT&T Mobility LLC*

Dated: New York, New York           ROBINS, KAPLAN, MILLER & CIRESI
      March __, 2011              L.L.P.

                             By: _____

                                David Leichtman
                                Hillel I. Parness
                                Bryan J. Vogel
                           601 Lexington Avenue, Suite 3400
                           New York, New York  10022
                           212.980.7400
                           dleichtman@rkmc.com
                           hiparness@rkmc.com
                           bjvogel@rkmc.com

                           -and-

                           Richard H. Reimer
                           Christine A. Pepe
                           ASCAP
                           One Lincoln Plaza

New York, New York 10023
212.621.6200

*Attorneys for American Society of Composers,*
*Authors and Publishers*

SO ORDERED.

Dated: New York, New York
     March __, 2011

          _____

          Hon. Denise Cote
          United States District Judge

## CELLULAR VIDEO LICENSE AGREEMENT

This agreement ("Agreement") dated as of August 1, 2010 (the "Effective Date"), is entered by and between the American Society of Composers, Authors and Publishers ("ASCAP"), with a place of business at One Lincoln Plaza, New York, New York 10023, and AT&T Mobility LLC ("AT&T Mobility"), with a place of business at 1055 Lenox Park Boulevard, Atlanta, Georgia 30319. ASCAP and AT&T Mobility are sometimes referred to in this Agreement collectively as the "Parties," and individually as a "Party."

WHEREAS, AT&T Mobility previously applied to ASCAP for licenses to perform publicly the musical works in the ASCAP repertory by means of certain Internet sites and wireless services, which applications were dated October 28, 2004, November 3, 2004, September 19, 2005, and January 19, 2006;

WHEREAS, by application dated May 5, 2008, ASCAP commenced an action (the "Action") for a determination of the reasonable license fees for the period beginning October 28, 2004 for the licenses AT&T Mobility had applied for, pursuant to Section IX(A) of the Second Amended Final Judgment entered in *United States v. ASCAP*, Civ. No. 41-1395 (S.D.N.Y. June 11, 2001). The Action was subsequently assigned Civil Action No. 09 Civ. 7072;

WHEREAS, the Parties desire fully and finally to resolve amicably the Action, and, accordingly, the Parties have agreed upon final License Fees (as defined herein) for AT&T Mobility's CV Service (as defined herein) for the License Term (as defined herein); and

WHEREAS, concurrent with the execution of this Agreement, the Parties are also entering into (i) a settlement agreement for the period prior to the Effective Date of this Agreement covering AT&T Mobility's CV Service, AT&T Mobility Ringback Tone

Service; and AT&T Mobility's Previews (the "Past Settlement Agreement," capitalized terms as defined therein); (ii) a license agreement concerning AT&T Mobility's Ringback Tone Service (as defined therein) and AT&T Mobility's Previews (as defined therein) from the Effective Date through December 31, 2012 (the "Ringback Tones and Previews License Agreement"); and (iii) an agreement in connection with certain third party services (the "Third Party Services Agreement").

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      Definitions.  Capitalized terms shall have the meaning set forth below or as defined elsewhere in this Agreement.

a.      The "ASCAP Repertory" means all copyrighted musical compositions written or published by ASCAP's members or by the members of affiliated foreign performing rights societies, including without limitation compositions written or published during the term of this Agreement, and for which ASCAP at any time during the term of this Agreement has the right to license non-dramatic public performances.

b.      "AT&T Mobility's CV Service" means AT&T Mobility's "basic" and/or "premium" streaming audiovisual clip service previously referred to by AT&T Mobility as "Cellular Video" and now referred to as "Mobile Video," substantially as configured as of the Effective Date.  For the avoidance of any doubt, "AT&T Mobility's CV Service" does not encompass any other service, including but not limited to AT&T Mobility's U-Verse Mobile service.

2

c.    "AT&T Mobility Programmed" channels or content refer solely to the following:

i.    Linear Content for which AT&T Mobility (a) produces the content (*e.g.*, AT&T Mobility creates or directs others to create the content, or bears the production costs of creating the programming); or (b) includes programming from more than one Content Provider on a single channel; or (c) controls the branding of the channel (*e.g.*, AT&T Mobility selects the name of the channel, or owns or controls the rights to the name of the channel); or (d) controls the sequence of the programs displayed on the channel, without a right by the Content Provider to reject AT&T Mobility's decision.

ii.    Video-on-demand Content which AT&T Mobility creates or directs others to create, or for which AT&T Mobility bears the production costs of creating the programming.

d.    "Content Providers" are parties that have entered into license agreements with AT&T Mobility granting AT&T Mobility the rights to provide content through AT&T Mobility's CV Service.

e.    The "Download Decision" means the Opinion and Order issued by Judge Conner on or about April 25, 2007 in *United States v. ASCAP*, Civ. No. 41-1395, in connection with the license applications of America Online, Inc., RealNetworks, Inc., and Yahoo! Inc. (available at 485 F. Supp. 2d 438).

f.    The "Interim Fee Balance" shall have the meaning set forth in the Past Settlement Agreement.

g.    The "Interim Fee Decision" means the Opinion and Order issued by Judge Conner on or about April 3, 2009 in *United States v. ASCAP*, Civ. No. 41-1395,

in connection with the license application of AT&T Mobility (the public version is available at 607 F. Supp. 2d 562).

   h.  The "License Term" shall commence at 12:01 a.m. of the Effective Date and shall continue through and including December 31, 2012.

   i.  "Linear Content" means audiovisual and/or audio content presented to end-users in channel format without permitting such end users to select the order of the programming content included within such channel.

   j.  The "*MobiTV* Decision" means the Opinion and Order issued by Judge Cote on or about May 6, 2010 (the public version is available at 712 F. Supp. 2d 206), and the Judgment Order issued by Judge Cote on or about July 7, 2010, in *United States v. ASCAP,* Civ. No. 41-1395, in connection with the license application of MobiTV, Inc.

   k.  "Payments" means all payments in connection with AT&T Mobility's CV Service, whether in the form of cash payments or the fair market value of any other non-cash form of consideration, including but not limited to: license fees, affiliate fees, a share of advertising revenue or other monies actually received from sponsors (less advertising agency commissions not to exceed fifteen percent (15%) of those fees actually incurred), trade, barter, promotional consideration, trade-outs, consideration received for the provision or sale of time on AT&T Mobility's CV Service, or the fair market value of any other merchandise or anything of service or value that accrues to or is received in lieu of cash consideration.

   l.  "Rate Court" means the United States District Court for the Southern District of New York and, specifically, the United States District Court judge

4

assigned to preside over *United States v. ASCAP,* Civ. No. 41-1395 or any successor action or proceeding.

> m.    "U.S. Territory" means the United States, its commonwealths, territories and possessions including, without limitation, Puerto Rico.

> n.    "Video-on-demand Content" means interactive audiovisual and/or audio content in connection with which end users can select particular segments of content and view such segments at a time of the end user's choosing.

2.    ASCAP hereby grants, for the License Term, a non-exclusive license to perform publicly within the U.S. Territory, in and as part of AT&T Mobility's CV Service, all musical works in the ASCAP Repertory.  For the avoidance of doubt, the license granted by the foregoing sentence extends to AT&T Mobility; Content Providers that are eligible for inclusion within Paragraph 3.e for their role in the provision of content for AT&T Mobility's CV Service; and entities providing technical services in connection with the distribution of AT&T Mobility's CV Service (*e.g.,* hosting the content, transmitting the content, and/or providing payment services in connection with AT&T Mobility's CV Service) that are eligible for inclusion within Paragraph 3.e for their role in providing technical services in connection with AT&T Mobility's CV Service.

3.    The license fee for AT&T Mobility's CV Service shall be calculated as follows:

> a.    <u>Non-AT&T Mobility Programmed Content</u>: For content on AT&T Mobility's CV Service that <u>is</u> <u>not</u> AT&T Mobility Programmed ("Non-AT&T Mobility Programmed Content"):

i.      All Payments received by Content Providers (or any other party with whom a Content Provider has an economic relationship), from, or on behalf of AT&T Mobility as consideration for the licensing of content for distribution over AT&T Mobility's CV Service plus any additional Payments attributable to the sale of advertising inserted into content (*e.g.*, commercials or like promotional content) for distribution over AT&T Mobility's CV Service, multiplied by the percentage rate applicable to that content pursuant to Paragraph 4 below.  For the avoidance of doubt: (1) any Payments attributable to the sale of product placements and/or sponsorships that are within the content shall not be included for purposes of this Paragraph 3.a, unless such placements or sponsorships are made specifically for distribution to AT&T Mobility customers (alone or in combination with customers of other wireless carriers) over mobile devices (only to the extent such Payments may reasonably be allocated to distribution to AT&T Mobility customers); and (2) any Payments attributable to the sale of advertising shall only be included for purposes of this Paragraph 3.a to the extent of the incremental Payments in connection with distribution via AT&T Mobility's CV Service (for purposes of illustration, if an advertiser pays a Content Provider $1,000,000 in respect of an advertisement which appears in an over the air broadcast as well as a transmission or re-transmission via AT&T Mobility's CV Service, only that portion of such payment attributable to distribution via AT&T Mobility's CV Service shall be included for purposes of this Paragraph 3.a).  If the Parties are unable to agree on a particular allocation, either Party may bring the issue to the Rate Court for resolution.

ii.      The Payments in Paragraph 3.a. shall not include Payments to the Content Provider if: (1) the Content Provider (or any other party) has paid, or is

obligated to pay, ASCAP a fee pursuant to an ASCAP license agreement based on the Payments the Content Provider has received attributable to AT&T Mobility's CV Service; or (2) the Content Provider (or any other party) pays ASCAP on a final, flat-fee basis when distribution of content over AT&T Mobility's CV Service is included within the scope of the license between the Content Provider and ASCAP.  ASCAP represents that a complete and final list of Content Providers that are subject to the foregoing exclusion as of the Effective Date is attached hereto as **Exhibit A**.  ASCAP agrees to notify AT&T Mobility in writing in the event that there are any changes and/or additions to the list of Content Providers subject to the foregoing exclusion.

iii.      Attached hereto as **Exhibit B** is a table setting forth the agreed applicable rates for the content distributed in connection with AT&T Mobility's CV Service as of the Effective Date.

b.      AT&T Mobility Programmed Content: For content on AT&T Mobility's CV Service that is AT&T Mobility Programmed ("AT&T Mobility Programmed Content"):

i.      All Payments received by, on behalf of, or at the direction of AT&T Mobility from, or on behalf of, end users as consideration for the AT&T Mobility Programmed Content ("AT&T Mobility Programmer Revenue"), plus any additional Payments attributable to the sale of advertising inserted into the AT&T Mobility Programmed Content for distribution over AT&T Mobility's CV Service (allocated, if necessary, in accordance with Paragraph 3.c), multiplied by the percentage rate applicable to that AT&T Mobility Programmed Content pursuant to Paragraph 4 below.  For the avoidance of doubt, any Payments attributable to the sale of product

7

placements and/or sponsorships that are within the content shall not be included for purposes of this Paragraph 3.b, unless such placements or sponsorships are made specifically for distribution to AT&T Mobility customers (alone or in combination with customers of other wireless carriers) over mobile devices (only to the extent such Payments may reasonably be allocated to distribution to AT&T Mobility customers).  If the Parties are unable to agree on a particular allocation, either Party may bring the issue to the Rate Court for resolution.

       ii.      For purposes of calculating the AT&T Mobility Programmer Revenue set forth in Paragraph 3.b.i above, the revenue base upon which the license fee shall be calculated shall be the amounts that are paid to AT&T Mobility in respect of the AT&T Mobility Programmed Content and, specifically, for the instances defined below, shall be calculated as follows:

       1.      AT&T Mobility Programmed *A La Carte* Content: For each instance in which AT&T Mobility Programmed Content is not bundled with any other content or service ("AT&T Mobility Programmed *A La Carte* Content"), the total Payments received by, on behalf of, or at the direction of AT&T Mobility for the AT&T Mobility Programmed *A La Carte* Content exclusive of: (i) any applicable sales, value added and other taxes and additional regulatory charges assessed by governmental or regulatory agencies; and (ii) any separate standard data usage fees, only where such fees are not paid to AT&T Mobility in respect of the content.

       2.      AT&T Mobility Programmed Content Package: For each instance in which AT&T Mobility Programmed Content is bundled with Non-AT&T Mobility Programmed Content and, together, are sold as a package and not

bundled with any other content or service ("AT&T Mobility Programmed Content Package"), an amount equal to the total Payments received by, on behalf of, or at the direction of AT&T Mobility for the AT&T Mobility Programmed Content Package, multiplied by a fraction consisting of the minutes of AT&T Mobility Programmed Content transmitted to consumers on the AT&T Mobility Programmed Content Package divided by the total minutes of all content transmitted to consumers on such package. For the avoidance of any doubt, the revenue attributable to the AT&T Mobility Programmed Content Package shall be exclusive of: (i) any applicable sales, value added and other taxes and additional regulatory charges assessed by governmental or regulatory agencies; and (ii) any separate standard data usage fees, only where such fees are not paid to AT&T Mobility in respect of the content.

3.      AT&T Mobility Programmed Data Plan Bundle: For each instance in which AT&T Mobility Programmed Content is bundled with a data plan (*i.e.*, the data plan subscriber receives such content without any additional *a la carte* fees) ("AT&T Mobility Programmed Data Plan Bundle"), the Payments received by, on behalf of, or at the direction of AT&T Mobility for the AT&T Mobility Programmed Data Plan Bundle that are attributable to the AT&T Mobility Programmed Content, using an appropriate and reasonable allocation formula that accounts for the fair market value of the AT&T Mobility Programmed Content.

c.      For any advertising revenue received in connection with the insertion of advertisements in AT&T Mobility's CV Service but not: (1) received by Content Providers as Payments under Paragraph 3.a; or (2) constituting AT&T Mobility Programmer Revenue under Paragraph 3.b, the advertising revenue shall be allocated

9

amongst the channels on AT&T Mobility's CV Service and multiplied by the percentage rate applicable to the channel pursuant to Paragraph 4 below. Advertising revenue shall be allocated amongst the channels on AT&T Mobility's CV Service on the basis of how many times the advertisement ran on the particular channel (e.g., if an advertisement ran 10 out of 100 total times on a particular channel, then 10% of the revenue received by AT&T Mobility for that advertisement will be allocated to that channel).

    d. AT&T Mobility represents that from the Effective Date and continuing through the date of execution of this Agreement, the content distributed over AT&T Mobility's CV Service did not contain advertising inserted into the content (e.g., commercials or like promotional content) during the License Term and, as a result, there was no such advertising revenue associated with AT&T Mobility's CV Service. For the avoidance of doubt, AT&T Mobility does not make any representation as to any Payments attributable to the sale of product placements and/or sponsorships that are within the content associated with the AT&T Mobility CV Service, but not any such placements or sponsorships that are made specifically for distribution to AT&T Mobility customers or over mobile devices.

    e. For the avoidance of doubt: (i) nothing in this Agreement shall be construed to provide for the double counting of any monies for the purpose of calculating the license fees payable to ASCAP in respect of AT&T Mobility's CV Service; and (ii) if AT&T Mobility or a third party on AT&T Mobility's behalf pays license fees in connection with the performance of content supplied by a Content Provider on AT&T Mobility's CV Service in accordance with this Agreement, ASCAP shall not thereafter seek additional fees from AT&T Mobility or said Content Provider for said performances

of said content on AT&T Mobility's CV Service, and in the event AT&T Mobility pays

such fees, such Content Provider will be deemed to be included within the scope of the

release afforded "AT&T Mobility Parties" set forth in Paragraph 7.a below.

       4.       The License Rates applicable to AT&T Mobility's CV Service shall be as

follows:

       a.       For content classified as news, sports, and/or weather the license

rate shall be 0.1375%;

       b.       For content classified as general entertainment the license rate

shall be 0.375%;

       c.       For content classified as music intensive the license rate shall be

0.9%; and

       d.       For content classified as audio-only music content the license rate

shall be 2.5%.

       5.       The Parties agree that the total estimated license fees for the License Term

are $       in respect of this Agreement and $       in respect of the Ringback Tones

and Previews License Agreement (such amounts, totaling $       in the aggregate, the

"Estimated License Fees").

       a.       ASCAP will be entitled to deduct the Estimated License Fees from

the Interim Fee Balance and shall be entitled to retain such Estimated License Fees as an

"on account" balance (the "2012 On Account Amount") for the payment by AT&T

Mobility of fees pursuant to this Agreement, the Ringback Tones and Previews License

Agreement, and the Third Party Services Agreement.

b.   In the event that during the terms of this Agreement and the Ringback Tones and Previews License Agreement AT&T Mobility exhausts the 2012 On Account Amount based upon AT&T Mobility's periodic license fee reports made pursuant to this Agreement and the Ringback Tones and Previews License Agreement, AT&T Mobility will begin paying fees to ASCAP under both agreements on a going forward basis for each calendar quarter for the remainder of the term of the agreements. AT&T Mobility shall make such payments within forty-five days of the end of each such calendar quarter.  ASCAP may impose a late payment charge of 1.5% per month in the event that license fees payable under either this Agreement or the Ringback Tones and Previews License Agreement are not paid on or before the specified due date.

c.   In the event that AT&T Mobility does not exhaust the 2012 On Account Amount as set forth in Paragraph 5.b above, then in such case the Parties will work in good faith after December 31, 2012 to "true-up" the Estimated License Fees based upon the actual performance of AT&T Mobility's CV Service, AT&T Mobility's Ringback Tone Service, and any other services licensed in the manner contemplated in the Third Party Services Agreement.  In the event that the Estimated License Fees exceed the amounts AT&T Mobility would have been obligated to pay ASCAP based upon the actual performance of AT&T Mobility's CV Service, AT&T Mobility's Ringback Tone Service, and any other services licensed in the manner contemplated in the Third Party Services Agreement  (the "Actual License Fees"), then in such event ASCAP shall refund to AT&T Mobility the difference between the Estimated License Fees and the Actual License Fees.  ASCAP shall make such refund within forty-five days of ASCAP's receipt of the final license fee report due under this Agreement.  AT&T Mobility may impose a

late payment charge of 1.5% per month in the event that ASCAP does not make the refund on or before the specified due date.

6.    This Agreement shall be deemed final and non-appealable, but experimental and non-precedential in all respects, except that it shall become precedential as to AT&T Mobility only and no other party only upon the occurrence of the "MobiTV Conditions." The "MobiTV Conditions" that would satisfy the condition precedent for this Agreement to become precedential as set forth above are as follows: (i) the MobiTV Decision is reduced to a judgment that becomes final on substantially the same basis as the Opinion and Order of May 6, 2010, and is no longer subject to appeal, or (ii) the MobiTV matter is settled on substantially the same basis as the Opinion and Order of May 6, 2010. For the avoidance of doubt, the Parties agree that under no circumstance shall this Agreement be deemed by any court, party, or other entity to have any precedential effect or impact as it may pertain to an appeal of any judgment of the MobiTV Decision. In the event that the Download Decision is overturned or remanded on appeal of that decision, the Parties agree to reopen the issue of fees for downloads or ringtones to further negotiations or further proceedings before the Rate Court subsequent to any such reversal or remand in accordance with any opinion related thereto ("Download and Ringtone Reopener").

7.    a.    ASCAP hereby does and shall, for itself, its parents, subsidiaries, divisions, affiliates, predecessors, successors and members, and each of their respective officers, directors, past and present employees, consultants, agents, representatives, insurers, attorneys, shareholders and heirs (collectively, the "ASCAP Parties"), irrevocably and unconditionally release, acquit and forever discharge AT&T Mobility

13

and its parents, subsidiaries, divisions, affiliates, predecessors and successors, and each of their respective officers, directors, past and present employees, consultants, agents, representatives, insurers, attorneys, shareholders and heirs (collectively, the "AT&T Mobility Parties"), from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, known or unknown, in law or equity, which against them or any of them, whether jointly or severally, ASCAP or any of the other ASCAP Parties ever had, now has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever arising out of, related to, or regarding the public performance of music via AT&T Mobility's CV Service (except to the extent of AT&T Mobility's obligations under this Agreement, including but not limited to its obligation to pay License Fees pursuant to Paragraphs 3 and 4 above).

        b.     AT&T Mobility hereby does and shall, for itself and the other AT&T Mobility Parties irrevocably and unconditionally release, acquit and forever discharge ASCAP and the other ASCAP Parties, from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, known or unknown, in law or equity, which against them or any of them, whether jointly or severally, AT&T Mobility or any of the other AT&T Mobility Parties ever had, now has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever arising out of ASCAP's licensing

of the public performance of music via AT&T Mobility's CV Service, except to the extent of ASCAP's obligations under this Agreement.

      8.      Except as explicitly set forth herein, this Agreement licenses any and all public performances of copyrighted musical works in the ASCAP Repertory for which a license is or may be required by AT&T Mobility via AT&T Mobility's CV Service during the License Term. The Parties nonetheless reserve all their rights, positions and defenses in respect of whether particular transmissions of music via AT&T Mobility's CV Service require licensing. This Agreement supersedes AT&T Mobility's obligation to make interim license fee payments to ASCAP under the Interim Fee Decision. For the avoidance of doubt, and except as otherwise provided in Paragraphs 3.e and 7.a, this Agreement does not license or release any third parties nor does it affect ASCAP's ability to pursue any applicable license fees from any third party, or any third-party site or service.

      9.      License Fee Reports: AT&T Mobility shall provide ASCAP with quarterly statements setting forth, for AT&T Mobility's CV Service:

      a.      for Non-AT&T Mobility Programmed Content, the Payments received by Content Providers (even if any such Payments to a specific Content Provider total $0), by month, by Content Provider, in connection with AT&T Mobility's CV Service;

      b.      for AT&T Mobility Programmed *A La Carte* Content, the total Payments received by, on behalf of, or at the direction of AT&T Mobility for such content, by month;

c.     for any AT&T Mobility Programmed Content Package, the total Payments received by, on behalf of, or at the direction of AT&T Mobility for such package, the minutes of AT&T Mobility Programmed Content transmitted to consumers on such package, and the total minutes of all content transmitted to consumers on such package, all by month;

d.     for any AT&T Mobility Programmed Data Plan Bundle, the information agreed upon by the Parties in accordance with the allocation formula agreed upon by the Parties in accordance with Paragraph 3.b.ii.3 of this Agreement, all by month;

e.     Payments attributable to advertising included with AT&T Mobility's CV Service as set forth in Paragraph 3, by month, by advertiser, by content category or channel (if available);

f.     a complete listing of the content categories or channels available for transmission on AT&T Mobility's CV Service, by month;

g.     for each such content category or channel on AT&T Mobility's CV Service, the Content Provider or Content Providers of the content category or channel;

h.     for each such content category or channel on AT&T Mobility's CV Service, identification of whether the Content Provider or Content Providers included or inserted any advertising into the programming on AT&T Mobility's CV Service in connection with which AT&T Mobility does not receive any Payments. For the avoidance of doubt, the foregoing obligation does not extend to any product placements and/or sponsorships that are included within the content unless such placements or sponsorships

16

are made specifically for distribution to AT&T Mobility customers (alone or in combination with customers of other wireless carriers) over mobile devices;

i.      identification of any changes to the content categories available for transmission on AT&T Mobility's CV Service since launch; and

j.      identification of any changes to the names or branding of any of the channels available on AT&T Mobility's CV Service since launch.

10.     To the extent that any of the advertising Payment information in Paragraph 9.d above is not available by associated content category or channel, AT&T Mobility will also provide the total number of times each such advertisement was inserted into each content category or channel available on AT&T Mobility's CV Service.

11.     ASCAP acknowledges that some or all of the advertising Payment information required by Paragraph 9 above will be in the sole and exclusive possession of Content Providers.  Accordingly, ASCAP agrees that AT&T Mobility shall be afforded a reasonable amount of time to procure such information and as long as AT&T Mobility makes reasonable, good faith efforts to obtain such information it shall not be considered to be in breach of its reporting obligations set forth in Paragraph 9 above.

12.     The data contained in AT&T Mobility's License Fee Reports shall be derived from documents kept by AT&T Mobility in the ordinary course of its regularly conducted business, and, upon ASCAP's written request following delivery of each License Fee Report, such License Fee Report shall be certified by an authorized representative of AT&T Mobility.

13.     Music Use Reports: In order to permit ASCAP to make distributions to its members in respect of AT&T Mobility's CV Service, and upon ASCAP's written request,

AT&T Mobility shall provide ASCAP with the following data, in an electronic format ("Music Use Reports"): program identification and/or music use information (if AT&T Mobility has both program identification and music use information, AT&T Mobility shall provide both sets of information to ASCAP), as well as a complete listing of the channels available for transmission on AT&T Mobility's CV Service.

14.     Except as otherwise provided within this Paragraph 14, any terms and conditions of this Agreement, and any documents pertaining to this Agreement, that are not publicly filed with the Stipulation of Dismissal shall be kept confidential and shall not be disclosed by either ASCAP or AT&T Mobility, or any of their officers, employees, agents or attorneys, to any third party, except to the extent that the same may be required to be disclosed by any law, governmental order or the rules of any nationally recognized stock exchange, provided that in such case, the Party making the disclosure shall promptly inform the other Party of any such requirement and cooperate with any attempt to procure a protective order or similar treatment of confidential information.  Further, ASCAP agrees to maintain the confidentiality of any License Fee and Music Use reports delivered to it by AT&T Mobility and agrees that any such reports shall not be disclosed by ASCAP or any of its officers, employees, agents or attorneys, to any third party, except to the extent that the same may be required to be disclosed by any law, governmental order or the rules of any nationally recognized stock exchange, provided that in such case, ASCAP shall promptly inform AT&T Mobility of any such requirement and cooperate with any attempt to procure a protective order or similar treatment of such information.  Notwithstanding the foregoing provisions of this Paragraph 13, ASCAP has the right to disclose the information contained in License Fee and Music Use Reports: (i)

in disaggregated form, to its music publisher, songwriter and composer members and affiliated society members solely in conjunction with the determination of the applicable royalty payable by ASCAP to such members based on AT&T Mobility's public performance of the applicable work; (ii) in aggregated form with other ASCAP licensed services to prospective members for the purposes of estimating what royalties might be payable to such persons if they were to become ASCAP members; and (iii) to any ASCAP employees or outside consultants of ASCAP, such as ASCAP's survey and econometric consultants or outside counsel, who have a need to access music use data in order to prepare the royalty payments or reports to ASCAP members or affiliated society members as permitted herein.

15.    a.    ASCAP agrees to indemnify, save and hold harmless and defend AT&T Mobility and the other AT&T Mobility Parties from and against any and all claims, demands, suits, losses, damages, liabilities, deficiencies, judgments, assessments, fines, costs and other expenses (including reasonable attorneys' fees and costs of suit) (each, a "Claim"; collectively, "Claims") that may be made or brought against, or incurred by AT&T Mobility and the other AT&T Mobility Parties, or any of them, with respect to the performances licensed under this Agreement of any compositions in the ASCAP Repertory at any time during the License Term.

b.    AT&T Mobility agrees to give ASCAP prompt notice of any Claim of the type specified in Paragraph 15.a, above, and agrees promptly to deliver to ASCAP all papers pertaining thereto. ASCAP at its own expense shall have full charge of the defense of any such Claim, and AT&T Mobility shall reasonably cooperate, at ASCAP's expense, with ASCAP in such defense. AT&T Mobility also shall have the

right to engage counsel of its own, at its own expense, who may participate in the defense of any such Claim and with whom counsel for ASCAP shall cooperate.

16.     Each of the Parties represents and warrants that it has taken all necessary actions and has secured the consents of all persons necessary to authorize the execution of this Agreement and performance of all its obligations under this Agreement. Each Party represents that the person executing this Agreement on its behalf is duly authorized to do so and that this Agreement is and shall be during its term a binding obligation of the Party on behalf of which it is executed. Each Party represents to the other that the execution and performance of this Agreement is not barred, prohibited or impaired by any existing law, rule, regulation, court or administrative order, decree, contract or agreement to which it is now a party or by which it is bound.

17.     Promptly upon the execution of this Agreement, the Past Settlement Agreement, the Ringback Tones and Previews License Agreement and the Third Party Services Agreement, the Parties will instruct their respective counsel to arrange for the discontinuance of the Action with prejudice, subject to the Rate Court's retention of jurisdiction to enforce this Agreement, the Past Settlement Agreement, the Ringback Tones and Previews License Agreement and the Third Party Services Agreement, and to address the Download and Ringtone Reopener, the Parties to bear all of their own costs including attorneys' fees incurred in connection with the Action. To effectuate the foregoing, the Parties shall sign the Stipulation for Dismissal attached as **Exhibit C** to the Past Settlement Agreement, which AT&T Mobility shall file with the Court promptly following the complete execution of all of the foregoing Agreements. Both Parties

20

acknowledge, as this is a settlement of this Action, neither Party has any right of appeal, except as set forth in connection with the Download and Ringtone Reopener.

18.     The Parties agree that the Rate Court's jurisdiction to enforce the provisions of this Agreement shall include, but not necessarily be limited to, resolving disagreements concerning: (i) the proper rate to be applied to a particular Content Provider or type of AT&T Mobility Programmed Content; (ii) whether something constitutes a Payment (to be decided by Magistrate Judge Dolinger in his capacity as settlement judge in the ASCAP matters); (iii) whether content is Linear Content, Video-on-demand Content and/or AT&T Mobility Programmed; (iv) the content type categorization of or applicable rate for a particular Content Provider (to be decided by Magistrate Judge Dolinger in his capacity as settlement judge in the ASCAP matters); and (v) the composition of the applicable revenue base.

19.     In the event AT&T Mobility fails to pay any license fees due hereunder, or fails to submit to ASCAP any reports required hereunder, ASCAP shall give AT&T Mobility thirty (30) days' notice in writing to cure such breach or default. In the event that any such breach or default has not been cured, or cure has not commenced, within said thirty (30) days, then ASCAP may give written notice of its intent to terminate this Agreement with such termination effective upon the passage of thirty (30) days after AT&T Mobility's receipt of such notice. In the event that AT&T Mobility disputes ASCAP's position that the alleged breach constitutes a breach of this Agreement and/or justifies termination, AT&T Mobility may make an application to the Rate Court for a ruling that the alleged breach does not constitute a breach of this Agreement and/or that the alleged breach does not justify termination. If AT&T Mobility makes such an

21

application within thirty (30) days of the date ASCAP provides notice of its intent to terminate this Agreement for breach or default, then ASCAP may not terminate this Agreement during the pendency of AT&T Mobility's application. In the event that the Rate Court determines that AT&T Mobility has met its obligations under this Agreement or that the alleged breach does not justify termination, ASCAP shall have no right of termination under this Paragraph 19 with respect to the matter determined by the Court in such proceeding. In the event that the Rate Court determines that ASCAP is entitled to terminate this Agreement under this Paragraph 19, AT&T Mobility shall thereafter have thirty (30) days to cure any such default identified by the Rate Court. In the event AT&T Mobility does not cure such default within such thirty (30) day period and such default constitutes a default for which ASCAP may terminate this Agreement as set forth above, this Agreement shall terminate immediately, and ASCAP may pursue any and all other rights and remedies available to ASCAP. In the event ASCAP terminates this Agreement pursuant to the terms of this Paragraph 19, it shall return any Estimated License Fees in respect of this Agreement. ASCAP acknowledges that it shall have no right to terminate this Agreement other than as expressly set forth in this Paragraph 19. AT&T Mobility acknowledges that this Paragraph 19 is non-precedential and is only being agreed to by ASCAP because this Agreement is a partial settlement of a litigation, and because the Parties do not anticipate that AT&T Mobility will have to make additional payments to ASCAP for a significant portion of the License Term.

20.    a.    All notices, statements and other documents required to be given under this Agreement shall be duly and properly given if: (i) mailed to the other Party by registered or certified United States mail, return receipt requested; (ii) sent by generally

22

recognized same-day or overnight deliver service; (iii) sent by facsimile, with receipt acknowledged or confirmed; or (iv) sent by electronic mail with return confirmation to the sender.

        b.     All notices, statements and other documents required to be given under this Agreement shall be mailed or delivered to the Parties at the following addresses, or such other individuals or addresses as the Parties may by written notice designate:

        If to ASCAP:

> ASCAP
> One Lincoln Plaza
> New York, New York  10023
> Attention: Matthew DeFilippis, Vice President,
> New Media and Technology
> E-Mail: MDefilippis@ascap.com
> Fax: (678) 239-3580

> Copy to:

> Richard H. Reimer, Esq.
> ASCAP
> One Lincoln Plaza
> New York, New York 10023
> E-mail: RReimer@ascap.com
> Fax: (212) 787-1381

> And copy to:

> Hillel I. Parness, Esq.
> Robins, Kaplan, Miller & Ciresi L.L.P.
> 601 Lexington Avenue, Suite 3400
> New York, New York 10022
> E-mail: HIParness@rkmc.com
> Fax: (212) 980-7499

        If to AT&T Mobility:

> General Counsel
> AT&T Mobility LLC

23

1055 Lenox Park Boulevard
Atlanta, Georgia 30319

Joshua Zarrow, Esq.
AT&T Mobility LLC
1880 Century Park East
Suite 1101
Los Angeles, CA  90067
E-mail: Joshua.Zarrow@ATT.com
Fax: (310) 552-2244

Catherine Hwang, Esq.
AT&T Mobility LLC
5738 Pacific Center Blvd., 2nd Floor
San Diego, CA 92121
E-mail: ch0171@ATT.com
Fax: (858) 535-7025

Copy to:

Bobby Rosenbloum, Esq.
Greenberg Traurig, LLP
The Forum
3290 Northside Parkway
Suite 400
Atlanta, Georgia  30327
E-mail: Rosenbloumb@gtlaw.com
Fax: (678) 553-2212

And copy to:

Joseph Petersen, Esq.
Kilpatrick Townsend & Stockton LLP
31 West 52nd Street, 14th Floor
New York, New York  10019
E-mail: JPetersen@kilpatricktownsend.com
Fax: (212) 775-8815

21.     This Agreement shall inure to the benefit of and shall be binding upon the

Parties and their respective successors and assigns, but no assignment shall relieve the

Parties of their respective obligations under this Agreement as to performances

24

transmitted, acts done and obligations incurred prior to the effective date of the assignment.

22.     This Agreement may be executed in any number of counterparts and by facsimile signature, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

23.     This Agreement, together with all exhibits and schedules, which are incorporated herein by reference, constitutes the entire agreement between the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements and understandings, whether oral or written, between the Parties as to the subject matter of this Agreement, except that it does not supersede the Past Settlement Agreement, the Ringback Tones and Previews License Agreement or the Third Party Services Agreement.  This Agreement may not be amended, modified or terminated except by a written instrument signed by both of the Parties.   Neither Party has made any representations or promises to the other in connection with this Agreement or its subject matter that are not expressly set forth in this Agreement.

24.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York pertaining to contracts made and fully performed therein, without regard to choice of law rules.

25.     If any term, covenant or condition of this Agreement is held invalid, illegal or unenforceable in any respect, such provision shall be replaced by an enforceable provision that most closely meets the commercial intent of the Parties, and such holding shall not affect any other provision of this Agreement, which shall be and remain

effective as though such invalid, illegal or unenforceable provision has not been contained herein.

26.     Each of the Parties has received independent legal advice concerning both the nature of this Agreement and the Parties' May 21, 2010 Term Sheet, and their legal rights and obligations under this Agreement and the Parties' May 21, 2010 Term Sheet. The Parties have entered into this Agreement voluntarily and of their own free will and accord without any threat of force or duress of any kind. The Parties hereby agree to bear their own costs and attorneys' fees relating to this Agreement. For the avoidance of any doubt, Paragraph 7 of the Parties' May 21, 2010 Term Sheet is hereby incorporated into this Agreement.

AT&T MOBILITY LLC

By: William Markwell

Name: William Markwell

Title: Senior Contract Mgr

Date: 3-23-2011

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS

By: Christ J Cmest

Name: Chris Amenita

Title: SVP Broadcast Operations + New Media

Date: 3-9-11

26

Proprietary/Confidential Information

## **Exhibit A**

**Excluded Content Providers**

None

**Exhibit B**







## RINGBACK TONE LICENSE AGREEMENT

This agreement ("Agreement") dated as of August 1, 2010 (the "Effective Date"), is entered by and between the American Society of Composers, Authors and Publishers ("ASCAP"), with a place of business at One Lincoln Plaza, New York, New York 10023, and AT&T Mobility LLC ("AT&T Mobility"), with a place of business at 1055 Lenox Park Boulevard, Atlanta, Georgia 30319. ASCAP and AT&T Mobility are sometimes referred to in this Agreement collectively as the "Parties," and individually as a "Party."

**WHEREAS**, AT&T Mobility previously applied to ASCAP for licenses to perform publicly the musical works in the ASCAP repertory by means of certain Internet sites and wireless services, which applications were dated October 28, 2004, November 3, 2004, September 19, 2005, and January 19, 2006;

**WHEREAS**, by application dated May 5, 2008, ASCAP commenced an action (the "Action") for a determination of the reasonable license fees for the period beginning October 28, 2004 for the licenses AT&T Mobility had applied for, pursuant to Section IX(A) of the Second Amended Final Judgment entered in *United States v. ASCAP*, Civ. No. 41-1395 (S.D.N.Y. June 11, 2001). The Action was subsequently assigned Civil Action No. 09 Civ. 7072;

**WHEREAS**, the Parties desire fully and finally to resolve amicably the Action, and, accordingly, the Parties have agreed upon final License Fees (as defined herein) for the licensed services for the License Term (as defined herein); and

**WHEREAS**, concurrent with the execution of this Agreement, the Parties are also entering into (i) a settlement agreement for the period prior to the Effective Date of this Agreement covering AT&T Mobility's CV Service, AT&T Mobility's Ringback Tone Service; and AT&T Mobility's Previews (the "Past Settlement Agreement,"

capitalized terms as defined therein); (ii) a license agreement concerning AT&T Mobility's CV Service (as defined therein) from the Effective Date through December 31, 2012 (the "CV License Agreement"); and (iii) an agreement in connection with certain third party services (the "Third Party Services Agreement").

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties, intending to be legally bound, agree as follows:

1. Definitions. Capitalized terms shall have the meaning set forth below or as defined elsewhere in this Agreement.

a. The "ASCAP Repertory" means all copyrighted musical compositions written or published by ASCAP's members or by the members of affiliated foreign performing rights societies, including without limitation compositions written or published during the term of this Agreement, and for which ASCAP at any time during the term of this Agreement has the right to license non-dramatic public performances.

b. "AT&T Mobility Previews" means Previews of Ringback Tones, Ringtones and full track and video clip downloads offered by AT&T Mobility to AT&T Mobility subscribers and/or potential subscribers.

c. "AT&T Mobility's Ringback Tone Service" means Ringback Tones offered by AT&T Mobility to AT&T Mobility subscribers excluding Excluded Ringback Tones (as defined herein).

d. The "Download Decision" means the Opinion and Order issued by Judge Conner on or about April 25, 2007 in *United States v. ASCAP*, Civ. No. 41-1395,

2

in connection with the license applications of America Online, Inc., RealNetworks, Inc., and Yahoo! Inc. (available at 485 F. Supp. 2d 438).

       e.     The "Interim Fee Balance" shall have the meaning set forth in the Past Settlement Agreement.

       f.     The "Interim Fee Decision" means the Opinion and Order issued by Judge Conner on or about April 3, 2009 in *United States v. ASCAP*, Civ. No. 41-1395, in connection with the license application of AT&T Mobility (the public version is available at 607 F. Supp. 2d 562).

       g.     The "License Term" shall commence at 12:01 a.m. of the Effective Date and shall continue through and including December 31, 2012.

       h.     "Monthly Recurring Charge" means the monthly recurring charge imposed by AT&T Mobility upon Ringback Tone subscribers in connection with AT&T Mobility's provision of AT&T Mobility's Ringback Tone Service.  For the avoidance of doubt, the Monthly Recurring Charge does not include the Ringback Tone Price.

       i.     "Previews" means audio or audio-visual content performed for users in connection with the potential purchase by users of audio or audio-visual content.

       j.     "Preview Providers" are parties that have entered into license agreements with AT&T Mobility granting AT&T Mobility the rights to offer AT&T Mobility's Previews.

       k.     "Rate Court" means the United States District Court for the Southern District of New York and, specifically, the United States District Court judge assigned to preside over *United States v. ASCAP*, Civ. No. 41-1395 or any successor action or proceeding.

3

l.      "Ringback Tone" means a musical work that is sold to or otherwise acquired by a wireless customer to replace the standard "ringing" sound that callers would otherwise hear when waiting for the customer to answer the phone.

m.      "Ringback Tone Price" shall mean the retail price charged to an AT&T Mobility subscriber in connection with the purchase of an individual *a la carte* Ringback Tone or a bundle consisting only of Ringback Tones (e.g., a bundle of three Ringback Tones). For the avoidance of doubt, "Ringback Tone Price" shall not include: (i) any applicable sales, value added and other taxes and additional regulatory charges assessed by governmental or regulatory agencies; and (ii) Monthly Recurring Charges or Transport Fees. The definitions of Ringback Tone Price, Monthly Recurring Charge, and Transport Fees are not intended to be, and shall not be, applicable to any other subscription-based service.

n.      "Ringback Tone Providers" are parties that have entered into license agreements with AT&T Mobility granting AT&T Mobility the rights to distribute ringback tones comprising AT&T Mobility's Ringback Tone Service.

o.      "Ringtone" means a musical work that is sold to or otherwise acquired by a wireless customer to replace the standard "ring" on a customer's wireless phone.

p.      "Ringtones Decision" means the Opinion and Orders issued by Judge Cote on or about October 14, 2009 in *United States v. ASCAP,* Civ. No. 41-1395, in connection with the license applications of AT&T Mobility and Verizon Wireless (the order in the Verizon Wireless proceeding is available at 663 F. Supp. 2d 363).

4

q.      "Transport Fee" means the one-time additional charge imposed by AT&T Mobility upon prepaid subscribers who subscribe to AT&T Mobility's Ringback Tone Service in lieu of a Monthly Recurring Charge.  For the avoidance of doubt, the Transport Fee does not include the Ringback Tone Price.

r.      "U.S. Territory" means the United States, its commonwealths, territories and possessions including, without limitation, Puerto Rico.

2.    a.      ASCAP hereby grants, for the License Term, a non-exclusive license to perform publicly within the U.S. Territory, in and as part of AT&T Mobility's Ringback Tone Service, all musical works in the ASCAP Repertory.  For the avoidance of doubt, the license granted by the foregoing sentence extends to AT&T Mobility; Ringback Tone Providers, for their role in the provision of Ringback Tones for AT&T Mobility's Ringback Tone Service; and entities providing technical services in connection with the distribution of Ringback Tones through AT&T Mobility's Ringback Tone Service (*e.g.*, hosting the content, transmitting the content, and/or providing payment services in connection with the licensed services), for their role in providing technical services in connection with AT&T Mobility's Ringback Tone Service.

b.      ASCAP hereby grants, for the License Term, a non-exclusive license to perform publicly within the U.S. Territory, in and as part of AT&T Mobility's Previews, all musical works in the ASCAP Repertory.  For the avoidance of doubt, the license granted by the foregoing sentence extends to AT&T Mobility; Preview Providers, for their role in the provision of AT&T Mobility's Previews; and entities providing technical services in connection with the distribution of AT&T Mobility's Previews (*e.g.*,

hosting the content and/or transmitting the content), for their role in providing technical services in connection with AT&T Mobility's Previews.

       3.     The license fee for AT&T Mobility's Ringback Tone Service and AT&T Mobility Previews shall be calculated as follows:

          a.     The rate shall be 2.0% of the Ringback Tone Price for all Ringback Tones sold by AT&T Mobility, except for Ringback Tones that AT&T Mobility sources from Warner Music Group during the License Term or that are otherwise excluded pursuant to Paragraph 3.b (the "Excluded Ringback Tones"). The Parties agree that the Excluded Ringback Tones shall be excluded from the release afforded "AT&T Mobility Parties" set forth in paragraph 6.a below. The Parties also agree that there shall be no further fee payable in connection with AT&T Mobility's Previews other than the fee set forth in this Paragraph 3.a.

          b.     During the License Term, AT&T Mobility and/or its Ringback Tone Providers shall have the right to clear musical composition public performance rights in Ringback Tones directly from music publishers. In the event public performance rights are cleared in this manner, AT&T Mobility will have the right to exclude the Ringback Tone Price of any such cleared Ringback Tones from the revenue base upon which ASCAP's fee shall be based. Upon ASCAP's written request, for the calendar quarter preceding ASCAP's written request, AT&T Mobility shall provide the following information: (i) if AT&T Mobility or a Ringback Tone Provider clears musical composition public performance rights in Ringback Tones with a music publisher, record label or any other type of party, AT&T Mobility will identify the name of the party with whom it enters into such agreement; and (ii) if AT&T Mobility or a Ringback Tone

6

Provider clears musical composition public performance rights in Ringback Tones with a music publisher, record label or any other type of party, where the agreement relates to something less than the entire catalog controlled by said music publisher, record label or other type of party, AT&T Mobility will also identify all Excluded Ringback Tones licensed in that manner (by providing for each Excluded Ringback Tone the information set forth in Paragraph 10, items (i) through (iv)), if such information is available to AT&T Mobility or any party working at the direction of AT&T Mobility.

    c.  In the event the Ringback Tone Price of an individual *a la carte* Ringback Tone sold by AT&T Mobility falls below 150% of the Monthly Recurring Charge for access to the Ringback Tone product, the Ringback Tone Price for such Ringback Tone shall be deemed to be 150% of the Monthly Recurring Charge (e.g., if the Ringback Tone Price of an individual *a la carte* Ringback Tone is $1.30 and the Monthly Recurring Charge is $0.99, then the Ringback Tone Price for the Ringback Tone shall be deemed to be $1.49). The term "individual *a la carte* Ringback Tone" does not include tones sold in bundles or provided at no charge on a promotional basis. With respect to any Ringback Tone for which a license fee is paid hereunder, the license granted by ASCAP shall continue to apply for the period for which the consumer continues to have the right to use that Ringback Tone for the Ringback Tone Price that was covered hereunder.

    d.  If AT&T Mobility bundles Ringback Tones that are subject to the license fee in Paragraph 3.a ("AT&T Mobility Ringback Tones") with Excluded Ringback Tones or with other products (e.g., one Ringback Tone and one Ringtone), the following allocation formula will be used to determine the Ringback Tone Price for such

AT&T Mobility Ringback Tones: the Ringback Tone Price shall be the retail selling price of the bundle multiplied by the Bundle Allocation Factor (as defined herein). "Bundle Allocation Factor" means a percentage that is equivalent to the sum of the *a la carte* retail prices for the AT&T Mobility Ringback Tones included in the bundle divided by the sum of the *a la carte* retail prices for all items of content included in such bundle (e.g., if a bundle consisting of two AT&T Mobility Ringback Tones and three Ringtones is priced at $10 and the *a la carte* retail price for the two AT&T Mobility Ringback Tones is $3.98 and the *a la carte* retail price for the three Ringtones is $7.47, then the Ringback Tone Price for the AT&T Mobility Ringback Tones included in the bundle is $3.48). In the event AT&T Mobility has not, within the past six months offered an element of a bundle on an *a la carte* basis, then the Ringback Tone Price shall be determined by using the *a la carte* retail selling price set for such element by other sellers of such element. If the Parties are unable to construct a retail selling price for an element of a bundle that AT&T Mobility has not offered on an *a la carte* basis, as set forth in the preceding sentence, they shall negotiate in good faith to determine a Ringback Tone Price for the bundle, and failing agreement, may petition the Rate Court to request a determination of the Ringback Tone Price for the bundle.

4.      The Parties agree that the total estimated license fees for the License Term are          in respect of this Agreement and $          in respect of the CV License Agreement (such amounts, totaling $          in the aggregate, the "Estimated License Fees").

a.      ASCAP will be entitled to deduct the Estimated License Fees from the Interim Fee Balance and shall be entitled to retain such Estimated License Fees as an

"on account" balance (the "2012 On Account Amount") for the payment by AT&T Mobility of fees pursuant to this Agreement and the CV License Agreement.

    b.  In the event that during the terms of this Agreement and the CV License Agreement AT&T Mobility exhausts the 2012 On Account Amount based upon AT&T Mobility's periodic license fee reports made pursuant to this Agreement and the CV License Agreement, AT&T Mobility will begin paying fees to ASCAP under both agreements on a going forward basis for each calendar quarter for the remainder of the term of the agreements.  AT&T Mobility shall make such payments within forty-five days of the end of each such calendar quarter.  ASCAP may impose a late payment charge of 1.5% per month in the event that license fees payable under either this Agreement or the CV License Agreement are not paid on or before the specified due date.

    c.  In the event that AT&T Mobility does not exhaust the 2012 On Account Amount as set forth in Paragraph 4.b above, then in such case the Parties will work in good faith after December 31, 2012 to "true-up" the Estimated License Fees based upon the actual performance of AT&T Mobility's CV Service, AT&T Mobility's Ringback Tone Service, and any other services licensed in the manner contemplated in the Third Party Services Agreement.  In the event that the Estimated License Fees exceed the amounts AT&T Mobility would have been obligated to pay ASCAP based upon the actual performance of AT&T Mobility's CV Service and AT&T Mobility's Ringback Tone Service, and any other services licensed in the manner contemplated in the Third Party Services Agreement  (the "Actual License Fees"), then in such event ASCAP shall refund to AT&T Mobility the difference between the Estimated License Fees and the Actual License Fees.  ASCAP shall make such refund within forty-five days of ASCAP's

receipt of the final license fee report due under this Agreement.  AT&T Mobility may impose a late payment charge of 1.5% per month in the event that ASCAP does not make the refund on or before the specified due date.

      5.    This Agreement shall be deemed final and non-appealable.  In the event that the Download Decision is overturned or remanded on appeal of that decision, the Parties agree to reopen the issue of fees for downloads or Ringtones to further negotiations or further proceedings before the Rate Court subsequent to any such reversal or remand in accordance with any opinion related thereto ("Download and Ringtone Reopener").

      6.    a.    ASCAP hereby does and shall, for itself, its parents, subsidiaries, divisions, affiliates, predecessors, successors and members, and each of their respective officers, directors, past and present employees, consultants, agents, representatives, insurers, attorneys, shareholders and heirs (collectively, the "ASCAP Parties"), irrevocably and unconditionally release, acquit and forever discharge AT&T Mobility and its parents, subsidiaries, divisions, affiliates, predecessors and successors, and each of their respective officers, directors, past and present employees, consultants, agents, representatives, insurers, attorneys, shareholders and heirs (collectively, the "AT&T Mobility Parties"), from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, known or unknown, in law or equity, which against them or any of them, whether jointly or severally, ASCAP or any of the other ASCAP Parties ever had, now has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or

thing whatsoever arising out of, related to, or regarding the public performance of music via AT&T Mobility's Ringback Tone Service and AT&T Mobility's Previews during the License Term (except to the extent of AT&T Mobility's obligations under this Agreement, including but not limited to its obligation to pay License Fees pursuant to Paragraph 3 above).

        b.    AT&T Mobility hereby does and shall, for itself and the other AT&T Mobility Parties irrevocably and unconditionally release, acquit and forever discharge ASCAP and the other ASCAP Parties, from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, known or unknown, in law or equity, which against them or any of them, whether jointly or severally, AT&T Mobility or any of the other AT&T Mobility Parties ever had, now has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever arising out of ASCAP's licensing of the public performance of music via AT&T Mobility's Ringback Tone Service and AT&T Mobility's Previews during the License Term, except to the extent of ASCAP's obligations under this Agreement.

        7.    Except as explicitly set forth herein, this Agreement licenses any and all public performances of copyrighted musical works in the ASCAP Repertory for which a license is or may be required by AT&T Mobility via AT&T Mobility's Ringback Tone Service and/or AT&T Mobility's Previews during the License Term.  The Parties nonetheless reserve all their rights, positions and defenses in respect of whether particular transmissions of music via AT&T Mobility's Ringback Tone Service and AT&T

Mobility's Previews require licensing.  This Agreement supersedes AT&T Mobility's obligation to make interim license fee payments to ASCAP under the Interim Fee Decision.  For the avoidance of doubt, and except as otherwise provided in Paragraphs 2.a, 2.b, and 6.a, this Agreement does not license or release any third parties nor does it affect ASCAP's ability to pursue any applicable license fees from any third party, or any third-party site or service.

8.   License Fee Reports:

a.   AT&T Mobility shall provide ASCAP with quarterly statements setting forth for Ringback Tones:  A completed report in the form attached to this Agreement as **Exhibit A** pertaining to the License Term.   Upon ASCAP's written request, AT&T Mobility shall include within its statements a breakdown of the revenue it received in connection with Ringback Tones provided by each of its Ringback Tone Providers.

b.   AT&T Mobility represents that:

i.   the only types of Ringback Tone bundles that AT&T Mobility has offered in the past, or offers as of the Effective Date, are bundles consisting only of Ringback Tones, and bundles consisting of one Ringback Tone and one Ringtone;

ii.   the bundles consisting of one Ringback Tone and one Ringtone that AT&T Mobility has offered in the past, or offers as of the Effective Date, are not assigned a

12

discounted price, but rather AT&T Mobility's subscribers are charged the full retail price for the Ringback Tone and the full retail price for the Ringtone; and

iii.     AT&T Mobility has not offered in the past and does not offer as of the Effective Date Ringback Tone bundles that include Ringback Tones provided by different record labels.

c.     ASCAP's agreement in Paragraph 8.a to use the form of report attached as **Exhibit A** is contingent upon AT&T Mobility's representations in Paragraph 8.b. If at any point any of the AT&T Mobility's representations in Paragraph 8.a are no longer correct, or if AT&T Mobility begins offering a Ringback Tone bundle for which the form of report attached as **Exhibit A** is not appropriate, AT&T Mobility will so advise ASCAP in writing, and the parties will work together to prepare an appropriate license fee form. If the parties are unable to agree on an appropriate license fee form, either party may bring the issue to the attention of the Rate Court for resolution.

9.     The data contained in AT&T Mobility's License Fee Reports shall be derived from documents kept by AT&T Mobility in the ordinary course of its regularly conducted business, and, upon ASCAP's written request following delivery of each License Fee Report, such License Fee Report shall be certified by an authorized representative of AT&T Mobility.

13

10.     Music Use Reports: Upon ASCAP's written request, AT&T Mobility shall provide ASCAP with the following data, in an electronic format agreed upon by the Parties or ordered by the Court that is sufficient for ASCAP to make distributions to its members ("Music Use Reports").  A Music Use Report shall contain for each Ringback Tone that incorporates a musical composition: (i) the title of the musical composition contained in such Ringback Tone; (ii) the featured artist performing such musical compositions or the songwriter(s) and publisher(s) of such musical compositions; (iii) the record label that provided such work to AT&T Mobility; (iv) the ISRC code, if available to AT&T Mobility, Ericsson Inc., or any party working at the direction of AT&T Mobility or Ericsson Inc.; and (v) the number of successful purchases of each such Ringback Tone.

11.     Except as otherwise provided within this Paragraph 11, any terms and conditions of this Agreement, and any documents pertaining to this Agreement, that are not publicly filed with the Stipulation of Dismissal shall be kept confidential and shall not be disclosed by either ASCAP or AT&T Mobility, or any of their officers, employees, agents or attorneys, to any third party, except to the extent that the same may be required to be disclosed by any law, governmental order or the rules of any nationally recognized stock exchange, provided that in such case, the Party making the disclosure shall promptly inform the other Party of any such requirement and cooperate with any attempt to procure a protective order or similar treatment of confidential information.  Further, ASCAP agrees to maintain the confidentiality of any License Fee and Music Use reports delivered to it by AT&T Mobility and agrees that any such reports shall not be disclosed by ASCAP or any of its officers, employees, agents or attorneys, to any third party, except to the extent that the same may be required to be disclosed by any law,

governmental order or the rules of any nationally recognized stock exchange, provided that in such case, ASCAP shall promptly inform AT&T Mobility of any such requirement and cooperate with any attempt to procure a protective order or similar treatment of such information. Notwithstanding the foregoing provisions of this Paragraph 11, ASCAP has the right to disclose the information contained in License Fee and Music Use Reports: (i) in disaggregated form, to its music publisher, songwriter and composer members and affiliated society members solely in conjunction with the determination of the applicable royalty payable by ASCAP to such members based on AT&T Mobility's public performance of the applicable work; (ii) in aggregated form with other ASCAP licensed services to prospective members for the purposes of estimating what royalties might be payable to such persons if they were to become ASCAP members; and (iii) to any ASCAP employees or outside consultants of ASCAP, such as ASCAP's survey and econometric consultants or outside counsel, who have a need to access music use data in order to prepare the royalty payments or reports to ASCAP members or affiliated society members as permitted herein.

12.    a.    ASCAP agrees to indemnify, save and hold harmless and defend AT&T Mobility and the other AT&T Mobility Parties from and against any and all claims, demands, suits, losses, damages, liabilities, deficiencies, judgments, assessments, fines, costs and other expenses (including reasonable attorneys' fees and costs of suit) (each, a "Claim"; collectively, "Claims") that may be made or brought against, or incurred by AT&T Mobility and the other AT&T Mobility Parties, or any of them, with respect to the performances licensed under this Agreement of any compositions in the ASCAP Repertory at any time during the License Term.

15

b.    AT&T Mobility agrees to give ASCAP prompt notice of any Claim of the type specified in Paragraph 12.a, above, and agrees promptly to deliver to ASCAP all papers pertaining thereto. ASCAP at its own expense shall have full charge of the defense of any such Claim, and AT&T Mobility shall reasonably cooperate, at ASCAP's expense, with ASCAP in such defense. AT&T Mobility also shall have the right to engage counsel of its own, at its own expense, who may participate in the defense of any such Claim and with whom counsel for ASCAP shall cooperate.

13.    Each of the Parties represents and warrants that it has taken all necessary actions and has secured the consents of all persons necessary to authorize the execution of this Agreement and performance of all its obligations under this Agreement. Each Party represents that the person executing this Agreement on its behalf is duly authorized to do so and that this Agreement is and shall be during its term a binding obligation of the Party on behalf of which it is executed. Each Party represents to the other that the execution and performance of this Agreement is not barred, prohibited or impaired by any existing law, rule, regulation, court or administrative order, decree, contract or agreement to which it is now a party or by which it is bound.

14.    Promptly upon the execution of this Agreement, the Past Settlement Agreement, the CV License Agreement and the Third Party Services Agreement, the Parties will instruct their respective counsel to arrange for the discontinuance of the Action with prejudice, subject to the Rate Court's retention of jurisdiction to enforce this Agreement, the Past Settlement Agreement, the CV License Agreement and the Third Party Services Agreement and to address the Download and Ringtone Reopener, the Parties to bear all of their own costs including attorneys' fees incurred in connection with

16

the Action. To effectuate the foregoing, the Parties shall sign the Stipulation for Dismissal attached as **Exhibit C** to the Past Settlement Agreement, which AT&T Mobility shall file with the Court promptly following the complete execution of all of the foregoing Agreements. Both Parties acknowledge, as this is a settlement of this Action, neither Party has any right of appeal, except as set forth in connection with the Download and Ringtone Reopener.

15.     In the event AT&T Mobility fails to pay any license fees due hereunder, or fails to submit to ASCAP any reports required hereunder, ASCAP shall give AT&T Mobility thirty (30) days' notice in writing to cure such breach or default. In the event that any such breach or default has not been cured, or cure has not commenced, within said thirty (30) days, then ASCAP may give written notice of its intent to terminate this Agreement with such termination effective upon the passage of thirty (30) days after AT&T Mobility's receipt of such notice. In the event that AT&T Mobility disputes ASCAP's position that the alleged breach constitutes a breach of this Agreement and/or justifies termination, AT&T Mobility may make an application to the Rate Court for a ruling that the alleged breach does not constitute a breach of this Agreement and/or that the alleged breach does not justify termination. If AT&T Mobility makes such an application within thirty (30) days of the date ASCAP provides notice of its intent to terminate this Agreement for breach or default, then ASCAP may not terminate this Agreement during the pendency of AT&T Mobility's application. In the event that the Rate Court determines that AT&T Mobility has met its obligations under this Agreement or that the alleged breach does not justify termination, ASCAP shall have no right of termination under this Paragraph 15 with respect to the matter determined by the Court in

17

such proceeding.  In the event that the Rate Court determines that ASCAP is entitled to terminate this Agreement under this Paragraph 15, AT&T Mobility shall thereafter have thirty (30) days to cure any such default identified by the Rate Court.  In the event AT&T Mobility does not cure such default within such thirty (30) day period and such default constitutes a default for which ASCAP may terminate this Agreement as set forth above, this Agreement shall terminate immediately, and ASCAP may pursue any and all other rights and remedies available to ASCAP.  In the event ASCAP terminates this Agreement pursuant to the terms of this Paragraph 15, it shall return any Estimated License Fees in respect of this Agreement.  ASCAP acknowledges that it shall have no right to terminate this Agreement other than as expressly set forth in this Paragraph 15.  AT&T Mobility acknowledges that this Paragraph 15 is non-precedential and is only being agreed to by ASCAP because this Agreement is a partial settlement of a litigation, and because the Parties do not anticipate that AT&T Mobility will have to make additional payments to ASCAP for a significant portion of the License Term.

16.     a.     All notices, statements and other documents required to be given under this Agreement shall be duly and properly given if: (i) mailed to the other Party by registered or certified United States mail, return receipt requested; (ii) sent by generally recognized same-day or overnight deliver service; (iii) sent by facsimile, with receipt acknowledged or confirmed; or (iv) sent by electronic mail with return confirmation to the sender.

b.     All notices, statements and other documents required to be given under this Agreement shall be mailed or delivered to the Parties at the following

18

addresses, or such other individuals or addresses as the Parties may by written notice designate:

If to ASCAP:

ASCAP
One Lincoln Plaza
New York, New York  10023
Attention: Matthew DeFilippis, Vice President,
New Media and Technology
E-Mail: MDefilippis@ascap.com
Fax: (678) 239-3580

Copy to:

Richard H. Reimer, Esq.
ASCAP
One Lincoln Plaza
New York, New York 10023
E-mail: RReimer@ascap.com
Fax: (212) 787-1381

And copy to:

Hillel I. Parness, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
601 Lexington Avenue, Suite 3400
New York, New York 10022
E-mail: HIParness@rkmc.com
Fax: (212) 980-7499

If to AT&T Mobility:

General Counsel
AT&T Mobility LLC
1055 Lenox Park Boulevard
Atlanta, Georgia 30319

Joshua Zarrow, Esq.
AT&T Mobility LLC
1880 Century Park East
Suite 1101
Los Angeles, CA  90067
E-mail: Joshua.Zarrow@ATT.com
Fax: (310) 552-2244

19

Catherine Hwang, Esq.
AT&T Mobility LLC
5738 Pacific Center Blvd., 2nd Floor
San Diego, CA 92121
E-mail: ch0171@ATT.com
Fax: (858) 535-7025

Copy to:

Bobby Rosenbloum, Esq.
Greenberg Traurig, LLP
The Forum
3290 Northside Parkway
Suite 400
Atlanta, Georgia  30327
E-mail: Rosenbloumb@gtlaw.com
Fax: (678) 553-2212

And copy to:

Joseph Petersen, Esq.
Kilpatrick Townsend & Stockton LLP
31 West 52nd Street, 14th Floor
New York, New York  10019
E-mail: JPetersen@kilpatricktownsend.com
Fax: (212) 775-8815

17.     This Agreement shall inure to the benefit of and shall be binding upon the

Parties and their respective successors and assigns, but no assignment shall relieve the

Parties of their respective obligations under this Agreement as to performances

transmitted, acts done and obligations incurred prior to the effective date of the

assignment.

18.     This Agreement may be executed in any number of counterparts and by

facsimile signature, each of which shall be deemed to be an original, but all of which

together shall constitute one and the same instrument.

20

19.     This Agreement, together with all exhibits and schedules, which are incorporated herein by reference, constitutes the entire agreement between the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements and understandings, whether oral or written, between the Parties as to the subject matter of this Agreement, except that it does not supersede the Past Settlement Agreement, the Ringback Tones and Previews License Agreement or the Third Party Services Agreement.  This Agreement may not be amended, modified or terminated except by a written instrument signed by both of the Parties.   Neither Party has made any representations or promises to the other in connection with this Agreement or its subject matter that are not expressly set forth in this Agreement.

20.     This Agreement shall be governed by and construed in accordance with the laws of the State of New York pertaining to contracts made and fully performed therein, without regard to choice of law rules.

21.     If any term, covenant or condition of this Agreement is held invalid, illegal or unenforceable in any respect, such provision shall be replaced by an enforceable provision that most closely meets the commercial intent of the Parties, and such holding shall not affect any other provision of this Agreement, which shall be and remain effective as though such invalid, illegal or unenforceable provision has not been contained herein.

22.     Each of the Parties has received independent legal advice concerning both the nature of this Agreement and the Parties' May 21, 2010 Term Sheet, and their legal rights and obligations under this Agreement and the Parties' May 21, 2010 Term Sheet. The Parties have entered into this Agreement voluntarily and of their own free will and

Agreement Number 20110317.028.C

accord without any threat of force or duress of any kind.  The Parties hereby agree to bear their own costs and attorneys' fees relating to this Agreement.  For the avoidance of any doubt, Paragraph 7 of the Parties' May 21, 2010 Term Sheet is hereby incorporated into this Agreement.

AT&T MOBILITY LLC

By: William Markwell

Name: William Markwell

Title: Senior Contract Mgr

Date: 3-23-2011

AMERICAN SOCIETY OF COMPOSERS, AUTHORS & PUBLISHERS

By: Chris Amenita

Name: Chris Amenita

Title: SVP Broadcast Operations + New Media

Date: 3-9-11

22

## EXHIBIT A

## Ringback Tone License Fee Report Form

**Capitalized Terms used herein have the same meaning as in the Ringback Tone License Agreement between ASCAP and AT&T Mobility LLC for the period August 1, 2010-December 31, 2012 (the "Agreement").  This form is to be used ONLY in connection with Ringback Tones sold as part of AT&T Mobility's Ringback Tone Service (i) on an *a la carte* basis; (ii) in bundles with other products where the Ringback Tone Price is not discounted from the *a la carte* Ringback Tone Price; or (iii) in bundles comprised only of Ringback Tones, without any Excluded Ringback Tones.**

---

**A. REPORT PERIOD:**

| Jan. 1 – Mar. 31 | Apr. 1 – June. 30 | July. 1 – Sept. 30 | Oct. 1 – Dec. 31 | |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | _____ YEAR |

---

**B. LICENSE FEE CALCULATION:**

1. Revenue (total sum of the Ringback Tone Price for all Ringback Tones sold by AT&T Mobility, except Excluded Ringback Tones)  $ _____

2. License Rate  % _2.00_____

3. **LICENSE FEE DUE** (multiply line 1 by line 2)  $ _____

---

**C. RINGBACK TONE PROVIDERS** (list all Ringback Tone Providers for the Report Period – attach additional sheets as necessary):

| Name of Ringback Tone Provider | Revenue (from line 1) associated with each Ringback Tone Provider (if requested in writing by ASCAP in accordance with Paragraph 8.a of the Agreement) |
|---|---|
| 1. | $ |
| 2. | $ |
| 3. | $ |
| 4. | $ |
| 5. | $ |
| 6. | $ |
| 7. | $ |
| 8. | $ |
| 9. | $ |
| 10. | $ |

**D.  PREVIEW PROVIDERS** (list all Preview Providers for the Report Period – attach additional sheets as necessary):

| | |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |
| 8. | |
| 9. | |
| 10. | |

**I hereby certify on this _____ day of _____, _____, that the above is true and correct.**

On behalf of AT&T MOBILITY LLC

By:  _____
     Signature

    _____
     Print Name

    _____
     Title

## SETTLEMENT, MUTUAL RELEASE AND LICENSE AGREEMENT
## (THIRD PARTY SERVICES)

This agreement ("Agreement") dated as of August 1, 2010 (the "Effective Date"), is entered by and between the American Society of Composers, Authors and Publishers ("ASCAP"), with a place of business at One Lincoln Plaza, New York, New York 10023, and AT&T Mobility LLC ("AT&T Mobility"), with a place of business at 1055 Lenox Park Boulevard, Atlanta, Georgia 30319. ASCAP and AT&T Mobility are sometimes referred to in this Agreement collectively as the "Parties," and individually as a "Party."

**WHEREAS**, AT&T Mobility previously applied to ASCAP for licenses to perform publicly the musical works in the ASCAP repertory by means of certain Internet sites and wireless services, which applications were dated October 28, 2004, November 3, 2004, September 19, 2005, and January 19, 2006;

**WHEREAS**, by application dated May 5, 2008, ASCAP commenced an action (the "Action") for a determination of the reasonable license fees for the period beginning October 28, 2004 for the licenses AT&T Mobility had applied for, pursuant to Section IX(A) of the Second Amended Final Judgment entered in *United States v. ASCAP*, Civ. No. 41-1395 (S.D.N.Y. June 11, 2001). The Action was subsequently assigned Civil Action No. 09 Civ. 7072;

**WHEREAS**, a dispute exists between the Parties with respect to whether certain services provided by third parties are subject to the Action. Without admitting or conceding their positions, the Parties have agreed to address this disagreement by licensing on a non-precedential basis certain third-party services selected by AT&T under this Agreement; and

**WHEREAS**, concurrent with the execution of this Agreement, the Parties are also entering into (i) a license agreement concerning AT&T Mobility's CV Service (as defined therein) for the period from the Effective Date through December 31, 2012 (the "CV License Agreement"); (ii) a license agreement concerning AT&T Mobility's Ringback Tone Service (as defined therein) and AT&T Mobility's Previews (as defined therein) from the Effective Date through December 31, 2012 (the "Ringback Tones and Previews License Agreement"); and (iii) an agreement concerning AT&T Mobility's CV Service, AT&T Mobility's Ringback Tone Service, AT&T Mobility's Previews, and AT&T Mobility's Websites (as defined therein) from the inception of those services to the Effective Date (the "Past Settlement Agreement").

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      Definitions.  Capitalized terms shall have the meaning set forth below or as defined elsewhere in this Agreement.

a.      The "ASCAP Repertory" means all copyrighted musical compositions written or published by ASCAP's members or by the members of affiliated foreign performing rights societies, including without limitation compositions written or published during the term of this Agreement, and for which ASCAP at any time during the term of this Agreement has the right to license non-dramatic public performances.

b.      The "Interim Fee Balance" shall have the meaning set forth in the Past Settlement Agreement.

2

c.      The "Interim Fee Decision" means the Opinion and Order issued by Judge Conner on or about April 3, 2009 in *United States v. ASCAP,* Civ. No. 41-1395, in connection with the license application of AT&T Mobility (the public version is available at 607 F. Supp. 2d 562).

d.      The "*MobiTV* Decision" means the Opinion and Order issued by Judge Cote on or about May 6, 2010 (the public version is available at 712 F. Supp. 2d 206), and the Judgment Order issued by Judge Cote on or about July 7, 2010, in *United States v. ASCAP,* Civ. No. 41-1395, in connection with the license application of MobiTV, Inc.

e.      "Rate Court" means the United States District Court for the Southern District of New York and, specifically, the United States District Court judge assigned to preside over *United States v. ASCAP,* Civ. No. 41-1395 or any successor action or proceeding.

f.      "Third Party Service" shall mean a service or content within a service that is set forth in **Exhibit A**.

g.      "Third Party Service Provider" means a party that has entered into license agreement with AT&T Mobility granting AT&T Mobility the right to distribute a Third Party Service.

h.      "U.S. Territory" means the United States, its commonwealths, territories and possessions including, without limitation, Puerto Rico.

2.      ASCAP shall be entitled to retain the Estimated License Fees under the CV License Agreement and the Ringback Tones and Previews License Agreement as an "on account" balance for the payment by AT&T Mobility of fees for services licensed

under those Agreements (the "2012 On Account Amount").  Further, ASCAP shall be entitled to retain, on a temporary basis, the difference between the Interim Fee Balance and the 2012 On Account Amount (such difference, hereinafter, the "Remaining Interim Fee Balance").

3.      If, within six (6) months of the latest date upon which one of the Parties signs this Agreement below, ("Third Party Service Deadline"), there are any Third Party Services for which a Third Party Service Provider, or a party acting on its behalf, has not requested and paid for a through-to-the-audience license covering AT&T Mobility for the entire period that such service was offered over the AT&T Mobility network ("Unlicensed Third Party Service"), then ASCAP shall provide AT&T Mobility with a list of such services and the Parties shall calculate the fees for the period from inception of each Unlicensed Third Party Service to the Third Party Service Deadline on a basis consistent with the CV License Agreement and Ringback Tones and Previews License Agreement ("Actual License Fees"), and the payment shall be made by AT&T Mobility accordingly for that period by deducting the amount from the Remaining Interim Fee Balance.  The Parties also shall undertake a good faith estimate of the fees that will be due and payable for the Unlicensed Third Party Services for the remaining license period through December 31, 2012 ("Estimated License Fees") and such amount also shall be deducted from the Remaining Interim Fee Balance.

4.      In the event the Parties cannot agree on the Actual License Fees or the Estimated License Fees, the Parties agree that the Rate Court will set such fees on a basis consistent with the CV License Agreement and Ringback Tones and Previews License Agreement.  ASCAP agrees to refund the Remaining Interim Fee Balance on or before

4

December 31, 2011. This Agreement supersedes AT&T Mobility's obligation to make interim license fee payments to ASCAP under the Interim Fee Decision.

5.     At the time AT&T Mobility makes payment for any Unlicensed Third Party Services in accordance with Paragraphs 3 or 4 of this Agreement, ASCAP shall grant to AT&T Mobility a non-exclusive license to perform publicly all musical works in the ASCAP Repertory within the U.S. Territory in and as part of such Unlicensed Third Party Services from the inception of such services through and including December 31, 2012 and provide a corresponding release of claims to AT&T Mobility as set forth in Paragraph 11.a of this Agreement.   Until such Unlicensed Third Party Services are licensed under this Paragraph 5, the Parties agree that AT&T Mobility shall be deemed to have a pending license request with ASCAP pursuant to AFJ2 for each such Unlicensed Third Party Service from the inception of such service.

6.     To the extent that the Estimated License Fees are based on a formula using estimated usage rather than a fixed fee amount, the Parties will work in good faith after December 31, 2012 to "true-up" the Estimated License Fees based upon the actual performance of the Unlicensed Third Party Services. To facilitate this "true-up," AT&T Mobility will provide ASCAP on or before February 28, 2013 with the information reasonably necessary to calculate the license fees through December 31, 2012 based on the formula(e) agreed to by the Parties (or, to the extent necessary, set by the Rate Court) (the "True-up Information").

a.     In the event that the Estimated License Fees exceed the amounts AT&T Mobility would have been obligated to pay ASCAP based upon the actual performance of the Unlicensed Third Party Services (the "Actual License Fees"), then in

such event ASCAP shall refund to AT&T Mobility the difference between the Estimated License Fees and the Actual License Fees.  ASCAP shall make such refund on or before April 30, 2013.  AT&T Mobility may impose a late payment charge of 1% per month in the event that ASCAP does not make such refund on or before the specified due date.

        b.     In the event that the Actual License Fees exceed the Estimated License Fees, then in such event AT&T Mobility shall pay to ASCAP the difference between the Estimated License Fees and the Actual License Fees.  AT&T Mobility shall make such payment on or before April 30, 2013.  ASCAP may impose a late payment charge of 1% per month in the event that AT&T Mobility does not make such payment on or before the specified due date.

        7.     For the avoidance of doubt: (i) nothing in this Agreement shall be construed to provide for the double counting of any monies for the purpose of calculating the license fees payable to ASCAP in respect of the Third Party Services; and (ii) if AT&T Mobility or any other party pays license fees in connection with the performance of content over a Third Party Service, ASCAP shall not thereafter seek additional fees from AT&T Mobility or any other party for said performances of said content on such Third Party Service, and in the event AT&T Mobility pays such fees, the Third Party Service Provider and any entities providing technical services in connection with the distribution of the Third Party Service, including but not limited to entities that host and/or transmit content (e.g., MobiTV) and/or provide payment services in connection with the Third Party Service, will be deemed to be licensed (in addition to AT&T Mobility) under Paragraph 5 and shall be included within the scope of the release afforded "AT&T Mobility Parties" set forth in Paragraph 11.a below.

6

8.    During the License Term, AT&T Mobility intends to reasonably and in good faith submit a license request if it determines that its conduct or activities require an ASCAP license.  During the License Term, if ASCAP believes that AT&T Mobility is engaging or has engaged in conduct or activities that require an ASCAP license for which AT&T Mobility has not submitted a license request ("Unlicensed Activity"), ASCAP intends to reasonably and in good faith send AT&T Mobility written notice informing AT&T Mobility of ASCAP's position.  In such circumstances, ASCAP agrees to refrain from commencing any action in respect of an Unlicensed Activity for a period of ninety (90) days following any such written notice in order to afford the Parties an opportunity to resolve any issues and/or disagreements concerning any Unlicensed Activity.  Further, during such ninety (90) day period, AT&T Mobility agrees (to the extent applicable) to facilitate a discussion with any third parties that it believes are responsible for licensing such Unlicensed Activity.  If AT&T Mobility and ASCAP come to terms on the appropriate license fees for the Unlicensed Activity before ASCAP refunds the Remaining Interim Fee Balance, the license fees for the Unlicensed Activity shall be deducted from the Remaining Interim Fee Balance.  Nothing in this Paragraph 8 shall impose any obligation or liability upon ASCAP or AT&T Mobility beyond that imposed by the ASCAP Consent Decree.

9.    This Agreement shall be deemed final and non-appealable, but experimental and non-precedential in all respects.  For the avoidance of doubt, the Parties agree that under no circumstance shall this Agreement be deemed by any court, party, or other entity to have any precedential effect or impact as it may pertain to an appeal of any judgment of the *MobiTV* Decision, nor shall this Agreement have any precedential effect

or impact as to AT&T Mobility's act of making a payment for the Unlicensed Third Party Services, the amount of the payment, or the structure of the payment.

10.     The Parties reserve all their rights, positions and defenses in respect of whether particular transmissions of music via the Third Party Services require licensing. For the avoidance of doubt, AT&T Mobility expressly reserves all of its rights, positions and defenses as to whether the Third Party Services require a public performance license and whether the Third Party Services are subject to a Rate Court action against AT&T Mobility.

11.     At the time AT&T Mobility makes payment for any Unlicensed Third Party Services in accordance with Paragraphs 3 or 4 of this Agreement:

    a.     ASCAP hereby shall, for itself, its parents, subsidiaries, divisions, affiliates, predecessors, successors and members, and each of their respective officers, directors, past and present employees, consultants, agents, representatives, insurers, attorneys, shareholders and heirs (collectively, the "ASCAP Parties"), irrevocably and unconditionally release, acquit and forever discharge AT&T Mobility and its parents, subsidiaries, divisions, affiliates, predecessors and successors, and each of their respective officers, directors, past and present employees, consultants, agents, representatives, insurers, attorneys, shareholders and heirs (collectively, the "AT&T Mobility Parties"), from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, known or unknown, in law or equity, which against them or any of them, whether jointly or severally, ASCAP or any of the other ASCAP Parties ever had, now

8

has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever arising out of, related to, or regarding the public performance of music via the Unlicensed Third Party Services (except to the extent of AT&T Mobility's obligations under this Agreement).

    b. AT&T Mobility hereby shall, for itself and the other AT&T Mobility Parties irrevocably and unconditionally release, acquit and forever discharge ASCAP and the other ASCAP Parties, from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, known or unknown, in law or equity, which against them or any of them, whether jointly or severally, AT&T Mobility or any of the other AT&T Mobility Parties ever had, now has or hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever arising out of ASCAP's licensing of the public performance of music via the Unlicensed Third Party Services, except to the extent of ASCAP's obligations under this Agreement.

    12. Any terms and conditions of this Agreement, and any documents pertaining to this Agreement, that are not publicly filed with the Stipulation of Dismissal shall be kept confidential and shall not be disclosed by either ASCAP or AT&T Mobility, or any of their officers, employees, agents or attorneys, to any third party, except to the extent that the same may be required to be disclosed by any law, governmental order or the rules of any nationally recognized stock exchange, provided that in such case, the Party making the disclosure shall promptly inform the other Party of any such

requirement and cooperate with any attempt to procure a protective order or similar treatment of confidential information.

13.   a.   ASCAP agrees to indemnify, save and hold harmless and defend AT&T Mobility and the other AT&T Mobility Parties from and against any and all claims, demands, suits, losses, damages, liabilities, deficiencies, judgments, assessments, fines, costs and other expenses (including reasonable attorneys' fees and costs of suit) (each, a "Claim"; collectively, "Claims") that may be made or brought against, or incurred by AT&T Mobility and the other AT&T Mobility Parties, or any of them, with respect to the performances licensed under this Agreement of any compositions in the ASCAP Repertory at any time during the License Term.

b.   AT&T Mobility agrees to give ASCAP prompt notice of any Claim of the type specified in Paragraph 13.a, above, and agrees promptly to deliver to ASCAP all papers pertaining thereto.  ASCAP at its own expense shall have full charge of the defense of any such Claim, and AT&T Mobility shall reasonably cooperate, at ASCAP's expense, with ASCAP in such defense.  AT&T Mobility also shall have the right to engage counsel of its own, at its own expense, who may participate in the defense of any such Claim and with whom counsel for ASCAP shall cooperate.

14.   Each of the Parties represents and warrants that it has taken all necessary actions and has secured the consents of all persons necessary to authorize the execution of this Agreement and performance of all its obligations under this Agreement.  Each Party represents that the person executing this Agreement on its behalf is duly authorized to do so and that this Agreement is and shall be during its term a binding obligation of the Party on behalf of which it is executed.  Each Party represents to the other that the

execution and performance of this Agreement is not barred, prohibited or impaired by any existing law, rule, regulation, court or administrative order, decree, contract or agreement to which it is now a party or by which it is bound.

15.    Promptly upon the execution of this Agreement, the CV License Agreement, the Ringback Tones and Previews License Agreement and the Past Settlement Agreement, the Parties will instruct their respective counsel to arrange for the discontinuance of the Action with prejudice, subject to the Rate Court's retention of jurisdiction to enforce this Agreement, the CV License Agreement, the Ringback Tones and Previews License Agreement, and the Past Settlement Agreement and to address the Download and Ringtone Reopener (as defined in the CV License Agreement), the Parties to bear all of their own costs including attorneys' fees incurred in connection with the Action.

16.    a.    All notices, statements and other documents required to be given under this Agreement shall be duly and properly given if: (i) mailed to the other Party by registered or certified United States mail, return receipt requested; (ii) sent by generally recognized same-day or overnight deliver service; (iii) sent by facsimile, with receipt acknowledged or confirmed; or (iv) sent by electronic mail with return confirmation to the sender.

b.    All notices, statements and other documents required to be given under this Agreement shall be mailed or delivered to the Parties at the following addresses, or such other individuals or addresses as the Parties may by written notice designate:

If to ASCAP:

11

ASCAP
One Lincoln Plaza
New York, New York  10023
Attention: Matthew DeFilippis, Vice President,
New Media and Technology
E-Mail: MDefilippis@ascap.com
Fax: (678) 239-3580

Copy to:

Richard H. Reimer, Esq.
ASCAP
One Lincoln Plaza
New York, New York 10023
E-mail: RReimer@ascap.com
Fax: (212) 787-1381

And copy to:

Hillel I. Parness, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
601 Lexington Avenue, Suite 3400
New York, New York 10022
E-mail: HIParness@rkmc.com
Fax: (212) 980-7499

If to AT&T Mobility:

General Counsel
AT&T Mobility LLC
1055 Lenox Park Boulevard
Atlanta, Georgia 30319

Joshua Zarrow, Esq.
AT&T Mobility LLC
1880 Century Park East
Suite 1101
Los Angeles, CA  90067
E-mail: Joshua.Zarrow@ATT.com
Fax: (310) 552-2244

Catherine Hwang, Esq.
AT&T Mobility LLC
5738 Pacific Center Blvd., 2nd Floor
San Diego, CA 92121
E-mail: ch0171@ATT.com

12

Fax: (858) 535-7025

Copy to:

Bobby Rosenbloum, Esq.
Greenberg Traurig, LLP
The Forum
3290 Northside Parkway
Suite 400
Atlanta, Georgia  30327
E-mail: Rosenbloumb@gtlaw.com
Fax: (678) 553-2212

And copy to:

Joseph Petersen, Esq.
Kilpatrick Townsend & Stockton LLP
31 West 52nd Street, 14th Floor
New York, New York  10019
E-mail: JPetersen@kilpatricktownsend.com
Fax: (212) 775-8815

17.     This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns, but no assignment shall relieve the Parties of their respective obligations under this Agreement as to performances transmitted, acts done and obligations incurred prior to the effective date of the assignment.

18.     This Agreement may be executed in any number of counterparts and by facsimile signature, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

19.     This Agreement, together with all exhibits and schedules, which are incorporated herein by reference, constitutes the entire agreement between the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements and understandings, whether oral or written, between the Parties as to the subject matter

13

of this Agreement, except that it does not supersede the CV License Agreement or the Ringback Tones and Previews License Agreement or the Past Settlement Agreement. This Agreement may not be amended, modified or terminated except by a written instrument signed by both of the Parties. Neither Party has made any representations or promises to the other in connection with this Agreement or its subject matter that are not expressly set forth in this Agreement.

20.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York pertaining to contracts made and fully performed therein, without regard to choice of law rules.

21.    If any term, covenant or condition of this Agreement is held invalid, illegal or unenforceable in any respect, such provision shall be replaced by an enforceable provision that most closely meets the commercial intent of the Parties, and such holding shall not affect any other provision of this Agreement, which shall be and remain effective as though such invalid, illegal or unenforceable provision has not been contained herein.

22.    Each of the Parties has received independent legal advice concerning both the nature of this Agreement and the Parties' May 21, 2010 Term Sheet, and their legal rights and obligations under this Agreement and the Parties' May 21, 2010 Term Sheet. The Parties have entered into this Agreement voluntarily and of their own free will and accord without any threat of force or duress of any kind.  The Parties hereby agree to bear their own costs and attorneys' fees relating to this Agreement.  For the avoidance of any doubt, Paragraph 7 of the Parties' May 21, 2010 Term Sheet is hereby incorporated into this Agreement.

AT&T MOBILITY LLC

By: William Markwell
Name: William Markwell
Title: Senior Contract Mgr
Date: 3-23-2011

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS & PUBLISHERS

By: _____
Name: _____
Title: _____
Date: _____

Proprietary/Confidential Information

22.    Each of the Parties has received independent legal advice concerning both the nature of this Agreement and the Parties' May 21, 2010 Term Sheet, and their legal rights and obligations under this Agreement and the Parties' May 21, 2010 Term Sheet. The Parties have entered into this Agreement voluntarily and of their own free will and accord without any threat of force or duress of any kind.  The Parties hereby agree to bear their own costs and attorneys' fees relating to this Agreement.  For the avoidance of any doubt, Paragraph 7 of the Parties' May 21, 2010 Term Sheet is hereby incorporated into this Agreement.

AT&T MOBILITY LLC

By:_____

Name:_____

Title:_____

Date:_____

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS & PUBLISHERS

By: _Christof J Cment_

Name: _Chris Amanita_

Title: _SUP Broadcast Operations + New Media_

Date: _3-9-11_

15

**Exhibit A**

