UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of Post-Newsweek Stations, et al.<br><br>(LOUISVILLE TV LICENSES, LLC AND LOUISVILLE TV GROUP, LLC) | 09 CV 7959 (DLC)(MHD) |
| Related to<br><br>UNITED STATES OF AMERICA,<br>                                          Plaintiff,<br><br>                    v.<br><br>AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS,<br>                                          Defendant. | 41 CV 1395 (DLC)(MHD) |

**MEMORANDUM IN SUPPORT OF ASCAP'S MOTION
TO ENFORCE THE COURT'S NOVEMBER 17, 2004 ORDER AGAINST
<u>LOUISVILLE TV LICENSES, LLC AND LOUISVILLE TV GROUP, LLC</u>**

Jay Cohen, Esq.
Lynn B. Bayard, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064

and

Richard H. Reimer, Esq.
Christine A. Pepe, Esq.
ASCAP
One Lincoln Plaza
New York, New York 10024

*Attorneys for the American Society of Composers, Authors and Publishers*

The American Society of Composers, Authors and Publishers ("ASCAP") respectfully submits this Memorandum in support of its Motion to Enforce the Court's November 17, 2004 Order against Louisville TV Licenses, LLC and Louisville TV Group, LLC. Upon the accompanying Affidavit of Ray Schwind and the exhibits attached thereto and for the reasons set forth below, ASCAP seeks entry of judgment against Louisville TV Licenses, LLC and Louisville TV Group, LLC, jointly and severally, in the amount of $74,740.26.

## ARGUMENT

As the Court will recall, the proceeding under the ASCAP Consent Decree involving commercial television stations, *United States v. ASCAP; In the Matter of the Application of Post-Newsweek Stations, Inc., et al.*, concluded in a settlement negotiated between ASCAP and the Television Music License Committee ("TMLC"), on behalf of the television stations that the TMLC represented. (*See* Affidavit of Ray Schwind ("Schwind Aff."), dated April 3, 2012, ¶ 2; Exhibit 1 attached to Schwind Aff., a true and correct copy of this Court's November 17, 2004 Order).[1] On November 17, 2004, this Court issued its Order approving the ASCAP Local Station Blanket Television License and the ASCAP Local Station Per Program Television License, covering the period April 1, 1998 through December 31, 2009 and ordering that, for each "local television station owner that has agreed to be bound by the outcome of this proceeding or negotiations on behalf of Applicants by the Television Music License Committee" (a "Bound Station"),

---

[1]   The exhibits relied upon and cited in this Memorandum are submitted as exhibits to the accompanying Affidavit of Ray Schwind and are referred to herein as "Ex. ___."

the license fee would be determined in accordance with the provisions of the TMLC's license fee allocation formula. (Schwind Aff. ¶3; Ex. 1 at ¶2-3).

The 2004 Order also required that ASCAP mail the new ASCAP licenses to each "Bound Station" and provided that "if any 'Bound Station' fails to return either of such agreements to ASCAP, said Applicant shall be deemed to have elected to be licensed under the form of License it operated under as of the date of this Order." (*See* Schwind Aff. ¶4; Exhibit 1, ¶2).

Under Paragraph 4 of the 2004 Order, the Court retained jurisdiction for the purpose of "entering money judgments, on ASCAP's application, against designated Applicants on account of license fees due and owing under the terms of the Licenses." (Schwind Aff. ¶5; Ex. 1 at ¶4). Paragraph 5 of the 2004 Order also provided that the Court would retain continuing jurisdiction "for the purpose of enforcing this Order and the terms, conditions and obligations of the Licenses." (Schwind Aff. ¶5, Ex. 1 at ¶5).[2]

According to publicly available F.C.C. information, Louisville TV Licenses, LLC is the F.C.C. licensee of television station WBKI-TV, located in Campbellsville, Kentucky; and Louisville TV Group, LLC holds 100% voting and equity rights in Louisville TV Licenses, LLC. (*See* Schwind Aff. ¶6; *see also,* Ex. 3, a true and correct copy of the ownership report filed with the F.C.C. for WBKI-TV). Louisville TV Licenses, LLC and Louisville TV Group, LLC are at times collectively referred to as "Louisville TV."

---

[2] On October 27, 2005, upon the TMLC's showing of good cause, the Court issued an Order revising the allocation formula governing the industry-wide license fees to be paid to ASCAP pursuant to the ASCAP Local Station Blanket Television License and the ASCAP Local Station Per Program Television Licenses. (*See* Schwind Aff. ¶5, n. 1; *see also* Ex. 2, a true and correct copy of the Court's Order revising the allocation formula).

3

Following long-standing practices, when Louisville TV Group LLC purchased WBKI-TV in 2009, ASCAP offered the station the ASCAP Local Station Blanket and Per Program Television Licenses for the license term ending December 31, 2009. (*See* Schwind Aff. ¶7; *see also* Ex. 4, a true and correct copy of ASCAP's letter to Louisville TV Group, LLC, dated October 1, 2009, without enclosures, with which the licenses were enclosed). Although Louisville TV never returned a signed license agreement to ASCAP, in November 2010, the station made a payment to ASCAP in the amount of $3,070.13, which was applied to WBKI-TV's September 2009 monthly license fee and accrued late payment charges.[3] (Schwind Aff. ¶8).

The ASCAP television station licenses approved by this Court in 2004 were due to expire by their own terms on December 31, 2009. (*See* Schwind Aff. ¶9). Accordingly, for periods beginning January 1, 2010, ASCAP and the TMLC agreed that the television stations represented by the TMLC—including WBKI-TV—would continue to pay license fees for this interim license period in accordance with the terms and conditions of the expiring ASCAP licenses, subject to retroactive adjustment as determined by agreement of ASCAP and the TMLC, or by the Court in a proceeding under ASCAP's consent decree. (Schwind Aff. ¶9; *see also* Ex. 5, true and correct copies of the December 15, 2009, December 14, 2010 and December 28, 2011 interim license letter agreements between ASCAP and the TMLC, showing WBKI-TV as a station

---

[3]  The ASCAP Blanket License authorizes ASCAP to impose a late payment charge of 1% per month from the date a payment was due. (*See* Schwind Aff.¶8, n.2; Ex. 1, at Ex. 1, Para. 5.C.).

4

represented by the TMLC).[4]  Thus, WBKI-TV has been licensed by ASCAP on a *de facto* basis since Louisville TV took over the station in 2009.

As indicated above, almost immediately upon purchasing WBKI-TV in 2009, Louisville TV fell behind in their payment obligations under the station's ASCAP Blanket License. (*See* Schwind Aff. ¶10). On numerous occasions, ASCAP unsuccessfully attempted to persuade Louisville TV to pay the TMLC-allocated license fees on a timely basis in accordance with WBKI-TV's ASCAP Blanket License (*Id.*; *see also* Ex. 6, true and correct copies of letters and memoranda demonstrating ASCAP's unsuccessful collection efforts).

Attached as Exhibit 7 to the Schwind Affidavit is ASCAP's detailed account statement for WBKI-TV, as well as a chart summarizing the station's account status for periods beginning with Louisville TV Group, LLC's purchase of WBKI-TV.  As shown in Exhibit 7, under the TMLC's fee allocation formula, the total license fees owed to ASCAP and posted to WBKI-TV's account through March 31, 2012 are $76,899.00. (*See* Schwind Aff. ¶11; *see also* Ex. 7, ASCAP's detailed account statement and a chart summarizing WBKI-TV's account status).  In addition, Louisville TV owes ASCAP $4,054.39 in late payment charges and $151.00 for the TMLC allocation adjustment.

---

[4]  In addition, Louisville TV has received two TMLC allocation adjustment credits for the years 2009 through 2010—the station would not have been entitled to such credits unless Louisville TV had paid their administrative "contribution" to the TMLC for those years. (Schwind Aff. ¶9, n.3).  The fact that Louisville TV paid the TMLC their administrative contribution is further evidence that Louisville TV has authorized the TMLC to represent them with regard to WBKI-TV. (*Id.*).

(*Id.*).[5]  A total of $6,364.13 has been paid to ASCAP for WKBI-TV, resulting in a total amount due and owing to ASCAP through March 31, 2012, of $74,740.26—the amount for which ASCAP is seeking judgment. (*Id.*)

Finally, on or about March 23, 2012, ASCAP first became aware that Valley Bank was foreclosing on its loan to Louisville TV through a forced auction scheduled for April 6, 2012. (*See* Schwind Aff. ¶12; *see also* Ex. 8, a true and correct copy of a March 23, 2012 facsimile to which was attached notice of a scheduled public sale of the assets of WBKI-TV). All the more reason that this Court should award ASCAP the relief it seeks.

## CONCLUSION

For the reasons set forth above and in the accompanying Affidavit of Ray Schwind, ASCAP requests that this Court enter judgment against Louisville TV Licenses, LLC and Louisville TV Group, LLC, jointly and severally, in the amount of $74,740.26, together with post-judgment interest calculated at the rate of 9% (simple annual interest) pursuant to N.Y. C.P.L.R. §5004.

---

[5]  As noted above, for the years 2009 and 2010, Louisville TV has received annual TMLC credits, respectively in the amounts of $241.00 and $239.00. In 2011, however, a TMLC allocation adjustment fee in the amount of $631.00 was imposed. (Schwind Aff. ¶11, n.4; Ex. 7). The TMLC Allocation Adjustment set forth on the summary chart attached as Exhibit 7 reflects the net TMLC adjustment amount for these three transactions, resulting in an overall debit to the account in the amount of $151.00. (*Id.*).

Dated: New York, New York  PAUL, WEISS, RIFKIND, WHARTON &
April 3, 2012                GARRISON LLP


By   /s/ Lynn B. Bayard

Jay Cohen
Lynn B. Bayard
1285 Avenue of the Americas
New York, New York 10019-6064
Phone: (212) 373-3054
Fax: (212) 492-0054
Email: jaycohen@paulweiss.com;
lbayard@paulweiss.com

Richard H. Reimer
Christine A. Pepe
One Lincoln Plaza
New York, New York 10023
Phone: (212) 621-6200
Fax: (212) 787-1381
Email: rreimer@ascap.com; cpepe@ascap.com


*Attorneys for the American Society of Composers, Authors and Publishers*