UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of Post-Newsweek Stations, et al.<br><br>(LOUISVILLE TV LICENSES, LLC AND LOUISVILLE TV GROUP, LLC) | 09 CV 7959 (DLC)(MHD) |
| Related to<br><br>UNITED STATES OF AMERICA,<br>                                    Plaintiff,<br><br>                    v.<br><br>AMERICAN SOCIETY OF COMPOSERS,<br>AUTHORS AND PUBLISHERS,<br>                                    Defendant. | 41 CV 1395 (DLC)(MHD) |

**AFFIDAVIT OF RAY SCHWIND IN SUPPORT OF ASCAP'S MOTION
TO ENFORCE THE COURT'S NOVEMBER 17, 2004 ORDER AGAINST
<u>LOUISVILLE TV LICENSES, LLC AND LOUISVILLE TV GROUP, LLC</u>**

State of New York      )
                                           ss:
County of New York  )

Ray Schwind, being duly sworn, deposes and says:

1.      I am Vice President and Director of Broadcast Licensing of the

American Society of Composers, Authors and Publishers ("ASCAP").  I submit this

affidavit in support of ASCAP's Motion to Enforce the Court's November 17, 2004

Order against Louisville TV Licenses, LLC and Louisville TV Group, LLC.

2.      The proceeding under the ASCAP Consent Decree involving

commercial television stations, *United States v. ASCAP; In the Matter of the Application*

*of Post-Newsweek Stations, Inc., et al.*, concluded in a settlement negotiated between

ASCAP and the Television Music License Committee ("TMLC"), on behalf of the television stations that the TMLC represented.

3.      On November 17, 2004, this Court issued its Order approving the ASCAP Local Station Blanket Television License and the ASCAP Local Station Per Program Television License, covering the period April 1, 1998 through December 31, 2009 and ordering that, for each "local television station owner that has agreed to be bound by the outcome of this proceeding or negotiations on behalf of Applicants by the Television Music License Committee" (a "Bound Station"), the license fee would be determined in accordance with the provisions of the TMLC's license fee allocation formula.  Attached as Exhibit 1 is a true and correct copy of this Court's 2004 Order. (*See* Ex. 1 at ¶¶2-3).

4.      The 2004 Order also required that ASCAP mail the new ASCAP licenses to each "Bound Station" and provided that "if any 'Bound Station' fails to return either of such agreements to ASCAP, said Applicant shall be deemed to have elected to be licensed under the form of License it operated under as of the date of this Order." (*See* Exhibit 1, ¶2).

5.      Under Paragraph 4 of the 2004 Order, the Court retained jurisdiction for the purpose of "entering money judgments, on ASCAP's application, against designated Applicants on account of license fees due and owing under the terms of the Licenses." (*See* Ex. 1 at ¶4).  Paragraph 5 of the 2004 Order also provided that the

Court would retain continuing jurisdiction "for the purpose of enforcing this Order and the terms, conditions and obligations of the Licenses." (Ex. 1 at ¶5).[1]

6.      According to publicly available F.C.C. information, Louisville TV Licenses, LLC is the F.C.C. licensee of television station WBKI-TV, located in Campbellsville, Kentucky; and Louisville TV Group, LLC holds 100% of the voting and equity rights in Louisville TV Licenses, LLC.  A true and correct copy of the ownership report filed with the F.C.C. for WBKI-TV is attached as Exhibit 3.  Louisville TV Licenses, LLC and Louisville TV Group, LLC are at times collectively referred to as "Louisville TV."

7.      Following long-standing practices, when Louisville TV Group, LLC purchased WBKI-TV in 2009, ASCAP offered the station the ASCAP Local Station Blanket and Per Program Television Licenses for the license term ending December 31, 2009.  Attached as Exhibit 4, is a true and correct copy of ASCAP's letter to Louisville TV Group, LLC dated October 1, 2009, without enclosures, with which the licenses were enclosed.

8.      Although Louisville TV never returned a signed license agreement to ASCAP, in November 2010, the station made a payment to ASCAP in the amount of

---

[1]     On October 27, 2005, upon the TMLC's showing of good cause, the Court issued an Order revising the allocation formula governing the industry-wide license fees to be paid to ASCAP pursuant to the ASCAP Local Station Blanket Television License and the ASCAP Local Station Per Program Television Licenses.  Attached as Exhibit 2 is a true and correct copy of the Court's Order revising the allocation formula.  (*See* Ex. 2, at n. 1).

$3,070.13, which was applied to WBKI-TV's September 2009 monthly license fee and accrued late payment charges.[2]

9.    The ASCAP television station licenses approved by this Court in 2004 were due to expire by their own terms on December 31, 2009.  Accordingly, for periods beginning January 1, 2010, ASCAP and the TMLC agreed that the television stations represented by the TMLC—including WBKI-TV—would continue to pay license fees for this interim license period in accordance with the terms and conditions of the expiring ASCAP licenses, subject to retroactive adjustment as determined by agreement of ASCAP and the TMLC, or by the Court in a proceeding under ASCAP's consent decree.  Attached as Exhibit 5 are true and correct copies of the December 15, 2009, December 14, 2010 and December 28, 2011 interim license letter agreements between ASCAP and the TMLC, listing WBKI-TV as a station represented by the TMLC.[3]

10.    As indicated above, almost immediately upon purchasing WBKI-TV in 2009, Louisville TV fell behind in their payment obligations under the station's ASCAP Blanket License.  On numerous occasions, ASCAP unsuccessfully attempted to persuade Louisville TV to pay the TMLC-allocated license fees on a timely basis in accordance with WBKI-TV's ASCAP Blanket License   Attached as Exhibit 6 are true

---

[2]    The ASCAP Blanket License authorizes ASCAP to impose a late payment charge of 1% per month from the date a payment was due. (*See* Ex. 1, at Ex. 1, Para. 5.C.).

[3]    In addition, Louisville TV has received two TMLC allocation adjustment credits for the years 2009 through 2010—the station would not have been entitled to such credits unless Louisville TV had paid their administrative "contribution" to the TMLC for those years. The fact that Louisville TV paid the TMLC their administrative contribution is further evidence that Louisville TV has authorized the TMLC to represent them with regard to WBKI-TV.

and correct copies of letters and memoranda demonstrating ASCAP's unsuccessful collection efforts.

11.     Attached as Exhibit 7 is ASCAP's detailed account statement for WBKI-TV, as well as a chart summarizing the station's account status for periods beginning with Louisville TV Group, LLC's purchase of WBKI-TV.  As shown in Exhibit 7, under the TMLC's fee allocation formula, the total license fees owed under the ASCAP Blanket License and posted to WBKI-TV's account through March 31, 2012 are $76,899.00.  In addition, Louisville TV owes ASCAP $4,054.39 in late payment charges and $151.00 for the TMLC allocation adjustment.[4]  A total of $6,364.13 has been paid to ASCAP for WKBI-TV, resulting in a total amount due and owing to ASCAP through March 31, 2012 of $74,740.26.

12.     Finally, attached as Exhibit 8 is a true and correct copy of a facsimile that I received on or about March 23, 2012, to which was attached notice of a scheduled public sale of the assets of WBKI-TV.  This was the first I had heard that Valley Bank was foreclosing on its loan to Louisville TV, through a forced auction on April 6, 2012.  (*See* Ex. 8).

---

[4]     As noted above, for the years 2009 and 2010, Louisville TV has received annual TMLC credits, respectively in the amounts of $241.00 and $239.00. (Ex. 7). In 2011, however, a TMLC allocation adjustment fee in the amount of $631.00 was imposed. (*Id.*). The TMLC Allocation Adjustment set forth on the summary chart attached as Exhibit 7 reflects the net TMLC adjustment amount for these three transactions, resulting in an overall debit to the account in the amount of $151.00.

Executed this 3rd day of April, 2012 in New York, New York.

_____
RAY SCHWIND

Sworn to before me this
3 RD day of April 2012

Notary Public
        SUSAN HAUGH
    Notary Public, State of New York
        No. 01HA4722612
      Qualified in Queens County
    Certificate Filed in New York County
Commission Expires 9/30/2014