# ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED _8/9/12_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF DUHAMEL BROADCASTING ENTERPRISES, et al. | No. 11 CV 9311 (DLC) (MHD) |
| | ~~[PROPOSED]~~ |
| | **FINAL ORDER** |
| Related to | |
| UNITED STATES OF AMERICA, | No. 41 CV 1395 (DLC) (MHD) |
| Plaintiff, | |
| v. | |
| AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, | |
| Defendant. | |

Applicants Duhamel Broadcasting Enterprises, et al. ("Applicants")

having applied to the Court for the determination of reasonable license fees pursuant to

Section IX of the Second Amended Final Judgment herein, and the Applicants and the

American Society of Composers, Authors and Publishers ("ASCAP") having negotiated

and agreed upon forms of license agreements, and Applicants and ASCAP having agreed

that such forms of license agreements may be entered into lawfully by each party to this

proceeding, and Applicants and ASCAP having consented to the entry of this order to

carry out and consummate the agreements they have reached, and notice of the settlement

of this order having been given to the United States of America, and Applicants and

ASCAP having agreed that such application shall cover the period January 1, 2010 –

December 31, 2016 (the "License Period");

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.      The form of Local Station Blanket Television License (and annexed exhibits), appended hereto as Exhibit 1, and the form of Local Station Per Program Television License (and annexed exhibits), appended hereto as Exhibit 2, are the forms of such licenses agreed to by the parties (the "Licenses").

2.      ASCAP shall provide the Licenses to each Applicant or other local television station owner that has agreed to be bound by the outcome of this proceeding or negotiation on behalf of Applicants by the Television Music License Committee (the "TMLC") (collectively, "Bound Stations"), together with a copy of this order, so that the forms shall be received by the Bound Stations no later than August 31, 2012. Each Bound Station shall sign and return either of the Licenses to ASCAP at its office at One Lincoln Plaza, New York, New York 10023, within 60 days of receipt of said forms by such Bound Station. If any Bound Station fails to return either of such agreements to ASCAP, said Bound Station shall be deemed to have elected to be licensed under the form of ASCAP license it operated under as of the date of this Order. Attached hereto as Exhibit 3 is a list of the Bound Stations. ASCAP and Applicants may, by agreement, amend or supplement the list attached as Exhibit 3.

3.      Each Bound Station's license fee shall be determined in accordance with the provisions of the license fee allocation formula developed by the TMLC, attached as Exhibit B to the Licenses. The license fee allocation formula allocates industry-wide license fees to be paid to ASCAP pursuant to the Local Station Blanket Television License in a reasonably equitable manner among the Bound Stations, and each Bound Station is directed to pay such fees pursuant to the allocation formula.

4.      Jurisdiction of this proceeding is retained for the purpose of:

2

      a.      Entering money judgments, on ASCAP's application, against designated Bound Stations on account of interim license fees due and owing under the interim licenses heretofore in effect in this proceeding; and

      b.      Entering money judgments, on ASCAP's application, against designated Bound Stations on account of license fees due and owing under the terms of the Licenses.

      The Bound Stations shall have the right to oppose any application by ASCAP in whole or in part.

      5.      The Court retains continuing jurisdiction over this proceeding for the purpose of enforcing this Order and the terms, conditions and obligations of the Licenses.

SO ORDERED.

Dated: _August 9, 2012_
      New York, New York

_____
Hon. Denise L. Cote
United States District Judge

3

**EXHIBIT 1**

## LOCAL STATION BLANKET TELEVISION LICENSE

AGREEMENT made between AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS ("SOCIETY") and _____ ("LICENSEE") as follows:

1. **Term and Scope of License**

A.       SOCIETY grants to LICENSEE and LICENSEE accepts for a period commencing as of January 1 , 2010 and ending December 31, 2016, a Through-to-the-Audience License to perform publicly all musical works heretofore copyrighted, composed or written by the members of SOCIETY and now or hereafter during the term hereof in the repertory of SOCIETY, or hereafter during the term hereof copyrighted, composed or written by such members of SOCIETY, or of which SOCIETY shall have the right to license such performing rights:

(1)       by Television Broadcasting in the United States, and its territories, commonwealth and possessions, as part of LICENSEE's Non-Network Television Programs and Non-Network Announcements from television station _____ ("STATION"), Main Channel _____, located at _____, ____, with FCC Facility ID _____; and including any associated digital multicast channel(s).

(2)       by streaming on STATION Websites.

(3)       by transmitting or causing to be transmitted, directly or indirectly, STATION-supplied programming via mobile, wireless, and any other digital platforms, regardless of the device through which viewers access the performances.

B.       In the event that STATION airs Locally-Produced Television Programs, and such Programs also appear on one or more additional stations (which Programs for purposes of this Agreement would not be considered Locally-Produced Television Programs for the additional station(s)), only the STATION may retransmit music in SOCIETY's repertory contained in such Programs in the manner described in Subparagraphs 1.A.(2) above, while the additional station(s) may not.

C.       The license granted herein does not cover transmissions on a STATION Web Site of music in SOCIETY's repertory where members of the public are charged a fee by STATION for the right to access such transmissions.  Such transmissions shall be subject to appropriate separate licensing.  Notwithstanding the foregoing, the fact that STATION may charge members of the public for access to discrete areas of a STATION Web Site other than those areas containing performances licensed hereunder shall not limit the scope of coverage of this license.

D.       (1) This license does not extend to or include the public performance by Television Broadcasting or otherwise of any rendition or performance of (a) any opera, operetta, musical comedy, play or like production, as such, in whole or in part, or (b) any composition from any opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion

picture form) in a manner which recreates the performance of such composition with substantially such distinctive scenery or costume as was used in the presentation of such opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form); provided, however, that the rights granted to LICENSEE under this Agreement shall be deemed to include a grant of the right to make non-dramatic performances of compositions licensed hereunder by Television Broadcasting or otherwise of a motion picture containing such compositions if the rights in such motion picture other than those licensed under this Agreement have been obtained from the parties in interest.

(2)     Nothing herein contained shall be deemed to license the public performance by Television Broadcasting or otherwise of dramatic performances. Any performance of a separate musical composition that is not a dramatic performance, as defined herein, shall be deemed to be a non-dramatic performance. For purposes of this Agreement, a dramatic performance shall mean a performance of a musical composition as part of a television Program in which there is a definite plot depicted by action and where the performance of the musical composition is woven into and carries forward the plot and its accompanying action. The use of dialogue to establish a mere Program format or the use of any non-dramatic device merely to introduce a performance of a composition shall not be deemed to make such performance dramatic. For purposes of this Agreement, performances of compositions in music videos shall be construed as non-dramatic performances.

E.     The performances licensed hereunder may originate at STATION or at any other place whether or not such other place is licensed to perform publicly the compositions licensed hereunder, regardless of the manner, means, or method of such origination; but nothing herein contained shall be deemed to grant a license to such place itself (or to the parties responsible for the performance therein) for the public performance in such place of any such compositions.

F.     Except as expressly herein otherwise provided, nothing herein contained shall be construed as authorizing LICENSEE to grant to others any right to reproduce or perform publicly by any means, method or process whatsoever, any of the musical compositions licensed hereunder or as authorizing any receiver of any television broadcast to perform publicly or reproduce the same, by any means, method or process whatsoever.

G.     This Agreement expressly incorporates, and SOCIETY and LICENSEE agree to be bound by, the provisions of the letter agreement, dated July 27, 2012, between SOCIETY and TELEVISION MUSIC LICENSE COMMITTEE ("COMMITTEE"), a copy of which is attached hereto as Exhibit A.

2.     **Definitions**

For purposes of this Agreement only:

A.     **"Affiliated Station"** means any Television Broadcasting station in the United States and its territories that regularly broadcasts Programs transmitted by a television network licensed by SOCIETY during the term hereof.

B.    **"Announcement"** means any commercial, promotional, or public service announcement (exclusive of program-length "infomercials" of greater duration than 120 seconds), or any producer's or distributor's logo.

C.    **"ASCAP Consent Decree"** means the Second Amended Final Judgment, or any successor decree, in United States v. ASCAP, S.D.N.Y. 41-1395 (WCC).

D.    **"COMMITTEE"** means the Television Music License Committee, LLC, a limited liability corporation organized under the laws of the State of New York, which is duly authorized to represent local television stations in music licensing matters.

E.    **"LMA OPERATOR"** means any person, firm or corporation not under the same or substantially the same ownership, management or control as LICENSEE with whom LICENSEE has entered into a Local Marketing Agreement.

F.    **"Local Marketing Agreement"** means any arrangement between LICENSEE and an LMA OPERATOR that:

(1)    authorizes the resale by an LMA OPERATOR of the use of the Television Broadcasting facilities of STATION;

(2)    permits an LMA OPERATOR to provide Programs for all or substantially all of the time STATION is on the air;

(3)    provides for the sale by an LMA OPERATOR of all or substantially all Announcements broadcast on STATION; and

(4)    provides that LMA OPERATOR will assume responsibility for the payment of license fees.

G.    **"Locally-Produced Television Program"** means any Non-Network Television Program produced by, or expressly for, LICENSEE.

H.    **"Network Announcement"** means any Announcement transmitted by a television network licensed by SOCIETY at the time such Announcement is broadcast on the network, and broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts (sometimes known as "rebroadcasts") over two or more Affiliated Stations of that network.

I.    **"Network Television Program"** means any Program, transmitted by a television network licensed by SOCIETY at the time such Program is broadcast on the network, identified as a Program of the network, and broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts (sometimes known as "rebroadcasts") over two or more Affiliated Stations of that network.

J.    **"Non-Network Announcement"** means any Announcement broadcast by STATION other than a Network Announcement.

3

K.     **"Non-Network Television Program"** means any Program broadcast by STATION other than a Network Television Program.

L.     **"Program"** means all material (visual or otherwise) broadcast by STATION other than Announcements.

M.     **"STATION Web Site"** shall mean Web Site(s) operated by or for STATION as STATION-affiliated Web Site(s) and shall include any Web Site(s) that are shared between two or more television stations in the same market, or two or more television stations with a common owner.

N.     **"Syndicated Television Program"** means: (i) any Non-Network Television Program supplied to LICENSEE and other television stations by a producer, distributor or television network not licensed by SOCIETY; or (ii) any other Non-Network Program that is not a Locally-Produced Television Program.

O.     **"Television Broadcasting"** shall mean free, unscrambled, point-to-multipoint over-the-air broadcasting by means of television.

P.     **"Through-to-the-Audience License"** means, in reference to the scope of the rights granted under this Agreement, a license that authorizes the transmission and retransmission of any licensed programming to viewers by the means described in Subparagraphs 1.A.(1)-(3) so long as each entity involved in the transmission or retransmission other than LICENSEE has an economic relationship to LICENSEE within the meaning of Section II.S of the ASCAP Consent Decree. For the avoidance of doubt, nothing in this license shall be construed as authorizing LICENSEE to grant to bars, restaurants, taverns, hotels, retail establishments, and other similar businesses or establishments, the right to perform publicly any of the musical compositions licensed under this Agreement by playing LICENSEES' over-the-air broadcasts on television sets within their physical locations to the public.

Q.     **"Web Site"** shall mean an Internet computer service comprising a series of interrelated web pages registered with a domain name registration service that STATION transmits or causes to be transmitted either directly or indirectly to persons who receive the service over the Internet by means of a personal computer or by means of another device capable of receiving Internet transmissions.

3.     **Right to Restrict**

A.     The members of SOCIETY shall have the right, at any time and from time to time, in good faith, to restrict the Television Broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon such musical comedies, operas, operettas, motion pictures or compositions, in respect of other interests under the copyrights thereof; provided, however, that the maximum number of compositions which may be at any time thus restricted shall not exceed 750 and moreover that limited licenses will be granted upon application to SOCIETY entirely free of additional charge as to restricted compositions, if and when the copyright owners thereof are unable to show reasonable hazards to their major interests likely to result from such Television Broadcasting; and provided further that

4

such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition; and provided further that in no case shall any charges, "free plugs," or other consideration be required in respect of any permission granted to perform a restricted composition; and provided further that in no event shall any composition, after the initial television broadcast thereof, be restricted for the purpose of confining further television broadcasts thereof to a particular artist, station, network or Program.

   B. SOCIETY reserves the further right, at any time and from time to time, in good faith, to restrict the Television Broadcasting of any compositions, over and above the number specified in Subparagraph 3.A., only as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the repertory of SOCIETY or on a claim by a non-member of SOCIETY or by a member not listed in any current list of SOCIETY's members, as the same may be augmented from time to time, that SOCIETY does not have the right to license the public performance of such composition by Television Broadcasting.

   C. Nothing in Subparagraphs 3.A. and 3.B. shall relieve SOCIETY of its obligation to indemnify LICENSEE, as reflected in Paragraph 8. below, with respect to the performances of any compositions in SOCIETY's repertory, the performance of which SOCIETY has restricted, prior to such time as LICENSEE receives notice from SOCIETY of any such restriction.

   4. **Music Use Information**

   A. Subject to the provisions of Subparagraphs 4.B. and 4.C. below, LICENSEE agrees to furnish to SOCIETY upon request during the term of this Agreement a list of all musical compositions broadcast from or through STATION on LICENSEE's Non-Network Television Programs, showing the title of each composition and the composer and author thereof, provided that LICENSEE shall not be obligated under this Paragraph 4. to furnish such a list covering a period of more than seven (7) consecutive days or periods aggregating more than four (4) weeks during any one calendar year. For purposes of this Paragraph 4., music cue sheets containing the aforesaid information shall be deemed to constitute such a list.

   B. With respect to Syndicated Television Programs broadcast from or through STATION, LICENSEE shall be deemed to have complied with its obligations under Subparagraph 4.A. if LICENSEE identifies the Program by its title, including episode title and/or number, the name of the producer where available, and the copyright notice contained therein where available. If SOCIETY does not have a music cue sheet for such Program, and LICENSEE does have such a cue sheet, LICENSEE shall provide a copy of such music cue sheet to SOCIETY at SOCIETY's request.

   C. SOCIETY shall make requests pursuant to Subparagraph 4.A. only where reasonably necessary for its purposes and, except where the information is necessary with respect to SOCIETY's survey of past performances, shall give LICENSEE notice of any request under subparagraph 4.A. at least one (1) month prior to the commencement of the period covered by said request. The provisions of Subparagraph 4.B. shall not limit LICENSEE's obligation to

cooperate with SOCIETY in connection with any claim or demand for action referred to in Paragraph 8 of this Agreement.

5. **Payments**

    A.    In consideration of the license herein granted, LICENSEE agrees to pay to SOCIETY for each calendar month during the term of this Agreement a fee that is equal to:

    (1)    one-twelfth (1/12) of LICENSEE's blanket license fee covering each twelve (12) month period during the term of this Agreement, as calculated pursuant to the methodology determined by COMMITTEE and set forth in Exhibit B hereto.

    B.    In no case shall LICENSEE's monthly blanket license fee be less than $45.

    C.    For all periods following execution of this Agreement, payments attributable to a given month shall be due no later than the last day for that month. If any such blanket license fee payment due under the terms of this Paragraph 5. is not received by SOCIETY within twenty (20) day of when such payment was due, LICENSEE shall pay to SOCIETY a late-payment charge of one percent (1%) per month (simple interest) calculated from the date such payment was due and ASCAP may further assess LICENSEE for reasonable, documented, out-of-pocket costs (exclusive of attorneys' fees) incurred by ASCAP in connection with collecting such amounts. The payment provisions of this Paragraph 5. shall not apply in circumstances in which LICENSEE is unable to submit a payment within the specified time period due to "force majeure" (e.g., earthquake, hurricane, fire, flood, terrorist activities).

6. **Local Marketing Agreement**

    A.    If LICENSEE is, or becomes, a party to a Local Marketing Agreement, LICENSEE and the LMA OPERATOR shall execute a letter to SOCIETY, in the form attached as Exhibit C and made a part of this Agreement, requesting amendment of this License Agreement to add the LMA OPERATOR as a party. When such a letter has been fully executed by LICENSEE, the LMA OPERATOR and SOCIETY, this Agreement shall be deemed amended accordingly. By signing Exhibit C, the LMA Operator becomes a party to this Agreement and shall assume, with LICENSEE, all of the rights and obligations set forth in this Agreement for the full period for which the Local Marketing Agreement is in effect.

    B.    In the event LICENSEE is a party to a Local Marketing Agreement, and a dispute arises between SOCIETY and either the LMA OPERATOR or LICENSEE as to whether LICENSEE or the LMA OPERATOR is responsible for the performance of any of the obligations arising under this Agreement, SOCIETY shall be entitled to receive, upon request, a copy of the portion of such agreement as sets forth the respective obligations of LICENSEE and the LMA OPERATOR regarding the payment of fees, accountings, recordkeeping and administrative responsibilities, or, if LICENSEE so elects, a copy of the entire Local Marketing Agreement.

7.   **Breach or Default**

Upon LICENSEE's breach or default of any payment, accounting or substantive reporting obligations required under the terms of this Agreement, SOCIETY may give LICENSEE thirty (30) days' notice in writing to cure such breach or default, and in the event that such breach or default has not been cured within thirty (30) days of said notice, SOCIETY may then terminate this license.

8.   **Indemnity Clause**

SOCIETY agrees to indemnify, save and hold harmless, and to defend LICENSEE, its sponsors and their advertising agencies, and its and their officers, employees, and artists, and each of them, from and against any claims, demands, or suits that may be made or brought against them or any of them with respect to the performances under this Agreement of any compositions in SOCIETY's repertory that are written or copyrighted by members of SOCIETY. LICENSEE agrees to give SOCIETY immediate notice of any such claim, demand, or suit and agrees immediately to deliver to SOCIETY all papers pertaining thereto. SOCIETY shall have full charge of the defense of any such claim, demand, or suit and LICENSEE shall cooperate fully with SOCIETY in such defense. LICENSEE, however, shall have the right to engage counsel of its own at its own expense who may participate in the defense of any such action. SOCIETY agrees, at the request of LICENSEE, to cooperate with and assist LICENSEE, its advertisers and their advertising agencies and its and their officers, employees, and artists in the defense of any action or proceeding brought against them or any of them with respect to the performance of any musical compositions contained in SOCIETY's repertory, but not copyrighted or written by members of SOCIETY. This Paragraph 8. shall not apply to performances of any works that have been designated as restricted under Paragraph 3. of this Agreement.

9.   **Rights of Termination**

A.   In the event of the termination or suspension of the governmental licenses covering STATION or any substantial alteration or variation of the terms and conditions thereof, or any major interference with the operations of STATION due to governmental measures or restrictions, LICENSEE shall have the right to terminate this Agreement upon seven (7) days' notice. Upon termination, this Agreement shall no longer remain in effect and the parties shall be relieved of all obligations arising hereunder from the date of termination.

B.   In the event of:

(1)   any major interference with the operations of SOCIETY in the state, territory, dependency, possession or political subdivision in which STATION is located, by reason of any law of such state, territory, dependency, possession or political subdivision; or

(2)   any substantial increase in the cost to SOCIETY of operating in such state, territory, dependency, possession or political subdivision, by reason of any law of such state, territory, dependency, possession or political subdivision, which is applicable to the licensing of performing rights

7

SOCIETY shall have the right, upon notice to COMMITTEE and upon a showing that the matters referred to in Subparagraphs 9.B.(1) and 9.B.(2) above affect the licensing of performing rights under this Agreement, to apply to the judge with supervisory authority over the ASCAP Consent Decree for whatever relief SOCIETY deems appropriate.

10.   **Successors and Assigns**

This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns, but no assignment shall relieve the parties hereto of their respective obligations hereunder as to performances broadcast, acts done and obligations incurred prior to the effective date of the assignment.

11.   **Notices**

Any notice filed under this Agreement shall be in written form or in a form mutually agreed upon by SOCIETY and COMMITTEE and shall be sent to LICENSEE (or a designated agent of LICENSEE). All notices required or permitted to be given by either of the parties to the other hereunder shall be duly and properly given if: (a) mailed to the other party by registered or certified United States mail; (b) sent by generally recognized same-day or overnight delivery service; (c) mailed by first class United States mail; or (d) sent by electronic transmission (i.e., electronic mail, facsimile or similar transmission), provided that the electronic transmission is followed by a hard copy and receipt of the notice is acknowledged.

12.   **Per Program License**

The "Local Station Per Program Television License," coterminous with this License, is being offered to LICENSEE simultaneously with this Agreement. During the term of this Agreement, LICENSEE may switch from a per program to a blanket license, or from a blanket to a per program license, as of the first day of a month, prospectively on thirty (30) days' written notice to SOCIETY.  LICENSEE may so elect to change its license status up to twice in any given twelve (12) month period during the term of this License.

13.   **Without Prejudice**

The parties are entering into this Agreement without prejudice to any arguments or positions they may assert in any future rate proceeding or other litigation concerning what constitutes reasonable blanket and per program license fees and terms for the local television industry or, in SOCIETY's case, as to any other licensee.

14.   **Applicable Law**

This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within such State.

IN WITNESS WHEREOF, this Agreement has been duly executed by SOCIETY and LICENSEE this _____ day of _____, 2012, as of the day of _____ 2012.


_____    AMERICAN SOCIETY OF COMPOSERS
LICENSEE                               AUTHORS AND PUBLISHERS


By: _____      By: _____

Title: _____    Title: _____

EXHIBIT A

July 27, 2012

Mr. John LoFrumento
American Society of Composers, Authors and Publishers
One Lincoln Plaza
New York, New York  10023

Re:    ASCAP - Local Television Station
       Blanket and Per Program Licenses

Dear John:

This letter sets forth the agreement reached between the American Society of Composers, Authors and Publishers ("ASCAP") and the Television Music License Committee, LLC (the "Committee") with regard to: (i) settlement of *In re Application of Duhamel Broadcasting Enterprises, et al.* 11 Civ. 9311 (DLC) *related to U.S. v. ASCAP*, 41 Civ. 1395; and (ii) fees and terms under the ASCAP - Local Television Station Blanket and Per Program License Agreements covering the period January 1, 2010 through December 31, 2016 (collectively the "Licenses").  This letter agreement is expressly incorporated in Subparagraph 1.G. of the Licenses, and is binding upon the parties hereto and upon the signatories to the Licenses.

The parties agree as follows:

1.    The interim agreement between the parties shall remain in effect through the date of the Final Order terminating the pending proceeding referred to above. All interim fees payable for the period January 1, 2010 through December 31 , 2011 shall become final, except that interim per program license fees that are subject to adjustment pursuant to paragraphs 4 and 6 of the per program license for the term ending December 31, 2009 shall remain subject to such adjustment.

2.    Industry-wide Blanket License fees for all commercial local television stations licensed under the Licenses by ASCAP shall equal:

January 1, 2012 - December 31, 2012 -- $91.5 million;

January 1, 2013 - December 31, 2013 -- $91.5 million;

January 1, 2014 - December 31, 2014 -- $91.5 million;

January 1, 2015 - December 31, 2015 -- $92.0 million;

January 1, 2016 - December 31, 2016 -- $92.0 million.

3.     ASCAP and the TMLC anticipate that the actual annual industry-wide Blanket License fees payable by Licensees may be higher (or lower) than Industry-wide Blanket License fees stipulated above for a given year as a result of changes in the total number of individual local television stations licensed pursuant to either the LOCAL STATION BLANKET TELEVISION LICENSE or the LOCAL STATION PER PROGRAM TELEVISION LICENSE. In the event that the Blanket License fees payable by Licensees for any given calendar year are greater (or less) than the Industry-wide Blanket License fees stipulated above for that calendar year (exclusive of penalties payable by per program licensed stations pursuant to 4.C.(3) of the LOCAL STATION PER PROGRAM TELEVISION LICENSE and late payment charges pursuant to 4.C.(2) of the LOCAL STATION PER PROGRAM TELEVISION LICENSE or late payment charges pursuant to 5.C. of the LOCAL STATION BLANKET TELEVISION LICENSE) such overpayment (or underpayment) will be deducted from (or added to) the Industry-wide Blanket License fee in the following calendar year.

4.     Each local television station's Blanket License fees shall be determined in accordance with the provisions of the license fee allocation formula determined by the Committee and attached as Exhibit B to the Blanket License and Exhibit B to the Per Program License.

5.     Each year during the term of the Licenses, ASCAP shall provide to the Committee a list of current ASCAP-licensed local television stations.  The list of licensees shall be delivered to the Committee, in electronic form, on or before September 15 of each year during the term.  For each licensee, ASCAP shall provide the following information: (i) current station call letters; (ii) designated market area ("DMA"); (iii) state; (iv) FCC identification number; (v) ASCAP account number; (vi) channel position; (vii) station owner; (viii) network affiliation (if any); and (ix) previous call letters (if any) if contained in any database within ASCAP's control. For each newly-licensed station appearing on the list, ASCAP shall also provide: (i) signed status; (ii) date license was signed; (iii) date of first payment; and (iv) effective date of license. Any licensee added to the list between September 16 of any given year and September 15 of the following year will be included in the allocation formula the following year.  In the interim, such stations will be billed at the minimum fee for their respective DMAs.  ASCAP shall clearly identify in each list any licensees added to or deleted from the previous list.  Without limiting ASCAP's right to terminate the Licenses pursuant to Paragraph 9 of the Per Program License and Paragraph 7 of the Blanket License, ASCAP may not delete a station from the list of licensees for failure to make payments under this agreement absent a court order.

6.     In addition to the list of ASCAP-licensed stations described in Paragraph 5 above, ASCAP shall provide to the Committee no less frequently than once per quarter, in electronic form, a list of current per program licensees identified by call letters, DMA, and per program license effective date.

7.     For each of the years 2011 - 2016, within sixty (60) days of receipt of a written request from the Committee, ASCAP shall provide to the Committee, in electronic form, cue sheets for a statistically significant and representative sample of programs, as selected by an independent third party chosen by the Committee, for use solely in connection with the Committee's study of music use by the local television industry.  The Committee may use the results of any such music use study in connection with any negotiation, arbitration, or litigation

with ASCAP, BMI, SESAC, or any other performing rights organization, or for any other reasonable purpose; provided, however, that the Committee shall not otherwise publicly disclose the results of any such study without ASCAP's prior approval.

8.    The Second Circuit Court of Appeals, having ruled in the *DMX* proceeding that ASCAP is required to offer to music users (as defined in AFJ2) an adjustable-fee blanket license with a fee structure that accounts for performances otherwise licensed from ASCAP members ("AFBL"), ASCAP will offer such a license to local television stations with a start date effective January 1, 2015, with the specifics of a credit mechanism to be negotiated in good faith between ASCAP and the TMLC by September 11, 2012 or by a date mutually agreed upon by the parties.  If the parties cannot agree on the specifics of such a license, either ASCAP or the Applicants may apply to Magistrate Judge Dolinger for resolution of the issue(s).

9.    At least once every six months, ASCAP and the Committee (or its designated representative) shall meet in good faith to resolve any outstanding billing, payment, or reporting disputes between ASCAP and any Licensee.  Any good faith dispute that is not resolved during such meetings may be submitted to arbitration as provided in Paragraph 11 below.

10.    If ASCAP and the Committee (or its designated representative) are unable to resolve one or more good faith disputes pursuant to Paragraph 9 above, and, in the judgment of ASCAP and/or the Committee, such outstanding disputes affect a significant number of Licensees and/or involve a substantial dollar amount, such outstanding disputes shall be finally determined and resolved by a neutral arbitrator.  The arbitrator shall be selected jointly by ASCAP and the Committee and appointed for a two (2) year period commencing on January 1, 2014.  If the parties are unable to agree upon an arbitrator by December 1, 2013, selection of an arbitrator shall be conducted pursuant to the rules of the American Arbitration Association.  If an arbitrator is unable to fulfill his or her term for any reason, the parties shall, within a reasonable time period, jointly select a new arbitrator to complete the term. If either ASCAP or the Committee submits one or more outstanding good faith disputes to arbitration pursuant to this paragraph, it shall so notify the arbitrator and the opposing party.  Each party shall have thirty (30) days from the date of such notice to submit a statement of claim, and any supporting documentation, to the arbitrator and to the other party setting forth the party's positions regarding the dispute(s) at issue in the arbitration; provided, however, that the deadline for submission of a statement of claim may be extended up to thirty (30) days at the discretion of the arbitrator upon a showing of good cause by either party. The statements of claim shall not exceed ten double-spaced pages in length (exclusive of any supporting documentation).  The arbitrator shall have thirty (30) days from his or her receipt of the statements of claim to issue a written decision adopting one of the two positions put forth by the parties with respect to each disputed issue under arbitration, and to determine a just division of costs between the parties as the arbitrator may deem appropriate. The arbitrator's decision shall be final. The arbitrator shall not have authority to award punitive damages, attorneys' fees or expenses to either party.  In no event shall either party submit to arbitration any good faith dispute that the parties have not yet attempted to resolve themselves pursuant to Paragraph 10 above.

11.    If, during the term of the Licenses, any dispute arises between ASCAP and any Licensee concerning the interpretation of any of the provisions of this letter agreement or the

Licenses which, in the judgment of ASCAP and/or the Committee, has or may have industry-wide impact, ASCAP and the Committee shall first endeavor to resolve such dispute, failing which either party may refer the matter to Magistrate Judge Michael H. Dolinger for determination (or, if such a reference is not possible, to the judge with supervisory authority over the ASCAP Consent Decree). In the event of such a reference, either party, as a preliminary matter, shall be entitled to assert that the dispute between them is not properly dealt with under the terms of this provision.

       12.    If, during the term of the Licenses, ASCAP elects to license an entity agreed or determined to be a broadcast television "network" previously unlicensed by ASCAP, whose network programs are carried by local television stations licensed by ASCAP, such as Fox, appropriate adjustments shall be made to the license fees payable by local television station licensees consistent with the Opinions and Orders of Judge William Conner dated January 3, 1995 and January 27, 1995 in *U.S. v. ASCAP: Application of Fox Broadcasting Company and Fox Television Stations, Inc.* ASCAP and the Committee shall confer and attempt to reach agreement concerning the amount of any such fee adjustments and such agreement shall be binding on all licensees. If ASCAP and the Committee shall fail to agree on such fee adjustments, either party may refer the matter to Magistrate Judge Michael H. Dolinger for determination (or, if such a reference is not possible, to the judge with supervisory authority over the ASCAP Consent Decree).

       13.    The Committee shall treat as confidential any station's financial or other proprietary information or documents provided to it by ASCAP pursuant to the Local Television Station Per Program License Agreement ("Confidential Information"). The Committee shall limit access to Confidential Information to the Committee's staff, representatives and counsel, and shall not disclose Confidential Information to any third party or to any Committee member, other than a Committee member who is employed by the station or station group that provided Confidential Information to ASCAP, provided, however, that if the Committee is served with a subpoena or other legal notice compelling the production of any such Confidential Information, the Committee shall be required to give prompt written notice to ASCAP and the station or station group that provided the Confidential Information to ASCAP of such subpoena or other notice. ASCAP and/or the station or station group that provide the Confidential Information shall inform the Committee in writing within seven (7) days of receiving written notification of a subpoena or other legal notice of its intention to object to such production, in which event ASCAP and/or the station or station group shall bear the burden of opposing such production. If the subpoena requires a response or compliance in fewer than fourteen (14) days, the Committee will inform ASCAP and the station or station group in writing within three (3) days of receiving the subpoena, and ASCAP and/or the station or station group must inform the Committee of its intention to oppose the production no later than five (5) days before compliance is called for.

       14.    ASCAP and the Committee are entering into this agreement without prejudice to any arguments or positions they may assert in any future rate proceeding or other litigation concerning what constitutes reasonable blanket and per program license fees and terms for the local television industry or, in ASCAP's case, as to any other licensee.

Please indicate your agreement to the above by signing on the line provided below.

Very truly yours,


s/ Charles Sennet
Charles Sennet
Chairman
Television Music License Committee, LLC


s/ John A. LoFrumento
John A. LoFrumento
Chief Executive Officer
American Society of Composers
Authors and Publishers

EXHIBIT B

# Television Music License Committee
## Methodology for ASCAP License Fee Allocation for the Period
### From January 1. 2012 through December 31, 2016

The Industry-wide Blanket License fees for all commercial local television stations licensed under the ASCAP-Local Television Station Blanket License Agreements covering the period January 1, 2012 through December 31, 2016 (the "licensed television stations"), shall be allocated among the licensed television stations as follows (subject to revision pursuant to the provisions of Paragraph 10 below):

### STEP 1:  Allocation of Industry-Wide Fee Among DMA Markets

For each of the years 2012, 2013, 2014, 2015, and 2016 ("Contract Periods"), each Nielsen DMA television market is to be assigned its gross allocable share of the Industry-wide Blanket License fee (as set forth in Paragraph 2 of the July 27, 2012 letter agreement between the Television Music License Committee (the "Committee") and ASCAP) in proportion to its percentage of the total number of weighted Qualified Viewing Households throughout the U.S. in an average quarter-hour during nine sweeps months over the course of the previous three years.

1.      The number of Qualified Viewing Households will be computed for each licensed television station for the Contract Period based upon average quarter hour household viewing data, Sunday through Saturday, 9 a.m. through midnight, compiled by Nielsen during nine sweeps months over the previous three years[1]. The Qualified Viewing Households attributable to each DMA market shall be calculated by multiplying the average quarter hour viewing households for all licensed stations in the market by 420 (the number of quarter hours between 9 a.m. and midnight in one week).

2.      For each of the Contract Periods, the number of Market Qualified Viewing Households in each of the roughly 210 DMA markets as measured by Nielsen[2] is to be "weighted" as follows:

---

[1]      Qualified Viewing Households for the Contract Periods 2012 through 2016 will be based upon data compiled by Nielsen for the nine November, February and May sweeps months prior to July 1 of the year preceding the Contract Period.  A Qualified Viewing Household is defined as a viewing household for a station licensed by ASCAP for the Contract Period for which the allocation is being calculated.

[2]      The number of Market Qualified Viewing Households in Puerto Rico shall be determined based upon data provided by Nielsen, or some other comparable provider of household audience information.  The number of Market Qualified Viewing Households in the Virgin Islands and Guam (or in any other market or territory in which household audience information is unavailable) shall be determined by calculating the number of television households in the U.S. as a percentage of the total U.S. population; multiplying that percentage by the population of the market for which audience information is unavailable to derive the number of television households in the market; and multiplying the resulting number by a fraction the numerator of which is the number of licensed stations in the market and the denominator of which is the total number of stations in the market.  For purposes of assigning an allocable share of the industry-wide blanket license fee to television markets in the Virgin Islands, Guam and Puerto Rico, the number of Market Qualified Viewing Households in each of these markets is to be given the same

| DMA Markets 1 - 10 | Multiply by 1.21 |
| DMA Markets 11 – 25 | Multiply by 1.05 |
| DMA Markets 26 – 50 | Multiply by 0.92 |
| DMA Markets 51 – 75 | Multiply by 0.85 |
| DMA Markets 76 - 100 | Multiply by 0.85 |
| DMA Markets 101 - 125 | Multiply by 0.80 |
| DMA Markets 126 plus | Multiply by 0.75 |

The purpose of the weighting is to reflect, within broad parameters, that a household in a smaller market does not represent the same value as a household in a larger market.

3.     For each Contract Period, each market is to be assigned its share of the industry's overall blanket license fee by the following procedure:  The Market Qualified Viewing Households in the DMA market will be multiplied by the weight set forth in Paragraph 2 above for that DMA market to determine the weighted number of Market Qualified Viewing Households for the DMA market.  Thus, for example, the top ten markets in terms of three-year households average will receive a 1.21 multiple.  Each market's weighted Market Qualified Viewing Households number is to be divided by the total U.S. weighted market Market Qualified Viewing Households to derive a percentage of U.S. weighted Market Qualified Viewing Households for each market.  This weighted percentage is then applied to the industry-wide blanket license fee.  Thus, if the weighted percentage of total U.S. Market Qualified Viewing Households for DMA market "x" is one percent, DMA market x's share of the industry-wide $91,500,000 fee for the January 1, 2012 through the December 31, 2012 Contract Period would be $91,500,000 x 1%, or $915,000.00.

**STEP 2: Allocation of Blanket License Fees to Stations Within Each Market**

4.     Each station's percentage share of the DMA market blanket license fee shall be calculated as follows: Station Qualified Viewing Households for stations affiliated with networks licensed by ASCAP (currently the ABC, CBS, NBC, Univision, and TeleFutura television networks) shall be calculated by multiplying the station's average quarter hour viewing households by 420 (the number of quarter hours between 9 a.m. and midnight in one week); and subtracting one hundred percent (100%) of the station's average prime-time DMA viewing households (which equals the station's average prime-time DMA quarter hour households times 88 (the number of quarter hour units in prime time in one week)).[3]  Station

---

weight as the Nielsen DMA that most closely approximates the number of Market Qualified Viewing Households in these markets.

[3]     For example, on the East Coast, prime-time occupies Monday – Saturday, 8:00 – 11 p.m. and Sunday, 7:00 – 11:00 p.m.

Qualified Viewing Households for stations not affiliated with networks licensed by ASCAP shall be calculated by multiplying the station's average quarter hour viewing households by 420. A station's percentage share of the DMA market blanket fee shall be calculated by dividing its Station Qualified Viewing Households number by the total Station Qualified Viewing Households for all stations in that DMA market and multiplying the resulting percentage by the DMA market blanket license fee (reduced by the amount of any minimum fees assigned to stations in the market pursuant to paragraph 5 below).[4]

     5.     Stations whose ratings are not reported by Nielsen during the relevant period shall be assigned a minimum blanket license fee equal to the greater of 0.25 percent of the allocable blanket license fee for its market or an annual blanket license fee of $540 (or $45 per month for partial years) ("Minimum Blanket License Fee"). The fees assigned to a DMA market pursuant to Step 1 above shall be reduced by the amount of any Minimum Blanket License Fees assigned to stations in that DMA market, and the balance of that DMA market's share of the industry-wide fee shall be allocated among the remaining licensed stations in that DMA market based on the methodology set forth in Step 2 hereof. If, by way of example, the blanket license fee allocated to market "k" is $300,000, and there are operating in market "k" two stations whose ratings are not reported by Nielsen, each of those stations would be assigned a blanket fee of $750 ($300,000 x .0025). The remaining stations in market "k" would pay their appropriate percentages, not of $300,000, but of $298,500.

### STEP 3: Adjustment to Reflect Equitable Distribution of the Administrative Costs Incurred by the Television Music License Committee

     6.     For each Contract Period, the Committee shall determine: a) the total contributions to be requested from the television industry for its costs of administering the ASCAP-Local Television Station Blanket and Per Program License Agreements (the "ASCAP Licenses") and the Committee's ongoing representation of the television industry in regard to music performance licenses; and b) the percentage (the "Contribution Percentage") and amount (the "Contribution Amount") of these total contributions to be requested from each station licensed under the ASCAP Licenses. The contributions requested by the Committee for a given Contract Period shall be payable by stations between April 1 of the relevant Contract Period and March 31 of the subsequent Contract Period or as otherwise determined by the Committee, but in no event later than June 30 of the subsequent Contract Period (the "Contribution Period").

     7.     Upon the expiration of a Contribution Period, the Committee shall calculate a contribution adjustment for each ASCAP licensed station by: a) multiplying the station's Contribution Percentage for the relevant Contract Period by the total contributions actually received by the Committee during the Contribution Period (the "Adjusted Contribution Amount"); and b) calculating the difference between the actual amount paid by each station during the Contribution Period and the station's Adjusted Contribution Amount (the "Allocation Credit/Debit").

---

[4]     The fees for each of the licensed stations in the Virgin Islands and Guam shall equal the amount of the industry-wide fee assigned to the market divided by the total number of licensed television stations in that market.

The Allocation Credit/Debit for the Contribution Periods ending in 2010 and 2011 have already been processed on the accounts of applicable stations. No further adjustment will be made for those Contribution Periods.

A station's Allocation Credit/Debit for each Contribution Period ending in the Contract Periods 2012 through 2016 shall be processed on the accounts of applicable stations in December of each Contract Year, provided that the Committee provides ASCAP the amount of the Allocation Credit/Debits for the Contract Period no later than October 31 of the year in which the adjustment is to be made.

The result of this adjustment is that a station that pays to the Committee for any given Contract Period its full Contribution Amount (or any sum greater than its Adjusted Contribution Amount) will receive a credit against its ASCAP fees, and any station that does not pay any portion of its Contribution Amount (or pays a sum less than its Adjusted Contribution Amount) to the Committee for any given Contract Period will pay additional ASCAP fees.

8.    If, during a given Contract Period, ASCAP enters into a license agreement with a television station that was not previously licensed (a "New Television Station"), such station shall pay the minimum monthly fee of forty-five dollars ($45.00) for the remainder of the Contract Period following the effective date of its license agreement. The fees payable by all stations in the New Television Station's market in the following Contract Period shall be reallocated in the manner set forth above without any increase in the total fee amount otherwise allocable to the relevant market.

9.    Once a station's allocated fee has been calculated for a given Contract Period, there shall be no further adjustment to that station's fee for the duration of that Contract Period; provided however that if the station was assigned in error a blanket license fee that was higher or lower than it should have been assigned pursuant to the methodology set forth above, such over-allocation or under-allocation amount shall be factored into the fees allocated to the station for the subsequent Contract Period.

10.    If during the term of the ASCAP-Local Television Station Blanket and Per Program Licenses, the Committee determines that there is good cause to revise the allocation methodology set forth above in any manner, the Committee may refer the matter to Magistrate Judge Michael H. Dolinger (or if such reference is not possible, to the judge with supervisory authority over the ASCAP consent decree) to request approval of any proposed revisions to this methodology. The Committee shall make such a request at a public hearing (written notice of which will be provided to ASCAP and to all licensed television stations no less than thirty days in advance of the hearing) at which all interested parties will be given the opportunity to be heard in support of, or in opposition to, the proposed revisions. Any decision by the Court approving or denying the proposed revisions shall be final and shall not be subject to appeal.

EXHIBIT C

**LOCAL MARKETING AGREEMENT AMENDMENT LETTER**

Dear ASCAP:

      1.     _____ ("LICENSEE") has entered into a Local Marketing Agreement with _____ ("LMA OPERATOR") for television station _____ for the period _____ through _____.

      2.     LICENSEE and LMA OPERATOR wish to add LMA OPERATOR as a party to the Local Television Station License Agreement in effect between LICENSEE and ASCAP ("the License"), and LMA OPERATOR shall assume all of the rights and obligations of LICENSEE as set forth in the License for the full period of the Local Marketing Agreement referred to in Paragraph 1 above.

      3.     LICENSEE/LMA OPERATOR (circle one) shall be responsible for the payment of any fees owing to ASCAP pursuant to the License.

      4.     LICENSEE/LMA OPERATOR (circle one) shall be responsible for the submission to ASCAP of any reports, tapes or other information pursuant to the License.

      5.     LICENSEE and LMA OPERATOR jointly designate the following single address for billing and other regular correspondence, and the following single address for any notices in accordance with the License:

Billing Address: _____    Notice Address: _____

                  _____                     _____

                  _____                     _____

      Please indicate your consent to the amendment of the License Agreement in accordance with this letter by countersigning the letter in the space provided below and returning a copy to us.

                              Very truly yours,

                              LICENSEE

Dated: _____    By: _____

                              Title: _____

                              LMA OPERATOR

Dated: _____    By: _____

                              Title: _____

The undersigned, American Society of Composers, Authors and Publishers, hereby consents and agrees to the amendment of the above mentioned License Agreement.

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS

Dated: _____     By:_____

Title: _____

**EXHIBIT 2**

## LOCAL STATION PER PROGRAM TELEVISION LICENSE

AGREEMENT made between AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS ("SOCIETY") and _____ ("LICENSEE") as follows:

1.    Term and Scope of License

A.    SOCIETY grants to LICENSEE and LICENSEE accepts for a period commencing as of January 1, 2010 and ending December 31, 2016, a Through-to-the-Audience License to perform publicly all musical works heretofore copyrighted, composed or written by the members of SOCIETY and now or hereafter during the term hereof in the repertory of SOCIETY, or hereafter during the term hereof copyrighted, composed or written by such members of SOCIETY, or of which SOCIETY shall have the right to license such performing rights:

(1)    by Television Broadcasting in the United States, and its territories, commonwealth and possessions, as part of LICENSEE's Non-Network Television Programs and Non-Network Announcements from television station _____ ("STATION") , Main Channel _____, located at _____, ____, with FCC Facility ID _____; and including any associated digital multicast channel (s).

(2)    by streaming on STATION Websites.

(3)    by transmitting or causing to be transmitted, directly or indirectly, STATION-supplied programming via mobile, wireless, and any other digital platforms, regardless of the device through which viewers access the performances.

B.    In the event that STATION airs Locally-Produced Television Programs, and such Programs also appear on one or more additional stations (which Programs for purposes of this Agreement would not be considered Locally-Produced Television Programs for the additional station(s)), only the STATION may retransmit music in SOCIETY's repertory contained in such Programs in the manner described in Subparagraphs 1.A.(2) above, while the additional station(s) may not.

C.    The license granted herein does not cover transmissions on a STATION Web Site of music in SOCIETY's repertory where members of the public are charged a fee by STATION for the right to access such transmissions.  Such transmissions shall be subject to appropriate separate licensing.  Notwithstanding the foregoing, the fact that STATION may charge members of the public for access to discrete areas of a STATION Web Site other than those areas containing performances licensed hereunder shall not limit the scope of coverage of this license.

D.    (1)    This license does not extend to or include the public performance by Television Broadcasting or otherwise of any rendition or performance of (a) any opera, operetta, musical comedy, play or like production, as such, in whole or in part, or (b) any composition from any opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form) in a manner which recreates the performance of such composition with

substantially such distinctive scenery or costume as was used in the presentation of such opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form); provided, however, that the rights granted to LICENSEE under this Agreement shall be deemed to include a grant of the right to make non-dramatic performances of compositions licensed hereunder by the Television Broadcasting or otherwise of a motion picture containing such compositions if the rights in such motion picture other than those licensed under this Agreement have been obtained from the parties in interest.

   (2) Nothing herein contained shall be deemed to license the public performance by Television Broadcasting or otherwise of dramatic performances. Any performance of a separate musical composition that is not a dramatic performance, as defined herein, shall be deemed to be a non-dramatic performance. For purposes of this Agreement, a dramatic performance shall mean a performance of a musical composition as part of a television Program in which there is a definite plot depicted by action and where the performance of the musical composition is woven into and carries forward the plot and its accompanying action. The use of dialogue to establish a mere Program format or the use of any non-dramatic device merely to introduce a performance of a composition shall not be deemed to make such performance dramatic. For purposes of this Agreement, performances of compositions in music videos shall be construed as non-dramatic performances.

   E. The performances licensed hereunder may originate at STATION or at any other place whether or not such other place is licensed to perform publicly the compositions licensed hereunder, regardless of the manner, means, or method of such origination; but nothing herein contained shall be deemed to grant a license to such place itself (or to the parties responsible for the performance therein) for the public performance in such place of any such compositions.

   F. Except as expressly herein otherwise provided, nothing herein contained shall be construed as authorizing LICENSEE to grant to others any right to reproduce or perform publicly by any means, method or process whatsoever, any of the musical compositions licensed hereunder or as authorizing any receiver of any television broadcast to perform publicly or reproduce the same, by any means, method or process whatsoever.

   G. This Agreement expressly incorporates, and SOCIETY and LICENSEE agree to be bound by, the provisions of the letter agreement, dated July 27, 2012, between SOCIETY and TELEVISION MUSIC LICENSE COMMITTEE ("COMMITTEE"), a copy of which is attached hereto as Exhibit A.

2. **Definitions**

   For purposes of this Agreement only:

   A. **"Affiliated Station"** means any Television Broadcasting station in the United States and its territories that regularly broadcasts Programs transmitted by a television network licensed by SOCIETY during the term hereof.

2

B.    **"Ambient Uses"** shall comprise the following uses of music in SOCIETY's repertory:

(1)    each use of music in a news or public affairs Program that:

(a)    does not exceed fifteen (15) seconds' duration; *and either*

(b)    has not been inserted by STATION or the producer of the Program or Program segment and is audible during:

(i)    coverage of a news story or event;

(ii)    news coverage of a sports or athletic event or competition;

(iii)    reviews and/or coverage of a live entertainment event;

(iv)    previews or reviews of a play, concert or movie;

(v)    interviews (except where the music is performed "live" during the interview by the celebrity/interviewee); or

(vi)    teasers or promotions for upcoming news segments used within the news show; *or*

(c)    is contained in a file clip or footage utilized by STATION, or by the producer of the Program or Program segment, which file clip or footage met the criteria of Subparagraphs 2.B.(1)(b)(i), 2.B.(1)(b)(ii), 2.B.(1)(b)(iii) or 2.B.(1)(b)(iv) above at the time the file clip or footage was created;

(2)    each use of music (without regard to duration) in a sports event Program that has not been inserted by STATION or the producer of the Program or Program segment, other than:

(a)    uses of music that are part of an athletic performance choreographed to music (*e.g.*, figure skating, gymnastics, synchronized swimming); or

(b)    musical performances that are the subject of sustained, focused coverage during a pre-game or halftime show or event, or during a time out or other break in the action.

C.    **"Announcement"** means any commercial, promotional, or public service announcement (exclusive of program-length "infomercials" of greater duration than 120 seconds), or any producer's or distributor's logo.

D.    **"ASCAP Consent Decree"** means the Second Amended Final Judgment, or any successor decree, in United States v. ASCAP, S.D.N.Y. 41-1395 (WCC).

3

E.     **"Blanket License Fee"** means LICENSEE's blanket license fee for the STATION as calculated pursuant to the methodology determined by COMMITTEE and set forth in Exhibit B hereto.

F.     Music that is **"Cleared At The Source"** means music for which LICENSEE has been granted, within the time period specified in Subparagraph 5.G.(1) herein, a license to perform by means of Television Broadcasting: (a) directly by the composer(s), author(s), arranger(s), publisher(s) or owner(s) of such music, or licensees thereof; or (b) through the program producer or other authorized licensor of such rights.

G.     **"Clearing Entity"** means any person or entity authorized to grant a Source License.

H.     **"COMMITTEE"** means the Television Music License Committee, LLC, a limited liability corporation organized under the laws of the State of New York, which is duly authorized to represent local television stations in music licensing matters.

I.     **"First-Run Syndicated Television Program"** means any Syndicated Television Program, episodes of which: (i) are currently being distributed in the syndication market for their first season of broadcasts; or (ii) were created originally for, and are being transmitted for their first season of broadcasts by, a television network not licensed by SOCIETY at the time such Program is broadcast on the network, and broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts (sometimes known as "rebroadcasts") over two or more stations affiliated with such television network.

J.     **"Incidental Use"** means the use of music in the television broadcast of Non-Network Announcements.

K.     **"LMA OPERATOR"** means any person, firm or corporation not under the same or substantially the same ownership, management or control as LICENSEE with whom LICENSEE has entered into a Local Marketing Agreement.

L.     **"Local Marketing Agreement"** means any arrangement between LICENSEE and an LMA OPERATOR that:

      (1)     authorizes the resale by an LMA OPERATOR of the use of the Television Broadcasting facilities of STATION;

      (2)     permits an LMA OPERATOR to provide Programs for all or substantially all of the time STATION is on the air;

      (3)     provides for the sale by an LMA OPERATOR of all or substantially all Announcements broadcast on STATION; and

      (4)     provides that LMA OPERATOR will assume responsibility for the payment of license fees.

M.     **"Locally-Produced Television Program"** means any Non-Network Television Program produced by, or expressly for, LICENSEE.

N.     **"Monthly Blanket License Fee"** means LICENSEE's monthly blanket license fee for the STATION, calculated as follows:

(1)     For each twelve (12) month period during the term of this Agreement, LICENSEE's Monthly Blanket License Fee shall be equal to one-twelfth (1/12) of LICENSEE's Blanket License Fee for that period.

O.     **"Network Announcement"** means any Announcement transmitted by a television network licensed by SOCIETY at the time such Announcement is broadcast on the network, and broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts (sometimes known as "rebroadcasts") over two or more Affiliated Stations of that network.

P.     **"Network Television Program"** means any Program, transmitted by a television network licensed by SOCIETY at the time such Program is broadcast on the network, identified as a Program of the network, and broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts (sometimes known as "rebroadcasts") over two or more Affiliated Stations of that network.

Q.     **"Non-Network Announcement"** means any Announcement broadcast by STATION other than a Network Announcement.

R.     **"Non-Network Television Program"** means any Program broadcast by STATION other than a Network Television Program.

S.     **"Otherwise Licensed Split Work"** means a musical composition: (i) the copyright in which is owned by two or more individuals or entities, or as to which two or more individuals or entities have the right to collect performing rights royalties, at least one of whom is a member of SOCIETY and at least one of whom is not a member of SOCIETY; and (ii) for which LICENSEE has a valid license to perform the composition by Television Broadcasting by STATION either from another U.S. performing rights organization or from a copyright owner or its licensee not a member of SOCIETY.

T.     **"Program"** means all material (visual or otherwise) broadcast by STATION other than Announcements.

U.     **"Revenues Attributable to Non-Network Television Programs"** means, with respect to each Non-Network Television Program broadcast by STATION: (1) amounts billed by STATION for the sale of commercial or Program time, including for political advertisements; (2) the value of trades and barter (*i.e.*, goods and services, including, without limitation, the Program itself) that STATION receives in exchange for commercial or Program time, which value shall be the value STATION attributes to such trades and barter in accordance with its established accounting and tax practices; (3) with respect to a telethon, payments to STATION by the producer of said telethon; and (4) donations to STATION relating to broadcasting activities that are directly attributable to a particular program. For purposes of calculations under

5

Subparagraphs 2.U.(1) and 2.U.(2) hereof, for any given Program, "Revenues Attributable to Non-Network Television Programs" includes revenue received by STATION from (i) commercial Announcements broadcast within such Program and (ii) commercial Announcements preceding such Program which are broadcast after the completion of the prior Program.

V.     **"Source License"** means a license agreement under which the rights to perform music are Cleared At The Source.

W.     **"STATION Web Site"** shall mean Web Site(s) operated by or for STATION as STATION's Web Site(s) and shall include any Web Site(s) that is(are) shared between two or more television stations in the same market, or two or more television stations with a common owner.

X.     **"Syndicated Television Program"** means (i) any Non-Network Television Program supplied to LICENSEE and other television stations by a producer, distributor or television network not licensed by SOCIETY; or (ii) any other Non-Network Program that is not a Locally-Produced Television Program.

Y.     **"Television Broadcasting"** shall mean free, unscrambled, point-to-multipoint over-the-air local broadcasting by means of television.

Z.     **"Through-to-the-Audience License"** means, in reference to the scope of the rights granted under this Agreement, a license that authorizes the transmission and retransmission of any licensed programming to viewers by the means described in Subparagraphs 1.A.(1)-(3) so long as each entity involved in the transmission or retransmission other than LICENSEE has an economic relationship to LICENSEE within the meaning of Section II.S of the ASCAP Consent Decree.  For the avoidance of doubt, nothing in this license shall be construed as authorizing LICENSEE to grant to bars, restaurants, taverns, hotels, retail establishments, and other similar businesses or establishments, the right to perform publicly any of the musical compositions licensed under this Agreement by playing LICENSEES' over-the-air broadcasts on television sets within their physical locations to the public.

AA.     **"Web Site"** shall mean an Internet computer service comprising a series of interrelated web pages registered with a domain name registration service that STATION transmits or causes to be transmitted either directly or indirectly to persons who receive the service over the Internet by means of a personal computer or by means of another device capable of receiving Internet transmissions.

3.     **Right to Restrict**

A.     The members of SOCIETY shall have the right, at any time and from time to time, in good faith, to restrict the Television Broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon such musical comedies, operas, operettas, motion pictures or compositions, in respect of other interests under the copyrights thereof; provided, however, that the maximum number of compositions which may be

at any time thus restricted shall not exceed 750 and moreover that limited licenses will be granted upon application to SOCIETY entirely free of additional charge as to restricted compositions, if and when the copyright owners thereof are unable to show reasonable hazards to their major interests likely to result from such Television Broadcasting; and provided further that such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition; and provided further that in no case shall any charges, "free plugs," or other consideration be required in respect of any permission granted to perform a restricted composition; and provided further that in no event shall any composition, after the initial television broadcast thereof, be restricted for the purpose of confining further television broadcasts thereof to a particular artist, station, network or Program.

B.     SOCIETY reserves the further right, at any time and from time to time, in good faith, to restrict the Television Broadcasting of any compositions, over and above the number specified in Subparagraph 3.A., only as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the repertory of SOCIETY or on a claim by a non-member of SOCIETY or by a member not listed in any current list of SOCIETY's members, as the same may be augmented from time to time, that SOCIETY does not have the right to license the public performance of such composition by Television Broadcasting.

C.     Nothing in Subparagraphs 3.A. and 3.B. shall relieve SOCIETY of its obligation to indemnify LICENSEE, as reflected in Paragraph 10 below, with respect to the performances of any compositions in SOCIETY's repertory, the performance of which SOCIETY has restricted, prior to such time as LICENSEE receives notice from SOCIETY of any such restriction.

4.     **Payments**

A.     In consideration of the license herein granted, LICENSEE agrees to pay to SOCIETY for each calendar month beginning January 1, 2012 and for the remainder of the term of this Agreement, the total of the following fees:

(1)     An Incidental/Ambient Use Fee.  The Incidental/Ambient Use Fee shall be fifteen percent (15%) of LICENSEE's Monthly Blanket License Fee.

(2)     Program Fee.  The Program Fee, inclusive of an administrative fee, shall be equal to one hundred forty-five (145%) of the difference between LICENSEE's Monthly Blanket License Fee and LICENSEE's Incidental/Ambient Use Fee, multiplied by a fraction, the numerator of which shall be "ASCAP Revenues" computed as prescribed in Subparagraph 4.A.(2)(a) below, and the denominator of which shall be LICENSEE's total Revenues Attributable to Non-Network Television Programs from broadcasts on STATION's Main Channel (as defined in Subparagraph 1.A.(1). above) for the month. The mathematical calculation of the Program Fee may be represented as follows:

145% [(Monthly Blanket License Fee – Incidental/Ambient Use Fee)] x   $\underline{\text{ASCAP Revenues}}$
                                                                        Revenues Attributable

7

to Non-Network Television Programs

(a)     For purposes of calculating the Program Fee due SOCIETY hereunder, "ASCAP Revenues" shall comprise:

(i)     one hundred percent (100%) of the month's Revenues Attributable to Non-Network Television Programs from broadcasts on STATION's Main Channel using music from SOCIETY's repertory, other than Programs whose only uses of music from SOCIETY's repertory are Cleared At The Source, or consist solely of Incidental Uses, Ambient Uses (subject to Subparagraph 4.A.(2)(a)(ii) below) or Otherwise Licensed Split Works; *plus*

(ii)    with respect to each episode of a Syndicated Television Program or a First-Run Syndicated Television Program broadcast on STATION's Main Channel for which a cue sheet has not been created or made available to SOCIETY, STATION or COMMITTEE at the time LICENSEE submits its per program license report, or, for which neither LICENSEE nor SOCIETY can otherwise determine whether the music in such Program (other than music Cleared At The Source, Incidental Uses, Ambient Uses or Otherwise Licensed Split Works) is in SOCIETY's repertory, an amount calculated by multiplying the revenues attributable to such episode by: (a) a percentage multiplier (calculated by SOCIETY and verified by COMMITTEE as to the Programs involved and the methodology employed) representing the proportion of the episodes of the specific Program containing music in SOCIETY's repertory (other than music Cleared At The Source, Incidental Uses, Ambient Uses or Otherwise Licensed Split Works); or (b) in the absence of a sufficient number of cue sheets in SOCIETY's or LICENSEE's possession which would enable calculation of such a percentage multiplier, fifty percent (50%) of the revenues attributable to such Program; *plus*

(iii)   one hundred percent (100%) of the revenues attributable to each Locally-Produced Television Program from broadcasts on STATION's Main Channel as to which neither LICENSEE nor SOCIETY can determine whether the music in such program (other than any Ambient Uses) is in SOCIETY's repertory at the time LICENSEE submits its per program license report.

8

B.    For purposes of fee calculations, the length of a television Program shall be the length attributed to the Program in the "Program Index" section of the Nielsen report titled "Viewers in Profile" for STATION's relevant Designated Market Area ("DMA") (hereinafter, the "VIP Report"), pursuant to Nielsen's then-current "Program Names Guidelines." For Programs not included in the "Program Index" section of the VIP Report, where a question as to Program length occurs and SOCIETY and (i) LICENSEE or (ii) COMMITTEE are not otherwise able to agree, a particular period of Television Broadcasting shall be considered one Program if, with respect to such period, any two of the following questions may be answered in the affirmative:

(a)    Is the period referred to by substantially the same title throughout?

(b)    Is the dominant personality the same substantially throughout?

(c)    Is the period presented to the public as a single show notwithstanding that it may have different parts?

(d)    Is the format substantially constant throughout?

C.    (1)    For all periods following execution of this Agreement, LICENSEE shall remit its monthly payment and the monthly report called for by Paragraph 5. herein to SOCIETY on or before the last day of the second (2nd) calendar month following the calendar month to which they are attributable; provided, however, that at any time before LICENSEE's monthly payment is due, LICENSEE may pay an amount equal to 110% of the payment associated with its most recently filed report in lieu of its monthly payment. Such estimated payment shall be credited against the actual fees payable to SOCIETY for the reporting period once LICENSEE has submitted its monthly report pursuant to Paragraph 5.

(2)    If LICENSEE fails to submit its monthly payment or estimated payment as provided in Subparagraph 4.C.(1) above, SOCIETY may collect a late payment charge of one percent (1%) per month (simple interest) calculated from the first day of the second (2nd) calendar month following the calendar month to which such payment is attributable and ASCAP may further assess LICENSEE for reasonable, documented, out-of-pocket costs (exclusive of attorneys' fees) incurred by ASCAP in connection with collecting such amounts.

(3)    If LICENSEE fails to submit both its monthly payment and report within thirty (30) days following the date they are due, SOCIETY may bill LICENSEE for an amount equal to one hundred forty percent (140%) of LICENSEE's Monthly Blanket License Fee for that reporting period. If LICENSEE fails to pay such amount within thirty (30) days of its receipt of a billing statement from SOCIETY, LICENSEE shall pay to SOCIETY a late payment charge of one percent (1%) per month (simple interest) on that amount calculated from the thirtieth (30th) day following LICENSEE's receipt of said billing statement and ASCAP may further assess LICENSEE for reasonable, documented, of out-of-pocket costs (exclusive of attorneys' fees) incurred by ASCAP in connection with collecting such amounts. The payment provisions of this Paragraph shall not apply in circumstances in which LICENSEE is unable to submit its monthly report within the time period reflected in this subparagraph due to "force majeure" (e.g., earthquake, hurricane, fire, flood, terrorist activities).

9

D.     Within eight (8) months after SOCIETY receives LICENSEE's monthly report pursuant to Subparagraph 5.A.(1), SOCIETY shall send LICENSEE an adjusted monthly fee statement ("Adjusted Billing Statement") with an explanation for any adjustment and an electronic cue sheet or similar documentation supporting such adjustment. The Adjusted Billing Statement shall identify the specific Non-Network Television Program(s) and episode(s) in dispute, and the specific nature of the dispute.  The Adjusted Billing Statement shall be in a format agreed upon by SOCIETY and COMMITTEE so as to allow for a computerized transmission to LICENSEE, and to enable LICENSEE to amend its monthly report on the basis of a newly obtained cue sheet or similar documentation as provided in Subparagraphs 6.A.(1) and 6.B. below.

E.     (1)     Where any adjusted monthly fee computed by SOCIETY exceeds the fee reported and paid by LICENSEE, LICENSEE shall remit the payment of any such excess fee within forty-five (45) days of LICENSEE's receipt of an Adjusted Billing Statement unless LICENSEE disputes all or part of such adjusted fee pursuant to the provisions of Subparagraph 4.G. below.

(2)     If any undisputed additional amount due to SOCIETY is not received by SOCIETY within forty-five (45) days of LICENSEE'S receipt of the Adjusted Billing Statement, LICENSEE shall pay to SOCIETY a late payment charge of one percent (1%) per month (simple interest) calculated from the thirtieth (30th) day following LICENSEE's receipt of said billing statement; provided however, that if LICENSEE disputes in good faith an adjustment made by SOCIETY by invoking the provisions of Subparagraph 4.G. below, any such late payment charge shall be calculated as prescribed in Subparagraph 4.G.(4) and ASCAP may further assess LICENSEE for reasonable, documented, out-of-pocket costs (exclusive of attorneys' fees) incurred by ASCAP in connection with collecting such amounts.

F.     (1)     Where the monthly fee reported and paid by LICENSEE exceeds any adjusted monthly fee computed by SOCIETY, SOCIETY shall credit LICENSEE's account for the amount of any such excess fee, or, if LICENSEE so elects, and the amount of such adjustment, net of any other amounts owing by LICENSEE to SOCIETY other than any audit claims, exceeds LICENSEE's Monthly Blanket License Fee, SOCIETY shall, within forty-five (45) days of receiving notification from LICENSEE of such election, refund to LICENSEE the amount of any such excess fee.

(2)     If any such refund or credit is not received by LICENSEE within forty-five (45) days of SOCIETY's receipt of notification by LICENSEE of such election, LICENSEE shall be entitled to receive, in addition to such refund, an additional sum computed at a rate of one percent (1%) per month (simple interest) calculated from the thirtieth (30th) day following SOCIETY's receipt of said election.

G.     (1)     If LICENSEE disputes in good faith any adjusted monthly fee computed by SOCIETY under Subparagraph 4.D. above, LICENSEE shall submit to SOCIETY a post-adjustment review request within forty-five (45) days of its receipt of the pertinent Adjusted Billing Statement. Any such post-adjustment review request made by LICENSEE shall identify the specific Program(s) and episode(s) in dispute, the specific nature of the dispute (including the timely submission of supporting documents that have not already been submitted to SOCIETY),

10

and shall be in a format agreed upon by SOCIETY and COMMITTEE so as to allow for a computerized transmission to SOCIETY.

(2)    Within forty-five (45) days of its receipt from LICENSEE of a post-adjustment review request, SOCIETY shall either: (i) notify LICENSEE that it withdraws the disputed adjustment and/or accepts LICENSEE's amendment(s) to its monthly report; or (ii) maintain the disputed adjustment by submitting to LICENSEE a Post-Adjustment Response, which shall identify the specific program(s) and episode(s) in dispute, the specific nature of the dispute (including the timely submission of any supporting documents that have not already been submitted to LICENSEE), and shall be in a format agreed upon by SOCIETY and COMMITTEE so as to allow for a computerized transmission to LICENSEE or LICENSEE's agent. If SOCIETY's response is based on cue sheets not already made available to LICENSEE, these cue sheets shall be provided to LICENSEE with the Post-Adjustment Response in an electronic format agreed to by SOCIETY and COMMITTEE.

(3)    Upon receipt of a post-adjustment review request from LICENSEE, no late payment charge shall be billed to the account of LICENSEE with regard to that portion of the adjusted monthly fee which is disputed until forty-five (45) days after LICENSEE's receipt of SOCIETY's Post-Adjustment Response as provided in Subparagraph 4.G.(5) below.

(4)    Within forty-five (45) days of its receipt of such Post-Adjustment Response, LICENSEE shall pay any remaining portion of the adjusted monthly fee or advise SOCIETY that it continues to dispute SOCIETY's computation. Any such notice from LICENSEE to SOCIETY shall identify the specific program(s) and episode(s) in dispute, the specific nature of the dispute (including the timely submission of any supporting documents that have not already been submitted to SOCIETY) and shall be in a format agreed upon by SOCIETY and COMMITTEE so as to allow for a computerized transmission. Absent such notice from LICENSEE, if LICENSEE fails to pay any remaining portion of the adjusted monthly fee within forty-five (45) days of its receipt of SOCIETY's Post-Adjustment Response, LICENSEE shall pay to SOCIETY a late payment charge of one percent (1%) per month (simple interest) calculated from the thirtieth (30th) day following LICENSEE's receipt of such Post-Adjustment Response; provided, however, that if LICENSEE continues to dispute in good faith such fee adjustment, a late payment charge shall not accrue on the disputed portion of the adjusted monthly license fee until the thirtieth (30th) day following the resolution of the dispute and ASCAP may further assess LICENSEE for reasonable, documented, out-of-pocket costs (exclusive of attorneys' fees) incurred by ASCAP in connection with collecting such amounts.

(5)    Good faith disputes that are not resolved by the parties pursuant to this Subparagraph 4.G. may be resolved pursuant to the provisions of Paragraphs 9 and 10 of the letter agreement between SOCIETY and COMMITTEE, a copy of which is attached hereto as Exhibit A.

H.    To the extent practicable, SOCIETY shall separately state and clearly identify in any billing statement or other notice of payment due from LICENSEE: (i) any amounts in dispute pursuant to the provisions of Subparagraph 4.G. above; and (ii) any interest or other penalty authorized by this Agreement and claimed by SOCIETY.

11

5.    **Program and Music Use Reports**

    A.    LICENSEE (or a designated agent of LICENSEE) shall furnish to SOCIETY a monthly music use report on or before the last day of the second (2nd) calendar month following the calendar month to which it is attributable. Such report shall set forth on a day-by-day basis, separately for each Non-Network Television Program broadcast by LICENSEE on STATION's Main Channel during the reported month: (i) Program title, including the episode name or episode number; (ii) date of broadcast; (iii) from and to time of broadcast; and (iv) the revenues attributable to the Program. LICENSEE shall also identify, on a day-by-day basis, the periods of time during which STATION (on its Main Channel): (i) broadcast Network Television Programs and (ii) did not broadcast any Programs.

    B.    All monthly music use reports must be submitted using the electronic format and Internet-based delivery transmission methodology, to be agreed upon by ASCAP and the COMMITTEE, and any monthly music use report attempted to be submitted to ASCAP by LICENSEE (or a designated agent of LICENSEE) in any other fashion will be deemed as the non-submission of a monthly music use report, subject to the provisions of Paragraph 4.C.(3). SOCIETY and a representative designated by COMMITTEE shall agree on the specifications and formats of the electronic reports that will be submitted to SOCIETY in order to enable LICENSEE to engage in such electronic reporting. LICENSEE must submit its per program reports and any cue sheets required to be created pursuant to this Agreement employing the agreed upon specifications and means of transmission.

    C.    SOCIETY shall provide LICENSEE with lists of the music content of Syndicated Television Programs (the "Lists") not less often than every month. SOCIETY, however, may adjust LICENSEE's reports and compute LICENSEE's fees based upon the most current music use information available to SOCIETY, whether or not that information has been included in the latest List provided to LICENSEE.  LICENSEE shall endeavor to report Program titles, episode names and/or numbers and music use indicators on its monthly reports in exactly the same manner in which such information appears on the Lists.

    D.    LICENSEE shall furnish to SOCIETY a cue sheet, in the electronic form agreed upon by SOCIETY and COMMITTEE, with respect to each Locally-Produced Television Program that LICENSEE maintains contains no music in SOCIETY's repertory (or in which the only music in SOCIETY's repertory has been Cleared At The Source, is an Incidental Use, Ambient Use, or Otherwise Licensed Split Work which does not result in the payment of a fee under this Agreement).

    E.    (1)    Upon no less than thirty (30) days' advance written notice, LICENSEE shall furnish to SOCIETY copies of videotapes, DVDs, or other electronic media permitting audio-visual transcription in a mutually agreeable format (collectively referred to herein as "Transcriptions") of all of its Locally-Produced Television Programs for a period of one (1) week. SOCIETY shall be permitted to request such Transcriptions for no more than one (1) week per quarter; provided, however, that in the event LICENSEE fails to identify ASCAP repertory music that would generate a Program Fee more than twice within a six (6) month period, SOCIETY may require that LICENSEE maintain Transcriptions of all of its Locally-Produced Television Programs for six (6) months from the date on which LICENSEE receives notice from

SOCIETY.  LICENSEE shall not be obligated to retain such Transcriptions beyond the prescribed six (6) month period.  LICENSEE shall provide a reasonable number of such Transcriptions to SOCIETY in response to requests made by SOCIETY within the prescribed six (6) month period, and subject to the limitation that SOCIETY may request Transcriptions of no more than one (1) week or the equivalent of one (1) week of Locally-Produced Television Programs per month. Such Transcriptions shall be provided to SOCIETY, with suitable identification of the location on them of the Programs to which SOCIETY's request may be directed.  If LICENSEE fails to respond to a timely request from SOCIETY for a Transcription of a Locally-Produced Television Program, LICENSEE shall be required to pay a fee for the Program as if it contained music in SOCIETY's repertory.

(2)     Not more frequently than three (3) times during any consecutive twelve (12) month period, and upon not less than thirty (30) days written notice to LICENSEE, SOCIETY may request that LICENSEE provide SOCIETY with either:  (a) Transcriptions of up to one (1) consecutive week of Syndicated Television Programs the music content of which does not appear on a cue sheet; or (b) Transcriptions of four (4) consecutive episodes of a Program that airs once a week. SOCIETY shall use its best efforts not to request from LICENSEE Transcriptions of Programs for which it has received Transcriptions from other sources.

(3)     If LICENSEE maintains Transcriptions of Syndicated Television Programs, the music content of which does not appear on a cue sheet, SOCIETY may request that LICENSEE provide a reasonable number of Transcriptions to SOCIETY on an as-needed basis.

(4)     Any Transcriptions provided to SOCIETY pursuant to this Agreement are for the exclusive use of SOCIETY in performance of its obligations hereunder. SOCIETY shall not copy, distribute, or otherwise make such Transcriptions available to any entity, other than the COMMITTEE. Upon SOCIETY's completion of its review of such Transcriptions, SOCIETY shall promptly return such Transcriptions to LICENSEE.

F.     With respect to any musical composition that LICENSEE claims is an Otherwise Licensed Split Work, LICENSEE shall identify the performing rights organization or copyright holder that has licensed the performance of said composition.  If LICENSEE claims that the performance is licensed under a blanket license from another performing rights organization, LICENSEE shall represent that it has such a license in effect and, upon SOCIETY's request, shall furnish to SOCIETY a copy of that license or other documentation sufficient to show LICENSEE's authorization to perform the relevant copyrighted work (provided that LICENSEE has not previously provided such license or documentation to SOCIETY).  LICENSEE authorizes SOCIETY to seek to verify from another performing rights organization that LICENSEE has a blanket or per program license in effect with that organization.  If LICENSEE claims that the performance is licensed under a per program license from another performing rights organization, LICENSEE shall represent that it has such a license in effect and, on SOCIETY's request, shall furnish to SOCIETY a copy of that license or other documentation sufficient to show LICENSEE's authorization to perform the relevant copyrighted work (provided that LICENSEE has not previously provided such license or documentation to SOCIETY), and shall furnish to SOCIETY a copy of the relevant portion of LICENSEE's monthly report pursuant to that license showing that the performance has been duly reported and

13

the required fee has been paid to the other performing rights organization. If LICENSEE claims that the performance is licensed directly from a copyright holder or its licensee, LICENSEE shall represent that such a license is in effect and, on SOCIETY's request, shall furnish to SOCIETY the name(s) of the composition(s) so licensed and the identities of the individual(s) from whom such a license was obtained.

G.    (1)    For any music that is Cleared At The Source, LICENSEE shall furnish to SOCIETY, at the time LICENSEE submits its monthly per program report pursuant to Subparagraph 5.A. above and no later than ninety (90) days following the last day of the calendar month to which such music is attributable, written notice of such clearance and a copy of the Source License agreement, including all relevant attachments, exhibits, and amendments, to the extent not previously provided, between the Clearing Entity and LICENSEE pursuant to which LICENSEE has obtained such clearance, from which LICENSEE may, at its option, remove any financial or other proprietary information. If LICENSEE fails to furnish such written notice to SOCIETY within the time period specified in this subparagraph, such music shall not be deemed Cleared At The Source.

(2)    With respect to each Source License obtained from a person or entity who is not a composer or author member of SOCIETY, LICENSEE shall additionally furnish to SOCIETY such information as may be in the possession of LICENSEE as will enable SOCIETY to determine the names of the compositions licensed and the authors, composers, arrangers or publishers of the compositions licensed. In this regard, if the Clearing Entity is a "music library," this obligation shall be satisfied by LICENSEE's identification of the title of the specific track of a compact disc, or other recording containing music from the library, performed by LICENSEE. If the Clearing Entity is a program producer or other authorized licensor of such rights, such obligation shall be fulfilled by LICENSEE's furnishing of a cue sheet for the program in which the licensed compositions appear when SOCIETY does not already possess the cue sheet and makes a request of LICENSEE to provide same. If LICENSEE is unable to supply, or SOCIETY is otherwise unable to obtain, the music use or other information required by this subparagraph, the parties shall have the same rights and obligations as may otherwise be available to them regarding payment and reporting in circumstances in which a Program contains unidentified music, as set forth in Paragraphs 4, 5 and 6 hereof.

H.    For any music that is Cleared At The Source, the parties agree that the following procedures shall apply:

(1)    If SOCIETY has reason to believe that the Source License furnished by LICENSEE pursuant to Subparagraph 5.G.(1) above is or may be legally insufficient to convey music performance rights to LICENSEE, SOCIETY shall so notify LICENSEE, its designated agent, and COMMITTEE within sixty (60) days of SOCIETY's receipt of the Source License in connection with LICENSEE's monthly per program report. If SOCIETY so notifies LICENSEE, LICENSEE shall have sixty (60) days from its receipt of such notice to cure any undisputed legal insufficiency in the Source License. If LICENSEE fails to cure any undisputed legal insufficiency in the Source License within sixty (60) days of its receipt of notice from SOCIETY, the Source License shall be deemed ineffective in conveying music performance rights to LICENSEE as of the date of broadcast of the Program containing a musical work or works purportedly covered by the Source License. If SOCIETY does not notify LICENSEE of

14

any challenge to the legal sufficiency of a Source License within sixty (60) days of its receipt of the Source License in connection with LICENSEE's monthly per program report, the Source License shall be deemed legally sufficient to convey music performance rights to LICENSEE as of the date SOCIETY received the Source License from LICENSEE, subject to Subparagraph 5.H.(2) below.

      (2)     If at some date subsequent to the sixty (60) day period set forth in Subparagraph 5.H.(1) above SOCIETY discovers reason to believe that a Source License furnished by LICENSEE is or may be legally insufficient to convey performance rights to LICENSEE, SOCIETY shall so notify LICENSEE, its designated agent, and COMMITTEE, and LICENSEE shall have sixty (60) days from its receipt of such notice to cure any undisputed legal insufficiency in the Source License. If LICENSEE fails to cure any undisputed legal insufficiency within sixty (60) days of its receipt of notice from SOCIETY, the Source License shall be deemed ineffective in conveying music performance rights to LICENSEE as of the date LICENSEE received notice from SOCIETY pursuant to this subparagraph.

      (3)     If SOCIETY challenges the legal sufficiency of a Source License furnished by LICENSEE, SOCIETY shall communicate with the Clearing Entity by means of a letter or other writing, the contents of which shall be agreed upon by SOCIETY and COMMITTEE, and SOCIETY shall furnish LICENSEE and COMMITTEE with copies of all such correspondence. If, following such written communication, the Clearing Entity disputes that it intended to convey music performing rights to LICENSEE, the parties shall have the same rights and obligations as may otherwise be available to them regarding payment and reporting in circumstances in which a Program contains unidentified music, as set forth in Paragraphs 4, 5 and 6 hereof.

      (4)     In circumstances in which the Clearing Entity is not a composer or author member of SOCIETY, SOCIETY shall have thirty (30) days after having identified the members of SOCIETY whose works are covered by the Source License, to communicate in writing with such members to determine if the Clearing Entity owns, or has been granted, the right to convey music performing rights to LICENSEE, and SOCIETY shall notify LICENSEE, COMMITTEE and the Clearing Entity of such communication. SOCIETY shall notify LICENSEE and the Clearing Entity within thirty (30) days following such written communication, if a member or members of SOCIETY dispute that the Clearing Entity owns, or has been granted, the right to convey music performing rights to LICENSEE, and the basis for any such dispute. If, following such written communication, SOCIETY and LICENSEE or the Clearing Entity are not able to resolve such dispute, the parties shall have the same rights and obligations as may otherwise be available to them regarding payment and reporting in circumstances in which a Program contains unidentified music, as set forth in Paragraphs 4, 5 and 6 hereof.

      (5)     In circumstances in which the Clearing Entity is not a composer or author member of SOCIETY and, in addition, the Clearing Entity asserts it has been granted the right to convey music performing rights to LICENSEE from a third party other than a composer or author member of SOCIETY, and SOCIETY has reasonable cause to believe that said Clearing Entity neither owns, nor has been granted, the right to convey music performing rights to the composition(s) at issue, SOCIETY shall have thirty (30) days after receipt of the Source License to communicate with such third party, by means of a letter or other writing, the contents of which

shall be agreed upon by SOCIETY and COMMITTEE, to determine if such third party has granted the right to convey music performing rights to the Clearing Entity, and SOCIETY shall notify LICENSEE, COMMITTEE and the Clearing Entity of such communication. SOCIETY shall notify LICENSEE, COMMITTEE and the Clearing Entity within thirty (30) days following such written communication, if such third party disputes that the Clearing Entity owns, or has been granted, the right to convey music performing rights to LICENSEE, and the basis for any such dispute. If SOCIETY, LICENSEE, the Clearing Entity and such third party are not able to resolve such dispute, the parties shall have the same rights and obligations as may otherwise be available to them regarding payment and reporting in circumstances in which a Program contains unidentified music, as set forth in Paragraphs 4, 5 and 6 hereof. If such third party shall fail to respond to SOCIETY's written communication within sixty (60) days following such written communication, SOCIETY shall so notify LICENSEE and the Clearing Entity and the parties shall have the same rights and obligations as may otherwise be available to them regarding payment and reporting in circumstances in which a Program contains unidentified music, as set forth in Paragraphs 4, 5 and 6 hereof.

(6)     The disposition of a given dispute pursuant to Subparagraphs 5.H.(3), 5.H.(4), and 5.H.(5) above for purposes of determining the license fees payable under this Agreement shall be without prejudice to the respective rights of LICENSEE and the Clearing Entity arising out of the disputed Source License itself.

(7)     LICENSEE shall have seven (7) months from the time it is notified of a dispute pursuant to Subparagraphs 5.H.(1) above in which to resolve such dispute. Notwithstanding the provisions of Paragraphs 4, 5 and 6 hereof regarding the timing of adjustments to LICENSEE's monthly per program license report, if within this seven (7) month period, it is determined that LICENSEE was in fact granted the right to perform the music which was the subject of the dispute, SOCIETY shall adjust LICENSEE's report for the month in which such music was performed and shall issue a refund or credit to LICENSEE for the amount of any fees previously paid in error on account of such performances.

6.     **Adjustments For Unidentified Music**

A.     If, within eight (8) months from the date on which LICENSEE's per program reports are due or submitted, whichever is later:

(1)     SOCIETY or LICENSEE obtains a cue sheet for a specific episode of a Syndicated Television Program for which such cue sheet previously had not been created or made publicly available, SOCIETY shall adjust LICENSEE's report, and compute, and advise LICENSEE of, any additional fees owing or credit due, based upon the music use reported in such cue sheet; or

(2)     SOCIETY obtains information that a Syndicated Television Program series has a theme in SOCIETY's repertory, SOCIETY, subject to verification by COMMITTEE as to the sufficiency and accuracy of the information upon which SOCIETY is relying in this regard, shall adjust LICENSEE's per program report in accordance with such information; or

(3)     Neither SOCIETY nor LICENSEE has obtained a cue sheet for a First-Run Syndicated Television Program produced by LICENSEE, LICENSEE's parent or by an affiliated company in which LICENSEE or its parent is a majority owner, SOCIETY shall adjust LICENSEE's report, and any fees owing to SOCIETY by LICENSEE, by substituting in the numerator of the Program Fee fraction, set forth in Subparagraph 4.A.(2) above, one hundred percent (100%) of the revenue attributable to the relevant First-Run Syndicated Television Program for the amount which previously had been calculated for the Program under Subparagraph 4.A.(2)(a)(ii); or

(4)     Neither SOCIETY nor LICENSEE has obtained a cue sheet for a Syndicated Television Program (other than those First-Run Syndicated Television Programs covered under Subparagraph 6.A.(3) above), SOCIETY shall adjust LICENSEE's report, and any fees owing to SOCIETY by LICENSEE, by substituting in the numerator of the Program Fee fraction, set forth in Subparagraph 4.A.(2) above: (a) a percentage multiplier (calculated by SOCIETY and verified by COMMITTEE as to the Programs involved and the methodology employed, and based on all cue sheets for such Program available at the time of the adjustment) representing the proportion of episodes of the specific Program containing music in SOCIETY's repertory multiplied by the revenues attributable to such Program; or (b) in the absence of a sufficient number of cue sheets in SOCIETY's or LICENSEE's possession which would enable calculation of a percentage multiplier, fifty percent (50%) of the revenues attributable to such Program, for the amount which previously had been calculated for the Program under 4.A.(2)(a)(ii).

(5)     Neither SOCIETY nor LICENSEE has obtained a cue sheet for a Syndicated Television Program, some of the episodes of which contain music that is Cleared At The Source, SOCIETY shall adjust LICENSEE's report, and any fees owing to SOCIETY by LICENSEE, by substituting in the numerator of the Program Fee fraction, set forth in Subparagraph 4.A.(2) above, a percentage multiplier (calculated by SOCIETY and verified by COMMITTEE as to the Programs involved and the methodology employed, and based on all cue sheets for such Program available at the time of the adjustment) representing the proportion of episodes of the specific Program containing ASCAP music that has not been Cleared At The Source multiplied by the revenues attributable to such Program. For example, if there are one hundred (100) cue sheets available for a Program described in this subparagraph, and twenty (20) of those cue sheets reflect the use of ASCAP music not Cleared At The Source, SOCIETY would substitute in the numerator of the Program Fee fraction an amount equal to twenty percent (20%) of the revenues attributable to such Program.

B.     If, within thirty (30) days from the date on which a LICENSEE's per program report is due, LICENSEE determines that it is able to furnish a cue sheet for a specific Locally-Produced Television Program for which no cue sheet was originally submitted with such report, LICENSEE shall submit within the same thirty (30)-day period a revised report based on such cue sheet, and SOCIETY shall accept the LICENSEE's revised report, and compute, and advise LICENSEE of, any additional fees owing or credit due, based upon the music use reported in such cue sheet.

C.     Subject only to the audit rights described in Paragraph 7. below, SOCIETY shall complete its review of LICENSEE's monthly per program report, and any adjustments thereto,

17

within eight (8) months from the date it is due or submitted, whichever is later. At the request of SOCIETY, LICENSEE shall furnish to SOCIETY a copy of those portions of such logs or other records as are required for SOCIETY to review the accuracy of information contained in LICENSEE'S per program license reports. If SOCIETY has not completed its review and adjustment of LICENSEE's per program report within this eight (8) month time period, all Program and music content identifications contained therein shall be treated as accurate, except as provided in Subparagraphs 6.A.(3)-(5) above.

7.  **Audits**

A.    Upon at least ten (10) business days' written notice to LICENSEE, SOCIETY shall have the right to examine, at any time during customary business hours, the Program logs, books and records of account, and all other records of LICENSEE only to such extent as may be necessary to verify any of the financial information contained in LICENSEE's per program reports. The records subject to examination shall include any documents pursuant to which LICENSEE has obtained music performance rights to music that is Cleared At The Source, except to the extent that such documents have previously been provided to SOCIETY by LICENSEE. SOCIETY shall consider all data and information coming to its attention as a result of any such examination of logs, books and records as completely and entirely confidential.

B.    SOCIETY shall complete any audit of the financial information contained in any monthly per program report by no later than two (2) years after the conclusion of the adjustment process described in Paragraph 4. above, which shall be deemed to include the final resolution of any dispute pursuant to the provisions of Paragraph 10 of the letter agreement between SOCIETY and COMMITTEE, which is attached hereto as Exhibit A.

C.    Upon SOCIETY's request, LICENSEE shall furnish to SOCIETY a description of the methodology used by LICENSEE to attribute a value to trades and barter in accordance with its tax and accounting practices. LICENSEE shall thereafter furnish to SOCIETY a description of any changes to such methodology which may occur during the term of this Agreement. Should SOCIETY believe that the methodology utilized by LICENSEE does not comport with generally accepted accounting principles (or otherwise believe that LICENSEE'S reporting practices under this Paragraph 7. warrant it), SOCIETY shall have the right, upon notice to COMMITTEE, to refer this matter to Magistrate Judge Michael H. Dolinger for determination (or, if such reference is not possible, the judge with supervisory authority over the ASCAP Consent Decree).

D.    In the event that SOCIETY's audit of LICENSEE discloses that LICENSEE has underpaid license fees due SOCIETY:

(1)    LICENSEE shall pay a finance charge on such additional license fees of one percent (1%) per month (simple interest) with respect to any additional license fees owing, computed: (a) in circumstances in which underpayments for the audited period exceed fifteen percent (15%) of the total fees owing, from the date(s) such fees should have been paid pursuant to this Agreement; or (b) in circumstances in which underpayments for the audited period are less than or equal to fifteen percent (15%) of the total fees owing, beginning thirty (30) days after the date SOCIETY bills such additional license fees to LICENSEE. In addition, subject to the

separate provisions of 7.D.(2) and 7.D.(3) below that govern the conduct of audits and resolution of audit disputes, ASCAP may further assess LICENSEE for reasonable, documented, out-of-pocket costs (exclusive of attorneys' fees) incurred by ASCAP in connection with collecting such amounts.

(2)     If LICENSEE disputes all or part of SOCIETY's claim for additional fees pursuant to an audit, LICENSEE shall, within thirty (30) days from the date SOCIETY bills such additional fees: (i) advise SOCIETY, in writing, of the basis for such dispute; and (ii) pay to SOCIETY any fees indisputably owed together with any applicable finance charges on additional fees indisputably owed in accordance with Subparagraph 7.D.(1) above. If LICENSEE, in good faith, disputes all or part of the additional fees SOCIETY has billed pursuant to this Paragraph 7., no finance charges shall be billed with respect to such disputed fees for the period beginning on the date SOCIETY bills such disputed fees and ending sixty (60) days from the date SOCIETY responds to LICENSEE's written notification of the existence of a dispute.

(3)     Finance charges computed in accordance with this Paragraph 7. and pertaining to additional fees which LICENSEE disputes in accordance with Subparagraph 7.D.(2) above shall be adjusted pro-rata to the amount to be paid pursuant to the resolution of the dispute.

8.     **Local Marketing Agreement**

A.     If LICENSEE is, or becomes, a party to a Local Marketing Agreement, LICENSEE and the LMA OPERATOR shall execute a letter to SOCIETY, in the form attached as Exhibit C and made a part of this Agreement, requesting amendment of this License Agreement to add the LMA OPERATOR as a party. When such a letter has been fully executed by LICENSEE, the LMA OPERATOR and SOCIETY, this Agreement shall be deemed amended accordingly.  By signing Exhibit C, the LMA Operator becomes a party to this Agreement and shall assume, with LICENSEE, all of the rights and obligations set forth in this Agreement for the full period for which the Local Marketing Agreement is in effect.

B.     In the event LICENSEE is a party to a Local Marketing Agreement, and a dispute arises between SOCIETY and either the LMA OPERATOR or LICENSEE as to whether LICENSEE or the LMA OPERATOR is responsible for the performance of any of the obligations arising under this Agreement, SOCIETY shall be entitled to receive, upon request, a copy of the portion of such agreement as sets forth the respective obligations of LICENSEE and the LMA OPERATOR regarding the payment of fees, accountings, recordkeeping and administrative responsibilities, or, if LICENSEE so elects, a copy of the entire Local Marketing Agreement.

9.     **Breach or Default**

Upon LICENSEE'S breach or default of any payment, accounting or substantive reporting obligations required under the terms of this Agreement, SOCIETY may give LICENSEE thirty (30) days' notice in writing to cure such breach or default, and in the event that such breach or default has not been cured within thirty (30) days of said notice, SOCIETY may then terminate this license.

10.     **Indemnity Clause**

SOCIETY agrees to indemnify, save and hold harmless, and to defend LICENSEE, its sponsors and their advertising agencies, and its and their officers, employees, and artists, and each of them, from and against any claims, demands, or suits that may be made or brought against them or any of them with respect to the performances under this Agreement of any compositions in SOCIETY's repertory that are written or copyrighted by members of SOCIETY. LICENSEE agrees to give SOCIETY immediate notice of any such claim, demand, or suit and agrees immediately to deliver to SOCIETY all papers pertaining thereto.  SOCIETY shall have full charge of the defense of any such claim, demand, or suit and LICENSEE shall cooperate fully with SOCIETY in such defense.  LICENSEE, however, shall have the right to engage counsel of its own at its own expense who may participate in the defense of any such action. SOCIETY agrees at the request of LICENSEE to cooperate with and assist LICENSEE, its advertisers and their advertising agencies and its and their officers, employees, and artists in the defense of any action or proceeding brought against them or any of them with respect to the performance of any musical compositions contained in SOCIETY's repertory, but not copyrighted or written by members of SOCIETY.  This Paragraph 10. shall not apply to performances of any works that have been designated as restricted under Paragraph 3. of this Agreement.

11.     **Rights of Termination**

A.     In the event of the termination or suspension of the governmental licenses covering STATION or any substantial alteration or variation of the terms and conditions thereof, or any major interference with the operations of STATION due to governmental measures or restrictions, LICENSEE shall have the right to terminate this Agreement upon seven (7) days' notice. Upon termination, this Agreement shall no longer remain in effect and the parties shall be relieved of all obligations arising hereunder from the date of termination.

B.     In the event of:

(1)     any major interference with the operations of SOCIETY in the state, territory, dependency, possession or political subdivision in which STATION is located, by reason of any law of such state, territory, dependency, possession or political subdivision; or

(2)     any substantial increase in the cost to SOCIETY of operating in such state, territory, dependency, possession or political subdivision, by reason of any law of such state, territory, dependency, possession or political subdivision, which is applicable to the licensing of performing rights,

SOCIETY shall have the right, upon notice to COMMITTEE and upon a showing that the matters referred to in Subparagraphs 11.B.(1) and 11.B.(2) above affect the licensing of performing rights under this Agreement, to apply to the judge with supervisory authority over the ASCAP Consent Decree for whatever relief SOCIETY deems appropriate.

12.   **Successors and Assigns**

This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns, but no assignment shall relieve the parties hereto of their respective obligations hereunder as to performances broadcast, acts done and obligations incurred prior to the effective date of the assignment.

13.   **Notices**

Any notice filed under this Agreement shall be in written form, or in a form mutually agreed upon by SOCIETY and COMMITTEE, and shall be sent to LICENSEE (or a designated agent of LICENSEE). All notices required or permitted to be given by either of the parties to the other hereunder shall be duly and properly given if: (a) mailed to the other party by registered or certified United States mail; (b) sent by generally recognized same-day or overnight delivery service; (c) mailed by first class United States mail; or (d) sent by electronic transmission (i.e., electronic mail, facsimile or similar transmission), provided that the electronic transmission is followed by a hard copy and receipt of the notice is acknowledged.

14.   **Blanket License**

The "Local Station Blanket Television License," coterminous with this License, is being offered to LICENSEE simultaneously with this Agreement. During the term of this Agreement, LICENSEE may switch from a per program to a blanket license, or from a blanket to a per program license, as of the first day of a month, prospectively on thirty (30) days' written notice to SOCIETY.  LICENSEE may so elect to change its license status up to twice in any given twelve (12) month period during the term of this License.

15.   **Confidentiality**

A.     SOCIETY shall treat as confidential, and shall not disclose to any third party (other than its employees, directors, and officers, in their capacity as such, on a need-to-know basis, and other than as set forth in subparagraph B below), any financial or other proprietary documents or information provided to SOCIETY by LICENSEE in connection with this Agreement.

B.     SOCIETY is hereby authorized to provide to COMMITTEE such of LICENSEE's financial or other proprietary documents or information, provided to SOCIETY pursuant to this Agreement, as the COMMITTEE may request in connection with its representation of the local television industry in future negotiations with SOCIETY, future rate court proceedings, litigation, or disputes over the implementation or interpretation of this Agreement, unless LICENSEE notifies SOCIETY in writing to the contrary.

16.   **Without Prejudice**

The parties are entering into this Agreement without prejudice to any arguments or positions they may assert in any future rate proceeding or other litigation concerning what constitutes reasonable blanket and per program license fees and terms for the local television industry or, in SOCIETY's case, as to any other licensee. The definition of Ambient Uses is for

purposes of this Agreement only and is being agreed to without prejudice to any positions either party may take in any future litigation or negotiation, including positions with respect to whether or which specific uses of music constitute "fair uses" under 17 U.S.C. §§ 101 et seq. The inclusion of donations in the definition of Revenues Attributable to Non-Network Television Programs is for purposes of this Agreement only and is being agreed to without prejudice to any positions either party may take in any future litigation or negotiation.

17.    **Applicable Law**

This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within such State.

IN WITNESS WHEREOF, this Agreement has been duly executed by SOCIETY and LICENSEE this _____ day of _____, 2012, as of the __ day of _____, 2012.

| _____  LICENSEE | AMERICAN SOCIETY OF COMPOSERS AUTHORS AND PUBLISHERS |
|---|---|
| | |
| | |
| By: _____ | By: _____ |
| | |
| Title: _____ | Title: _____ |

**EXHIBIT A**

July 27, 2012

Mr. John LoFrumento
American Society of Composers, Authors and Publishers
One Lincoln Plaza
New York, New York 10023

          Re:    ASCAP - Local Television Station
                Blanket and Per Program Licenses

Dear John:

        This letter sets forth the agreement reached between the American Society of Composers, Authors and Publishers ("ASCAP") and the Television Music License Committee, LLC (the "Committee") with regard to: (i) settlement of *In re Application of Duhamel Broadcasting Enterprises, et al.* 11 Civ. 9311 (DLC) *related to U.S. v. ASCAP*, 41 Civ. 1395; and (ii) fees and terms under the ASCAP - Local Television Station Blanket and Per Program License Agreements covering the period January 1, 2010 through December 31, 2016 (collectively the "Licenses"). This letter agreement is expressly incorporated in Subparagraph 1.G. of the Licenses, and is binding upon the parties hereto and upon the signatories to the Licenses.

        The parties agree as follows:

        1.     The interim agreement between the parties shall remain in effect through the date of the Final Order terminating the pending proceeding referred to above. All interim fees payable for the period January 1, 2010 through December 31 , 2011 shall become final, except that interim per program license fees that are subject to adjustment pursuant to paragraphs 4 and 6 of the per program license for the term ending December 31, 2009 shall remain subject to such adjustment.

        2.     Industry-wide Blanket License fees for all commercial local television stations licensed under the Licenses by ASCAP shall equal:

                January 1, 2012 - December 31, 2012 -- $91.5 million;

                January 1, 2013 - December 31, 2013 -- $91.5 million;

                January 1, 2014 - December 31, 2014 -- $91.5 million;

                January 1, 2015 - December 31, 2015 -- $92.0 million;

                January 1, 2016 - December 31, 2016 -- $92.0 million.

3.      ASCAP and the TMLC anticipate that the actual annual industry-wide Blanket License fees payable by Licensees may be higher (or lower) than Industry-wide Blanket License fees stipulated above for a given year as a result of changes in the total number of individual local television stations licensed pursuant to either the LOCAL STATION BLANKET TELEVISION LICENSE or the LOCAL STATION PER PROGRAM TELEVISION LICENSE. In the event that the Blanket License fees payable by Licensees for any given calendar year are greater (or less) than the Industry-wide Blanket License fees stipulated above for that calendar year (exclusive of penalties payable by per program licensed stations pursuant to 4.C.(3) of the LOCAL STATION PER PROGRAM TELEVISION LICENSE and late payment charges pursuant to 4.C.(2) of the LOCAL STATION PER PROGRAM TELEVISION LICENSE or late payment charges pursuant to 5.C. of the LOCAL STATION BLANKET TELEVISION LICENSE) such overpayment (or underpayment) will be deducted from (or added to) the Industry-wide Blanket License fee in the following calendar year.

4.      Each local television station's Blanket License fees shall be determined in accordance with the provisions of the license fee allocation formula determined by the Committee and attached as Exhibit B to the Blanket License and Exhibit B to the Per Program License.

5.      Each year during the term of the Licenses, ASCAP shall provide to the Committee a list of current ASCAP-licensed local television stations. The list of licensees shall be delivered to the Committee, in electronic form, on or before September 15 of each year during the term. For each licensee, ASCAP shall provide the following information: (i) current station call letters; (ii) designated market area ("DMA"); (iii) state; (iv) FCC identification number; (v) ASCAP account number; (vi) channel position; (vii) station owner; (viii) network affiliation (if any); and (ix) previous call letters (if any) if contained in any database within ASCAP's control. For each newly-licensed station appearing on the list, ASCAP shall also provide: (i) signed status; (ii) date license was signed; (iii) date of first payment; and (iv) effective date of license. Any licensee added to the list between September 16 of any given year and September 15 of the following year will be included in the allocation formula the following year. In the interim, such stations will be billed at the minimum fee for their respective DMAs. ASCAP shall clearly identify in each list any licensees added to or deleted from the previous list. Without limiting ASCAP's right to terminate the Licenses pursuant to Paragraph 9 of the Per Program License and Paragraph 7 of the Blanket License, ASCAP may not delete a station from the list of licensees for failure to make payments under this agreement absent a court order.

6.      In addition to the list of ASCAP-licensed stations described in Paragraph 5 above, ASCAP shall provide to the Committee no less frequently than once per quarter, in electronic form, a list of current per program licensees identified by call letters, DMA, and per program license effective date.

7.      For each of the years 2011 - 2016, within sixty (60) days of receipt of a written request from the Committee, ASCAP shall provide to the Committee, in electronic form, cue sheets for a statistically significant and representative sample of programs, as selected by an independent third party chosen by the Committee, for use solely in connection with the Committee's study of music use by the local television industry. The Committee may use the results of any such music use study in connection with any negotiation, arbitration, or litigation

2

with ASCAP, BMI, SESAC, or any other performing rights organization, or for any other reasonable purpose; provided, however, that the Committee shall not otherwise publicly disclose the results of any such study without ASCAP's prior approval.

8.    The Second Circuit Court of Appeals, having ruled in the *DMX* proceeding that ASCAP is required to offer to music users (as defined in AFJ2) an adjustable-fee blanket license with a fee structure that accounts for performances otherwise licensed from ASCAP members ("AFBL"), ASCAP will offer such a license to local television stations with a start date effective January 1, 2015, with the specifics of a credit mechanism to be negotiated in good faith between ASCAP and the TMLC by September 11, 2012 or by a date mutually agreed upon by the parties.  If the parties cannot agree on the specifics of such a license, either ASCAP or the Applicants may apply to Magistrate Judge Dolinger for resolution of the issue(s).

9.    At least once every six months, ASCAP and the Committee (or its designated representative) shall meet in good faith to resolve any outstanding billing, payment, or reporting disputes between ASCAP and any Licensee.  Any good faith dispute that is not resolved during such meetings may be submitted to arbitration as provided in Paragraph 11 below.

10.    If ASCAP and the Committee (or its designated representative) are unable to resolve one or more good faith disputes pursuant to Paragraph 9 above, and, in the judgment of ASCAP and/or the Committee, such outstanding disputes affect a significant number of Licensees and/or involve a substantial dollar amount, such outstanding disputes shall be finally determined and resolved by a neutral arbitrator.  The arbitrator shall be selected jointly by ASCAP and the Committee and appointed for a two (2) year period commencing on January 1, 2014.  If the parties are unable to agree upon an arbitrator by December 1, 2013, selection of an arbitrator shall be conducted pursuant to the rules of the American Arbitration Association.  If an arbitrator is unable to fulfill his or her term for any reason, the parties shall, within a reasonable time period, jointly select a new arbitrator to complete the term. If either ASCAP or the Committee submits one or more outstanding good faith disputes to arbitration pursuant to this paragraph, it shall so notify the arbitrator and the opposing party.  Each party shall have thirty (30) days from the date of such notice to submit a statement of claim, and any supporting documentation, to the arbitrator and to the other party setting forth the party's positions regarding the dispute(s) at issue in the arbitration; provided, however, that the deadline for submission of a statement of claim may be extended up to thirty (30) days at the discretion of the arbitrator upon a showing of good cause by either party. The statements of claim shall not exceed ten double-spaced pages in length (exclusive of any supporting documentation).  The arbitrator shall have thirty (30) days from his or her receipt of the statements of claim to issue a written decision adopting one of the two positions put forth by the parties with respect to each disputed issue under arbitration, and to determine a just division of costs between the parties as the arbitrator may deem appropriate. The arbitrator's decision shall be final. The arbitrator shall not have authority to award punitive damages, attorneys' fees or expenses to either party.  In no event shall either party submit to arbitration any good faith dispute that the parties have not yet attempted to resolve themselves pursuant to Paragraph 10 above.

11.    If, during the term of the Licenses, any dispute arises between ASCAP and any Licensee concerning the interpretation of any of the provisions of this letter agreement or the

3

Licenses which, in the judgment of ASCAP and/or the Committee, has or may have industry-wide impact, ASCAP and the Committee shall first endeavor to resolve such dispute, failing which either party may refer the matter to Magistrate Judge Michael H. Dolinger for determination (or, if such a reference is not possible, to the judge with supervisory authority over the ASCAP Consent Decree). In the event of such a reference, either party, as a preliminary matter, shall be entitled to assert that the dispute between them is not properly dealt with under the terms of this provision.

12. If, during the term of the Licenses, ASCAP elects to license an entity agreed or determined to be a broadcast television "network" previously unlicensed by ASCAP, whose network programs are carried by local television stations licensed by ASCAP, such as Fox, appropriate adjustments shall be made to the license fees payable by local television station licensees consistent with the Opinions and Orders of Judge William Conner dated January 3, 1995 and January 27, 1995 in *U.S. v. ASCAP: Application of Fox Broadcasting Company and Fox Television Stations, Inc.* ASCAP and the Committee shall confer and attempt to reach agreement concerning the amount of any such fee adjustments and such agreement shall be binding on all licensees. If ASCAP and the Committee shall fail to agree on such fee adjustments, either party may refer the matter to Magistrate Judge Michael H. Dolinger for determination (or, if such a reference is not possible, to the judge with supervisory authority over the ASCAP Consent Decree).

13. The Committee shall treat as confidential any station's financial or other proprietary information or documents provided to it by ASCAP pursuant to the Local Television Station Per Program License Agreement ("Confidential Information"). The Committee shall limit access to Confidential Information to the Committee's staff, representatives and counsel, and shall not disclose Confidential Information to any third party or to any Committee member, other than a Committee member who is employed by the station or station group that provided Confidential Information to ASCAP, provided, however, that if the Committee is served with a subpoena or other legal notice compelling the production of any such Confidential Information, the Committee shall be required to give prompt written notice to ASCAP and the station or station group that provided the Confidential Information to ASCAP of such subpoena or other notice. ASCAP and/or the station or station group that provide the Confidential Information shall inform the Committee in writing within seven (7) days of receiving written notification of a subpoena or other legal notice of its intention to object to such production, in which event ASCAP and/or the station or station group shall bear the burden of opposing such production. If the subpoena requires a response or compliance in fewer than fourteen (14) days, the Committee will inform ASCAP and the station or station group in writing within three (3) days of receiving the subpoena, and ASCAP and/or the station or station group must inform the Committee of its intention to oppose the production no later than five (5) days before compliance is called for.

14. ASCAP and the Committee are entering into this agreement without prejudice to any arguments or positions they may assert in any future rate proceeding or other litigation concerning what constitutes reasonable blanket and per program license fees and terms for the local television industry or, in ASCAP's case, as to any other licensee.

4

Please indicate your agreement to the above by signing on the line provided below.

Very truly yours,

s/ Charles Sennet
Charles Sennet
Chairman
Television Music License Committee, LLC

s/ John A. LoFrumento
John A. LoFrumento
Chief Executive Officer
American Society of Composers
Authors and Publishers

EXHIBIT B

**Television Music License Committee
Methodology for ASCAP License Fee Allocation for the Period
From January 1. 2012 through December 31, 2016**

The Industry-wide Blanket License fees for all commercial local television stations licensed under the ASCAP-Local Television Station Blanket License Agreements covering the period January 1, 2012 through December 31, 2016 (the "licensed television stations"), shall be allocated among the licensed television stations as follows (subject to revision pursuant to the provisions of Paragraph 10 below):

STEP 1:  Allocation of Industry-Wide Fee Among DMA Markets

For each of the years 2012, 2013, 2014, 2015, and 2016 ("Contract Periods"), each Nielsen DMA television market is to be assigned its gross allocable share of the Industry-wide Blanket License fee (as set forth in Paragraph 2 of the July 27, 2012 letter agreement between the Television Music License Committee (the "Committee") and ASCAP) in proportion to its percentage of the total number of weighted Qualified Viewing Households throughout the U.S. in an average quarter-hour during nine sweeps months over the course of the previous three years.

1.      The number of Qualified Viewing Households will be computed for each licensed television station for the Contract Period based upon average quarter hour household viewing data, Sunday through Saturday, 9 a.m. through midnight, compiled by Nielsen during nine sweeps months over the previous three years[1].  The Qualified Viewing Households attributable to each DMA market shall be calculated by multiplying the average quarter hour viewing households for all licensed stations in the market by 420 (the number of quarter hours between 9 a.m. and midnight in one week).

2.      For each of the Contract Periods, the number of Market Qualified Viewing Households in each of the roughly 210 DMA markets as measured by Nielsen[2] is to be "weighted" as follows:

---

[1]   Qualified Viewing Households for the Contract Periods 2012 through 2016 will be based upon data compiled by Nielsen for the nine November, February and May sweeps months prior to July 1 of the year preceding the Contract Period.  A Qualified Viewing Household is defined as a viewing household for a station licensed by ASCAP for the Contract Period for which the allocation is being calculated.

[2]   The number of Market Qualified Viewing Households in Puerto Rico shall be determined based upon data provided by Nielsen, or some other comparable provider of household audience information.  The number of Market Qualified Viewing Households in the Virgin Islands and Guam (or in any other market or territory in which household audience information is unavailable) shall be determined by calculating the number of television households in the U.S. as a percentage of the total U.S. population; multiplying that percentage by the population of the market for which audience information is unavailable to derive the number of television households in the market; and multiplying the resulting number by a fraction the numerator of which is the number of licensed stations in the market and the denominator of which is the total number of stations in the

| DMA Markets 1 - 10 | Multiply by 1.21 |
| DMA Markets 11 – 25 | Multiply by 1.05 |
| DMA Markets 26 – 50 | Multiply by 0.92 |
| DMA Markets 51 – 75 | Multiply by 0.85 |
| DMA Markets 76 - 100 | Multiply by 0.85 |
| DMA Markets 101 - 125 | Multiply by 0.80 |
| DMA Markets 126 plus | Multiply by 0.75 |

The purpose of the weighting is to reflect, within broad parameters, that a household in a smaller market does not represent the same value as a household in a larger market.

      3.     For each Contract Period, each market is to be assigned its share of the industry's overall blanket license fee by the following procedure:  The Market Qualified Viewing Households in the DMA market will be multiplied by the weight set forth in Paragraph 2 above for that DMA market to determine the weighted number of Market Qualified Viewing Households for the DMA market.  Thus, for example, the top ten markets in terms of three-year households average will receive a 1.21 multiple.  Each market's weighted Market Qualified Viewing Households number is to be divided by the total U.S. weighted market Qualified Viewing Households to derive a percentage of U.S. weighted Market Qualified Viewing Households for each market.  This weighted percentage is then applied to the industry-wide blanket license fee.  Thus, if the weighted percentage of total U.S. Market Qualified Viewing Households for DMA market "x" is one percent, DMA market x's share of the industry-wide $91,500,000 fee for the January 1, 2012 through the December 31, 2012 Contract Period would be $91,500,000 x 1%, or $915,000.00.

<u>STEP 2: Allocation of Blanket License Fees to Stations Within Each Market</u>

      4.     Each station's percentage share of the DMA market blanket license fee shall be calculated as follows: Station Qualified Viewing Households for stations affiliated with networks licensed by ASCAP (currently the ABC, CBS, NBC, Univision, and TeleFutura television networks) shall be calculated by multiplying the station's average quarter hour viewing households by 420 (the number of quarter hours between 9 a.m. and midnight in one week); and subtracting one hundred percent (100%) of the station's average prime-time DMA viewing households (which equals the station's average prime-time DMA quarter hour households times 88 (the number of quarter hour units in prime time in one week)).[3]  Station Qualified Viewing Households for stations not affiliated with networks licensed by ASCAP shall

---

market.  For purposes of assigning an allocable share of the industry-wide blanket license fee to television markets in the Virgin Islands, Guam and Puerto Rico, the number of Market Qualified Viewing Households in each of these markets is to be given the same weight as the Nielsen DMA that most closely approximates the number of Market Qualified Viewing Households in these markets.

[3]    For example, on the East Coast, prime-time occupies Monday – Saturday, 8:00 – 11 p.m. and Sunday, 7:00 – 11:00 p.m.

be calculated by multiplying the station's average quarter hour viewing households by 420. A station's percentage share of the DMA market blanket fee shall be calculated by dividing its Station Qualified Viewing Households number by the total Station Qualified Viewing Households for all stations in that DMA market and multiplying the resulting percentage by the DMA market blanket license fee (reduced by the amount of any minimum fees assigned to stations in the market pursuant to paragraph 5 below).[4]

5.     Stations whose ratings are not reported by Nielsen during the relevant period shall be assigned a minimum blanket license fee equal to the greater of 0.25 percent of the allocable blanket license fee for its market or an annual blanket license fee of $540 (or $45 per month for partial years) ("Minimum Blanket License Fee"). The fees assigned to a DMA market pursuant to Step 1 above shall be reduced by the amount of any Minimum Blanket License Fees assigned to stations in that DMA market, and the balance of that DMA market's share of the industry-wide fee shall be allocated among the remaining licensed stations in that DMA market based on the methodology set forth in Step 2 hereof. If, by way of example, the blanket license fee allocated to market "k" is $300,000, and there are operating in market "k" two stations whose ratings are not reported by Nielsen, each of those stations would be assigned a blanket fee of $750 ($300,000 x .0025). The remaining stations in market "k" would pay their appropriate percentages, not of $300,000, but of $298,500.

STEP 3: Adjustment to Reflect Equitable Distribution of the Administrative Costs Incurred by the Television Music License Committee

6.     For each Contract Period, the Committee shall determine: a) the total contributions to be requested from the television industry for its costs of administering the ASCAP-Local Television Station Blanket and Per Program License Agreements (the "ASCAP Licenses") and the Committee's ongoing representation of the television industry in regard to music performance licenses; and b) the percentage (the "Contribution Percentage") and amount (the "Contribution Amount") of these total contributions to be requested from each station licensed under the ASCAP Licenses. The contributions requested by the Committee for a given Contract Period shall be payable by stations between April 1 of the relevant Contract Period and March 31 of the subsequent Contract Period or as otherwise determined by the Committee, but in no event later than June 30 of the subsequent Contract Period (the "Contribution Period").

7.     Upon the expiration of a Contribution Period, the Committee shall calculate a contribution adjustment for each ASCAP licensed station by: a) multiplying the station's Contribution Percentage for the relevant Contract Period by the total contributions actually received by the Committee during the Contribution Period (the "Adjusted Contribution Amount"); and b) calculating the difference between the actual amount paid by each station during the Contribution Period and the station's Adjusted Contribution Amount (the "Allocation Credit/Debit").

---

[4]     The fees for each of the licensed stations in the Virgin Islands and Guam shall equal the amount of the industry-wide fee assigned to the market divided by the total number of licensed television stations in that market.

3

The Allocation Credit/Debit for the Contribution Periods ending in 2010 and 2011 have already been processed on the accounts of applicable stations. No further adjustment will be made for those Contribution Periods.

A station's Allocation Credit/Debit for each Contribution Period ending in the Contract Periods 2012 through 2016 shall be processed on the accounts of applicable stations in December of each Contract Year, provided that the Committee provides ASCAP the amount of the Allocation Credit/Debits for the Contract Period no later than October 31 of the year in which the adjustment is to be made.

The result of this adjustment is that a station that pays to the Committee for any given Contract Period its full Contribution Amount (or any sum greater than its Adjusted Contribution Amount) will receive a credit against its ASCAP fees, and any station that does not pay any portion of its Contribution Amount (or pays a sum less than its Adjusted Contribution Amount) to the Committee for any given Contract Period will pay additional ASCAP fees.

8.     If, during a given Contract Period, ASCAP enters into a license agreement with a television station that was not previously licensed (a "New Television Station"), such station shall pay the minimum monthly fee of forty-five dollars ($45.00) for the remainder of the Contract Period following the effective date of its license agreement. The fees payable by all stations in the New Television Station's market in the following Contract Period shall be reallocated in the manner set forth above without any increase in the total fee amount otherwise allocable to the relevant market.

9.     Once a station's allocated fee has been calculated for a given Contract Period, there shall be no further adjustment to that station's fee for the duration of that Contract Period; provided however that if the station was assigned in error a blanket license fee that was higher or lower than it should have been assigned pursuant to the methodology set forth above, such over-allocation or under-allocation amount shall be factored into the fees allocated to the station for the subsequent Contract Period.

10.     If during the term of the ASCAP-Local Television Station Blanket and Per Program Licenses, the Committee determines that there is good cause to revise the allocation methodology set forth above in any manner, the Committee may refer the matter to Magistrate Judge Michael H. Dolinger (or if such reference is not possible, to the judge with supervisory authority over the ASCAP consent decree) to request approval of any proposed revisions to this methodology. The Committee shall make such a request at a public hearing (written notice of which will be provided to ASCAP and to all licensed television stations no less than thirty days in advance of the hearing) at which all interested parties will be given the opportunity to be heard in support of, or in opposition to, the proposed revisions. Any decision by the Court approving or denying the proposed revisions shall be final and shall not be subject to appeal.

4

EXHIBIT C

**LOCAL MARKETING AGREEMENT AMENDMENT LETTER**

Dear ASCAP:

      1.    _____ ("LICENSEE") has entered into a Local Marketing Agreement with _____ ("LMA OPERATOR") for television station _____ for the period _____ through _____ .

      2.    LICENSEE and LMA OPERATOR wish to add LMA OPERATOR as a party to the Local Television Station License Agreement in effect between LICENSEE and ASCAP ("the License"), and LMA OPERATOR shall assume all of the rights and obligations of LICENSEE as set forth in the License for the full period of the Local Marketing Agreement referred to in Paragraph 1 above.

      3.    LICENSEE/LMA OPERATOR (circle one) shall be responsible for the payment of any fees owing to ASCAP pursuant to the License.

      4.    LICENSEE/LMA OPERATOR (circle one) shall be responsible for the submission to ASCAP of any reports, tapes or other information pursuant to the License.

      5.    LICENSEE and LMA OPERATOR jointly designate the following single address for billing and other regular correspondence, and the following single address for any notices in accordance with the License:

Billing Address: _____     Notice Address: _____

_____     _____

_____     _____

      Please indicate your consent to the amendment of the License Agreement in accordance with this letter by countersigning the letter in the space provided below and returning a copy to us.

                    Very truly yours,

                    LICENSEE

Dated: _____     By: _____

                    Title: _____

                    LMA OPERATOR

Dated: _____     By: _____

                    Title: _____

The undersigned, American Society of Composers, Authors and Publishers, hereby consents and agrees to the amendment of the above mentioned License Agreement.

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS

Dated: _____     By:_____

Title: _____

**EXHIBIT 3**

LIST OF BOUND STATIONS AS OF JULY 25, 2012

| Call Letter | FCCID | Current Owner Name | FCC License City | ST |
|---|---|---|---|---|
| KTVA | 49632 | MEDIA NEWS GROUP INC | Anchorage | AK |
| KTBY | 35655 | Coastal Television Bcg. Co. LLC | Anchorage | AK |
| KYES | 21488 | Fireweed Communications DIP | Anchorage | AK |
| KTUU | 10173 | Zaser & Longston Inc | Anchorage | AK |
| KIMO | 13815 | Smith Bcstg Group | Anchorage | AK |
| KDMD | 25221 | Ketchikan TV LLC | Anchorage | AK |
| KYUR | 13815 | Vision Alaska II LLC | Anchorage | AK |
| KTVF | 49621 | Newport Television LLC | Fairbanks | AK |
| KFXF | 64597 | Tanana Valley TV Co. | Fairbanks | AK |
| KATN | 13813 | Smith Bcstg Group | Fairbanks | AK |
| KTVF | 49621 | Chena Broadcasting, LLC | Fairbanks | AK |
| KATN | 13813 | Vision Alaska II LLC | Fairbanks | AK |
| KJUD | 13814 | Smith Bcstg Group | Juneau | AK |
| KJUD | 13814 | Vision Alaska II LLC | Juneau | AK |
| KUBD | 60520 | Ketchikan TV LLC | Ketchikan | AK |
| KJNP | 20015 | Evangelistic Mission | North Pole | AK |
| KTNL | 60519 | Ketchikan TV LLC | Sitka | AK |
| WJSU | 56642 | TV Alabama Inc | Anniston | AL |
| WDBB | 71325 | Sinclair Bcst Group | Bessemer | AL |
| WVTM | 74173 | NBC/GE | Birmingham | AL |
| WABM | 16820 | Sinclair Bcst Group | Birmingham | AL |
| WIAT | 5360 | New Vision Television DIP | Birmingham | AL |
| WBRC | 71221 | Raycom Media Inc. | Birmingham | AL |
| WTVY | 4152 | Gray Television Licensee LLC | Dothan | AL |
| WDHN | 43846 | Nexstar Broadcasting Group | Dothan | AL |
| WHDF | 65128 | Lockwood Broadcasting Group | Florence | AL |
| WPXH | 73312 | Ion Media Networks Inc. DIP | Gadsden | AL |
| WTJP | 1002 | Trinity Bcstg Ntwk | Gadsden | AL |
| WFNA | 83943 | LIN Television Corp | Gulf Shores | AL |
| WTTO | 74138 | Sinclair Bcst Group | Homewood | AL |
| WHNT | 48693 | LOCAL TV LLC | Huntsville | AL |
| WZDX | 28119 | Grant, Milton | Huntsville | AL |
| WAAY | 57292 | GRAPEVINE COMMUNICATIONS | Huntsville | AL |
| WAFF | 591 | Raycom Media Inc. | Huntsville | AL |
| WPMI | 11906 | Newport Television LLC | Mobile | AL |
| WMPV | 60827 | Trinity Bcstg Ntwk | Mobile | AL |
| WALA | 4143 | LIN Television Corp | Mobile | AL |
| WKRG | 73187 | Media General Inc | Mobile | AL |
| WNCF | 72307 | Broadcast Media Group LLC | Montgomery | AL |
| WCOV | 73642 | Woods Comm Corp | Montgomery | AL |
| WMCF | 60829 | Trinity Bcstg Ntwk | Montgomery | AL |
| WSFA | 13993 | Raycom Media Inc. | Montgomery | AL |
| WLGA | 11113 | Pappas Telecasting Companies | Opelika | AL |
| WDFX | 32851 | Waitt Broadcasting, Inc. | Ozark | AL |
| WAKA | 701 | Bahakel Comm | Selma | AL |
| WBIH | 84802 | Flinn Broadcasting Corporation | Selma | AL |
| WCFT | 21258 | Allbritton Comm | Tuscaloosa | AL |
| WUOA | 77496 | University of Alabama | Tuscaloosa | AL |
| WBMM | 68427 | Sagamore Hill Broadcasting | Tuskegee | AL |
| KMYA | 86534 | Hallmark National Mortgage Corporation | Camden | AR |

| KTVE | 35692 | GOCOM Communications LLC | El Dorado | AR |
|------|-------|--------------------------|-----------|-----|
| KEJB | 84164 | Km Communications Inc. | El Dorado | AR |
| KXNW | 81593 | LOCAL TV LLC | Eureka Springs | AR |
| KPBI | 81593 | Pinnacle Media, LLC. | Eureka Springs | AR |
| KHOG | 60354 | Hearst Stations, Inc. | Fayetteville | AR |
| KHBS | 60353 | Hearst Stations, Inc. | Fort Smith | AR |
| KFTA | 29560 | Nexstar Broadcasting Group | Fort Smith | AR |
| KFSM | 66469 | LOCAL TV LLC | Fort Smith | AR |
| KVTH | 608 | Agape Church Inc | Hot Springs | AR |
| KAIT | 13988 | Raycom Media Inc. | Jonesboro | AR |
| KVTJ | 2784 | Agape Church Inc | Jonesboro | AR |
| KLRT | 11951 | Newport Television LLC | Little Rock | AR |
| KARZ | 37005 | Nexstar Broadcasting Group | Little Rock | AR |
| KTHV | 2787 | Gannett Co | Little Rock | AR |
| KARK | 33440 | Nexstar Broadcasting Group | Little Rock | AR |
| KATV | 33543 | Allbritton Comm | Little Rock | AR |
| KASN | 41212 | Newport Television LLC | Pine Bluff | AR |
| KVTN | 607 | Agape Church Inc | Pine Bluff | AR |
| KNWA | 29557 | Nexstar Broadcasting Group | Rogers | AR |
| KWOG | 67347 | Daystar TV Network | Springdale | AR |
| KNAZ | 24749 | Gannett Co | Flagstaff | AZ |
| KMOH | 24753 | Hero Broadcasting LLC | Kingman | AZ |
| KPNX | 35486 | Gannett Co | Mesa | AZ |
| KTVK | 40993 | Belo Corp | Phoenix | AZ |
| KPHO | 41223 | Meredith Corp | Phoenix | AZ |
| KPAZ | 67868 | Trinity Bcstg Ntwk | Phoenix | AZ |
| KTAZ | 81458 | Telemundo Group | Phoenix | AZ |
| KNXV | 59440 | Scripps Howard Bcstg | Phoenix | AZ |
| KASW | 7143 | Belo Corp | Phoenix | AZ |
| KSAZ | 35587 | Fox Television | Phoenix | AZ |
| KUTP | 68886 | Fox Television | Phoenix | AZ |
| KAZT | 35811 | KUSK Inc. | Prescott | AZ |
| KWBA | 35095 | Journal Broadcast Group | Sierra Vista | AZ |
| KPPX | 26655 | Ion Media Networks Inc. DIP | Tolleson | AZ |
| KVOA | 25735 | Evening Post Publshg | Tucson | AZ |
| KMSB | 44052 | Belo Corp | Tucson | AZ |
| KOLD | 48663 | Raycom Media Inc. | Tucson | AZ |
| KHRR | 30601 | NBC/GE | Tucson | AZ |
| KGUN | 36918 | Journal Broadcast Group | Tucson | AZ |
| KTTU | 11908 | Belo Corp | Tucson | AZ |
| KSWT | 33639 | Pappas Telecasting Companies | Yuma | AZ |
| KYMA | 74449 | Intermountain West Comm Company | Yuma | AZ |
| KDOC | 24518 | Ellis Communications | Anaheim | CA |
| KAEF | 8263 | Bluestone TV Holdings Inc | Arcata | CA |
| KAZA | 29234 | Pappas Telecasting Companies | Avalon | CA |
| KGET | 34459 | Newport Television LLC | Bakersfield | CA |
| KERO | 40878 | Scripps Howard Bcstg | Bakersfield | CA |
| KBAK | 4148 | WEST WIND COMM. LLC | Bakersfield | CA |
| KHIZ | 63865 | Multicultural TV Broadcasting, Inc | Barstow | CA |
| KVME | 83825 | Bellagio Broadcasting, LLC | Bishop | CA |
| KAJB | 40517 | Calipatria Broadcasting Co. LLC | Calipatria | CA |
| KHSL | 24508 | Catamount Broadcast Group LLC | Chico | CA |
| KNVN | 33745 | Evans Broadcasting | Chico | CA |

| KGMC | 23302 | Cocola, Gary M. | Clovis | CA |
|------|-------|-----------------|--------|-----|
| KTNC | 21533 | TTBG LLC | Concord | CA |
| KVEA | 19783 | Telemundo Group | Corona | CA |
| KECY | 51208 | News-Press & Gazette | El Centro | CA |
| KBVU | 58618 | Sainte Ltd | Eureka | CA |
| KIEM | 53382 | Pollack Broadcasting Co. | Eureka | CA |
| KBQR | 8378 | TTBG LLC | Fort Bragg | CA |
| KGPE | 56034 | Newport Television LLC | Fresno | CA |
| KSEE | 35594 | Granite Bcstg Corp | Fresno | CA |
| KAIL | 67494 | Williams, A, et al | Fresno | CA |
| KFSN | 8620 | Capital Cities/ABC | Fresno | CA |
| KNXT | 16950 | DIOCESE OF FRESNO EDUCATION CORP | Fresno | CA |
| KSCI | 35608 | ASIAN MEDIA GROUP, LLC | Long Beach | CA |
| KSCI | 35608 | Asian Media Group, LLC DIP | Long Beach | CA |
| KTLA | 35670 | Tribune Broadcasting Co. DIP | Los Angeles | CA |
| KABC | 282 | Capital Cities/ABC | Los Angeles | CA |
| KWHY | 26231 | NBC/GE | Los Angeles | CA |
| KCAL | 21422 | CBS TV | Los Angeles | CA |
| KNBC | 47906 | NBC/GE | Los Angeles | CA |
| KCBS | 9628 | CBS TV | Los Angeles | CA |
| KTTV | 22208 | Fox Television | Los Angeles | CA |
| KCOP | 33742 | Fox Television | Los Angeles | CA |
| KWHY | 26231 | Mereulo Media Holdings, LLC | Los Angeles | CA |
| KNSO | 58608 | NBC/GE | Merced | CA |
| KVIQ | 42640 | Raul Broadcasting Company of Eureka | Modesto | CA |
| KION | 26249 | Cowles California Media Company | Monterey | CA |
| KTLN | 49153 | Christian Communications Of Ch | Novato | CA |
| KTVU | 35703 | Cox Broadcasting Corporation | Oakland | CA |
| KBEH | 56384 | Hero Broadcasting LLC | Oxnard | CA |
| KESQ | 25577 | News-Press & Gazette | Palm Springs | CA |
| KMIR | 16749 | Journal Broadcast Group | Palm Springs | CA |
| KCVU | 58605 | Sainte Ltd | Paradise | CA |
| KXLA | 55083 | Rancho Palas Verde Broadcaster | Rancho Palos Ver | CA |
| KRCA | 22161 | Liberman Broadcasting Inc | Riverside | CA |
| KSPX | 52953 | Ion Media Networks Inc. DIP | Sacramento | CA |
| KTXL | 10205 | Tribune Broadcasting Co. DIP | Sacramento | CA |
| KCRA | 33875 | Hearst Stations, Inc. | Sacramento | CA |
| KXTV | 25048 | Gannett Co | Sacramento | CA |
| KMAX | 51499 | CBS TV | Sacramento | CA |
| KSBW | 19653 | Hearst Stations, Inc. | Salinas | CA |
| KCBA | 14867 | Seal Rock Broadcasters | Salinas | CA |
| KPXN | 58978 | Ion Media Networks Inc. DIP | San Bernardino | CA |
| KSWB | 58827 | Tribune Broadcasting Co. DIP | San Diego | CA |
| KUSI | 10238 | McKinnon Family | San Diego | CA |
| KNSD | 35277 | NBC/GE | San Diego | CA |
| KFMB | 42122 | Midwest Television | San Diego | CA |
| KGTV | 40876 | Scripps Howard Bcstg | San Diego | CA |
| KRON | 65526 | Young Broadcasting DIP | San Francisco | CA |
| KTSF | 37511 | Lincoln Bcstg | San Francisco | CA |
| KGO | 34470 | Capital Cities/ABC | San Francisco | CA |
| KBCW | 69619 | CBS TV | San Francisco | CA |
| KPIX | 25452 | CBS TV | San Francisco | CA |
| KOFY | 51189 | Granite Broadcasting, DIP | San Francisco | CA |

| | | | | |
|---|---|---|---|---|
| KCNS | 71586 | Multicultural TV Broadcasting, Inc | San Francisco | CA |
| KKPX | 22644 | Ion Media Networks Inc. DIP | San Jose | CA |
| KSTS | 64987 | Telemundo Group | San Jose | CA |
| KICU | 34564 | Cox Broadcasting Corporation | San Jose | CA |
| KNTV | 35280 | NBC/GE | San Jose | CA |
| KSBY | 19654 | SJL COMMUNICATIONS, L.P. | San Luis Obispo | CA |
| KTAS | 12930 | Palazuelos, Raul | San Luis Obispo | CA |
| KFRE | 59013 | TTBG LLC | Sanger | CA |
| KTBN | 67884 | Trinity Bcstg Ntwk | Santa Ana | CA |
| KEYT | 60637 | Smith Bcstg Group | Santa Barbara | CA |
| KCOY | 63165 | Cowles California Media Company | Santa Maria | CA |
| KFTY | 34440 | Newport Television LLC | Santa Rosa | CA |
| KEMO | 34440 | Una Vez Mas San Francisco License LLC. | Santa Rosa | CA |
| KQCA | 10242 | Hearst Stations, Inc. | Stockton | CA |
| KOVR | 56550 | CBS TV | Stockton | CA |
| KVMD | 16729 | KVMD Acquisition Corp. | Twentynine Palms | CA |
| KJLA | 14000 | Costa de Oro TV | Ventura | CA |
| KMPH | 51488 | TTBG LLC | Visalia | CA |
| KETD | 37101 | LeSea Bcstg Inc | Castle Rock | CO |
| KRDO | 52579 | News-Press & Gazette | Colorado Springs | CO |
| KKTV | 35037 | Gray Television Licensee LLC | Colorado Springs | CO |
| KXRM | 35991 | Barrington Broadcasting | Colorado Springs | CO |
| KWGN | 35883 | Tribune Broadcasting Co. DIP | Denver | CO |
| KPXC | 68695 | Ion Media Networks Inc. DIP | Denver | CO |
| KUSA | 23074 | Gannett Co | Denver | CO |
| KTVD | 68581 | Gannett Co | Denver | CO |
| KCNC | 47903 | CBS TV | Denver | CO |
| KMGH | 40875 | Scripps Howard Bcstg | Denver | CO |
| KDVR | 126 | Foxco Acquisition Subsidiary, LLC | Denver | CO |
| KREZ | 48589 | LIN Television Corp | Durango | CO |
| KRTN | 82613 | Ramar Communications | Durango | CO |
| KFCT | 125 | Foxco Acquisition Subsidiary, LLC | Ft. Collins | CO |
| KREG | 70578 | Hoak Media LLC | Glenwood Springs | CO |
| KREX | 70596 | Hoak Media LLC | Grand Junction | CO |
| KKCO | 24766 | Gray Television Licensee LLC | Grand Junction | CO |
| KJCT | 52593 | News-Press & Gazette | Grand Junction | CO |
| KFQX | 31597 | Parker Broadcasting | Grand Junction | CO |
| KPJR | 166510 | Trinity Bcstg Ntwk | Greeley | CO |
| KDEN | 38375 | NBC/GE | Longmont | CO |
| KREY | 70579 | Hoak Media LLC | Montrose | CO |
| KOAA | 59014 | Evening Post Publshg | Pueblo | CO |
| KCDO | 63158 | Channel 20 Television Co. | Sterling | CO |
| WSAH | 70493 | Multicultural Capital Trust | Bridgeport | CT |
| WSAH | 70493 | Titan Broadcast Management LLC | Bridgeport | CT |
| WTIC | 147 | Tribune Broadcasting Co. DIP | Hartford | CT |
| WFSB | 53115 | Meredith Corp | Hartford | CT |
| WVIT | 74170 | NBC/GE | New Britain | CT |
| WCTX | 33081 | LIN Television Corp | New Haven | CT |
| WTNH | 74109 | LIN Television Corp | New Haven | CT |
| WHPX | 51980 | Ion Media Networks Inc. DIP | New London | CT |
| WCCT | 14050 | Tribune Broadcasting Co. DIP | Waterbury | CT |
| WDCW | 30576 | Tribune Broadcasting Co. DIP | Washington | DC |
| WJLA | 1051 | Allbritton Comm | Washington | DC |

| WRC | 47904 | NBC/GE | Washington | DC |
|-----|-------|--------|------------|-----|
| WUSA | 65593 | Gannett Co | Washington | DC |
| WDCA | 51567 | Fox Television | Washington | DC |
| WTTG | 22207 | Fox Television | Washington | DC |
| WPPX | 51984 | Ion Media Networks Inc. DIP | Wilmington | DE |
| WXPX | 6601 | Ion Media Networks Inc. DIP | Bradenton | FL |
| WFTX | 70649 | Journal Broadcast Group | Cape Coral | FL |
| WCLF | 11125 | Christian TV Network | Clearwater | FL |
| WKCF | 53465 | Hearst Stations, Inc. | Clermont | FL |
| WHLV | 24582 | Trinity Bcstg Ntwk | Cocoa | FL |
| WESH | 25738 | Hearst Stations, Inc. | Daytona Beach | FL |
| WFBD | 81669 | Flinn Broadcasting Corporation | Destin | FL |
| WINK | 22093 | Ft Myers Bcstg Co | Fort Myers | FL |
| WBBH | 71085 | Waterman Bcstg Corp | Fort Myers | FL |
| WTVX | 35575 | Cerberus Capital Management LP | Fort Pierce | FL |
| WAWD | 54938 | Beach TV Properties | Fort Walton Beach | FL |
| WSCV | 64971 | Telemundo Group | Ft. Lauderdale | FL |
| WFGX | 6554 | TV Fit for Life Inc | Ft. Walton Bch | FL |
| WCJB | 16993 | Diversified Comm | Gainesville | FL |
| WNBW | 83965 | MPS Media | Gainesville | FL |
| WGFL | 7727 | CP Media LLC | High Springs | FL |
| WTEV | 35576 | Newport Television LLC | Jacksonville | FL |
| WAWS | 11909 | Newport Television LLC | Jacksonville | FL |
| WJXT | 53116 | Post-Newsweek Stns | Jacksonville | FL |
| WTLV | 65046 | Gannett Co | Jacksonville | FL |
| WCWJ | 29712 | Nexstar Broadcasting Group | Jacksonville | FL |
| WSBS | 72053 | Spanish Broadcasting System | Key West | FL |
| WGEN | 27387 | Mambo, LLC | Key West | FL |
| WPXP | 27290 | Ion Media Networks Inc. DIP | Lake Worth | FL |
| WMOR | 53819 | Hearst-Argyle TV, Inc. | Lakeland | FL |
| WTJR | 4593 | Christian TV Network | Largo | FL |
| WTGL | 9881 | Good Life Bcstg | Leesburg | FL |
| WACX | 60018 | Assoc. Christian TV | Leesburg | FL |
| WOPX | 67602 | Ion Media Networks Inc. DIP | Melbourne | FL |
| WSFL | 10203 | Tribune Broadcasting Co. DIP | Miami | FL |
| WPXM | 48608 | Ion Media Networks Inc. DIP | Miami | FL |
| WHFT | 67971 | Trinity Bcstg Ntwk | Miami | FL |
| WPLG | 53113 | Post-Newsweek Stns | Miami | FL |
| WFOR | 47902 | CBS TV | Miami | FL |
| WSVN | 63840 | Sunbeam Television | Miami | FL |
| WTVJ | 63154 | NBC/GE | Miami | FL |
| WBFS | 12497 | CBS TV | Miami | FL |
| WZVN | 19183 | Waterman Bcstg Corp | Naples | FL |
| WXCW | 61504 | Sun Broadcasting | Naples | FL |
| WOGX | 70651 | Fox Television | Ocala | FL |
| WJXX | 11893 | Gannett Co | Orange Park | FL |
| WFTV | 72076 | Cox Broadcasting Corporation | Orlando | FL |
| WKMG | 71293 | Post-Newsweek Stns | Orlando | FL |
| WRDQ | 55454 | Cox Broadcasting Corporation | Orlando | FL |
| WRBW | 54940 | Fox Television | Orlando | FL |
| WOFL | 41225 | Fox Television | Orlando | FL |
| WFGC | 11123 | Christian TV Network | Palm Beach | FL |
| WPGX | 2942 | Raycom Media Inc. | Panama City | FL |

| | | | | |
|---|---|---|---|---|
| WMBB | 66398 | Hoak Media LLC | Panama City | FL |
| WJHG | 73136 | Gray Television Licensee LLC | Panama City | FL |
| WPCT | 4354 | Beach TV Properties | Panama City Bch | FL |
| WJTC | 41210 | Newport Television LLC | Pensacola | FL |
| WEAR | 71363 | Sinclair Bcst Group | Pensacola | FL |
| WHBR | 10894 | Christian TV Network | Pensacola | FL |
| WWSB | 61251 | Southern Bcst Corp | Sarasota | FL |
| WTSP | 11290 | Gannett Co | St. Petersburg | FL |
| WTOG | 74112 | CBS TV | St. Petersburg | FL |
| WTTA | 4108 | Bay Television Inc | St. Petersburg | FL |
| WTXL | 41065 | calkins media of tallahassee | Tallahassee | FL |
| WTLF | 82735 | MPS Media | Tallahassee | FL |
| WTWC | 66908 | Sinclair Bcst Group | Tallahassee | FL |
| WFLA | 64592 | Media General Inc | Tampa | FL |
| WFTS | 64588 | Scripps Howard Bcstg | Tampa | FL |
| WTVT | 68569 | Fox Television | Tampa | FL |
| WPBF | 51988 | Hearst-Argyle TV, Inc. | Tequesta | FL |
| WRXY | 71580 | West Coast Chrstn TV | Tice | FL |
| WPTV | 59443 | Scripps Howard Bcstg | West Palm Beach | FL |
| WFLX | 39736 | Raycom Media Inc. | West Palm Beach | FL |
| WPEC | 52527 | Sinclair Bcst Group | West Palm Beach | FL |
| WPEC | 52527 | Freedom Comm Inc. DIP | West Palm Beach | FL |
| WHDT | 83929 | Guenter Marksteiner | West Palm Beach | FL |
| WALB | 70713 | Raycom Media Inc. | Albany | GA |
| WFXL | 70815 | Barrington Broadcasting | Albany | GA |
| WXIA | 51163 | Gannett Co | Atlanta | GA |
| WSB | 23960 | Cox Broadcasting Corporation | Atlanta | GA |
| WUPA | 6900 | CBS TV | Atlanta | GA |
| WGCL | 72120 | Meredith Corp | Atlanta | GA |
| WTOK | 4686 | Gray Television Licensee LLC | Atlanta | GA |
| WATL | 22819 | Gannett Co | Atlanta | GA |
| WPCH | 64033 | Turner Bcstg System | Atlanta | GA |
| KBTX | 6669 | Gray Television Licensee LLC | Atianta | GA |
| WAGA | 70689 | Fox Television | Atlanta | GA |
| WJBF | 27140 | Media General Inc | Augusta | GA |
| WRDW | 73937 | Gray Television Licensee LLC | Augusta | GA |
| WFXG | 3228 | American Spirit Media, LLC | Augusta | GA |
| WFXG | 3228 | Raycom Media Inc. | Augusta | GA |
| KXLT | 35906 | Sagamore Hill Broadcasting | Augusta | GA |
| WAGT | 70699 | Schurz Communications, Inc | Augusta | GA |
| WTLH | 23486 | CP Media LLC | Bainbridge | GA |
| WGSA | 69446 | Southern TV Corporation | Baxley | GA |
| WPXC | 71236 | Ion Media Networks Inc. DIP | Brunswick | GA |
| WXTX | 12472 | American Spirit Media, LLC | Columbus | GA |
| WRBL | 3359 | Media General Inc | Columbus | GA |
| WTVM | 595 | Raycom Media Inc. | Columbus | GA |
| WLTZ | 37179 | Sagamore Hill Broadcasting | Columbus | GA |
| WSST | 63867 | Sunbelt South Tcomm | Cordele | GA |
| WELF | 60825 | Trinity Bcstg Ntwk | Dalton | GA |
| WGXA | 58262 | Frontier Capital Partners, LLC | Macon | GA |
| WMAZ | 46991 | Gannett Co | Macon | GA |
| WGNM | 24618 | Christian TV Network | Macon | GA |
| WMGT | 43847 | Morris Multimedia | Macon | GA |

| WHSG | 68058 | Trinity Bcstg Ntwk | Monroe | GA |
|------|-------|-------------------|--------|-----|
| WPXA | 51969 | Ion Media Networks Inc. DIP | Rome | GA |
| WSAV | 48662 | Media General Inc | Savannah | GA |
| WJCL | 37174 | New Vision Television DIP | Savannah | GA |
| WTOC | 590 | Raycom Media Inc. | Savannah | GA |
| WCTV | 31590 | Gray Television Licensee LLC | Thomasville | GA |
| WUGA | 63329 | Ugarf Media Holding LLC | Toccoa | GA |
| WSWG | 28155 | Gray Television Licensee LLC | Valdosta | GA |
| KUAM | 51233 | Micronesia Broadcasting Inc | Agana | GU |
| KTGM | 29232 | SORENSEN TV SYSTEMS INC | Tamuning | GU |
| KHAW | 4146 | New Vision Television DIP | Hilo | HI |
| KGMD | 36914 | MCG CAPITOL CORP & GREENLAW-MARSHALL COM | Hilo | HI |
| KWHD | 37103 | LeSea Bcstg Inc | Hilo | HI |
| KHBC | 34846 | Raycom Media Inc. | Hilo | HI |
| KHVO | 64544 | Hearst Stations, Inc. | Hilo | HI |
| KWHE | 36846 | LeSea Bcstg Inc | Honolulu | HI |
| KIKU | 34527 | ASIAN MEDIA GROUP, LLC | Honolulu | HI |
| KGMB | 36917 | MCG CAPITOL CORP & GREENLAW-MARSHALL COM | Honolulu | HI |
| KITV | 64548 | Hearst Stations, Inc. | Honolulu | HI |
| KFVE | 34445 | MCG CAPITOL CORP & GREENLAW-MARSHALL COM | Honolulu | HI |
| KIKU | 34527 | Asian Media Group, LLC DIP | Honolulu | HI |
| KAAH | 3246 | Trinity Bcstg Ntwk | Honolulu | HI |
| KHON | 4144 | New Vision Television DIP | Honolulu | HI |
| KHNL | 34867 | Raycom Media Inc. | Honolulu | HI |
| KBFD | 65395 | Allen Broadcasting Corporation | Honolulu | HI |
| KPXO | 77483 | Ion Media Networks Inc. DIP | Kaneohe | HI |
| KGMV | 36920 | MCG CAPITOL CORP & GREENLAW-MARSHALL COM | Wailuku | HI |
| KWHM | 37105 | LeSea Bcstg Inc | Wailuku | HI |
| KOGG | 34859 | Raycom Media Inc. | Wailuku | HI |
| KMAU | 64551 | Hearst Stations, Inc. | Wailuku | HI |
| KAII | 4145 | New Vision Television DIP | Wailuku | HI |
| WOI | 8661 | Citadel Comm Co Ltd | Ames | IA |
| KCWI | 51502 | Pappas Telecasting Companies | Ames | IA |
| KGCW | 7841 | Grant, Milton | Burlington | IA |
| KPXR | 21156 | Ion Media Networks Inc. DIP | Cedar Rapids | IA |
| KGAN | 25685 | Sinclair Bcst Group | Cedar Rapids | IA |
| KCRG | 9719 | Cedar Rapids TV Co | Cedar Rapids | IA |
| KFXA | 35336 | Second Generation Television | Cedar Rapids | IA |
| KWQC | 6885 | Young Broadcasting DIP | Davenport | IA |
| KLJB | 54011 | Grant, Milton | Davenport | IA |
| KDSM | 56527 | Sinclair Bcst Group | Des Moines | IA |
| WHO | 66221 | LOCAL TV LLC | Des Moines | IA |
| KCCI | 33710 | Hearst Stations, Inc. | Des Moines | IA |
| KDMI | 78915 | Pappas Telecasting Companies | Des Moines | IA |
| KFXB | 17625 | Christian TV Network | Dubuque | IA |
| KWKB | 35096 | Km Communications Inc. | Iowa City | IA |
| KIMT | 66402 | New Vision Television DIP | Mason City | IA |
| KFPX | 81509 | Ion Media Networks Inc. DIP | Newton | IA |
| KYOU | 53820 | American Spirit Media, LLC | Ottumwa | IA |
| KTIV | 66170 | Quincy Newspapers | Sioux City | IA |
| KMEG | 39665 | TTBG LLC | Sioux City | IA |
| KPTH | 77451 | TTBG LLC | Sioux City | IA |
| KCAU | 11265 | Citadel Comm Co Ltd | Sioux City | IA |

| KWWL | 593 | Quincy Newspapers | Waterloo | IA |
|------|-----|-------------------|----------|-----|
| KTVB | 34858 | Belo Corp | Boise | ID |
| KBOI | 49760 | Fisher Communications | Boise | ID |
| KKJB | 35097 | Cocola Broadcasting Co. LLC | Boise | ID |
| KNIN | 59363 | Journal Broadcast Group | Caldwell | ID |
| KIFI | 66258 | News-Press & Gazette | Idaho Falls | ID |
| KIDK | 56028 | Fisher Communications | Idaho Falls | ID |
| KLEW | 56032 | Fisher Communications | Lewiston | ID |
| KTRV | 28230 | Blade Communications | Nampa | ID |
| KIVI | 59255 | Journal Broadcast Group | Nampa | ID |
| KPVI | 1270 | Intermountain West Comm Company | Pocatello | ID |
| KFXP | 78910 | Compass Communications of Idaho, Inc. | Pocatello | ID |
| KPIF | 86205 | Km Communications Inc. | Pocatello | ID |
| KXTF | 1255 | Intermountain West Comm Company | Twin Falls | ID |
| KMVT | 35200 | Neuhoff Communications Inc. | Twin Falls | ID |
| WYZZ | 5875 | Sinclair Bcst Group | Bloomington | IL |
| WCIA | 42124 | Nexstar Broadcasting Group | Champaign | IL |
| WICD | 25684 | Sinclair Bcst Group | Champaign | IL |
| WGN | 72115 | Tribune Broadcasting Co. DIP | Chicago | IL |
| WCPX | 10981 | Ion Media Networks Inc. DIP | Chicago | IL |
| WLS | 73226 | Capital Cities/ABC | Chicago | IL |
| WBBM | 9617 | CBS TV | Chicago | IL |
| WSNS | 70119 | Telemundo Group | Chicago | IL |
| WMAQ | 47905 | NBC/GE | Chicago | IL |
| WFLD | 22211 | Fox Television | Chicago | IL |
| WBUI | 16363 | GOCOM Communications LLC | Decatur | IL |
| WAND | 70852 | WAND (TV) Partnership | Decatur | IL |
| WRBU | 57221 | Roberts Bcstg Co - DIP | E St. Louis | IL |
| WRBU | 57221 | Roberts Bcstg Co | E St. Louis | IL |
| WIFR | 4689 | Gray Television Licensee LLC | Freeport | IL |
| WSIL | 73999 | Mel Wheeler Inc | Harrisburg | IL |
| WWTO | 998 | Trinity Bcstg Ntwk | Lasalie | IL |
| WTCT | 67786 | Tri-State Chrstn TV | Marion | IL |
| WQAD | 73319 | LOCAL TV LLC | Moline | IL |
| WPXS | 40861 | Daystar TV Network | Mt. Vernon | IL |
| WEEK | 24801 | Granite Broadcasting, DIP | Peoria | IL |
| WHOI | 6866 | Barrington Broadcasting | Peoria | IL |
| WMBD | 42121 | Nexstar Broadcasting Group | Peoria | IL |
| WAOE | 52280 | Venture Technologies Group LLC | Peoria | IL |
| WGEM | 54275 | Quincy Newspapers | Quincy | IL |
| WHBF | 13950 | Citadel Comm Co Ltd | Rock Island | IL |
| WREX | 73940 | Quincy Newspapers | Rockford | IL |
| WQRF | 52408 | Nexstar Broadcasting Group | Rockford | IL |
| WTVO | 72945 | Mission Broadcasting, Inc. | Rockford | IL |
| WRSP | 62009 | GOCOM Communications LLC | Springfield | IL |
| WCFN | 42116 | Nexstar Broadcasting Group | Springfield | IL |
| WICS | 25686 | Sinclair Bcst Group | Springfield | IL |
| WCCU | 69544 | GOCOM Communications LLC | Urbana | IL |
| WINM | 67787 | Tri-State Chrstn TV | Angola | IN |
| WIPX | 10253 | Ion Media Networks Inc. DIP | Bloomington | IN |
| WTTV | 56523 | Tribune Broadcasting Co. DIP | Bloomington | IN |
| WCLJ | 68007 | Trinity Bcstg Ntwk | Bloomington | IN |
| WSJV | 74007 | Quincy Newspapers | Elkhart | IN |

| | | | | |
|---|---|---|---|---|
| WTVW | 3661 | Nexstar Broadcasting Group | Evansville | IN |
| WFIE | 13991 | Raycom Media Inc. | Evansville | IN |
| WEVV | 72041 | Comm Corp of America | Evansville | IN |
| WEHT | 24215 | Gilmore Bcstg | Evansville | IN |
| WPTA | 73905 | Malara Broadcasting | Fort Wayne | IN |
| WISE | 13960 | Granite Bcstg Corp | Fort Wayne | IN |
| WANE | 39270 | LIN Television Corp | Fort Wayne | IN |
| WFFT | 25040 | Nexstar Broadcasting Group | Ft Wayne | IN |
| WPWR | 48772 | Fox Television | Gary | IN |
| WJYS | 32334 | Jovon Bcstg Corp | Hammond | IN |
| WJYS | 32334 | Oxford Media Group, Inc. | Hammond | IN |
| WXIN | 146 | Tribune Broadcasting Co. DIP | Indianapolis | IN |
| KSNT | 67335 | New Vision Television DIP | Indianapolis | IN |
| WTHR | 70162 | Dispatch Printing Co | Indianapolis | IN |
| WRTV | 40877 | Scripps Howard Bcstg | Indianapolis | IN |
| WISH | 39269 | LIN Television Corp | Indianapolis | IN |
| WHMB | 37102 | LeSea Bcstg Inc | Indianapolis | IN |
| WTTK | 56526 | Tribune Broadcasting Co. DIP | Kokomo | IN |
| WLFI | 73204 | WAND (TV) Partnership | Lafayette | IN |
| WNDY | 28462 | LIN Television Corp | Marion | IN |
| WKOI | 67869 | Trinity Bcstg Ntwk | Richmond | IN |
| WMYO | 34167 | Independence Television Co. | Salem | IN |
| WSBT | 73983 | Schurz Communications, Inc | South Bend | IN |
| WNDU | 41674 | Michiana Telecasting | South Bend | IN |
| WHME | 36117 | LeSea Bcstg Inc | South Bend | IN |
| WTHI | 70655 | LIN Television Corp | Terre Haute | IN |
| WTWO | 20426 | Nexstar Broadcasting Group | Terre Haute | IN |
| WAWV | 65247 | Mission Broadcasting, Inc. | Terre Haute | IN |
| KLBY | 65523 | Gray Television Licensee LLC | Colby | KS |
| KBSD | 66414 | Sunflower Broadcasting, Inc | Ensign | KS |
| KSNG | 72361 | New Vision Television DIP | Garden City | KS |
| KUPK | 65535 | Gray Television Licensee LLC | Garden City | KS |
| KBSL | 66416 | Sunflower Broadcasting, Inc | Goodland | KS |
| KSNC | 72359 | New Vision Television DIP | Great Bend | KS |
| KBSH | 66415 | Sunflower Broadcasting, Inc | Hays | KS |
| KOCW | 83181 | Newport Television LLC | Hoisington | KS |
| KWCH | 66413 | Sunflower Broadcasting, Inc | Hutchinson | KS |
| KMTW | 77063 | Mercury Broadcasting Co. | Hutchinson | KS |
| KMCI | 42636 | Scripps Howard Bcstg | Lawrence | KS |
| KFJX | 83992 | Surtsey Productions, Inc. | Pittsburg | KS |
| KOAM | 58552 | Saga Communications Inc | Pittsburg | KS |
| KAAS | 11912 | Newport Television LLC | Salina | KS |
| KTKA | 49397 | Free State Communications, LLC | Topeka | KS |
| WIBW | 63160 | Gray Television Licensee LLC | Topeka | KS |
| KTKA | 49397 | Parkin Broadcasting LLC | Topeka | KS |
| KSAS | 11911 | Newport Television LLC | Wichita | KS |
| KSNW | 72358 | New Vision Television DIP | Wichita | KS |
| KAKE | 65522 | Gray Television Licensee LLC | Wichita | KS |
| KSCW | 72348 | Sunflower Broadcasting, Inc | Wichita | KS |
| KTXS | 308 | Bluestone TV Holdings Inc | Wichita | KS |
| WCYB | 2455 | Bluestone TV Holdings Inc | Wichita | KS |
| KTVM | 18066 | Bluestone TV Holdings Inc | Wichita | KS |
| KRCR | 8291 | Bluestone TV Holdings Inc | Wichita | KS |

| WTSF | 67798 | Messinger, C, et al | Ashland | KY |
|------|-------|---------------------|---------|-----|
| WLJC | 27696 | Hour of Harvest Inc | Beattyville | KY |
| WBKO | 4692 | Gray Television Licensee LLC | Bowling Green | KY |
| WNKY | 61217 | Max Media LLC | Bowling Green | KY |
| WBKI | 25173 | Louisville TV Group, LLC | Campbellsville | KY |
| WDKY | 64017 | Sinclair Bcst Group | Danville | KY |
| WAGV | 37809 | Living Faith Minstrs | Harlan | KY |
| WYMT | 24915 | Gray Television Licensee LLC | Hazard | KY |
| WTVQ | 51597 | WTVQ-TV, LLC | Lexington | KY |
| WLEX | 73203 | Evening Post Publshg | Lexington | KY |
| WKYT | 24914 | Gray Television Licensee LLC | Lexington | KY |
| WBNA | 73692 | Word Broadcasting | Louisville | KY |
| WDRB | 28476 | Blade Communications | Louisville | KY |
| WLKY | 53939 | Hearst Stations, Inc. | Louisville | KY |
| WAVE | 13989 | Raycom Media Inc. | Louisville | KY |
| WHAS | 32327 | Belo Corp | Louisville | KY |
| WAZE | 74592 | Roberts Bcstg Co - DIP | Madisonville | KY |
| WAZE | 74592 | Roberts Bcstg Co | Madisonville | KY |
| WUPX | 23128 | Ion Media Networks Inc. DIP | Morehead | KY |
| WXIX | 39738 | Raycom Media Inc. | Newport | KY |
| WPSD | 51991 | Paxton Media Group LLC | Paducah | KY |
| WDKA | 39561 | Wdka Acquisition Corp. | Paducah | KY |
| KLAX | 52907 | Pollack Broadcasting Co. | Alexandria | LA |
| KALB | 51598 | Hoak Media LLC | Alexandria | LA |
| KBCA | 16940 | Wilderness Communications, LLC | Alexandria | LA |
| WVLA | 70021 | White Knight Bcstg | Baton Rouge | LA |
| WGMB | 12520 | Comm Corp of America | Baton Rouge | LA |
| WAFB | 589 | Raycom Media Inc. | Baton Rouge | LA |
| WBRZ | 38616 | Manship Stations | Baton Rouge | LA |
| KAQY | 52046 | Parker Broadcasting | Columbia | LA |
| KGLA | 83945 | Mayavision Inc. | Hammond | LA |
| KLFY | 35059 | Young Broadcasting DIP | Lafayette | LA |
| KADN | 33261 | Comm Corp of America | Lafayette | LA |
| KATC | 33471 | Evening Post Publshg | Lafayette | LA |
| KVHP | 35852 | National Communications Inc. | Lake Charles | LA |
| KPLC | 13994 | Raycom Media Inc. | Lake Charles | LA |
| KPXJ | 81507 | KTBS, Inc. | Minden | LA |
| KNOE | 48975 | Hoak Media LLC | Monroe | LA |
| KLWB | 82476 | Wilderness Communications, LLC | New Iberia | LA |
| WGNO | 72119 | Tribune Broadcasting Co. DIP | New Orleans | LA |
| WPXL | 21729 | Ion Media Networks Inc. DIP | New Orleans | LA |
| WNOL | 54280 | Tribune Broadcasting Co. DIP | New Orleans | LA |
| WWL | 74192 | Belo Corp | New Orleans | LA |
| WVUE | 4149 | Louisiana Media Co. LLC | New Orleans | LA |
| WDSU | 71357 | Hearst Stations, Inc. | New Orleans | LA |
| WHNO | 37106 | LeSea Bcstg Inc | New Orleans | LA |
| KMSS | 12525 | Comm Corp of America | Shreveport | LA |
| KSLA | 70482 | Raycom Media Inc. | Shreveport | LA |
| KTBS | 35652 | KTBS, Inc. | Shreveport | LA |
| KSHV | 73706 | White Knight Bcstg | Shreveport | LA |
| WUPL | 13938 | Belo Corp | Slidell | LA |
| KARD | 3658 | Nexstar Broadcasting Group | West Monroe | LA |
| KMCT | 38584 | Lamb Bcstg Inc | West Monroe | LA |

| WCDC | 74419 | Young Broadcasting DIP | Adams | MA |
|------|-------|------------------------|-------|-----|
| WBPX | 7692 | Ion Media Networks Inc. DIP | Boston | MA |
| WSBK | 73982 | CBS TV | Boston | MA |
| WHDH | 72145 | Sunbeam Television | Boston | MA |
| WBZ | 25456 | CBS TV | Boston | MA |
| WCVB | 65684 | Hearst Stations, Inc. | Boston | MA |
| WFXT | 6463 | Fox Television | Boston | MA |
| WLVI | 73238 | Sunbeam Television | Cambridge | MA |
| WMFP | 41436 | Multicultural Capital Trust | Lawrence | MA |
| WLNE | 22591 | Global Bcg. of So. New England LLC, Recv | New Bedford | MA |
| WLNE | 22591 | Citadel Comm Co Ltd | New Bedford | MA |
| WLWC | 3978 | Cerberus Capital Management LP | New Bedford | MA |
| WLNE | 22591 | Global Broadcasting LLC | New Bedford | MA |
| WWDP | 23671 | Value Vision Media | Norwell | MA |
| WNYA | 136751 | Venture Technologies Group LLC | Pittsfield | MA |
| WWLP | 6868 | LIN Television Corp | Springfield | MA |
| WGGB | 25682 | Gormally Broadcasting LLC | Springfield | MA |
| WDPX | 6476 | Ion Media Networks Inc. DIP | Vineyard Haven | MA |
| WMAR | 59442 | Scripps Howard Bcstg | Baltimore | MD |
| WJZ | 25455 | CBS TV | Baltimore | MD |
| WBFF | 10758 | Sinclair Bcst Group | Baltimore | MD |
| WNUV | 7933 | Sinclair Bcst Group | Baltimore | MD |
| WBAL | 65696 | Hearst Stations, Inc. | Baltimore | MD |
| WUTB | 60552 | Fox Television | Baltimore | MD |
| WHAG | 25045 | Nexstar Broadcasting Group | Hagerstown | MD |
| WBOC | 71218 | Draper Comm | Salisbury | MD |
| WMDT | 16455 | Delmarva Broadcast Service, LLC | Salisbury | MD |
| WLBZ | 39644 | Gannett Co | Bangor | ME |
| WVII | 3667 | Rockfleet Broadcasting | Bangor | ME |
| WABI | 17005 | Diversified Comm | Bangor | ME |
| WPME | 48408 | MPS Media of Portland | Lewiston | ME |
| WMTW | 73288 | Hearst Stations, Inc. | Poland Spring | ME |
| WCSH | 39664 | Gannett Co | Portland | ME |
| WGME | 25683 | Sinclair Bcst Group | Portland | ME |
| WPXT | 53065 | New Age Media | Portland | ME |
| WAGM | 48305 | Kozloski, Peter, Jr | Presque Isle | ME |
| WPFO | 84088 | CORPORATE MEDIA CONSULTANT GRO | Waterville | ME |
| WBKB | 67048 | Marks, Stephen | Alpena | MI |
| WPXD | 5800 | Ion Media Networks Inc. DIP | Ann Arbor | MI |
| WZPX | 71871 | Ion Media Networks Inc. DIP | Battle Creek | MI |
| WOTV | 10212 | LIN Television Corp | Battle Creek | MI |
| WBSF | 82627 | Barrington Broadcasting | Bay City | MI |
| WNEM | 41221 | Meredith Corp | Bay City | MI |
| WWTV | 26994 | Heritage Bcstg Co | Cadillac | MI |
| WFQX | 25396 | Cadillac Telecasting Co. | Cadillac | MI |
| WBKP | 76001 | Thunder Bay Broadcasting Inc. | Calumet | MI |
| WTOM | 21254 | Barrington Broadcasting | Cheboygan | MI |
| WWJ | 72123 | CBS TV | Detroit | MI |
| WXYZ | 10267 | Scripps Howard Bcstg | Detroit | MI |
| WKBD | 51570 | CBS TV | Detroit | MI |
| WMYD | 74211 | Granite Broadcasting, DIP | Detroit | MI |
| WDIV | 53114 | Post-Newsweek Stns | Detroit | MI |
| WJBK | 73123 | Fox Television | Detroit | MI |

| WJMN | 9630 | Liberty Media Corporation | Escanaba | MI |
|------|------|---------------------------|----------|-----|
| WJRT | 21735 | Capital Cities/ABC | Flint | MI |
| WSMH | 21737 | Sinclair Bcst Group | Flint | MI |
| WXMI | 68433 | Tribune Broadcasting Co. DIP | Grand Rapids | MI |
| WZZM | 49713 | Gannett Co | Grand Rapids | MI |
| WOOD | 36838 | LIN Television Corp | Grand Rapids | MI |
| WHTV | 29706 | Venture Technologies Group LLC | Jackson | MI |
| WWMT | 74195 | Freedom Comm Inc. DIP | Kalamazoo | MI |
| WWMT | 74195 | Sinclair Bcst Group | Kalamazoo | MI |
| WLLA | 11033 | Christian Faith Broadcasting | Kalamazoo | MI |
| WLNS | 74420 | Young Broadcasting DIP | Lansing | MI |
| WLAJ | 36533 | Sinclair Bcst Group | Lansing | MI |
| WLAJ | 36533 | Freedom Comm Inc. DIP | Lansing | MI |
| WSYM | 74094 | Journal Broadcast Group | Lansing | MI |
| WLUC | 21259 | Barrington Broadcasting | Marquette | MI |
| WBUP | 59281 | Thunder Bay Broadcasting Inc. | Marquette | MI |
| WZMQ | 81448 | MMMRC LLC | Marquette | MI |
| WADL | 455 | Adell Bcstg Corp | Mount Clemens | MI |
| WTLJ | 67781 | Tri-State Chrstn TV | Muskegon | MI |
| WILX | 6863 | Gray Television Licensee LLC | Onondaga | MI |
| WEYI | 72052 | Barrington Broadcasting | Saginaw | MI |
| WAQP | 67792 | Tri-State Chrstn TV | Saginaw | MI |
| WWUP | 26993 | Heritage Bcstg Co | Sault Ste Marie | MI |
| WGTQ | 59279 | Tucker Broadcasting | Sault Ste Marie | MI |
| WGTU | 59280 | Tucker Broadcasting | Traverse City | MI |
| WPBN | 21253 | Barrington Broadcasting | Traverse City | MI |
| WFUP | 25395 | Cadillac Telecasting Co. | Vanderbilt | MI |
| KSAX | 35584 | Hubbard Broadcasting Inc. | Alexandria | MN |
| KCCO | 9632 | CBS TV | Alexandria | MN |
| KAAL | 18285 | Hubbard Broadcasting Inc. | Austin | MN |
| KFTC | 83714 | Fox Television | Bemidji | MN |
| KRII | 82698 | Granite Bcstg Corp | Chisholm | MN |
| KDLH | 4691 | Malara Broadcasting | Duluth | MN |
| WDIO | 71338 | Hubbard Broadcasting Inc. | Duluth | MN |
| KQDS | 35525 | Red River Bcst Corp | Duluth | MN |
| WIRT | 71336 | Hubbard Broadcasting Inc. | Hibbing | MN |
| KEYC | 68853 | United Comm Corp | Mankato | MN |
| KSTC | 35843 | Hubbard Broadcasting Inc. | Minneapolis | MN |
| WUCW | 36395 | Sinclair Bcst Group | Minneapolis | MN |
| WCCO | 9629 | CBS TV | Minneapolis | MN |
| KARE | 23079 | Gannett Co | Minneapolis | MN |
| KMSP | 68883 | Fox Television | Minneapolis | MN |
| WFTC | 11913 | Fox Television | Minneapolis | MN |
| KRWF | 35585 | Hubbard Broadcasting Inc. | Redwood Falls | MN |
| KTTC | 35678 | Quincy Newspapers | Rochester | MN |
| KPXM | 35907 | Ion Media Networks Inc. DIP | St. Cloud | MN |
| KSTP | 28010 | Hubbard Broadcasting Inc. | St. Paul | MN |
| KBRR | 55370 | Red River Bcst Corp | Thief River Fall | MN |
| KCCW | 9640 | CBS TV | Walker | MN |
| KFVS | 592 | Raycom Media Inc. | Cape Girardeau | MO |
| KBSI | 19593 | Sinclair Bcst Group | Cape Girardeau | MO |
| KMIZ | 63164 | JW Broadcasting, LLC | Columbia | MO |
| KOMU | 65583 | Univ of Missouri | Columbia | MO |

| | | | | |
|---|---|---|---|---|
| KHQA | 4690 | Barrington Broadcasting | Hannibal | MO |
| KRCG | 41110 | Barrington Broadcasting | Jefferson City | MO |
| KNLJ | 48521 | Christian TV Network | Jefferson City | MO |
| KODE | 18283 | Mission Broadcasting, Inc. | Joplin | MO |
| KSNF | 67766 | Nexstar Broadcasting Group | Joplin | MO |
| KPXE | 33337 | Ion Media Networks Inc. DIP | Kansas City | MO |
| KMBC | 65686 | Hearst Stations, Inc. | Kansas City | MO |
| KSMO | 33336 | Meredith Corp | Kansas City | MO |
| KCTV | 41230 | Meredith Corp | Kansas City | MO |
| WDAF | 11291 | Foxco Acquisition Subsidiary, LLC | Kansas City | MO |
| KSHB | 59444 | Scripps Howard Bcstg | Kansas City | MO |
| KCWE | 64444 | Hearst Stations, Inc. | Kansas City | MO |
| KTVO | 21251 | Barrington Broadcasting | Kirksville | MO |
| KRBK | 166319 | Koplar Communications Int'l Inc. | Osage Beach | MO |
| KPOB | 73998 | Mel Wheeler Inc | Poplar Bluff | MO |
| KSPR | 35630 | GOCOM Communications LLC | Springfield | MO |
| KSFX | 3659 | Nexstar Broadcasting Group | Springfield | MO |
| KYTV | 36003 | Schurz Communications, Inc | Springfield | MO |
| KQTV | 20427 | Nexstar Broadcasting Group | St. Joseph | MO |
| KTAJ | 999 | Trinity Bcstg Ntwk | St. Joseph | MO |
| KPLR | 35417 | Tribune Broadcasting Co. DIP | St. Louis | MO |
| KMOV | 70034 | Belo Corp | St. Louis | MO |
| KNLC | 48525 | New Life Evangelistic Center Inc. | St. Louis | MO |
| KSDK | 46981 | Gannett Co | St. Louis | MO |
| KDNL | 56524 | Sinclair Bcst Group | St. Louis | MO |
| KTVI | 35693 | Foxco Acquisition Subsidiary, LLC | St. Louis | MO |
| WLOX | 13995 | Raycom Media Inc. | Biloxi | MS |
| WCBI | 12477 | Imes Family | Columbus | MS |
| WXVT | 25236 | Saga Communications Inc | Greenville | MS |
| WABG | 43203 | Commonwealth Broadcasting Grou | Greenwood | MS |
| WXXV | 53517 | Morris Multimedia | Gulfport | MS |
| WHLT | 48668 | Media General Inc | Hattiesburg | MS |
| WBUY | 60830 | Trinity Bcstg Ntwk | Holly Springs | MS |
| WKDH | 83310 | Southern Broadcasting, Inc. | Houston | MS |
| WDBD | 71326 | Jackson Broadcasting, LLC | Jackson | MS |
| WJTV | 48667 | Media General Inc | Jackson | MS |
| WLBT | 68542 | Raycom Media Inc. | Jackson | MS |
| WAPT | 49712 | Hearst Stations, Inc. | Jackson | MS |
| WDAM | 21250 | Raycom Media Inc. | Laurel | MS |
| WRBJ | 136749 | Roberts Bcstg Co | Magee | MS |
| WRBJ | 136749 | Roberts Bcstg Co - DIP | Magee | MS |
| WGBC | 24314 | WGBC-TV, LLC | Meridian | MS |
| WMDN | 73255 | Meridian Media, LLC | Meridian | MS |
| WNTZ | 16539 | Comm Corp of America | Natchez | MS |
| WTVA | 74148 | Spain, Frank &Family | Tupelo | MS |
| WUFX | 84253 | Vicksburg Broadcasting LLC | Vicksburg | MS |
| WLOV | 37732 | Spain, Frank &Family | West Point | MS |
| KULR | 35724 | Max Media LLC | Billings | MT |
| KSVI | 5243 | Nexstar Broadcasting Group | Billings | MT |
| KTVQ | 35694 | Evening Post Publshg | Billings | MT |
| KBZK | 33756 | Evening Post Publshg | Bozeman | MT |
| KWYB | 14674 | Max Media LLC | Butte | MT |
| KXLF | 35959 | Evening Post Publshg | Butte | MT |

| KXGN | 24287 | Glendive Bcstg Corp | Glendive | MT |
| KFBB | 34412 | Max Media LLC | Great Falls | MT |
| KRTV | 35567 | Evening Post Publshg | Great Falls | MT |
| KHMT | 47670 | Mission Broadcasting, Inc. | Hardin | MT |
| KBBJ | 83689 | Intermountain West Comm Company | Havre | MT |
| KTVH | 5290 | Intermountain West Comm Company | Helena | MT |
| KMTF | 68717 | Meridian Communications Of Mon | Helena | MT |
| KCFW | 18079 | Bluestone TV Holdings Inc | Kalispell | MT |
| KBAO | 84794 | Intermountain West Comm Company | Lewistown | MT |
| KYUS | 5237 | KYUS BROADCASTING CORP | Miles City | MT |
| KTMF | 14675 | Max Media LLC | Missoula | MT |
| KPAX | 35455 | Evening Post Publshg | Missoula | MT |
| KECI | 18084 | Bluestone TV Holdings Inc | Missoula | MT |
| WHNS | 72300 | Meredith Corp | Asheville | NC |
| WYCW | 70149 | Media General Inc | Asheville | NC |
| WLOS | 56537 | Sinclair Bcst Group | Asheville | NC |
| WJZY | 73152 | Capitol Bcg Co Inc. | Belmont | NC |
| WGPX | 65074 | Ion Media Networks Inc. DIP | Burlington | NC |
| WBTV | 30826 | Raycom Media Inc. | Charlotte | NC |
| WCNC | 32326 | Belo Corp | Charlotte | NC |
| WSOC | 74070 | Cox Broadcasting Corporation | Charlotte | NC |
| WCCB | 49157 | Bahakel Comm | Charlotte | NC |
| WRDC | 54963 | Sinclair Bcst Group | Durham | NC |
| WTVD | 8617 | Capital Cities/ABC | Durham | NC |
| WFPX | 21245 | Ion Media Networks Inc. DIP | Fayetteville | NC |
| WNCN | 50782 | Media General Inc | Goldsboro | NC |
| WFMY | 72064 | Gannett Co | Greensboro | NC |
| WMYV | 25544 | Sinclair Bcst Group | Greensboro | NC |
| WLXI | 54452 | Tri-State Chrstn TV | Greensboro | NC |
| WEPX | 81508 | Ion Media Networks Inc. DIP | Greenville | NC |
| WYDO | 35582 | Esteem Broadcasting of NC, LLC | Greenville | NC |
| WNCT | 57838 | Media General Inc | Greenville | NC |
| WHKY | 65919 | Long Communications, LLC | Hickory | NC |
| WGHP | 72106 | Foxco Acquisition Subsidiary, LLC | High Point | NC |
| WPXU | 37971 | Ion Media Networks Inc. DIP | Jacksonville | NC |
| WAXN | 12793 | Cox Broadcasting Corporation | Kannapolis | NC |
| WCWG | 35385 | TTBG LLC | Lexington | NC |
| WSKY | 76324 | Sky Television, LLC | Manteo | NC |
| WFXI | 37982 | Esteem Broadcasting of NC, LLC | Morehead City | NC |
| WCTI | 18334 | Esteem Broadcasting of NC, LLC | New Bern | NC |
| WRAZ | 64611 | Capitol Bcg Co Inc. | Raleigh | NC |
| WLFL | 73205 | Sinclair Bcst Group | Raleigh | NC |
| WRAL | 8688 | Capitol Bcg Co Inc. | Raleigh | NC |
| WRPX | 20590 | Ion Media Networks Inc. DIP | Rocky Mount | NC |
| WITN | 594 | Gray Television Licensee LLC | Washington | NC |
| WSFX | 72871 | American Spirit Media, LLC | Wilmington | NC |
| WECT | 48666 | Raycom Media Inc. | Wilmington | NC |
| WWAY | 12033 | Morris Multimedia | Wilmington | NC |
| WRAY | 10133 | TCT Ministries, Inc. | Wilson | NC |
| WXLV | 414 | Sinclair Bcst Group | Winston Salem | NC |
| WXII | 53921 | Hearst Stations, Inc. | Winston-salem | NC |
| KFYR | 41427 | Hoak Media LLC | Bismarck | ND |
| KNDX | 82611 | Prime Cities Bcstrs | Bismarck | ND |

| KBMY | 22121 | Forum Communications Co | Bismarck | ND |
|------|-------|-------------------------|----------|-----|
| KXMB | 55686 | Reiten Television | Bismarck | ND |
| WDAZ | 22124 | Forum Communications Co | Devils Lake | ND |
| KQCD | 41430 | Hoak Media LLC | Dickinson | ND |
| KXMA | 55684 | Reiten Television | Dickinson | ND |
| KVLY | 61961 | Hoak Media LLC | Fargo | ND |
| KVRR | 55372 | Red River Bcst Corp | Fargo | ND |
| WDAY | 22129 | Forum Communications Co | Fargo | ND |
| KJRR | 55364 | Red River Bcst Corp | Jamestown | ND |
| KMOT | 41425 | Hoak Media LLC | Minot | ND |
| KMCY | 22127 | Forum Communications Co | Minot | ND |
| KXMC | 55685 | Reiten Television | Minot | ND |
| KXND | 82615 | Prime Cities Bcstrs | Minot | ND |
| KNRR | 55362 | Red River Bcst Corp | Pembina | ND |
| KXJB | 49134 | Catamount Broadcast Group LLC | Valley City | ND |
| KUMV | 41429 | Hoak Media LLC | Williston | ND |
| KXMD | 55683 | Reiten Television | Williston | ND |
| KLKE | 00000 | Citadel Comm Co Ltd | Albion | NE |
| KTVG | 27220 | Hill Bcstg Co | Grand Island | NE |
| KGIN | 7894 | Gray Television Licensee LLC | Grand Island | NE |
| KWNB | 21162 | Pappas Telecasting Companies | Hayes Center | NE |
| KHGI | 21160 | Pappas Telecasting Companies | Kearney | NE |
| KOLN | 7890 | Gray Television Licensee LLC | Lincoln | NE |
| KLKN | 11264 | Citadel Comm Co Ltd | Lincoln | NE |
| KFXL | 84453 | KCWL Television LLC | Lincoln | NE |
| KSNK | 72362 | New Vision Television DIP | Mccook | NE |
| KXVO | 23277 | TTBG LLC | Omaha | NE |
| KMTV | 35190 | Journal Broadcast Group | Omaha | NE |
| KETV | 53903 | Hearst Stations, Inc. | Omaha | NE |
| WOWT | 65528 | Gray Television Licensee LLC | Omaha | NE |
| KPTM | 51491 | TTBG LLC | Omaha | NE |
| KDUH | 17683 | Duhamel Broadcasting Enterpris | Scottsbluff | NE |
| KSTF | 63182 | Sagamore Hill Broadcasting | Scottsbluff | NE |
| KSNB | 21161 | Pappas Telecasting Companies | Superior | NE |
| WPXG | 48406 | Ion Media Networks Inc. DIP | Concord | NH |
| WZMY | 14682 | ShootingStar Broadcasting | Derry | NH |
| WBIN | 14682 | Carlisle One Media, Inc. | Derry | NH |
| WMUR | 73292 | Hearst Stations, Inc. | Manchester | NH |
| WNEU | 51864 | Telemundo Group | Merrimack | NH |
| WWSI | 23142 | ZGS Communications, Inc. | Atlantic City | NJ |
| WMCN | 9739 | LENFEST BROADCASTING | Atlantic City | NJ |
| WGTW | 7623 | Trinity Bcstg Ntwk | Burlington | NJ |
| WNJU | 73333 | Telemundo Group | Linden | NJ |
| WMBC | 43952 | Mountain Bcstg Corp | Newton | NJ |
| WWOR | 74197 | Fox Television | Secaucus | NJ |
| WMGM | 61111 | Access. 1 Communications | Wildwood | NJ |
| KNAT | 993 | Trinity Bcstg Ntwk | Albuquerque | NM |
| KRQE | 48575 | LIN Television Corp | Albuquerque | NM |
| KOAT | 53928 | Hearst Stations, Inc. | Albuquerque | NM |
| KOB | 35313 | Hubbard Broadcasting Inc. | Albuquerque | NM |
| KASY | 55049 | ACME Television LLC | Albuquerque | NM |
| KOCT | 53908 | Hearst Stations, Inc. | Carlsbad | NM |
| KTEL | 83707 | Ramar Communications | Carlsbad | NM |

| | | | | |
|---|---|---|---|---|
| KOFT | 53904 | Hearst Stations, Inc. | Farmington | NM |
| KOBF | 35321 | Hubbard Broadcasting Inc. | Farmington | NM |
| KUPT | 27431 | Ramar Communications | Hobbs | NM |
| KBIM | 48556 | LIN Television Corp | Roswell | NM |
| KOBR | 62272 | Hubbard Broadcasting Inc. | Roswell | NM |
| KRPV | 53539 | Prime Time Christian | Roswell | NM |
| KRWB | 84157 | ACME Television LLC | Roswell | NM |
| KCHF | 60793 | Son Bcstg Inc | Santa Fe | NM |
| KASA | 32311 | LIN Television Corp | Santa Fe | NM |
| KWBQ | 76268 | ACME Television LLC | Santa Fe | NM |
| KOBG | 85114 | Hubbard Broadcasting Inc. | Silver City | NM |
| KOVT | 53911 | Hearst Stations, Inc. | Silver City | NM |
| KENV | 63845 | Intermountain West Comm Company | Elko | NV |
| KVNV | 86537 | PMCM TV LLC | Ely | NV |
| KEGS | 86201 | Equity Broadcasting Corp.DIP | Goldfield | NV |
| KVVU | 35870 | Meredith Corp | Henderson | NV |
| KVCW | 10195 | Sinclair Bcst Group | Las Vegas | NV |
| KSNV | 69677 | Intermountain West Comm Company | Las Vegas | NV |
| KTNV | 74100 | Journal Broadcast Group | Las Vegas | NV |
| KVMY | 10179 | Sinclair Bcst Group | Las Vegas | NV |
| KLAS | 35042 | Landmark Comm | Las Vegas | NV |
| KMCC | 41237 | Beam Tilt Intermediate, LLC | Laughlin | NV |
| KBLR | 63768 | NBC/GE | Paradise | NV |
| KRNV | 60307 | Intermountain West Comm Company | Reno | NV |
| KTVN | 59139 | Sarkes Tarzian Inc | Reno | NV |
| KAME | 19191 | Ellis Communications | Reno | NV |
| KOLO | 63331 | Gray Television Licensee LLC | Reno | NV |
| KRXI | 48360 | Cox Broadcasting Corporation | Reno | NV |
| WTEN | 74422 | Young Broadcasting DIP | Albany | NY |
| WXXA | 11970 | Newport Television LLC | Albany | NY |
| WNYT | 73363 | Hubbard Broadcasting Inc. | Albany | NY |
| WYPX | 13933 | Ion Media Networks Inc. DIP | Amsterdam | NY |
| WPXJ | 2325 | Ion Media Networks Inc. DIP | Batavia | NY |
| WIVT | 11260 | Newport Television LLC | Binghamton | NY |
| WICZ | 62210 | Northwest Broadcasting Inc. | Binghamton | NY |
| WBNG | 23337 | Granite Bcstg Corp | Binghamton | NY |
| WIVB | 7780 | LIN Television Corp | Buffalo | NY |
| WKBW | 54176 | Granite Bcstg Corp | Buffalo | NY |
| WGRZ | 64547 | Gannett Co | Buffalo | NY |
| WUTV | 415 | Sinclair Bcst Group | Buffalo | NY |
| WNLO | 71905 | LIN Television Corp | Buffalo | NY |
| WNYO | 67784 | Sinclair Bcst Group | Buffalo | NY |
| WWNY | 68851 | United Comm Corp | Carthage | NY |
| WYDC | 62219 | Vision Communications, LLC | Corning | NY |
| WETM | 60653 | Newport Television LLC | Elmira | NY |
| WENY | 71508 | Lilly Broadcasting | Elmira | NY |
| WNYB | 30303 | Tri-State Chrstn TV | Jamestown | NY |
| WRNN | 74156 | WTZA-TV Associates | Kingston | NY |
| WPIX | 73881 | Tribune Broadcasting Co. DIP | New York | NY |
| WPXN | 73356 | Ion Media Networks Inc. DIP | New York | NY |
| WCBS | 9610 | CBS TV | New York | NY |
| WABC | 1328 | Capital Cities/ABC | New York | NY |
| WNBC | 47535 | NBC/GE | New York | NY |

| WNYW | 22206 | Fox Television | New York | NY |
|---|---|---|---|---|
| WPTZ | 57476 | Hearst Stations, Inc. | North Pole | NY |
| WTBY | 67993 | Trinity Bcstg Ntwk | Poughkeepsie | NY |
| WLNY | 73206 | CBS TV | Riverhead | NY |
| WLNY | 73206 | WLNY, L.P. | Riverhead | NY |
| WHAM | 73371 | Newport Television LLC | Rochester | NY |
| WHEC | 70041 | WTOG-TV, INC | Rochester | NY |
| WROC | 73964 | Nexstar Broadcasting Group | Rochester | NY |
| WUHF | 413 | ABRY Communications | Rochester | NY |
| WRGB | 73942 | Freedom Comm Inc. DIP | Schenectady | NY |
| WRGB | 73942 | Sinclair Bcst Group | Schenectady | NY |
| WCWN | 73264 | Freedom Comm Inc. DIP | Schenectady | NY |
| WCWN | 73264 | Sinclair Bcst Group | Schenectady | NY |
| WSPX | 64352 | Ion Media Networks Inc. DIP | Syracuse | NY |
| WSYR | 73113 | Newport Television LLC | Syracuse | NY |
| WTVH | 74151 | Granite Bcstg Corp | Syracuse | NY |
| WSTM | 21252 | Barrington Broadcasting | Syracuse | NY |
| WNYS | 58724 | RKM Media Inc. | Syracuse | NY |
| WSYT | 40758 | Sinclair Bcst Group | Syracuse | NY |
| WKTV | 60654 | Smith Bcstg Group | Utica | NY |
| WUTR | 57837 | Mission Broadcasting, Inc. | Utica | NY |
| WWTI | 16747 | Newport Television LLC | Watertown | NY |
| WVPX | 70491 | Ion Media Networks Inc. DIP | Akron | OH |
| WBNX | 72958 | Winston Bcstg | Akron | OH |
| WRLM | 43870 | Tri-State Chrstn TV | Canton | OH |
| WDLI | 67893 | Trinity Bcstg Ntwk | Canton | OH |
| WWHO | 21158 | LIN Television Corp | Chillicothe | OH |
| WWHO | 21158 | Manhan Media, Inc. | Chillicothe | OH |
| WKRC | 11289 | Newport Television LLC | Cincinnati | OH |
| WLWT | 46979 | Hearst Stations, Inc. | Cincinnati | OH |
| WCPO | 59438 | Scripps Howard Bcstg | Cincinnati | OH |
| WSTR | 11204 | Sinclair Bcst Group | Cincinnati | OH |
| WKYC | 73195 | Gannett Co | Cleveland | OH |
| WEWS | 59441 | Scripps Howard Bcstg | Cleveland | OH |
| WJW | 73150 | Foxco Acquisition Subsidiary, LLC | Cleveland | OH |
| WCMH | 50781 | Media General Inc | Columbus | OH |
| WTTE | 74137 | Sinclair Bcst Group | Columbus | OH |
| WBNS | 71217 | Dispatch Printing Co | Columbus | OH |
| WSYX | 56549 | Sinclair Bcst Group | Columbus | OH |
| WDTN | 65690 | LIN Television Corp | Dayton | OH |
| WRGT | 411 | Sinclair Bcst Group | Dayton | OH |
| WHIO | 41458 | Cox Broadcasting Corporation | Dayton | OH |
| WKEF | 73155 | Sinclair Bcst Group | Dayton | OH |
| WTLW | 1222 | American Christian Tele. Serv. | Lima | OH |
| WLIO | 37503 | Blade Communications | Lima | OH |
| WUAB | 8532 | Raycom Media Inc. | Lorain | OH |
| WMFD | 41893 | MID-STATE TV INC. | Mansfield | OH |
| WSFJ | 11118 | Trinity Bcstg Ntwk | Newark | OH |
| WQCW | 65130 | Lockwood Broadcasting Group | Portsmouth | OH |
| WGGN | 11027 | Christian Faith Broadcasting | Sandusky | OH |
| WOIO | 39746 | Raycom Media Inc. | Shaker Heights | OH |
| WBDT | 70138 | ACME Television LLC | Springfield | OH |
| WBDT | 70138 | LIN Television Corp | Springfield | OH |

| WTOV | 74122 | Cox Broadcasting Corporation | Steubenville | OH |
|---|---|---|---|---|
| WTVG | 74150 | Capital Cities/ABC | Toledo | OH |
| WNWO | 73354 | Barrington Broadcasting | Toledo | OH |
| WTOL | 13992 | Raycom Media Inc. | Toledo | OH |
| WUPW | 19190 | LIN Television Corp | Toledo | OH |
| WUPW | 19190 | American Spirit Media, LLC | Toledo | OH |
| WLMB | 17076 | Dominion Broadcasting Inc. | Toledo | OH |
| KOLR | 28496 | Mission Broadcasting, Inc. | Wadsworth | OH |
| WFMJ | 72062 | Vindicator Printing | Youngstown | OH |
| WKBN | 73153 | New Vision Television DIP | Youngstown | OH |
| WYTV | 4693 | Parkin Broadcasting LLC | Youngstown | OH |
| WHIZ | 61216 | Littick, NJ, et al | Zanesville | OH |
| KTEN | 35666 | Channel 49 Acquisition Corp. | Ada | OK |
| KDOR | 1005 | Trinity Bcstg Ntwk | Bartlesville | OK |
| KSWO | 35645 | Drewry Comm Group | Lawton | OK |
| KQCW | 78322 | Griffin Communications | Muskogee | OK |
| KOCM | 84225 | Daystar TV Network | Norman | OK |
| KUOK | 86532 | TYLER MEDIA CORPORATION | Oklahoma | OK |
| KOPX | 2566 | Ion Media Networks Inc. DIP | Oklahoma City | OK |
| KOKH | 35388 | Sinclair Bcst Group | Oklahoma City | OK |
| KOCB | 50170 | Sinclair Bcst Group | Oklahoma City | OK |
| KTBO | 67999 | Trinity Bcstg Ntwk | Oklahoma City | OK |
| KWTV | 25382 | Griffin Communications | Oklahoma City | OK |
| KFOR | 66222 | LOCAL TV LLC | Oklahoma City | OK |
| KOCO | 12508 | Hearst Stations, Inc. | Oklahoma City | OK |
| KAUT | 50182 | LOCAL TV LLC | Oklahoma City | OK |
| KSBI | 38214 | FAMILY BROADCASTING GROUP, INC. | Oklahoma City | OK |
| KTPX | 7078 | Ion Media Networks Inc. DIP | Okmulgee | OK |
| KTUZ | 77480 | TYLER MEDIA CORPORATION | Shawnee | OK |
| KOKI | 11910 | Newport Television LLC | Tulsa | OK |
| KMYT | 54420 | Newport Television LLC | Tulsa | OK |
| KWHB | 37099 | LeSea Bcstg Inc | Tulsa | OK |
| KTUL | 35685 | Allbritton Comm | Tulsa | OK |
| KJRH | 59439 | Scripps Howard Bcstg | Tulsa | OK |
| KOTV | 35434 | Griffin Communications | Tulsa | OK |
| KGEB | 24485 | University Broadcasting | Tulsa | OK |
| KTVZ | 55907 | News-Press & Gazette | Bend | OR |
| KOHD | 166534 | Chambers Comm Corp | Bend | OR |
| KMCB | 35183 | Newport Television LLC | Coos Bay | OR |
| KCBY | 49750 | Fisher Communications | Coos Bay | OR |
| KMTR | 35189 | Newport Television LLC | Eugene | OR |
| KEZI | 34406 | Chambers Comm Corp | Eugene | OR |
| KLSR | 8322 | Calif-Oregon Bcstg | Eugene | OR |
| KVAL | 49766 | Fisher Communications | Eugene | OR |
| KBLN | 83306 | Better Life Television | Grants Pass | OR |
| KOTI | 8284 | Calif-Oregon Bcstg | Klamath Falls | OR |
| KDKF | 60740 | Chambers Comm Corp | Klamath Falls | OR |
| KUNP | 81447 | Fisher Communications | La Grande | OR |
| KOBI | 8260 | Calif-Oregon Bcstg | Medford | OR |
| KDRV | 60736 | Chambers Comm Corp | Medford | OR |
| KMVU | 32958 | Northwest Broadcasting Inc. | Medford | OR |
| KTVL | 22570 | Freedom Comm Inc. DIP | Medford | OR |
| KTVL | 22570 | Sinclair Bcst Group | Medford | OR |

| | | | | |
|---|---|---|---|---|
| KFFX | 12729 | Northwest Broadcasting Inc. | Pendleton | OR |
| KGW | 34874 | Belo Corp | Portland | OR |
| KPTV | 50633 | Meredith Corp | Portland | OR |
| KOIN | 35380 | New Vision Television | Portland | OR |
| KATU | 21649 | Fisher Communications | Portland | OR |
| KNMT | 47707 | Trinity Bcstg Ntwk | Portland | OR |
| KPIC | 61551 | Fisher Communications | Roseburg | OR |
| KTCW | 35187 | Newport Television LLC | Roseburg | OR |
| KPXG | 5801 | Ion Media Networks Inc. DIP | Salem | OR |
| KRCW | 10192 | Tribune Broadcasting Co. DIP | Salem | OR |
| WFMZ | 39884 | Maranatha Bcstg | Allentown | PA |
| WATM | 20287 | Palm Television L.P. | Altoona | PA |
| WTAJ | 23341 | Nexstar Broadcasting Group | Altoona | PA |
| WKBS | 13929 | Cornerstone TV Inc | Altoona | PA |
| WBPH | 60850 | Sonshine Family TV. | Bethlehem | PA |
| WSEE | 49711 | Lilly Broadcasting | Erie | PA |
| WJET | 65749 | Nexstar Broadcasting Group | Erie | PA |
| WICU | 24970 | SJL COMMUNICATIONS, L.P. | Erie | PA |
| WFXP | 19707 | Nexstar Broadcasting Group | Erie | PA |
| WPCB | 13924 | Cornerstone TV Inc | Greensburg | PA |
| WHP | 72313 | Newport Television LLC | Harrisburg | PA |
| WHTM | 72326 | Allbritton Comm | Harrisburg | PA |
| WOLF | 73375 | Pegasus Bcst TV Ltd | Hazleton | PA |
| WPCW | 69880 | CBS TV | Jeannette | PA |
| WJAC | 73120 | Cox Broadcasting Corporation | Johnstown | PA |
| WWCP | 20295 | Horseshoe Curve Communications, LLC. | Johnstown | PA |
| WGAL | 53930 | Hearst Stations, Inc. | Lancaster | PA |
| WLYH | 23338 | Nexstar Broadcasting Group | Lancaster | PA |
| WPHL | 73879 | Tribune Broadcasting Co. DIP | Philadelphia | PA |
| WCAU | 63153 | NBC/GE | Philadelphia | PA |
| WPVI | 8616 | Capital Cities/ABC | Philadelphia | PA |
| WPSG | 12499 | CBS TV | Philadelphia | PA |
| KYW | 25453 | CBS TV | Philadelphia | PA |
| WTXF | 51568 | Fox Television | Philadelphia | PA |
| WINP | 41314 | Ion Media Networks Inc. DIP | Pittsburgh | PA |
| WPMY | 73907 | Sinclair Bcst Group | Pittsburgh | PA |
| WTAE | 65681 | Hearst Stations, Inc. | Pittsburgh | PA |
| WPGH | 73875 | Sinclair Bcst Group | Pittsburgh | PA |
| WPXI | 73910 | Cox Broadcasting Corporation | Pittsburgh | PA |
| KDKA | 25454 | CBS TV | Pittsburgh | PA |
| WQEX | 41314 | WQED Multimedia | Pittsburgh | PA |
| WTVE | 55305 | WTVE License Co. LLC | Reading | PA |
| WTVE | 55305 | NRJ TV Philly License Co, LLC. | Reading | PA |
| WGCB | 55350 | Norris, John & Famly | Red Lion | PA |
| WQPX | 64690 | Ion Media Networks Inc. DIP | Scranton | PA |
| WYOU | 17010 | Bastet Broadcasting, Inc. | Scranton | PA |
| WSWB | 73374 | MPS Media | Scranton | PA |
| WNEP | 73318 | LOCAL TV LLC | Scranton | PA |
| WBRE | 71225 | Nexstar Broadcasting Group | Wilkes-barre | PA |
| WQMY | 52075 | CP Media LLC | Williamsport | PA |
| WPMT | 10213 | Tribune Broadcasting Co. DIP | York | PA |
| WQHA | 3255 | Concilio Mision Cristiana Fuente de Agua | Aguada | PR |
| WOLE | 71725 | Du Art Film Labs | Aguadilla | PR |

| WVEO | 61573 | International Bcg. Corp. | Aguadilla | PR |
| WDWL | 4110 | Bayamon Christian Network | Bayamon | PR |
| WORO | 73901 | Catholic Church of Puerto Rico | Fajardo | PR |
| WRUA | 15320 | Eastern TV Corporation | Farjado | PR |
| WIDP | 18410 | Ebenezer Broadcasting Group | Guayama | PR |
| WVSN | 67190 | Asociacion Evangel | Humacao | PR |
| WORA | 64865 | Telecinco Inc | Mayaguez | PR |
| WNJX | 73336 | InterMedia Partners LP | Mayaguez | PR |
| WECN | 19561 | Encuentro Christian | Naranjito | PR |
| WTIN | 26681 | InterMedia Partners LP | Ponce | PR |
| WKPV | 58341 | Caribevision Station Group, LLC | Ponce | PR |
| WVOZ | 29000 | International Bcg. Corp. | Ponce | PR |
| WJPX | 58340 | Caribevision Station Group, LLC | San Juan | PR |
| WKAQ | 64983 | NBC/GE | San Juan | PR |
| WAPA | 52073 | InterMedia Partners LP | San Juan | PR |
| WTCV | 28954 | International Bcg. Corp. | San Juan | PR |
| WSJU | 4077 | Aerco Broadcasting Corp. | San Juan | PR |
| WJWN | 2234 | Caribevision Station Group, LLC | San Sebastian | PR |
| WIRS | 39887 | Caribevision Station Group, LLC | Yauco | PR |
| WIRS | 39887 | America-CV Station Group Inc. | Yauco | PR |
| WPXQ | 50063 | Ion Media Networks Inc. DIP | Block Island | RI |
| WNAC | 73311 | LIN Television Corp | Providence | RI |
| WJAR | 50780 | NBC/GE | Providence | RI |
| WPRI | 47404 | LIN Television Corp | Providence | RI |
| WMYA | 56548 | Sinclair Bcst Group | Anderson | SC |
| WCBD | 10587 | Media General Inc | Charleston | SC |
| WCIV | 21536 | Allbritton Comm | Charleston | SC |
| WMMP | 9015 | Sinclair Bcst Group | Charleston | SC |
| WTAT | 416 | Sinclair Bcst Group | Charleston | SC |
| WCSC | 71297 | Raycom Media Inc. | Charleston | SC |
| WACH | 19199 | Barrington Broadcasting | Columbia | SC |
| WOLO | 60963 | Bahakel Comm | Columbia | SC |
| WZRB | 136750 | Roberts Bcstg Co | Columbia | SC |
| WZRB | 136750 | Roberts Bcstg Co - DIP | Columbia | SC |
| WLTX | 37176 | Gannett Co | Columbia | SC |
| WIS | 13990 | Raycom Media Inc. | Columbia | SC |
| WPDE | 17012 | Barrington Broadcasting | Florence | SC |
| WWMB | 3133 | Sagamore Hill Broadcasting | Florence | SC |
| WBTW | 66407 | Media General Inc | Florence | SC |
| WGGS | 9064 | Community TV Inc | Greenville | SC |
| WYFF | 53905 | Hearst Stations, Inc. | Greenville | SC |
| WTGS | 27245 | Parkin Broadcasting LLC | Hardeeville | SC |
| WMBF | 83969 | Raycom Media Inc. | Myrtle Beach | SC |
| WFXB | 9054 | Bahakel Comm | Myrtle Beach | SC |
| WMYT | 20624 | Capitol Bcg Co Inc. | Rock Hill | SC |
| WSPA | 66391 | Media General Inc | Spartanburg | SC |
| WKTC | 40902 | WBHQ Columbia, LLC | Sumter | SC |
| KABY | 48659 | Hoak Media LLC | Aberdeen | SD |
| KDLO | 41975 | Young Broadcasting DIP | Florence | SD |
| KTTM | 28501 | Independent Comm Inc | Huron | SD |
| KIVV | 34348 | Mission Broadcasting, Inc. | Lead | SD |
| KHSD | 17686 | Duhamel Broadcasting Enterpris | Lead | SD |
| KDLV | 55375 | Red River Bcst Corp | Mitchell | SD |

| | | | | |
|---|---|---|---|---|
| KPRY | 48660 | Hoak Media LLC | Pierre | SD |
| KCLO | 41969 | Young Broadcasting DIP | Rapid City | SD |
| KOTA | 17688 | Duhamel Broadcasting Enterpris | Rapid City | SD |
| KEVN | 34347 | Mission Broadcasting, Inc. | Rapid City | SD |
| KNBN | 81464 | Rapid Broadcasting Company | Rapid City | SD |
| KPLO | 41964 | Young Broadcasting DIP | Reliance | SD |
| KELO | 41983 | Young Broadcasting DIP | Sioux Falls | SD |
| KSFY | 48658 | Hoak Media LLC | Sioux Falls | SD |
| KDLT | 55379 | Red River Bcst Corp | Sioux Falls | SD |
| KTTW | 28521 | Independent Comm Inc | Sioux Falls | SD |
| WTVC | 22590 | Freedom Comm Inc. DIP | Chattanooga | TN |
| WTVC | 22590 | Sinclair Bcst Group | Chattanooga | TN |
| WDSI | 71353 | CP Media LLC | Chattanooga | TN |
| WRCB | 59137 | Sarkes Tarzian Inc | Chattanooga | TN |
| WDEF | 54385 | Media General Inc | Chattanooga | TN |
| KEYU | 83715 | Drewry Comm Group | Chattanooga | TN |
| WFLI | 72060 | MPS Media | Cleveland | TN |
| WNPX | 28468 | Ion Media Networks Inc. DIP | Cookeville | TN |
| WBXX | 72971 | ACME Television LLC | Crossville | TN |
| WBXX | 72971 | Lockwood Broadcasting Group | Crossville | TN |
| WEMT | 40761 | Esteem Broadcasting of NC, LLC | Greeneville | TN |
| WPGD | 60820 | Trinity Bcstg Ntwk | Hendersonville | TN |
| WJKT | 68519 | Newport Television LLC | Jackson | TN |
| WBBJ | 65204 | Bahakel Comm | Jackson | TN |
| WPXK | 52628 | Ion Media Networks Inc. DIP | Jellico | TN |
| WJHL | 57826 | Media General Inc | Johnson City | TN |
| WKPT | 27504 | Glenwood Comm Corp | Kingsport | TN |
| WATE | 71082 | Young Broadcasting DIP | Knoxville | TN |
| WTNZ | 19200 | Raycom Media Inc. | Knoxville | TN |
| WVLT | 35908 | Gray Television Licensee LLC | Knoxville | TN |
| WBIR | 46984 | Gannett Co | Knoxville | TN |
| WVLR | 81750 | Christian TV Network | Knoxville | TN |
| WMAKDT | 83931 | Daystar TV Network | Knoxville | TN |
| WJFB | 7651 | Bryant Comm Inc | Lebanon | TN |
| WLMT | 68518 | Newport Television LLC | Memphis | TN |
| WPTY | 11907 | Newport Television LLC | Memphis | TN |
| WPXX | 21726 | Ion Media Networks Inc. DIP | Memphis | TN |
| WMC | 19184 | Raycom Media Inc. | Memphis | TN |
| WREG | 66174 | LOCAL TV LLC | Memphis | TN |
| WHBQ | 12521 | Fox Television | Memphis | TN |
| WHTN | 11117 | Christian TV Network | Murfreesboro | TN |
| WKRN | 73188 | Young Broadcasting DIP | Nashville | TN |
| WZTV | 418 | Sinclair Bcst Group | Nashville | TN |
| WUXP | 9971 | Sinclair Bcst Group | Nashville | TN |
| WNAB | 73310 | Lambert Broadcasting LLC | Nashville | TN |
| WTVF | 36504 | Landmark Comm | Nashville | TN |
| WSMV | 41232 | Meredith Corp | Nashville | TN |
| KRBC | 306 | Mission Broadcasting, Inc. | Abilene | TX |
| KTAB | 59988 | Nexstar Broadcasting Group | Abilene | TX |
| KXVA | 62293 | Bayou City Broadcasting, LLC | Abilene | TX |
| KVIH | 40450 | Barrington Broadcasting | Amarillo | TX |
| KFDA | 51466 | Drewry Comm Group | Amarillo | TX |
| KAMR | 8523 | Nexstar Broadcasting Group | Amarillo | TX |

| | | | | |
|---|---|---|---|---|
| KCIT | 33722 | Mission Broadcasting, Inc. | Amarillo | TX |
| KVII | 40446 | Barrington Broadcasting | Amarillo | TX |
| KPXD | 68834 | Ion Media Networks Inc. DIP | Arlington | TX |
| KXAN | 35920 | LIN Television Corp | Austin | TX |
| KVUE | 35867 | Belo Corp | Austin | TX |
| KEYE | 33691 | Four Points Media Group of Austin | Austin | TX |
| KNVA | 144 | 54 Bcstg Inc | Austin | TX |
| KTBC | 35649 | Fox Television | Austin | TX |
| KUBE | 70492 | TTBG LLC | Baytown | TX |
| KFDM | 22589 | Freedom Comm Inc. DIP | Beaumont | TX |
| KFDM | 22589 | Sinclair Bcst Group | Beaumont | TX |
| KBMT | 10150 | London Broadcasting Company | Beaumont | TX |
| KWAB | 42008 | Drewry Comm Group | Big Spring | TX |
| KVEO | 12523 | Comm Corp of America | Brownsville | TX |
| KYLE | 60384 | Comm Corp of America | Bryan | TX |
| KPXB | 58835 | Ion Media Networks Inc. DIP | Conroe | TX |
| KTBU | 28324 | Humanity Interested Media Inc. | Conroe | TX |
| KTBU | 28324 | Spanish Broadcasting System | Conroe | TX |
| KRIS | 25559 | Evening Post Publshg | Corpus Christi | TX |
| KIII | 10188 | McKinnon Family | Corpus Christi | TX |
| KIII | 10188 | London Broadcasting Company | Corpus Christi | TX |
| KZTV | 33079 | Eagle Creek Broadcasting, LLC | Corpus Christi | TX |
| KZTV | 33079 | Sagamore Hill Broadcasting | Corpus Christi | TX |
| KUQI | 82910 | High Maintenance Broadcasting LLC | Corpus Christi | TX |
| KDAF | 22201 | Tribune Broadcasting Co. DIP | Dallas | TX |
| KXTX | 35994 | Telemundo Group | Dallas | TX |
| KHAS | 48003 | Hoak Media LLC | Dallas | TX |
| KNOP | 49273 | Hoak Media LLC | Dallas | TX |
| WFAA | 72054 | Belo Corp | Dallas | TX |
| KDTX | 67910 | Trinity Bcstg Ntwk | Dallas | TX |
| KDFW | 33770 | Fox Television | Dallas | TX |
| KDFI | 17037 | Fox Television | Dallas | TX |
| KMPX | 73701 | Liberman Broadcasting Inc | Decatur | TX |
| KYVV | 55762 | SATV 10 LLC DIP | Del Rio | TX |
| KTDO | 36916 | ZGS Broadcast Holdings Inc | El Paso | TX |
| KDBC | 33764 | TTBG LLC | El Paso | TX |
| KVIA | 49832 | News-Press & Gazette | El Paso | TX |
| KTSM | 67760 | Comm Corp of America | El Paso | TX |
| KFOX | 33716 | Cox Broadcasting Corporation | El Paso | TX |
| KPTF | 81445 | Prime Time Christian | Farwell | TX |
| KFWD | 29015 | HIC Bcst Partners | Fort Worth | TX |
| KTXA | 51517 | CBS TV | Fort Worth | TX |
| KTVT | 23422 | CBS TV | Fort Worth | TX |
| KXAS | 49330 | NBC/GE | Fort Worth | TX |
| KCWX | 24316 | Corridor Television LLP | Fredericksburg | TX |
| KTMD | 64984 | Telemundo Group | Galveston | TX |
| KTAQ | 42359 | KTAQ of Dallas, LLC. | Greenville | TX |
| KTAQ | 42359 | Simons, Mike DIP | Greenville | TX |
| KTXD | 42359 | London Broadcasting Company | Greenville | TX |
| KGBT | 34457 | Barrington Broadcasting | Harlingen | TX |
| KIAH | 23394 | Tribune Broadcasting Co. DIP | Houston | TX |
| KZJL | 69531 | Liberman Broadcasting Inc | Houston | TX |
| KTRK | 35675 | Capital Cities/ABC | Houston | TX |

| KHOU | 34529 | Belo Corp | Houston | TX |
|------|-------|-----------|---------|-----|
| KPRC | 53117 | Post-Newsweek Stns | Houston | TX |
| KRIV | 22204 | Fox Television | Houston | TX |
| KTXH | 51569 | Fox Television | Houston | TX |
| WFXV | 43424 | Nexstar Broadcasting Group | Irving | TX |
| KETK | 55643 | Comm Corp of America | Jacksonville | TX |
| KNWS | 31870 | Johnson Bcstg Inc DIP | Katy | TX |
| KYAZ | 31870 | Una Vez Mas Houston, LLC. | Katy | TX |
| KMYS | 51518 | Sinclair Bcst Group | Kerrville | TX |
| KAZD | 17433 | Johnson Bcstg Inc DIP | Lake Dallas | TX |
| KAZD | 17433 | Una Vez Mas Dallas, LLC. | Lake Dallas | TX |
| KGNS | 10061 | Sagamore Hill Broadcasting | Laredo | TX |
| KVTV | 33078 | Eagle Creek Broadcasting, LLC | Laredo | TX |
| KBVO | 35909 | LIN Television Corp | Llano | TX |
| KFXK | 70917 | White Knight Bcstg | Longview | TX |
| KCEB | 83913 | Chatelain, Charles | Longview | TX |
| KCEB | 83913 | London Broadcasting Company | Longview | TX |
| KCBD | 27507 | Raycom Media Inc. | Lubbock | TX |
| KAMC | 40820 | Mission Broadcasting, Inc. | Lubbock | TX |
| KLBK | 3660 | Nexstar Broadcasting Group | Lubbock | TX |
| KJTV | 55031 | Ramar Communications | Lubbock | TX |
| KPTB | 53544 | Prime Time Christian | Lubbock | TX |
| KTRE | 68541 | Civic Communications | Lufkin | TX |
| KMID | 35131 | GOCOM Communications LLC | Midland | TX |
| KYTX | 55644 | KYTX License Co., LLC | Nacogdoches | TX |
| KOSA | 6865 | ICA Broadcasting | Odessa | TX |
| KMLM | 53541 | Prime Time Christian | Odessa | TX |
| KPEJ | 12524 | Comm Corp of America | Odessa | TX |
| KWES | 42007 | Drewry Comm Group | Odessa | TX |
| KBTV | 61214 | Nexstar Broadcasting Group | Port Arthur | TX |
| KTLM | 62354 | Sunbelt Multimedia Company | Rio Grande City | TX |
| KLST | 31114 | Nexstar Broadcasting Group | San Angelo | TX |
| KIDY | 58560 | Bayou City Broadcasting, LLC | San Angelo | TX |
| KSAN | 307 | Mission Broadcasting, Inc. | San Angelo | TX |
| WOAI | 69618 | Newport Television LLC | San Antonio | TX |
| KVDA | 64969 | Telemundo Group | San Antonio | TX |
| KENS | 26304 | Belo Corp | San Antonio | TX |
| KABB | 56528 | Sinclair Bcst Group | San Antonio | TX |
| KSAT | 53118 | Post-Newsweek Stns | San Antonio | TX |
| KXII | 35954 | Gray Television Licensee LLC | Sherman | TX |
| KPCB | 77452 | Prime Time Christian | Snyder | TX |
| KCEN | 10245 | KCEN License Company LLC | Temple | TX |
| KTAL | 35648 | Nexstar Broadcasting Group | Texarkana | TX |
| KLTV | 68540 | Civic Communications | Tyler | TX |
| KPXL | 61173 | Ion Media Networks Inc. DIP | Uvalde | TX |
| KVCT | 35846 | Surtsey Productions, Inc. | Victoria | TX |
| KAVU | 73101 | Sage Bcg Corp | Victoria | TX |
| KXXV | 9781 | Drewry Comm Group | Waco | TX |
| KWKT | 12522 | Comm Corp of America | Waco | TX |
| KWTX | 35903 | Bostick, M. N. | Waco | TX |
| KRGV | 43328 | Manship Stations | Weslaco | TX |
| KJTL | 7675 | Mission Broadcasting, Inc. | Wichita Falls | TX |
| KAUZ | 6864 | Hoak Media LLC | Wichita Falls | TX |

| KFDX | 65370 | Nexstar Broadcasting Group | Wichita Falls | TX |
|------|-------|----------------------------|---------------|----|
| KLCW | 77719 | Woods Comm Corp | Wolfforth | TX |
| KCSG | 59494 | BROADCAST WEST | Cedar City | UT |
| KUCW | 1136 | High Plains Broadcasting | Ogden | UT |
| KPNZ | 77512 | Liberman Broadcasting Inc | Ogden | UT |
| KUPX | 57884 | Ion Media Networks Inc. DIP | Provo | UT |
| KTVX | 68889 | Newport Television LLC | Salt Lake City | UT |
| KJZZ | 36607 | Larry H Miller Bcstg | Salt Lake City | UT |
| KSTU | 22215 | Foxco Acquisition Subsidiary, LLC | Salt Lake City | UT |
| KUTV | 35823 | Cerberus Capital Management LP | Salt Lake City | UT |
| KTMW | 10177 | Channel 20 Television Co. | Salt Lake City | UT |
| KSL | 6359 | Bonneville Intl. Corp. | Salt Lake City | UT |
| KMYU | 35822 | Cerberus Capital Management LP | St George | UT |
| WUPV | 10897 | American Spirit Media, LLC | Ashland | VA |
| WCAV | 363 | Gray Television Licensee LLC | Charlottesville | VA |
| WVIR | 70309 | Waterman Bcstg Corp | Charlottesville | VA |
| WLFG | 37808 | Living Faith Minstrs | Grundy | VA |
| WVEC | 74167 | Belo Corp | Hampton | VA |
| WHSV | 4688 | Gray Television Licensee LLC | Harrisonburg | VA |
| WWCW | 24812 | GB Roanoke Licensing LLC | Lynchburg | VA |
| WSET | 73988 | Allbritton Comm | Lynchburg | VA |
| WPXW | 74091 | Ion Media Networks Inc. DIP | Manassas | VA |
| WPXV | 67077 | Ion Media Networks Inc. DIP | Norfolk | VA |
| WTVZ | 40759 | Sinclair Bcst Group | Norfolk | VA |
| WTKR | 47401 | LOCAL TV LLC | Norfolk | VA |
| WRIC | 74416 | Young Broadcasting DIP | Petersburg | VA |
| WAVY | 71127 | LIN Television Corp | Portsmouth | VA |
| WGNT | 9762 | CBS TV | Portsmouth | VA |
| WWBT | 30833 | Raycom Media Inc. | Richmond | VA |
| WTVR | 57832 | Foxco Acquisition Subsidiary, LLC | Richmond | VA |
| WRLH | 412 | Sinclair Bcst Group | Richmond | VA |
| WPXR | 70251 | Ion Media Networks Inc. DIP | Roanoke | VA |
| WFXR | 24813 | GB Roanoke Licensing LLC | Roanoke | VA |
| WDBJ | 71329 | Schurz Communications, Inc | Roanoke | VA |
| WSLS | 57840 | Media General Inc | Roanoke | VA |
| WTPC | 82574 | Trinity Bcstg Ntwk | Virginia Beach | VA |
| WVBT | 65387 | LIN Television Corp | Virginia Beach | VA |
| WVXF | 3113 | LKK Group Corporation | Charlotte Amalie | VI |
| WCVI | 83304 | Virgin Blue, Inc. | Christiansted | VI |
| WSVI | 2370 | Alpha Broadcasting Corp. | Christiansted | VI |
| WCAX | 46728 | Martin, Stuart T | Burlington | VT |
| WVNY | 11259 | Lambert Broadcasting LLC | Burlington | VT |
| WFFF | 10132 | Smith Bcstg Group | Burlington | VT |
| WNNE | 73344 | Hearst Stations, Inc. | Hartford | VT |
| KWPX | 56852 | Ion Media Networks Inc. DIP | Bellevue | WA |
| KUNS | 4624 | Fisher Communications | Bellevue | WA |
| KVOS | 35862 | Newport Television LLC | Bellingham | WA |
| KVOS | 35862 | OTA Broadcasting (SEA), LLC | Bellingham | WA |
| KONG | 35396 | Belo Corp | Everett | WA |
| KVEW | 2495 | Morgan Murphy Stns | Kennewick | WA |
| KEPR | 56029 | Fisher Communications | Pasco | WA |
| KNDU | 12427 | Cowles California Media Company | Richland | WA |
| KZJO | 69571 | Tribune Broadcasting Co. DIP | Seattle | WA |

| KOMO | 21656 | Fisher Communications | Seattle | WA |
|---|---|---|---|---|
| KING | 34847 | Belo Corp | Seattle | WA |
| KIRO | 66781 | Cox Broadcasting Corporation | Seattle | WA |
| KGPX | 81694 | Ion Media Networks Inc. DIP | Spokane | WA |
| KXLY | 61978 | Morgan Murphy Stns | Spokane | WA |
| KSKN | 35606 | Belo Corp | Spokane | WA |
| KREM | 34868 | Belo Corp | Spokane | WA |
| KHQ | 34537 | Cowles California Media Company | Spokane | WA |
| KAYU | 58684 | Hamacher, Robert J | Spokane | WA |
| KCPQ | 33894 | Tribune Broadcasting Co. DIP | Tacoma | WA |
| KSTW | 23428 | CBS TV | Tacoma | WA |
| KTBW | 67950 | Trinity Bcstg Ntwk | Tacoma | WA |
| KPDX | 35460 | Meredith Corp | Vancouver | WA |
| KNDO | 12395 | Cowles California Media Company | Yakima | WA |
| KIMA | 56033 | Fisher Communications | Yakima | WA |
| KAPP | 2506 | Morgan Murphy Stns | Yakima | WA |
| WTPX | 86496 | Ion Media Networks Inc. DIP | Antigo | WI |
| WACY | 361 | Ace TV Inc | Appleton | WI |
| WEUX | 2709 | Grant, Milton | Chippewa Falls | WI |
| WYOW | 77789 | Quincy Newspapers | Eagle River | WI |
| WEAU | 7893 | Gray Television Licensee LLC | Eau Claire | WI |
| WQOW | 64550 | Quincy Newspapers | Eau Claire | WI |
| WBAY | 74417 | Young Broadcasting DIP | Green Bay | WI |
| WLUK | 4150 | LIN Television Corp | Green Bay | WI |
| WFRV | 9635 | Liberty Media Corporation | Green Bay | WI |
| WGBA | 2708 | Journal Broadcast Group | Green Bay | WI |
| WBUW | 26025 | ACME Television LLC | Janesville | WI |
| WBUW | 26025 | Byrne Acquisition Group, LLC | Janesville | WI |
| WPXE | 37104 | Ion Media Networks Inc. DIP | Kenosha | WI |
| WXOW | 64549 | Quincy Newspapers | La Crosse | WI |
| WKBT | 74424 | Morgan Murphy Stns | La Crosse | WI |
| WLAX | 2710 | Grant, Milton | La Crosse | WI |
| WKOW | 64545 | Quincy Newspapers | Madison | WI |
| WMTV | 6870 | Gray Television Licensee LLC | Madison | WI |
| WMSN | 10221 | Sinclair Bcst Group | Madison | WI |
| WISC | 65143 | Morgan Murphy Stns | Madison | WI |
| WWRS | 68547 | Trinity Bcstg Ntwk | Mayville | WI |
| WISN | 65680 | Hearst Stations, Inc. | Milwaukee | WI |
| WITI | 73107 | Foxco Acquisition Subsidiary, LLC | Milwaukee | WI |
| WVCY | 72342 | VCY America Inc | Milwaukee | WI |
| WTMJ | 74098 | Journal Broadcast Group | Milwaukee | WI |
| WVTV | 74174 | Sinclair Bcst Group | Milwaukee | WI |
| WCGV | 71278 | Sinclair Bcst Group | Milwaukee | WI |
| WJFW | 49699 | Rockfleet Broadcasting | Rhinelander | WI |
| KBJR | 33658 | Granite Bcstg Corp | Superior | WI |
| WCWF | 73042 | ACME Television LLC | Suring | WI |
| WCWF | 73042 | LIN Television Corp | Suring | WI |
| WAOW | 64546 | Quincy Newspapers | Wausau | WI |
| WSAW | 6867 | Gray Television Licensee LLC | Wausau | WI |
| WFXS | 86204 | Davis Television, LLC | Wittenberg | WI |
| WVVA | 74176 | Quincy Newspapers | Bluefield | WV |
| WLFB | 37806 | Living Faith Minstrs | Bluefield | WV |
| WLPX | 73189 | Ion Media Networks Inc. DIP | Charleston | WV |

| WCHS | 71280 | Sinclair Bcst Group | Charleston | WV |
|------|-------|---------------------|------------|-----|
| WVAH | 417 | Sinclair Bcst Group | Charleston | WV |
| WBOY | 71220 | West Virginia Media Holdings, | Clarksburg | WV |
| WVFX | 10976 | Withers, W. Russell | Clarksburg | WV |
| WOWK | 23342 | West Virginia Media Holdings, | Huntington | WV |
| WSAZ | 36912 | Gray Television Licensee LLC | Huntington | WV |
| WVNS | 74169 | West Virginia Media Holdings, | Lewisburg | WV |
| WWPX | 23264 | Ion Media Networks Inc. DIP | Martinsburg | WV |
| WOAY | 66804 | Thomas Bcstg | Oak Hill | WV |
| WTAP | 4685 | Gray Television Licensee LLC | Parkersburg | WV |
| WDTV | 70592 | Withers, W. Russell | Weston | WV |
| WTRF | 6869 | West Virginia Media Holdings, | Wheeling | WV |
| KGWC | 63177 | Mark Media Group | Casper | WY |
| KFNB | 74256 | Wyomedia Corp | Casper | WY |
| KCWY | 68713 | Intermountain West Comm Company | Casper | WY |
| KTWO | 18286 | Silverton Broadcasting Company, LLC | Casper | WY |
| KLWY | 40250 | Wyomedia Corp | Cheyenne | WY |
| KGWN | 63166 | Sagamore Hill Broadcasting | Cheyenne | WY |
| KQCK | 18287 | Denver TV Group LLC | Cheyenne | WY |
| KJWY | 1283 | PMCM TV LLC | Jackson | WY |
| KGWL | 63162 | Mark Media Group | Lander | WY |
| KFNR | 21612 | Wyomedia Corp | Rawlins | WY |
| KFNE | 21613 | Wyomedia Corp | Riverton | WY |
| KGWR | 63170 | Mark Media Group | Rock Springs | WY |
| KSGW | 17680 | Duhamel Broadcasting Enterpris | Sheridan | WY |