UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF NEW INSPIRATION BROADCASTING CO., INC., *et al.*,<br><br>                    Applicants,<br><br>For Licenses For Their Radio Broadcasting Stations. | No. _____ (DLC)<br><br><br><br>**[PROPOSED]**<br>**FINAL ORDER** |
| *Related to*<br><br>UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>                    v.<br><br>AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS,<br><br>                    Defendant. | No. 41 CV 1395 (DLC) |

        Applicants New Inspiration Broadcasting Co., Inc., *et al.* ("Applicants") and the American Society of Composers, Authors and Publishers ("ASCAP") having jointly applied to the Court for the determination of reasonable license fees pursuant to Section IX of the Second Amended Final Judgment herein, and the Applicants and ASCAP having negotiated and agreed upon forms of license agreements, and Applicants and ASCAP having agreed that such forms of license agreements may be entered into lawfully by each party to this proceeding, and Applicants and ASCAP having consented

to the entry of this order to carry out and consummate the agreements that they have reached, and notice of the settlement of this order having been given to the United States of America, and Applicants and ASCAP having agreed that such application shall cover the period January 1, 2008 – December 31, 2018 (the "License Period");

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. The form of ASCAP 2008 NRBMLC Radio Station License Agreement (and annexed exhibits), appended hereto as **Exhibit 1** (the "NRBMLC Radio Station License") and the form of ASCAP 2008 NRBMLC Radio Group License Agreement (and annexed exhibits), appended hereto as **Exhibit 2** (the "NRBMLC Radio Group License"), are the forms of such licenses agreed to by the parties (together, the Radio Station License and the Radio Group License are referred to herein as the "NRBMLC Licenses"). The license fees set forth in the NRBMLC Licenses are reasonable and non-discriminatory as to Applicants for the License Period and comply with the terms of the Second Amended Final Judgment.

2. ASCAP shall provide the NRBMLC Radio Station License to each Applicant and to every other commercial radio station owner that has agreed to be bound by the outcome of this proceeding or negotiations conducted on behalf of Applicants by the National Religious Broadcasters Music License Committee ("NRBMLC"), collectively as set forth on the list of stations attached as **Exhibit 3** hereto (collectively all such stations, the "Bound Stations"), together with a copy of this Order, so that the form of license shall be received by the Bound Stations no later than thirty days following entry of this Order, to be effective retroactive to January 1, 2008.  Each Bound Station shall be deemed licensed under the NRBMLC Radio Station License and subject to all

obligations set forth therein and bound by the terms of this Order.  Upon receipt, each Bound Station shall sign and return such NRBMLC Radio Station License to ASCAP at its office at 1900 Broadway, New York, New York 10023 within 60 days of receipt of such form by such Bound Station.  ASCAP shall also promptly offer the NRBMLC Radio Station License to any other radio station that in the future becomes eligible to be licensed under such License pursuant to the terms of Exhibit A of that License.

3.      ASCAP shall make available to each owner of a Bound Station the NRBMLC Radio Group License.   If at any time during the License Period the owner of a Bound Station or other eligible entity wishes to execute the NRBMLC Radio Group License, it shall sign and return such license agreement to ASCAP at its office at the address set forth in Paragraph 2 above.

4.      ASCAP and Applicants may, by agreement, amend or supplement the list attached as **Exhibit 3**, and ASCAP shall provide and make available to any station added to such list the NRBMLC Licenses within thirty days following such amendment or supplement in accordance with Paragraphs 2 and 3 of this Order, and the obligations herein shall apply to such station.

5.      The license fees for each Bound Station licensed under the NRBMLC Radio Station License shall be determined in accordance with the provisions of that form of license.

6.      The license fees for each entity licensed under the NRBMLC Radio Group License shall be determined in accordance with the provisions of that form of license.

7.      In connection with the administration of the Licenses, approximately 500 radio stations are either represented by the NRBMLC directly or have otherwise agreed

to be bound by the licenses negotiated by the NRBMLC.  The NRBMLC has incurred and will incur costs in connection with the administration of the Licenses and the NRBMLC's ongoing representation of religious and classical formatted radio stations in regard to music performance licenses.  To fairly and equitably distribute among all radio stations operating under and benefitting from the Licenses the cost of administration of the Licenses and the NRBMLC's ongoing representation of such radio stations in regards to music performance licenses, each station licensed pursuant to the NRBMLC Radio Station License shall pay to the NRBMLC, beginning with calendar year 2015, on presentation of a statement from the NRBMLC in conformity with this Order:

    (i)    $25 per year if the station's annual broadcast license fees due to ASCAP are less than $5,000;

    (ii)    $200 per year if the station's annual broadcast license fees due to ASCAP are at least $5,000 and less than $15,000;

    (iii)    $400 per year if the station's annual broadcast license fees due to ASCAP are $15,000 or more.

The NRBMLC may, in its discretion, accept volunteer services on behalf of the NRBMLC or donated advertising inventory of equivalent value in lieu of cash. Commencing with calendar year 2014, payments or contributions during any calendar year that exceed the amounts set forth above may be credited toward the amounts set forth above for the following calendar year.  The payments provided herein shall be made to the NRBMLC by September 30 of each calendar year.  The NRBMLC may impose a late payment charge of 1% per month from the date the payment was due on any payment that is received by the NRBMLC after the date the payment was due, and the NRBMLC

may further assess stations the full amount of costs incurred by the NRBMLC in connection with collecting such amounts.

8.      The Court retains continuing jurisdiction over this proceeding for the purpose of enforcing this Order, the terms and conditions of the NRBMLC Licenses, and the obligations of ASCAP and the Bound Stations under the NRBMLC Licenses.

9.      Entry of this Order is without prejudice to any arguments or positions the Applicants or any other commercial radio station, commercial radio station owner, or ASCAP may assert in any future proceeding to determine what constitutes reasonable blanket license or program-period license fees for commercial radio stations or commercial radio station owners; the terms of such licenses; the methodology for calculating the license fees; or the reasonableness of the structure of the license or the license fees, for the period beginning January 1, 2019 or any time thereafter.


SO ORDERED.


Dated: _____
        New York, New York

                                    _____
                                              DENISE COTE
                                        United States District Judge

# EXHIBIT 1

**ASCAP 2008 NRBMLC Radio Station License Agreement**

AGREEMENT made between American Society of Composers, Authors and Publishers ("ASCAP"), located at One Lincoln Plaza, New York, New York 10023 and

_____ for Radio Station
*(Legal Name of LICENSEE)*

Call Letters
and Band _____ Frequency _____ FCC ID _____

FCC Community of License _____
(city)                          (state)

**Please Check Appropriate Box and Complete**

A corporation organized under the laws of the State of _____

A limited liability company organized under the laws of the State of _____

A partnership consisting of _____

An individual residing at _____

("LICENSEE", "you," "your") of the Radio Broadcasting station ("Station") currently receiving mail at:

_____
*(Street Address or P.O. Box)*

_____
(City)                          (State)            (Zip Code)                          (Telephone Number)

Location of Station: ☐ Check box if same as above.

_____
*(Street Address or P.O. Box)*

_____
(City)                          (State)            (Zip Code)

Telephone
number: _____ Fax number:_____

Email address: _____

with the Radio Station Web Site URL: http:// _____

**1.     Term.**

The term of this Agreement commences as of January 1, 2008, (the "Effective Date"), and ends on December 31, 2018, unless earlier terminated as hereinafter provided (the "term" or "license term").

**2.     Definitions.**

  A.     "ASCAP Repertory" means musical works for which ASCAP has the right to license for public performance at the time of such performance during the term.  All compositions written or copyrighted by ASCAP members and in the repertory on the date this Agreement is executed are included for the full term of this Agreement. Compositions written or copyrighted by ASCAP members during the license term are included for the full balance of the term.

  B.     "Background Music For An Announcement" means mood, atmosphere, or thematic music performed as background to an otherwise non-musical commercial, public service, or station promotional announcement not exceeding sixty (60) seconds in length.

  C.     "Feature Performance" means any performance that is either a principal focus of audience attention, such as a song or other musical composition, whether performed "live" or by means of a recording, or other feature musical subject matter on a radio program that is <u>not</u> a performance as a theme or signature, bridge, cue or background music, Jingle (as defined below), or in conjunction with an advertising, promotional, or public service announcement or logo.

  D.     "Gross Revenue from Radio Broadcasting" means all:

     (1)     cash payments for Station's Radio Broadcasting (as defined below) operations made by or on behalf of:

          (a)     Advertisers, sponsors, donors, Local Managers (as defined below) or any other party for the use of the facilities of the Station,

          (b)     sponsors of, or donors to, your Simulcast Programs (as defined below), and

          (c)     sponsors of, or donors to, your Occasional Network Programs (as defined below), and

          (d)     any of the above received by any Local Manager and

     (2)     Net Promotional Revenue (as defined below).

  Such payments include all payments made to you, your employees, representatives, agents, or any other person acting on your behalf, including time brokers.  Such payments shall not include payments made to independent third parties, such as networks or program suppliers, or non-cash payments such as payments in goods or services commonly referred to as "trades" or "barter."

  E.     "Gross Revenue from New Media Transmissions" means all cash payments made by or on behalf of advertisers, sponsors, donors, subscribers, or any other party in connection with New Media Transmissions (as defined below).  Such payments include all payments made to you, your employees, representatives, agents, or any other person acting on your behalf.  Such payments shall not include payments made to independent third parties, such as networks or program suppliers, or non-cash payments such as payments in goods or services commonly referred to as "trades" or "barter."

  F.     "Incidental Use" means any use of music other than a Feature Performance, including music used as a theme or signature; bridge, cue, or background music; Background Music For An Announcement; a Jingle; public domain music in arrangements controlled by ASCAP on which ASCAP pays no royalties; and music that is used only incidentally to the broadcast of a news event or sports event.

  G.     "Jingle" means a commercial, promotional, or public service announcement containing musical material (with or without lyrics) originally written for commercial, promotional, or public service announcements, or a musical work originally written for other purposes with the lyrics changed for commercial, promotional, or public service announcement purposes, not exceeding sixty (60) seconds in length and used with the permission of the ASCAP writer or publisher member in interest.

  H.     "Local Manager" means any entity not under common ownership or control of LICENSEE that is authorized to resell 10% or more of Station's air time and (1) simulcasts or sells announcements on Station in combination with a radio station owned or operated by the entity, which station has entered into an ASCAP Radio Station License

2

Agreement; or (2) has assumed, contractually or otherwise, responsibility for the management of Station and the payment of license fees.

I.       "Net Promotional Revenue" means all cash payments that you receive from third parties for the direct or indirect promotion of their businesses via the broadcast facilities of the station other than paid programs or commercial announcements (such as, but not limited to, bridal or craft shows, direct mailings, special sponsored events, or publications produced and promoted by the station), less those out-of-the-ordinary costs, such as booth rentals, printing and mailing expenses, and cost of goods sold, that would not have otherwise been incurred without the promotional activity.   Deductible costs may not exceed the cash payments received.

J.       "New Media Simulcast of Your Radio Broadcasting" means a New Media Transmission of Station's radio broadcast programming that is: (A) simultaneous or nearly simultaneous with the Station's Radio Broadcasting of that programming or (B) archived for later, on-demand transmissions of such programming; and includes transmissions of Station's Radio Broadcasting that contain: (i) substitute advertisements; (ii) programming substituted for programming for which requisite licenses or clearances to make New Media Transmissions have not been obtained; and (iii) other limited substitutions of programming, the programming format and Feature Performance music usage of which are similar to the format and Feature Performance music usage contained in Station's Radio Broadcasting for which such substitutions are being made.

K.       "New Media Transmissions" include any performances transmitted via the Internet, wireless data networks, or any other similar transmission facilities.

L.       "Occasional Network Programs" means all programs that you cause to be broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts on any group of two or more radio stations that are affiliated with you for the purpose of broadcasting those programs.  For the purposes of this Agreement, any sports network that you operate is deemed to be an occasional network.

M.       "Program Period" means a fifteen (15)-minute period of Radio Broadcasting on Station's primary terrestrial analog broadcast signal commencing on the hour and at fifteen (15), thirty (30), and forty-five (45) minutes past the hour without regard to whether such period contains one or more programs or announcements, subject to Paragraph 6 of the agreement between ASCAP and the National Religious Broadcasters Music License Committee ("NRBMLC") that is attached as Exhibit A to this Agreement (the "ASCAP/NRBMLC Agreement"), the terms of which are incorporated herein by reference.

N.       "Radio Broadcasting" means audio "over-the-air" broadcasts by means of Station's FCC-licensed terrestrial analog broadcast signals and HD/multicasting of its FCC-assigned digital facilities (sometimes referred to as "multicasting" or "HD Radio") as identified with the FCC's unique station identifier or FCC Facility ID.  Radio Broadcasting excludes FCC-licensed low power audio broadcasting, with similar technical characteristics and requirements as currently defined in 47 C.F.R. § 73.801, et seq., but it includes FM Translators as defined in 47 C.F.R. § 74.1231.

O.       "Revenue Subject to Fee from New Media Transmissions" means Gross Revenue from New Media Transmissions less a 25% deduction, unless such deduction is modified pursuant to Paragraph 7 of the ASCAP/NRBMLC Agreement.

P.       "Revenue Subject to Fee from Radio Broadcasting" means Gross Revenues from Radio Broadcasting less an 11% deduction.

Q.       "Simulcast Programs" means all Radio Broadcasting programs broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts by two or more radio stations that you own or for which you act as a time broker.

R.       "Through-to-the-Audience License" means, in reference to the scope of the rights granted under this Agreement, a license that authorizes the transmission and retransmission of any Radio Broadcast or New Media Transmission to subscribers, listeners, or viewers by whatever means so long as each entity involved in the transmission or retransmission other than LICENSEE has an economic relationship to LICENSEE within the meaning of Section II.S of the Second Amended Final Judgment entered in *United States v. ASCAP* ("AFJ2").  For the avoidance of doubt, nothing in this license shall be construed as authorizing LICENSEE to grant to bars, restaurants, taverns, hotels, retail establishments, and other similar businesses or establishments, any right to perform publicly any of the musical compositions licensed under this Agreement.

S.       "U.S. Territory" means the United States and its commonwealths, territories, and possessions, including Puerto Rico.

T.       "Weighted Program Period" means a Program Period multiplied by the following weights:

|  | Time Period | Applicable Weight |
|---|---|---|
|  |  |  |
| Weekdays: | Midnight to 6:00 a.m. | 0.25 |
|  | 6:00 a.m. to 10:00 a.m. | 1.00 |
|  | 10:00 a.m. to 3:00 p.m. | 0.50 |
|  | 3:00 p.m. to 7:00 p.m. | 0.75 |
|  | 7:00 p.m. to Midnight | 0.50 |
|  |  |  |
| Weekends | All day Saturday and Sunday | 0.25 |

U.       "Weighted Program Period Subject to Fee" means a Weighted Program Period that contains a Feature Performance of a musical work in the ASCAP Repertory that is not licensed other than by this Agreement, unless such Feature Performance otherwise does not violate the exclusive right of public performance under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, by virtue of the musical work being in the public domain.

**3.       ASCAP Grant of Rights and Limitations.**

A.       ASCAP grants LICENSEE a non-exclusive Through-to-the-Audience License to perform publicly in the U.S. Territory, by Radio Broadcasting and New Media Transmissions, non-dramatic performances of all musical works in the ASCAP Repertory during the term.

B.       This Agreement does not license the performance of any dramatico-musical works, such as operas, operettas, musical comedies, or plays, in whole or in part, or grant LICENSEE any other rights in the musical compositions licensed under this Agreement.

C.       The performances licensed hereunder may originate at any place, whether or not such place is licensed to perform publicly the musical works licensed hereunder, and regardless of the manner, means, or methods of such origination.  Except as provided in Paragraph 3.A above, nothing in this Agreement shall be deemed to authorize LICENSEE to grant to others any performance or other rights in any of the musical compositions licensed under this Agreement or to extend to the receiver of LICENSEE's Radio Station broadcast signal or to any place at which the performances licensed by this Agreement originate if other than at Station and for which a separate license for such performances is required.

**4.       License Fee; Minimum Fee; Taxes.**

A.       For all periods through December 31, 2013, if Station was licensed under the terms of the ASCAP Local Station Per Program Radio License – (South Florida) or the ASCAP Local Station Blanket Radio License – (South Florida) (collectively, the "South Florida License Agreements"); the NRBMLC request for license commencing January 1, 2008 pursuant to the Second Amended Final Judgment in *U.S. v. ASCAP* ("NRBMLC Request"); or any subsequent agreement with ASCAP that Station would be licensed under the NRBMLC Request, the license fees due and payable, and all the additional terms and conditions that shall be applicable hereunder for such periods, shall be as provided in the ASCAP/NRBMLC Agreement.

B       If you elect to pay a license fee on the blanket basis for your Radio Broadcasting, subject to the election provisions of Paragraphs 6.A and 6.B below, you agree to pay us a license fee of 1.77% of your Revenue Subject to Fee from Radio Broadcasting for each year 2014 through 2018 of the Agreement.

C.       If you elect to pay a license fee on the per-program period basis for your Radio Broadcasting, subject to the election provisions of Paragraphs 6.A and 6.B below, you agree to pay us the following license fee for each year 2014 through 2018 of the Agreement:

(1)       a base fee of 0.10% of Revenue Subject to Fee from Radio Broadcasting, plus

(2)       an additional fee equal to 2.25% of your Revenue Subject to Fee from Radio Broadcasting multiplied by the percentage of your total Weighted Program Periods that are Weighted Program Periods Subject to Fee.  This percentage will be determined using the methodology described in Paragraph 2 of the ASCAP/NRBMLC Agreement.

D.       Revenue Subject to Fee from New Media Transmissions associated with New Media Simulcasts of Your Radio Broadcasting shall be added to your Revenue Subject to Fee from Radio Broadcasting when calculating your license fee pursuant to either Paragraph 4.B or 4.C above.

E.       For New Media Transmissions other than New Media Simulcasts of Your Radio Broadcasting, you agree to

pay us the following license fee for each year 2014 through 2018:

(1)        1.77% of Revenue Subject to Fee From New Media Transmissions for such year associated with programming other than New Media Simulcasts of Your Radio Broadcasting that is based on Feature Performances of music; and

(2)        0.10% of Revenue Subject to Fee From New Media Transmissions for such year associated with programming other than New Media Simulcasts of Your Radio Broadcasting that is not based on Feature Performances of music.

F.        Minimum Fee.  In no event shall your total annual license fee be less than $588.

G.        Annual Reports.  You will submit a report of the license fee due for each year 2014 through 2018 of this Agreement, by April 1st of the following year, by fully completing the form Statement of Account that will be made available on ASCAP's website ("Annual Report").  Annual Reports must be submitted using the electronic format and Internet-based delivery transmission methodology to be developed by ASCAP and agreed to by the NRBMLC, and any Annual Report attempted to be submitted to ASCAP by LICENSEE or on LICENSEE's behalf in any other fashion will be deemed as the non-submission of an Annual Report, subject to the provisions of Paragraph 4.H.  ASCAP will promptly confirm electronically to LICENSEE receipt of the Annual Reports required by this Paragraph.  ASCAP shall make available the form Statement of Account and Internet-based delivery transmission methodology via the ASCAP website by February 1 of each year.  Notwithstanding the foregoing, in the event that ASCAP has not made a form Statement of Account available to LICENSEE by February 1 of a year, LICENSEE shall have no less than two (2) months following the date that ASCAP notifies LICENSEE that such form Statement of Account is available for completion to complete and submit such form.

H.        Monthly Payments in 2014-2018.  Except as set forth in this Paragraph 4.H, for each month in calendar years 2014 through 2018, you will pay us on or before the last day of the month for that month a sum equal to 1/12th of the license fee for the preceding calendar year (annualized for any reported period less than a year), adjusted in accordance with any change in the Consumer Price Index (National, all items) between the preceding October and the October twelve months prior thereto; however, for purposes of completion of Annual Reports (as described above) in any given year this change shall not be less than zero.  If we do not receive the report required by Paragraph 4.G for any calendar year when due, the on-account monthly payments will be in the amount of the monthly payments due for the preceding year plus 24%, and payments at that rate will continue until the required report is received; provided, however, that any such increase in monthly payments shall not be taken into account when calculating any annual license fee due hereunder.  If the Station commenced broadcasting after January 1, 2014, you will furnish us with a good-faith estimate of your Revenue Subject to Fee from Radio Broadcasting and your Revenue Subject to Fee from New Media Transmissions for the first year of operation, and the on-account monthly payments during the remainder of the calendar year of broadcasting following the commencement of broadcasting will be 1/12th of the fee provided in Paragraphs 4.B through 4.E for a station having such revenue; however, in no case shall the fee for such Station be less than the pro-rated minimum fee provided for in Paragraph 4.F above.  ASCAP will promptly confirm to LICENSEE receipt of the Monthly Payments required by this Paragraph.

I.        Billing or Accrual Basis.  License fee reports will be made on a billing or accrual basis by all stations, except that any station may report on a cash basis if its books have been kept on a cash basis, in which case LICENSEE shall not be entitled to the deduction provided for in Paragraph 2.P of this Agreement and LICENSEE shall be entitled to one-half of the deduction provided for in Paragraph 2.O of this Agreement.

J.        Combination Sales.  If the use of the broadcasting facilities of the station is sold in combination with any other stations that you own, operate, or control that are licensed by us under this Agreement, the combination revenue shall be allocated among the stations on a reasonable basis taking into account factors such as, but not limited to, separate sales by the stations for comparable facilities during the report period or the immediately preceding period and the relative ratings of the stations during the report period.

K.        Annual Adjustments.  If the monthly payments you have made to us for a year pursuant to Paragraph 4.H are less than the license fee for that year, we will invoice the additional amount due in the month following receipt of the report.  If the amount that you paid for that year exceeds the license fee due for the year, we will apply the excess payment against your future monthly payments, or will refund it to you upon your written request if it is greater than four monthly payments required by Paragraph 4.H above.

L.        Late Payments.  Subject to the separate provisions of Paragraph 5 below that govern the conduct of audits and resolution of audit disputes, if we do not receive any payment required by this Agreement when such payment was due, ASCAP will assess a finance charge of 1.0% per month from the date the payment was due, and ASCAP may further assess LICENSEE the full amount of out-of-pocket costs incurred by ASCAP in connection with collecting such amounts.

M.      Taxes.   In the event that the payment of any license fee to ASCAP by LICENSEE pursuant to this Agreement causes ASCAP to become liable to pay any state or local tax that is based upon the license fees invoiced by ASCAP to licensees (excluding taxes that may be computed based upon income), LICENSEE agrees to pay ASCAP the full amount of such tax together with LICENSEE's fee payment(s) as invoiced by ASCAP within normal payment terms; provided, however, that ASCAP is permitted by law to pass through such tax to LICENSEE; and provided further that LICENSEE and ASCAP will cooperate in making reasonable efforts to be exempt or excused from the tax.

**5.      Audits.**

A.      Right to Audit.   We have the right by our duly authorized representatives, at any time during customary business hours, upon reasonable notice, to examine your books and records of account only to the extent necessary to verify any report required by this Agreement, for a period of no more than three (3) calendar years prior to the year in which the audit is requested.   We will consider all data and information coming to our attention as a result of any such examination of books and records as confidential pursuant to Paragraph 12 below.

B.      Audit Finance Charges.   If our audit discloses that you underpaid license fees due us:

(1)      You will pay a finance charge on the additional license fees of 1.0% per month from the date(s) the fees should have been paid pursuant to this Agreement if the underpayment is 5% or more but not less than $1,000.

(2)      You will pay a finance charge on the additional license fees of 1.0% per month beginning thirty (30) days after the date we bill the additional license fees to you if the underpayment is less than 5% or less than $1,000.

(3)      You may dispute all or part of our audit claim.   If you do, you must, within thirty (30) days from the date that we bill the additional fees, (i) advise us, in writing, of the basis for your dispute and (ii) pay us any fees indisputably owed together with any applicable finance charges.   If there is a good-faith dispute between us with respect to all or part of the additional fees that we have billed pursuant to this Paragraph, no finance charges will be billed with respect to the disputed fees for a period beginning on the date we billed the fees to you and ending sixty (60) days from the date that we respond to your written notification of the existence of a dispute.

(4)      Finance charges computed in accordance with this Paragraph and pertaining to additional fees that you dispute in accordance with subparagraph (3) above will be adjusted pro-rata to the amount arrived at by you and us in resolution of the dispute.

C.      Correction of Errors.   You may correct computational errors on the Annual Reports required by Paragraph 4.G for the calendar year preceding the year in which the corrected report is submitted without incurring any penalty, provided that the corrected report is submitted to ASCAP within one-hundred-and-twenty (120) days after the Annual Report was originally due under Paragraph 4.G.

**6.      Blanket/Program Period and Ownership Changes.**

A.      If LICENSEE has elected to pay license fees for Radio Broadcasting on the blanket basis, LICENSEE may, as of the first day of any month, upon not less than thirty (30) days' prior written notice to ASCAP using the form attached as Exhibit B to this Agreement, elect to pay license fees on the program-period basis, provided that LICENSEE is current in all fees and reports required hereunder as of the effective date of LICENSEE's election.   LICENSEE may make such an election not more than twice in any calendar year.   ASCAP will promptly confirm to LICENSEE receipt of the form required by this Paragraph.

B.      If LICENSEE has elected to pay license fees for Radio Broadcasting on the program-period basis, LICENSEE may, as of the first day of any month, upon not less than thirty (30) days' prior written notice to ASCAP using the form attached as Exhibit B to this Agreement, elect to pay license fees on the blanket basis, provided that LICENSEE is current in all fees and reports required hereunder as of the effective date of LICENSEE's election.   LICENSEE may make such an election not more than twice in any calendar year.   ASCAP will promptly confirm to LICENSEE receipt of the form required by this Paragraph.

C.      Upon any filing to the FCC by LICENSEE for any requested change in ownership of Station, based on current FCC Application Forms 314, 315, and 316, LICENSEE shall contemporaneously notify ASCAP of such a request.

D.      Upon any filing to the FCC by LICENSEE for any request to cease Radio Broadcasting, LICENSEE shall

contemporaneously notify ASCAP of such a request.

**7.        License Breach.**

In the event that LICENSEE shall fail to make payment or submit any report under this Agreement, including the certification required to be submitted pursuant to Paragraph 2 of the ASCAP/NRBMLC Agreement, when and as due, ASCAP may give LICENSEE thirty (30) days' notice in writing to cure such breach or default. In the event that the noticed breach or default has not been cured within thirty (30) days of receipt of said notice, ASCAP may promptly terminate this License by providing written notice of such termination.

**8.        Indemnification.**

ASCAP will indemnify, save and hold harmless, and defend LICENSEE, its advertisers and their advertising agencies, and LICENSEE's and their officers, employees, and artists from and against all claims, demands, and suits that may be made or brought against LICENSEE or them with respect to the performance under this Agreement of any compositions in the ASCAP Repertory that are written or copyrighted by ASCAP members. LICENSEE must give ASCAP prompt notice of any such claim, demand, or suit and promptly deliver to ASCAP all papers pertaining thereto. ASCAP will have full charge of the defense of any such claim, demand, or suit, and LICENSEE agrees to cooperate fully with ASCAP in such defense. LICENSEE may, however, engage its own counsel at its own expense who may participate in the defense of any such action. At LICENSEE's request, ASCAP will cooperate with and assist LICENSEE, its advertisers and their advertising agencies, and LICENSEE's and their officers, employees, and artists in the defense of any action or proceeding brought against them or any of them with respect to the performance of any musical compositions contained in the ASCAP Repertory, but not copyrighted or written by members of ASCAP. This Paragraph 8 does not apply to performances of any works that may be restricted under Paragraph 13 of this Agreement.

**9.        Local Management Agreement.**

A.        In the event that LICENSEE enters into an agreement with a Local Manager (a "Local Management Agreement"), within thirty (30) days of such agreement (1) LICENSEE shall provide ASCAP with a copy of such agreement and (2) Local Manager shall execute a Local Manager Acknowledgment of ASCAP License Agreement form (an "LMA Acknowledgment") that is attached as Exhibit C to this License Agreement. By signing an LMA Acknowledgment, Local Manager becomes a party to this License Agreement and shall assume, with LICENSEE, all of the rights and obligations set forth in this Agreement for the full period the Local Management Agreement is in effect.

B.        In the event that LICENSEE and/or Local Manager do not provide to ASCAP, within sixty (60) days of entering into a Local Management Agreement, the documentation required by Paragraph 9.A, LICENSEE shall remain responsible for timely submitting Annual Reports as required by Paragraph 4.H and shall be obligated to pay 110% of the otherwise applicable blanket or program-period license fees for the entire period during which the documentation required by Paragraph 9.A is overdue.

C.        In the event that LICENSEE and/or Local Manager do not provide ASCAP with the documentation required by Paragraph 9.A within sixty (60) days of entering into a Local Management Agreement, ASCAP shall have the right to terminate this License Agreement upon ten (10) days' written notice.

D.        In the event that the Local Management Agreement provided to ASCAP terminates prior to its stated termination date, LICENSEE and Local Manager shall immediately notify ASCAP of such termination.

E.        In the event that LICENSEE becomes a Local Manager by entering into a Local Management Agreement with another station, LICENSEE shall notify ASCAP within thirty (30) days of entering into the agreement.

**10.        Assignment.**

This Agreement shall inure to the benefit of and shall be binding upon the parties and their respective successors and assigns, but no assignment shall relieve the parties of their respective obligations under this Agreement.

**11.        Music Use Reports.**

Unless ASCAP receives music use data of LICENSEE's Feature Performances by means of Station's Radio Broadcasting from a music performance monitoring service, LICENSEE, upon written request from ASCAP made on not less than one (1) month's notice specifying the period to be covered, agrees to furnish to ASCAP (at ASCAP's request electronically via a secure web site) a report of LICENSEE's Feature Performances by means of Station's Radio Broadcasting and New Media Transmissions of all musical works, indicating the compositions performed by title and artist, or by

such other convenient reporting method as may be mutually agreed upon by ASCAP and the NRBMLC, but such report need not be furnished for more than one (1) week of each calendar year of the term of this Agreement.

**12.      Confidentiality.**

A.      ASCAP shall treat as confidential, and shall not disclose to any third party (other than its employees, directors, officers, survey consultants, attorneys, and agents, in their capacity as such, on a need-to-know basis, and other than as set forth in subparagraph B below), any  financial or other proprietary documents or information provided to ASCAP by LICENSEE in connection with this Agreement; provided, however, that if ASCAP is served with a subpoena or other legal notice compelling the production of any such proprietary documents or information, ASCAP shall be obligated to give prompt written notice to LICENSEE of such subpoena or other notice.  LICENSEE shall inform ASCAP in writing within seven (7) days of receiving written notification of a subpoena or other legal notice of its intention to object to such production, in which event LICENSEE shall bear the burden of opposing such production.  If the subpoena requires a response or compliance in fewer than fourteen (14) days, ASCAP will inform LICENSEE in writing within three (3) days of receiving the subpoena and LICENSEE must inform ASCAP of its intention to oppose the production no later than five (5) days before compliance is called for.

B.      ASCAP is hereby authorized to provide to the NRBMLC such of LICENSEE's financial information provided to ASCAP pursuant to this Agreement as the NRBMLC may request in connection with its representation of the radio industry, unless LICENSEE notifies ASCAP in writing to the contrary.  The NRBMLC has agreed to treat as confidential any financial information provided to it by ASCAP pursuant to this Paragraph.

**13.      Right To Restrict.**

A.      ASCAP's members may restrict the Radio Broadcasting of their compositions, up to a maximum of 500 at any given time, only for the purpose of preventing harmful effect upon other interest under the copyrights of such works; provided, however, that (1) limited licenses will be granted upon application to ASCAP entirely free of additional charge if the copyright owners are unable to show reasonable hazards to their major interests likely to result from such Radio Broadcasting; (2) the right to restrict any composition will not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of the composition; (3) in no case will any charges, "free plugs," or other consideration be required for permission to perform a restricted composition; and (4) in no event will any composition be restricted after its initial radio broadcast for the purpose of confining further radio broadcasts to a particular radio artist, station, network, or program.

B.      ASCAP may also in good faith restrict the Radio Broadcasting of any composition, over and above the number specified in the preceding subparagraph, only as to which any suit has been brought or threatened on a claim that the composition infringes a composition not contained in the ASCAP Repertory or on a claim that ASCAP does not have the right to license the public performance of the composition by Radio Broadcasting.

**14.      Miscellaneous.**

A.      LICENSEE shall have the right to terminate this license on ten (10) days' written notice in the event of termination, suspension, or any substantial alteration or variation of the terms and conditions of the governmental licenses covering the Station or any major interference with the operations of the Station due to governmental measures or restrictions.

B.      ASCAP shall have the right to terminate this license on sixty (60) days' notice if there is any major interference with, or substantial increase in the cost of, our operation as a result of any law of the state, territory, dependency, possession, or political subdivision in which the Station is located that is applicable to the licensing of performing rights.

C.      Except as otherwise expressly provided in this Agreement, any notice required or permitted to be given under this Agreement shall be in writing by email confirmed with a copy by recognized overnight delivery service to the party for whom it is intended, at its address stated above or any other address that either party hereto may from time to time designate for such purpose.  Such notice shall be deemed given on the day of receipt of the overnight confirmation.  Any such notice sent to ASCAP shall be to the attention of the Broadcast Licensing Department – Radio Licensing.  Any such notice sent to LICENSEE shall be to the attention of the person signing this Agreement on behalf of LICENSEE or to the General Manager or Business Manager of Station.

D.      This Agreement (including documents incorporated by reference) constitutes the entire understanding between the parties and cannot be waived, added to, or modified orally.  No waiver, addition, or modification shall be valid unless in writing and signed by the parties.  This Agreement and its validity, construction, and effect shall be governed by the laws of the State of New York without giving effect to its law of conflict of laws.  The fact that any provisions herein are found to be void or unenforceable by a court of competent jurisdiction shall in no way affect the validity or enforceability of any other provisions.  No waiver by ASCAP of full performance of this Agreement by LICENSEE in any one or more

instances shall be deemed a waiver of the right to require full and complete performance of this Agreement thereafter, or of the right to cancel this Agreement in accordance with the terms of this Agreement.

**IN WITNESS WHEREOF**, this Agreement, made at New York, New York, has been duly executed by ASCAP and LICENSEE on _____.

          *(Month)*          *(Day)*          *(Year)*

AMERICAN SOCIETY OF COMPOSERS,                           LICENSEE
AUTHORS AND PUBLISHERS

_____

*(Full corporate or other name of station owner)*

By _____

_____    _____

          *(Name and Title)*                                     *(Name and Title)*

# Exhibit A

 Advocating Fairness in
Music Licensing for
Specialty and Talk Radio

NRB
MLC
NATIONAL RELIGIOUS
BROADCASTERS
**MUSIC LICENSE COMMITTEE**

November 17, 2015

Re: <u>ASCAP 2008 NRBMLC Radio Station and Group License Agreements</u>

Dear Ms. Matthews:

This letter sets forth the Agreement ("Agreement") reached between the American Society of Composers, Authors and Publishers ("ASCAP") and the National Religious Broadcasters Music License Committee ("NRBMLC") pertaining to certain provisions of the ASCAP 2008 NRBMLC Radio Station License Agreement (the "Station License") and the ASCAP 2008 NRBMLC Radio Group License Agreement (the "Group License") (together, the "2008 Licenses") covering the period January 1, 2008 through December 31, 2018 (the "License Term"). This Agreement is expressly incorporated in Paragraph 2.M of the Station License and is binding upon all commercial radio stations (collectively, the "Licensees") that (A) enter into the Station License or the Group License, (B) are otherwise currently paying license fees to ASCAP pursuant to the terms of the South Florida License Agreements identified in Paragraph 4.A of the Station License, or (C) otherwise satisfy the criteria set forth in Paragraph 14 of this Agreement and were licensed by virtue of the NRBMLC's request for licenses for stations it represents for periods after January 1, 2008 (the "NRBMLC Request").

The parties agree as follows:

1.       Except as otherwise provided herein, for the period January 1, 2008 through December 31, 2013 (the "Retroactive Period"), the interim license terms and interim license fees billed to and payable by individual radio stations ("Interim Fees") pursuant to the South Florida License Agreements or the NRBMLC Request shall be considered final terms and license fees; provided, however, that stations paying interim license fees higher than they would have been required to pay under the South Florida License Agreements shall be entitled to a credit for payments in excess of the fees that would have applied under the South Florida License Agreements. ASCAP's right to collect unpaid license fees shall in no way be prejudiced by this paragraph. The South Florida License Agreements are incorporated herein by reference.

2.       The percentage of Weighted Programming Periods that are Weighted Programming Periods Subject to Fee, as used in Paragraph 4.C(2) of the Station License, shall be determined by a written certification from a Licensee to ASCAP on the form set forth as

Attachment 1.  The certification shall be provided to ASCAP within sixty (60) days following execution of the Station License.  A Licensee shall revise the certification for any Station promptly upon any significant change in a Station's use of music.

      3.     For the License Term, there will be no credit against blanket license fees to account for otherwise-licensed ASCAP music.

      4.     For avoidance of doubt, the parties intend and agree to the following regarding the scope of license coverage for New Media Transmissions (as that term is defined in the Station License):

      a.     That the Group License covers only those New Media Transmissions made by a radio station owner that are not otherwise licensed under the Station License.  By way of example, the Group License is applicable to Salem Media Group's ChristianRadio.com transmissions that do not originate with a terrestrial radio station.  The Group License is not to be used by radio station owners for the purpose of aggregating reporting to ASCAP for multiple terrestrial radio stations.  Moreover, the Group License does not apply to audiovisual transmissions other than audiovisual advertising.  Nothing herein shall affect any license request made by an applicant under ASCAP's Second Amended Final Judgment with respect to audiovisual transmissions not covered under the Group License or a Station License.

      b.     That New Media Transmissions other than New Media Simulcasts of Your Radio Broadcasting (as that term is defined in the Station License) will be licensed under the Station License and the Group License only when a Licensee (in the case of the Station License) or a Licensee and that Licensee's Radio Group (as that term is defined in the Group License) making such New Media Transmissions in the aggregate (in the case of the Group License) generate substantially more of their revenue from Radio Broadcasting and New Media Simulcasts of Your Radio Broadcasting than from other New Media Transmissions.

      5.     ASCAP and the NRBMLC shall work in good faith to agree on the form Statement of Account to be used pursuant to Paragraph 4.G of the Station License.  In the event that a Licensee is unable to file its Annual Report as required in Paragraph 4.G of the Station License due to issues beyond that Licensee's control, *e.g.*, site problems, password issues, power or Internet outages, etc., the Licensee may contact ASCAP by email prior to the April 1 deadline, at radiolicensing@ascap.com, to report the problem.  ASCAP will attempt to resolve any issues within its control promptly and will notify the Licensee when the issue is resolved.  The Licensee shall be granted a 15-day grace period to enable it to file its Annual Report.

      6.     If, as of January 1, 2015, there is reliable public information showing that industry-wide HD/multicasting revenues account for at least 25% of total industry-wide revenues, then each HD/multicasting channel shall be treated separately from the Station's terrestrial broadcast for purposes of determining whether fees should be paid on a program-period or blanket basis and the fee that should be paid (pursuant to Paragraphs 4.B and 4.C of the

Station License).

      7.     The deductions taken from Gross Revenues over the period from January 1, 2014 through December 31, 2018 (the "Prospective Period") by all Licensees will be compared to what the deductions would have been had the 11% deduction rate been applied to the sum of Gross Revenue from Radio Broadcasting and Gross Revenue from New Media Transmissions (not just to Gross Revenues from Radio Broadcasting). If the comparison over the entire Prospective Period yields a difference of greater than $100,000 in license fees, ASCAP will be entitled to a refund of the dollars in excess of the $100,000 cap.

          a.   In each year, as part of the Annual Adjustment process pursuant to Paragraph 4.K of the 2008 Licenses, ASCAP will make the comparison described above and will notify the NRBMLC of the results. If the $100,000 cap has been exceeded, ASCAP shall be entitled to recoup the excess by imposing a fee on those Licensees who claimed a 25% standard deduction for Internet, wireless, or other "new media" uses, which fee shall be calculated by allocating the total amount in excess of $100,000 among those Licensees on a pro rata basis in accordance with each Licensee's total license fees paid during the Prospective Period for New Media Transmissions and Radio Group Transmissions.

          b.   In the event that the $100,000 cap has been exceeded, ASCAP will notify Licensees that the deduction applicable to Gross Revenues from all activities covered by the 2008 Licenses will be 11% for the remainder of the License Term.

          c.   In the event that ASCAP determines that the $100,000 cap has been exceeded, the NRBMLC will have the right to review ASCAP's calculations to verify that the $100,000 cap has been exceeded.

      8.     In the event that a Station experiences a significant decrease in Revenue Subject to Fee from Radio Broadcasting due to unforeseen circumstances, ASCAP and the NRBMLC shall meet to discuss a reduction in on-account monthly payments for such Station for the remainder of such calendar year. Notwithstanding any such agreed-upon reduction, fees shall be adjusted in accordance with Paragraph 4.K of the Station License or Group License as the case may be.

      9.     ASCAP represents and warrants to the NRBMLC that: (i) ASCAP has the right, power, and authority to grant the rights provided for in the 2008 Licenses and in this Agreement; (ii) there has been no material diminution of the ASCAP Repertory since January 1, 2008; and (iii) if any ASCAP Member (as that term is defined in the ASCAP Articles of Association) has withdrawn from ASCAP the right to license the right of public performance of New Media Transmissions (as that term is defined in the Compendium of ASCAP Rules and Regulations, and Policies Supplemental to the Articles of Association) or withdraws such rights during the License Term, such withdrawal of licensing rights from ASCAP has not precluded, and will not preclude, ASCAP from granting a through-to-the-audience license to perform any or all of the copyrighted musical works in the ASCAP repertory of that ASCAP Member to the NRBMLC stations pursuant to this Agreement for the duration of the License Term.

10.     In the event that ASCAP shall obtain the right to license performances of works in the ASCAP Repertory by means of New Media Transmissions beyond the U.S. Territory during the term of the 2008 Licenses, Paragraph 3.A of the 2008 Licenses shall be deemed amended so as to include such performances within the scope of rights granted by those Licenses for the duration of the term of those Licenses.

11.     If, during the term of the 2008 Licenses, any dispute arises between ASCAP and any Licensee concerning the interpretation of any of the provisions of this letter agreement or the 2008 Licenses that, in the judgment of ASCAP and/or the NRBMLC, has or may have impact broadly among the stations represented by the NRBMLC, ASCAP and the NRBMLC shall first endeavor to resolve such dispute, failing which either ASCAP or the NRBMLC may refer the matter to the judge with supervisory authority over the ASCAP Consent Decree.  In the event of such a reference, either ASCAP or the NRBMLC, as a preliminary matter, shall be entitled to assert that the dispute between them is not properly dealt with under the terms of this provision.

12.     ASCAP and the NRBMLC agree to confer by no later than February 1, 2018 to seek to agree upon final (and, if necessary, interim) license fees for periods subsequent to December 31, 2018.  Nothing herein shall affect the rights of ASCAP, the NRBMLC, or any Licensees to seek a determination of reasonable fees or the fixing of interim fees for the period commencing January 1, 2019, pursuant to Section IX of the ASCAP Consent Decree.

13.     ASCAP and the NRBMLC are entering into this Agreement without prejudice to any arguments or positions they or any Licensee may assert in any future rate proceeding concerning what constitutes reasonable blanket license or program-period license fees and terms for commercial radio stations.

14.     ASCAP and the NRBMLC have developed a list of radio stations that are currently eligible for the Station License. In addition, ASCAP will offer the Station License to radio stations meeting any of the following criteria:

    a.  Full-power commercial stations not already bound to the terms of the ASCAP-RMLC 2010 Radio Station License Agreement that are acquired, launched, or otherwise owned by owners (or affiliates under common ownership or control of such owners) that own radio stations identified on list of radio stations that are eligible for the Station License.

    b.  Other full-power commercial stations not already bound to the terms of the ASCAP-RMLC 2010 Radio Station License Agreement that broadcast in a religious, mixed music and talk, or spoken word format and that are owned by members of the National Religious Broadcasters Association (or are affiliates under common ownership or control with such members).

    c.  Other full-power commercial stations not already bound to the terms of the ASCAP-RMLC 2010 Radio Station License Agreement that broadcast in a classical music format.

For avoidance of doubt, the exclusion of stations "already bound to the terms of the ASCAP-RMLC 2010 Radio Station License Agreement" refers only to radio stations bound under the terms of that agreement that remain under the same ownership that was in place as of Judge Cote's January 27, 2012 Final Order adopting that agreement or that otherwise agreed to be bound under the terms of that agreement.

Please indicate your agreement to the above by signing and dating on the lines provided below.

Very truly yours,

s/Edward Atsinger
Chairman
National Religious Broadcasters Music License Committee

AGREED TO:

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS

s/Elizabeth Matthews
Chief Executive Officer

Dated: 11/20/15           , 2015

**ATTACHMENT 1**



# NRBMLC Radio Station
# Music Usage Certification Form

Date:_____

Call Letters: | □ AM □ FM   ASCAP Account Number:

Station Frequency:_____ FCC Community of License: City_____ ST_____

Legal Name of Licensee:_____

Group Owner:_____

Format:_____

Please provide a contact for Program Period music reporting below:

Contact Name:_____        Contact Email Address_____

Contact Title:_____         Contact Phone #:_____

Please indicate the average number of program periods[1] your station is normally on the air and the estimated number of program periods in which feature music[2] is played on an average weekday, Saturday, and Sunday during each of the following time periods (rounded to the nearest full program period):

| Time Period | Program Periods On Air | Estimated Program Periods With Feature Music |
|---|---|---|
| Average Weekdays: 12am-6am (max 24 periods) | _____ | _____ |
| Average Weekdays: 6am-10am (max 16 periods) | _____ | _____ |
| Average Weekdays: 10am-3pm (max 20 periods) | _____ | _____ |
| Average Weekdays: 3pm-7pm (max 16 periods) | _____ | _____ |
| Average Weekdays: 7pm-12mid (max 20 periods) | _____ | _____ |
| Average Saturday: All Day (max 96 periods) | _____ | _____ |
| Average Sunday:  All Day (max 96 periods) | _____ | _____ |

_____
Signature

_____
Print Name of Signatory

_____
Print Title of Signatory

*Please scan and email to **BOTH** ASCAP and the NRBMLC:*

ASCAP
Radiolicensing@ascap.com

NRBMLC
elizabeth.meyer@salem.cc
russh@salem.cc

---

[1] "Program Period" means a fifteen (15)-minute period of Radio Broadcasting (as defined in the license) on Station's primary terrestrial analog broadcast signal commencing on the hour and at fifteen (15), thirty (30), and forty-five (45) minutes past the hour without regard to whether such period contains one or more programs or announcements, subject to Paragraph 6 of the agreement between ASCAP and the NRBMLC.

[2] "Feature Music" means any performance that is either a principal focus of audience attention, such as a song or other musical composition, whether performed "live" or by means of a recording, or other feature musical subject matter on a radio program that is not a performance as a theme or signature, bridge, cue, background music, Jingle, or in conjunction with an advertising, promotional, or public service announcement or logo. Note that your license only requires you to include program periods that contain feature music performances of ASCAP music. If you know that all feature music performances in a program period are not licensed to you by ASCAP (for example, because you have direct licenses), you do not need to include the period in your estimate.

# Exhibit B

**ascap**

# NRBMLC Radio Station
# Election to Change License Basis Form

Date:_____

Call Letters: [ ] [ ] [ ] [ ]   ☐ AM  ☐ FM   ASCAP Account Number: [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ] [ ]

Station Frequency:_____ FCC Community of License: City _____ ST _____

Legal Name of Licensee:_____

Group Owner:_____

Previous Program Format:_____

New Program Format:_____ Date of Change:_____

---

Check appropriate box:

☐ Convert to Blanket Basis (currently licensed on Program Period Basis)

☐ Convert to Program Period Basis (currently licensed on Blanket Basis)

Effective Date of Conversion* [_____/_____/_____]

* Please note that you may convert prospectively your station's license type as of the first day of any month as long as written notice is provided to ASCAP by at least thirty (30) days prior to that effective date. Your station must be current in both reports and payments due ASCAP as required by your license in order to be eligible.

**Complete this section only if you are converting to a Program Period Basis**

Please provide a contact for Program Period music reporting below:

Contact Name:_____   Contact Email Address:_____

Contact Title: _____   Contact Phone #: _____

Please indicate the average number of program periods[1] your station is normally on the air and the estimated number of program periods in which feature music[2] is played on an average weekday, Saturday, and Sunday during each of the following time periods (rounded to the nearest full program period):

| Time Period | Program Periods On Air | Program Periods With Feature Music |
|---|---|---|
| Average Weekdays:12am-6am (max 24 periods) | _____ | _____ |
| Average Weekdays: 6am-10am (max 16 periods) | _____ | _____ |
| Average Weekdays: 10am-3pm (max 20 periods) | _____ | _____ |
| Average Weekdays: 3pm-7pm (max 16 periods) | _____ | _____ |
| Average Weekdays: 7pm-12mid (max 20 periods) | _____ | _____ |
| Average Saturday: All Day (max 96 periods) | _____ | _____ |
| Average Sunday: All Day (max 96 periods) | _____ | _____ |

---

_____
Signature

_____
Print Name of Signatory

_____
Print Title of Signatory

Please scan and email to *BOTH ASCAP and the NRBMLC:*

ASCAP
Radiolicensing@ascap.com

NRBMLC
russh@salem.cc
elizabeth.meyer@salem.cc

---

[1] "Program Period" means a fifteen (15)-minute period of Radio Broadcasting (as defined in the license) on Station's primary terrestrial analog broadcast signal commencing on the hour and at fifteen (15), thirty (30), and forty-five (45) minutes past the hour without regard to whether such period contains one or more programs or announcements, subject to Paragraph 6 of the agreement between ASCAP and the NRBMLC.
[2] "Feature Music" means any performance that is either a principal focus of audience attention, such as a song or other musical composition, whether performed "live" or by means of a recording, or other feature musical subject matter on a radio program that is not a performance as a theme or signature, bridge, cue, background music, Jingle, or in conjunction with an advertising, promotional, or public service announcement or logo. Note that your license only requires you to include program periods that contain feature music performances of ASCAP music. If you know that all feature music performances in a program period are not licensed to you by ASCAP (for example, because you have direct licenses), you do not need to include the period in your estimate.

# Exhibit C



# Local Manager Acknowledgment of ASCAP License Agreement

The undersigned [LOCAL MANAGER] hereby acknowledges and agrees that it has entered into a Local Management Agreement with LICENSEE and that in accordance with Paragraph 9.A of the foregoing ASCAP 2008 NRBMLC Radio Station License Agreement between ASCAP and LICENSEE, it has become a party to such License Agreement and assumes, with LICENSEE, all of the rights and obligations set forth in the foregoing License Agreement for the full period that the LOCAL MANAGER's Local Management Agreement with LICENSEE is in effect (the "Period"). LICENSEE and ASCAP hereby acknowledge that the foregoing License Agreement is hereby amended solely to deem [LOCAL MANAGER] an additional party to the License Agreement for the Period.

Dated: _____

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS

By: _____
     Name and Title

[INSERT NAME OF LOCAL MANAGER]

By: _____
     Name and Title

Station Call Letters: _____

City and State: _____

Effective Date of Local Management Agreement:
_____

Address for Billing and Other Purposes:
_____

_____

_____

[INSERT NAME OF LICENSEE]

By: _____
     Name and Title

# EXHIBIT 2

**ASCAP 2008 NRBMLC RADIO GROUP LICENSE AGREEMENT**

AGREEMENT made between American Society of Composers, Authors and Publishers ("ASCAP"), located at One Lincoln Plaza, New York, New York 10023 and

_____

*(Legal Name of LICENSEE)*

**Please Check Appropriate Box and Complete**

☐ A corporation organized under the laws of the State of _____

☐ A limited liability company organized under the laws of the State of _____

☐ A partnership consisting of _____

☐ An individual residing at _____

_____

("LICENSEE", "you", "your") currently receiving mail at:

_____

*(Street Address or P.O. Box)*

_____

*(City)*                              *(State)*                              *(Zip Code)*

Telephone number: _____     Fax number: _____

Email address: _____

with the Web Site URL: http:// _____

**1. Term.** The term of this agreement commences as of January 1, 2008, and ends on December 31, 2018, unless earlier terminated as hereinafter provided.

**2. Definitions.** Unless otherwise noted, the meaning of all capitalized terms in this Agreement is as defined in the ASCAP 2008 NRBMLC Radio Station License Agreement (attached as Exhibit I hereto).

"Gross Revenue from Radio Group Transmissions" means all cash payments made by or on behalf of advertisers, sponsors, donors, subscribers or any other party, in connection with Radio Group Transmissions (as defined below). Such payments include all payments made to you, your employees, representatives, agents or any other person acting on your behalf. Such payments shall not include payments made to independent third parties, such as networks or program suppliers, or non-cash payments such as payments in goods or services commonly referred to as "trades" or "barter."

"Radio Group" means an entity or group of entities under common ownership or control where the entity or an entity in such group owns one or more commercial radio stations eligible to be licensed under the ASCAP 2008 NRBMLC Radio Station License Agreement.

"Radio Group Transmissions" means all New Media Transmissions made by a Radio Group, where such transmissions are not otherwise licensed by any Station licensed under the ASCAP 2008 NRBMLC Radio Station License Agreement.

"Revenue Subject to Fee from Radio Group Transmissions" means Gross Revenue from Radio Group Transmissions less a 25% deduction, unless such deduction is modified pursuant to Paragraph 7 of the agreement between ASCAP and the National Religious Broadcasters Music License Committee ("NRBMLC") that is attached as Exhibit A to the ASCAP 2008 NRBMLC Radio Station License Agreement, the terms of which are incorporated herein by reference.

**3. ASCAP Grant of Rights and Limitations.**

A. ASCAP grants Licensee a non-exclusive Through-to-the-Audience License to perform publicly in the U.S. Territory by Licensee's and Licensee's Radio Group's Radio Group Transmissions non-dramatic performances of all musical works in the ASCAP Repertory during the Term.

B. This Agreement does not license the performance of any dramatico-musical works, such as operas, operettas, musical comedies, or plays, in whole or in part, or grant LICENSEE any other rights in the musical compositions licensed under this Agreement.

C. The performances licensed hereunder may originate at any place, whether or not such place is licensed to perform publicly the musical works licensed hereunder, and regardless of the manner, means, or methods of such origination. Except as provided in Paragraph 3.A above, nothing in this Agreement shall be deemed to authorize LICENSEE to grant to others any performance or other rights in any of the musical compositions licensed under this Agreement or to extend to the receiver of the performances licensed by this Agreement or to any place at which such performances originate.

**4. License Fee; Minimum Fee; Taxes.**

A. The license fee for Radio Group Transmissions shall be as follows for each year 2014 through 2018:

(1)   1.77% of Revenue Subject to Fee From Radio Group Transmissions for such year associated with programming that is based on Feature Performances of music; and

(2)   0.10% of Revenue Subject to Fee From Radio Group Transmissions for such year associated with programming that is not based on Feature Performances of music..

B. Minimum Fee. For the years 2017 and 2018, in no event shall the license fee for Radio Group Transmissions be less than $600.

C. Annual Reports. Paragraph 4.G of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

2

D.   Monthly Payments in 2014-2018.  For each month in calendar years 2014 through 2018, you will pay us on or before the last day of the month for that month a sum equal to 1/12th of the license fee for the preceding calendar year (annualized for any reported period less than a year), adjusted in accordance with any change in the Consumer Price Index (National, all items) between the preceding October and the October twelve months prior thereto.  If we do not receive the report required by Paragraph 4.C for any calendar year when due, the on-account monthly payments will be in the amount of the monthly payments due for the preceding year plus 24%, and payments at that rate will continue until the required report is received; provided, however, that any such increase in monthly payments shall not be taken into account when calculating any annual license fee due hereunder.  If all of the licensed performances commenced after January 1, 2014, you will furnish us with a good-faith estimate of your Revenue Subject to Fee from Radio Group Transmissions for the first year of operation, and the on-account monthly payments during the first calendar year of operation will be 1/12th of the fee provided in Paragraphs 4.A through 4.B.  ASCAP will promptly confirm to Licensee receipt of the Monthly Payments required by this Paragraph.

E.   Billing or Accrual Basis.  License fee reports will be made on a billing or accrual basis, except that you may report on a cash basis if your books relating to Radio Group Transmissions have been kept on a cash basis, in which case LICENSEE shall be entitled to one-half of the deduction allowed by this Agreement under the definition of Revenue Subject to Fee for Radio Group Transmissions.

F.   Annual Adjustments.  Paragraph 4.K of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

G.   Late Payment.  Paragraph 4.L of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

H.   Taxes.  Paragraph 4.M of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

**5.   Audits.**  Paragraph 5 of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

**6.   Blanket/Program-Period and Ownership Changes.**

A.   Paragraph 6 of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

B.   LICENSEE will notify ASCAP promptly in writing of any change in controlling ownership of LICENSEE.

**7.  License Breach; Termination.**  Paragraph 7 of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

**8.   Indemnification.**  Paragraph 8 of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

**9. Local Management Agreement.**  Paragraph 9 of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

**10.   Assignment.**  Paragraph 10 of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

**11.  Music Use Reports.**  Paragraph 11 of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference to the extent that they are applicable to the Radio Group Transmissions licensed by this Agreement.

**12.   Confidentiality.**  Paragraph 12 of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

**13.  Right to Restrict.**  Paragraph 13 of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

**14.  Miscellaneous.**  Paragraph 14 of the ASCAP 2008 NRBMLC Radio Station License Agreement is hereby incorporated by reference.

**IN WITNESS WHEREOF**, this Agreement, made at New York, New York, has been duly executed by ASCAP and LICENSEE on _____ .
<div style="margin-left:100px"><em>(Month)        (Day)        (Year)</em></div>

<table>
<tr><td align="center">AMERICAN SOCIETY OF COMPOSERS,<br>AUTHORS AND PUBLISHERS</td><td align="center">LICENSEE<br>_____<br><em>(Full corporate or other name of Licensee)</em></td></tr>
</table>

By _____

_____          _____
<div style="margin-left:150px"><em>(Name and Title)</em>                                                  <em>(Name and Title)</em></div>

# Exhibit I

**ASCAP 2008 NRBMLC Radio Station License Agreement**

AGREEMENT made between American Society of Composers, Authors and Publishers ("ASCAP"), located at One Lincoln Plaza, New York, New York 10023 and

_____ for Radio Station
*(Legal Name of LICENSEE)*

Call Letters
and Band _____ Frequency _____ FCC ID _____

FCC Community of License _____
                         (city)                (state)

**Please Check Appropriate Box and Complete**

A corporation organized under the laws of the State of _____

A limited liability company organized under the laws of the State of _____

A partnership consisting of _____

An individual residing at _____

("LICENSEE", "you," "your") of the Radio Broadcasting station ("Station") currently receiving mail at:

_____
*(Street Address or P.O. Box)*

(City)                    (State)         (Zip Code)              (Telephone Number)

Location of Station:   ☐   Check box if same as above.

_____
*(Street Address or P.O. Box)*

(City)                    (State)         (Zip Code)

Telephone
number: _____   Fax number: _____

Email address: _____

with the Radio Station Web Site URL:  http:// _____

**1.      Term.**

The term of this Agreement commences as of January 1, 2008, (the "Effective Date"), and ends on December 31, 2018, unless earlier terminated as hereinafter provided (the "term" or "license term").

**2.      Definitions.**

A.      "ASCAP Repertory" means musical works for which ASCAP has the right to license for public performance at the time of such performance during the term.  All compositions written or copyrighted by ASCAP members and in the repertory on the date this Agreement is executed are included for the full term of this Agreement. Compositions written or copyrighted by ASCAP members during the license term are included for the full balance of the term.

B.      "Background Music For An Announcement" means mood, atmosphere, or thematic music performed as background to an otherwise non-musical commercial, public service, or station promotional announcement not exceeding sixty (60) seconds in length.

C.      "Feature Performance" means any performance that is either a principal focus of audience attention, such as a song or other musical composition, whether performed "live" or by means of a recording, or other feature musical subject matter on a radio program that is <u>not</u> a performance as a theme or signature, bridge, cue or background music, Jingle (as defined below), or in conjunction with an advertising, promotional, or public service announcement or logo.

D.      "Gross Revenue from Radio Broadcasting" means all:

   (1)      cash payments for Station's Radio Broadcasting (as defined below) operations made by or on behalf of:

      (a)      Advertisers, sponsors, donors, Local Managers (as defined below) or any other party for the use of the facilities of the Station,

      (b)      sponsors of, or donors to, your Simulcast Programs (as defined below), and

      (c)      sponsors of, or donors to, your Occasional Network Programs (as defined below), and

      (d)      any of the above received by any Local Manager and

   (2)      Net Promotional Revenue (as defined below).

Such payments include all payments made to you, your employees, representatives, agents, or any other person acting on your behalf, including time brokers.  Such payments shall not include payments made to independent third parties, such as networks or program suppliers, or non-cash payments such as payments in goods or services commonly referred to as "trades" or "barter."

E.      "Gross Revenue from New Media Transmissions" means all cash payments made by or on behalf of advertisers, sponsors, donors, subscribers, or any other party in connection with New Media Transmissions (as defined below).  Such payments include all payments made to you, your employees, representatives, agents, or any other person acting on your behalf.  Such payments shall not include payments made to independent third parties, such as networks or program suppliers, or non-cash payments such as payments in goods or services commonly referred to as "trades" or "barter."

F.      "Incidental Use" means any use of music other than a Feature Performance, including music used as a theme or signature; bridge, cue, or background music; Background Music For An Announcement; a Jingle; public domain music in arrangements controlled by ASCAP on which ASCAP pays no royalties; and music that is used only incidentally to the broadcast of a news event or sports event.

G.      "Jingle" means a commercial, promotional, or public service announcement containing musical material (with or without lyrics) originally written for commercial, promotional, or public service announcements, or a musical work originally written for other purposes with the lyrics changed for commercial, promotional, or public service announcement purposes, not exceeding sixty (60) seconds in length and used with the permission of the ASCAP writer or publisher member in interest.

H.      "Local Manager" means any entity not under common ownership or control of LICENSEE that is authorized to resell 10% or more of Station's air time and (1) simulcasts or sells announcements on Station in combination with a radio station owned or operated by the entity, which station has entered into an ASCAP Radio Station License

2

Agreement; or (2) has assumed, contractually or otherwise, responsibility for the management of Station and the payment of license fees.

        I.      "Net Promotional Revenue" means all cash payments that you receive from third parties for the direct or indirect promotion of their businesses via the broadcast facilities of the station other than paid programs or commercial announcements (such as, but not limited to, bridal or craft shows, direct mailings, special sponsored events, or publications produced and promoted by the station), less those out-of-the-ordinary costs, such as booth rentals, printing and mailing expenses, and cost of goods sold, that would not have otherwise been incurred without the promotional activity.   Deductible costs may not exceed the cash payments received.

        J.      "New Media Simulcast of Your Radio Broadcasting" means a New Media Transmission of Station's radio broadcast programming that is: (A) simultaneous or nearly simultaneous with the Station's Radio Broadcasting of that programming or (B) archived for later, on-demand transmissions of such programming; and includes transmissions of Station's Radio Broadcasting that contain: (i) substitute advertisements; (ii) programming substituted for programming for which requisite licenses or clearances to make New Media Transmissions have not been obtained; and (iii) other limited substitutions of programming, the programming format and Feature Performance music usage of which are similar to the format and Feature Performance music usage contained in Station's Radio Broadcasting for which such substitutions are being made.

        K.      "New Media Transmissions" include any performances transmitted via the Internet, wireless data networks, or any other similar transmission facilities.

        L.      "Occasional Network Programs" means all programs that you cause to be broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts on any group of two or more radio stations that are affiliated with you for the purpose of broadcasting those programs.  For the purposes of this Agreement, any sports network that you operate is deemed to be an occasional network.

        M.      "Program Period" means a fifteen (15)-minute period of Radio Broadcasting on Station's primary terrestrial analog broadcast signal commencing on the hour and at fifteen (15), thirty (30), and forty-five (45) minutes past the hour without regard to whether such period contains one or more programs or announcements, subject to Paragraph 6 of the agreement between ASCAP and the National Religious Broadcasters Music License Committee ("NRBMLC") that is attached as Exhibit A to this Agreement (the "ASCAP/NRBMLC Agreement"), the terms of which are incorporated herein by reference.

        N.      "Radio Broadcasting" means audio "over-the-air" broadcasts by means of Station's FCC-licensed terrestrial analog broadcast signals and HD/multicasting of its FCC-assigned digital facilities (sometimes referred to as "multicasting" or "HD Radio") as identified with the FCC's unique station identifier or FCC Facility ID.  Radio Broadcasting excludes FCC-licensed low power audio broadcasting, with similar technical characteristics and requirements as currently defined in 47 C.F.R. § 73.801, et seq., but it includes FM Translators as defined in 47 C.F.R. § 74.1231.

        O.      "Revenue Subject to Fee from New Media Transmissions" means Gross Revenue from New Media Transmissions less a 25% deduction, unless such deduction is modified pursuant to Paragraph 7 of the ASCAP/NRBMLC Agreement.

        P.      "Revenue Subject to Fee from Radio Broadcasting" means Gross Revenues from Radio Broadcasting less an 11% deduction.

        Q.      "Simulcast Programs" means all Radio Broadcasting programs broadcast simultaneously or by so-called "delayed" or "repeat" broadcasts by two or more radio stations that you own or for which you act as a time broker.

        R.      "Through-to-the-Audience License" means, in reference to the scope of the rights granted under this Agreement, a license that authorizes the transmission and retransmission of any Radio Broadcast or New Media Transmission to subscribers, listeners, or viewers by whatever means so long as each entity involved in the transmission or retransmission other than LICENSEE has an economic relationship to LICENSEE within the meaning of Section II.S of the Second Amended Final Judgment entered in *United States v. ASCAP* ("AFJ2").  For the avoidance of doubt, nothing in this license shall be construed as authorizing LICENSEE to grant to bars, restaurants, taverns, hotels, retail establishments, and other similar businesses or establishments, any right to perform publicly any of the musical compositions licensed under this Agreement.

        S.      "U.S. Territory" means the United States and its commonwealths, territories, and possessions, including Puerto Rico.

        T.      "Weighted Program Period" means a Program Period multiplied by the following weights:

3

|  | Time Period | Applicable Weight |
|---|---|---|
|  |  |  |
| Weekdays: | Midnight to 6:00 a.m. | 0.25 |
|  | 6:00 a.m. to 10:00 a.m. | 1.00 |
|  | 10:00 a.m. to 3:00 p.m. | 0.50 |
|  | 3:00 p.m. to 7:00 p.m. | 0.75 |
|  | 7:00 p.m. to Midnight | 0.50 |
|  |  |  |
| Weekends | All day Saturday and Sunday | 0.25 |

U.      "Weighted Program Period Subject to Fee" means a Weighted Program Period that contains a Feature Performance of a musical work in the ASCAP Repertory that is not licensed other than by this Agreement, unless such Feature Performance otherwise does not violate the exclusive right of public performance under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, by virtue of the musical work being in the public domain.

**3.      ASCAP Grant of Rights and Limitations.**

A.      ASCAP grants LICENSEE a non-exclusive Through-to-the-Audience License to perform publicly in the U.S. Territory, by Radio Broadcasting and New Media Transmissions, non-dramatic performances of all musical works in the ASCAP Repertory during the term.

B.      This Agreement does not license the performance of any dramatico-musical works, such as operas, operettas, musical comedies, or plays, in whole or in part, or grant LICENSEE any other rights in the musical compositions licensed under this Agreement.

C.      The performances licensed hereunder may originate at any place, whether or not such place is licensed to perform publicly the musical works licensed hereunder, and regardless of the manner, means, or methods of such origination.  Except as provided in Paragraph 3.A above, nothing in this Agreement shall be deemed to authorize LICENSEE to grant to others any performance or other rights in any of the musical compositions licensed under this Agreement or to extend to the receiver of LICENSEE's Radio Station broadcast signal or to any place at which the performances licensed by this Agreement originate if other than at Station and for which a separate license for such performances is required.

**4.      License Fee; Minimum Fee; Taxes.**

A.      For all periods through December 31, 2013, if Station was licensed under the terms of the ASCAP Local Station Per Program Radio License – (South Florida) or the ASCAP Local Station Blanket Radio License – (South Florida) (collectively, the "South Florida License Agreements"); the NRBMLC request for license commencing January 1, 2008 pursuant to the Second Amended Final Judgment in *U.S. v. ASCAP* ("NRBMLC Request"); or any subsequent agreement with ASCAP that Station would be licensed under the NRBMLC Request, the license fees due and payable, and all the additional terms and conditions that shall be applicable hereunder for such periods, shall be as provided in the ASCAP/NRBMLC Agreement.

B      If you elect to pay a license fee on the blanket basis for your Radio Broadcasting, subject to the election provisions of Paragraphs 6.A and 6.B below, you agree to pay us a license fee of 1.77% of your Revenue Subject to Fee from Radio Broadcasting for each year 2014 through 2018 of the Agreement.

C.      If you elect to pay a license fee on the per-program period basis for your Radio Broadcasting, subject to the election provisions of Paragraphs 6.A and 6.B below, you agree to pay us the following license fee for each year 2014 through 2018 of the Agreement:

(1)      a base fee of 0.10% of Revenue Subject to Fee from Radio Broadcasting, plus

(2)      an additional fee equal to 2.25% of your Revenue Subject to Fee from Radio Broadcasting multiplied by the percentage of your total Weighted Program Periods that are Weighted Program Periods Subject to Fee.  This percentage will be determined using the methodology described in Paragraph 2 of the ASCAP/NRBMLC Agreement.

D.      Revenue Subject to Fee from New Media Transmissions associated with New Media Simulcasts of Your Radio Broadcasting shall be added to your Revenue Subject to Fee from Radio Broadcasting when calculating your license fee pursuant to either Paragraph 4.B or 4.C above.

E.      For New Media Transmissions other than New Media Simulcasts of Your Radio Broadcasting, you agree to

pay us the following license fee for each year 2014 through 2018:

(1)      1.77% of Revenue Subject to Fee From New Media Transmissions for such year associated with programming other than New Media Simulcasts of Your Radio Broadcasting that is based on Feature Performances of music; and

(2)      0.10% of Revenue Subject to Fee From New Media Transmissions for such year associated with programming other than New Media Simulcasts of Your Radio Broadcasting that is not based on Feature Performances of music.

F.      Minimum Fee.  In no event shall your total annual license fee be less than $588.

G.      Annual Reports.  You will submit a report of the license fee due for each year 2014 through 2018 of this Agreement, by April 1st of the following year, by fully completing the form Statement of Account that will be made available on ASCAP's website ("Annual Report").  Annual Reports must be submitted using the electronic format and Internet-based delivery transmission methodology to be developed by ASCAP and agreed to by the NRBMLC, and any Annual Report attempted to be submitted to ASCAP by LICENSEE or on LICENSEE's behalf in any other fashion will be deemed as the non-submission of an Annual Report, subject to the provisions of Paragraph 4.H.  ASCAP will promptly confirm electronically to LICENSEE receipt of the Annual Reports required by this Paragraph.  ASCAP shall make available the form Statement of Account and Internet-based delivery transmission methodology via the ASCAP website by February 1 of each year.  Notwithstanding the foregoing, in the event that ASCAP has not made a form Statement of Account available to LICENSEE by February 1 of a year, LICENSEE shall have no less than two (2) months following the date that ASCAP notifies LICENSEE that such form Statement of Account is available for completion to complete and submit such form.

H.      Monthly Payments in 2014-2018.  Except as set forth in this Paragraph 4.H, for each month in calendar years 2014 through 2018, you will pay us on or before the last day of the month for that month a sum equal to 1/12th of the license fee for the preceding calendar year (annualized for any reported period less than a year), adjusted in accordance with any change in the Consumer Price Index (National, all items) between the preceding October and the October twelve months prior thereto; however, for purposes of completion of Annual Reports (as described above) in any given year this change shall not be less than zero.  If we do not receive the report required by Paragraph 4.G for any calendar year when due, the on-account monthly payments will be in the amount of the monthly payments due for the preceding year plus 24%, and payments at that rate will continue until the required report is received; provided, however, that any such increase in monthly payments shall not be taken into account when calculating any annual license fee due hereunder.  If the Station commenced broadcasting after January 1, 2014, you will furnish us with a good-faith estimate of your Revenue Subject to Fee from Radio Broadcasting and your Revenue Subject to Fee from New Media Transmissions for the first year of operation, and the on-account monthly payments during the remainder of the calendar year of broadcasting following the commencement of broadcasting will be 1/12th of the fee provided in Paragraphs 4.B through 4.E for a station having such revenue; however, in no case shall the fee for such Station be less than the pro-rated minimum fee provided for in Paragraph 4.F above.  ASCAP will promptly confirm to LICENSEE receipt of the Monthly Payments required by this Paragraph.

I.      Billing or Accrual Basis.  License fee reports will be made on a billing or accrual basis by all stations, except that any station may report on a cash basis if its books have been kept on a cash basis, in which case LICENSEE shall not be entitled to the deduction provided for in Paragraph 2.P of this Agreement and LICENSEE shall be entitled to one-half of the deduction provided for in Paragraph 2.O of this Agreement.

J.      Combination Sales.  If the use of the broadcasting facilities of the station is sold in combination with any other stations that you own, operate, or control that are licensed by us under this Agreement, the combination revenue shall be allocated among the stations on a reasonable basis taking into account factors such as, but not limited to, separate sales by the stations for comparable facilities during the report period or the immediately preceding period and the relative ratings of the stations during the report period.

K.      Annual Adjustments.  If the monthly payments you have made to us for a year pursuant to Paragraph 4.H are less than the license fee for that year, we will invoice the additional amount due in the month following receipt of the report.  If the amount that you paid for that year exceeds the license fee due for the year, we will apply the excess payment against your future monthly payments, or will refund it to you upon your written request if it is greater than four monthly payments required by Paragraph 4.H above.

L.      Late Payments.  Subject to the separate provisions of Paragraph 5 below that govern the conduct of audits and resolution of audit disputes, if we do not receive any payment required by this Agreement when such payment was due, ASCAP will assess a finance charge of 1.0% per month from the date the payment was due, and ASCAP may further assess LICENSEE the full amount of out-of-pocket costs incurred by ASCAP in connection with collecting such amounts.

M.      Taxes.  In the event that the payment of any license fee to ASCAP by LICENSEE pursuant to this Agreement causes ASCAP to become liable to pay any state or local tax that is based upon the license fees invoiced by ASCAP to licensees (excluding taxes that may be computed based upon income), LICENSEE agrees to pay ASCAP the full amount of such tax together with LICENSEE's fee payment(s) as invoiced by ASCAP within normal payment terms; provided, however, that ASCAP is permitted by law to pass through such tax to LICENSEE; and provided further that LICENSEE and ASCAP will cooperate in making reasonable efforts to be exempt or excused from the tax.

**5.      Audits.**

A.      Right to Audit.  We have the right by our duly authorized representatives, at any time during customary business hours, upon reasonable notice, to examine your books and records of account only to the extent necessary to verify any report required by this Agreement, for a period of no more than three (3) calendar years prior to the year in which the audit is requested.  We will consider all data and information coming to our attention as a result of any such examination of books and records as confidential pursuant to Paragraph 12 below.

B.      Audit Finance Charges.  If our audit discloses that you underpaid license fees due us:

(1)      You will pay a finance charge on the additional license fees of 1.0% per month from the date(s) the fees should have been paid pursuant to this Agreement if the underpayment is 5% or more but not less than $1,000.

(2)      You will pay a finance charge on the additional license fees of 1.0% per month beginning thirty (30) days after the date we bill the additional license fees to you if the underpayment is less than 5% or less than $1,000.

(3)      You may dispute all or part of our audit claim.   If you do, you must, within thirty (30) days from the date that we bill the additional fees, (i) advise us, in writing, of the basis for your dispute and (ii) pay us any fees indisputably owed together with any applicable finance charges.   If there is a good-faith dispute between us with respect to all or part of the additional fees that we have billed pursuant to this Paragraph, no finance charges will be billed with respect to the disputed fees for a period beginning on the date we billed the fees to you and ending sixty (60) days from the date that we respond to your written notification of the existence of a dispute.

(4)      Finance charges computed in accordance with this Paragraph and pertaining to additional fees that you dispute in accordance with subparagraph (3) above will be adjusted pro-rata to the amount arrived at by you and us in resolution of the dispute.

C.      Correction of Errors.  You may correct computational errors on the Annual Reports required by Paragraph 4.G for the calendar year preceding the year in which the corrected report is submitted without incurring any penalty, provided that the corrected report is submitted to ASCAP within one-hundred-and-twenty (120) days after the Annual Report was originally due under Paragraph 4.G.

**6.      Blanket/Program Period and Ownership Changes.**

A.      If LICENSEE has elected to pay license fees for Radio Broadcasting on the blanket basis, LICENSEE may, as of the first day of any month, upon not less than thirty (30) days' prior written notice to ASCAP using the form attached as Exhibit B to this Agreement, elect to pay license fees on the program-period basis, provided that LICENSEE is current in all fees and reports required hereunder as of the effective date of LICENSEE's election.  LICENSEE may make such an election not more than twice in any calendar year.  ASCAP will promptly confirm to LICENSEE receipt of the form required by this Paragraph.

B.      If LICENSEE has elected to pay license fees for Radio Broadcasting on the program-period basis, LICENSEE may, as of the first day of any month, upon not less than thirty (30) days' prior written notice to ASCAP using the form attached as Exhibit B to this Agreement, elect to pay license fees on the blanket basis, provided that LICENSEE is current in all fees and reports required hereunder as of the effective date of LICENSEE's election.  LICENSEE may make such an election not more than twice in any calendar year.  ASCAP  will promptly confirm to LICENSEE receipt of the form required by this Paragraph.

C.      Upon any filing to the FCC by LICENSEE for any requested change in ownership of Station, based on current FCC Application Forms 314, 315, and 316, LICENSEE shall contemporaneously notify ASCAP of such a request.

D.      Upon any filing to the FCC by LICENSEE for any request to cease Radio Broadcasting, LICENSEE shall

contemporaneously notify ASCAP of such a request.

**7.      License Breach.**

In the event that LICENSEE shall fail to make payment or submit any report under this Agreement, including the certification required to be submitted pursuant to Paragraph 2 of the ASCAP/NRBMLC Agreement, when and as due, ASCAP may give LICENSEE thirty (30) days' notice in writing to cure such breach or default. In the event that the noticed breach or default has not been cured within thirty (30) days of receipt of said notice, ASCAP may promptly terminate this License by providing written notice of such termination.

**8.      Indemnification.**

ASCAP will indemnify, save and hold harmless, and defend LICENSEE, its advertisers and their advertising agencies, and LICENSEE's and their officers, employees, and artists from and against all claims, demands, and suits that may be made or brought against LICENSEE or them with respect to the performance under this Agreement of any compositions in the ASCAP Repertory that are written or copyrighted by ASCAP members. LICENSEE must give ASCAP prompt notice of any such claim, demand, or suit and promptly deliver to ASCAP all papers pertaining thereto. ASCAP will have full charge of the defense of any such claim, demand, or suit, and LICENSEE agrees to cooperate fully with ASCAP in such defense. LICENSEE may, however, engage its own counsel at its own expense who may participate in the defense of any such action. At LICENSEE's request, ASCAP will cooperate with and assist LICENSEE, its advertisers and their advertising agencies, and LICENSEE's and their officers, employees, and artists in the defense of any action or proceeding brought against them or any of them with respect to the performance of any musical compositions contained in the ASCAP Repertory, but not copyrighted or written by members of ASCAP. This Paragraph 8 does not apply to performances of any works that may be restricted under Paragraph 13 of this Agreement.

**9.      Local Management Agreement.**

A.      In the event that LICENSEE enters into an agreement with a Local Manager (a "Local Management Agreement"), within thirty (30) days of such agreement (1) LICENSEE shall provide ASCAP with a copy of such agreement and (2) Local Manager shall execute a Local Manager Acknowledgment of ASCAP License Agreement form (an "LMA Acknowledgment") that is attached as Exhibit C to this License Agreement. By signing an LMA Acknowledgment, Local Manager becomes a party to this License Agreement and shall assume, with LICENSEE, all of the rights and obligations set forth in this Agreement for the full period the Local Management Agreement is in effect.

B.      In the event that LICENSEE and/or Local Manager do not provide to ASCAP, within sixty (60) days of entering into a Local Management Agreement, the documentation required by Paragraph 9.A, LICENSEE shall remain responsible for timely submitting Annual Reports as required by Paragraph 4.H and shall be obligated to pay 110% of the otherwise applicable blanket or program-period license fees for the entire period during which the documentation required by Paragraph 9.A is overdue.

C.      In the event that LICENSEE and/or Local Manager do not provide ASCAP with the documentation required by Paragraph 9.A within sixty (60) days of entering into a Local Management Agreement, ASCAP shall have the right to terminate this License Agreement upon ten (10) days' written notice.

D.      In the event that the Local Management Agreement provided to ASCAP terminates prior to its stated termination date, LICENSEE and Local Manager shall immediately notify ASCAP of such termination.

E.      In the event that LICENSEE becomes a Local Manager by entering into a Local Management Agreement with another station, LICENSEE shall notify ASCAP within thirty (30) days of entering into the agreement.

**10.     Assignment.**

This Agreement shall inure to the benefit of and shall be binding upon the parties and their respective successors and assigns, but no assignment shall relieve the parties of their respective obligations under this Agreement.

**11.     Music Use Reports.**

Unless ASCAP receives music use data of LICENSEE's Feature Performances by means of Station's Radio Broadcasting from a music performance monitoring service, LICENSEE, upon written request from ASCAP made on not less than one (1) month's notice specifying the period to be covered, agrees to furnish to ASCAP (at ASCAP's request electronically via a secure web site) a report of LICENSEE's Feature Performances by means of Station's Radio Broadcasting and New Media Transmissions of all musical works, indicating the compositions performed by title and artist, or by

such other convenient reporting method as may be mutually agreed upon by ASCAP and the NRBMLC, but such report need not be furnished for more than one (1) week of each calendar year of the term of this Agreement.

**12.      Confidentiality.**

A.       ASCAP shall treat as confidential, and shall not disclose to any third party (other than its employees, directors, officers, survey consultants, attorneys, and agents, in their capacity as such, on a need-to-know basis, and other than as set forth in subparagraph B below), any  financial or other proprietary documents or information provided to ASCAP by LICENSEE in connection with this Agreement; provided, however, that if ASCAP is served with a subpoena or other legal notice compelling the production of any such proprietary documents or information, ASCAP shall be obligated to give prompt written notice to LICENSEE of such subpoena or other notice.  LICENSEE shall inform ASCAP in writing within seven (7) days of receiving written notification of a subpoena or other legal notice of its intention to object to such production, in which event LICENSEE shall bear the burden of opposing such production.  If the subpoena requires a response or compliance in fewer than fourteen (14) days, ASCAP will inform LICENSEE in writing within three (3) days of receiving the subpoena and LICENSEE must inform ASCAP of its intention to oppose the production no later than five (5) days before compliance is called for.

B.       ASCAP is hereby authorized to provide to the NRBMLC such of LICENSEE's financial information provided to ASCAP pursuant to this Agreement as the NRBMLC may request in connection with its representation of the radio industry, unless LICENSEE notifies ASCAP in writing to the contrary.  The NRBMLC has agreed to treat as confidential any financial information provided to it by ASCAP pursuant to this Paragraph.

**13.      Right To Restrict.**

A.       ASCAP's members may restrict the Radio Broadcasting of their compositions, up to a maximum of 500 at any given time, only for the purpose of preventing harmful effect upon other interest under the copyrights of such works; provided, however, that (1) limited licenses will be granted upon application to ASCAP entirely free of additional charge if the copyright owners are unable to show reasonable hazards to their major interests likely to result from such Radio Broadcasting; (2) the right to restrict any composition will not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of the composition; (3) in no case will any charges, "free plugs," or other consideration be required for permission to perform a restricted composition; and (4) in no event will any composition be restricted after its initial radio broadcast for the purpose of confining further radio broadcasts to a particular radio artist, station, network, or program.

B.       ASCAP may also in good faith restrict the Radio Broadcasting of any composition, over and above the number specified in the preceding subparagraph, only as to which any suit has been brought or threatened on a claim that the composition infringes a composition not contained in the ASCAP Repertory or on a claim that ASCAP does not have the right to license the public performance of the composition by Radio Broadcasting.

**14.      Miscellaneous.**

A.       LICENSEE shall have the right to terminate this license on ten (10) days' written notice in the event of termination, suspension, or any substantial alteration or variation of the terms and conditions of the governmental licenses covering the Station or any major interference with the operations of the Station due to governmental measures or restrictions.

B.       ASCAP shall have the right to terminate this license on sixty (60) days' notice if there is any major interference with, or substantial increase in the cost of, our operation as a result of any law of the state, territory, dependency, possession, or political subdivision in which the Station is located that is applicable to the licensing of performing rights.

C.       Except as otherwise expressly provided in this Agreement, any notice required or permitted to be given under this Agreement shall be in writing by email confirmed with a copy by recognized overnight delivery service to the party for whom it is intended, at its address stated above or any other address that either party hereto may from time to time designate for such purpose.  Such notice shall be deemed given on the day of receipt of the overnight confirmation.  Any such notice sent to ASCAP shall be to the attention of the Broadcast Licensing Department – Radio Licensing.  Any such notice sent to LICENSEE shall be to the attention of the person signing this Agreement on behalf of LICENSEE or to the General Manager or Business Manager of Station.

D.       This Agreement (including documents incorporated by reference) constitutes the entire understanding between the parties and cannot be waived, added to, or modified orally.  No waiver, addition, or modification shall be valid unless in writing and signed by the parties.  This Agreement and its validity, construction, and effect shall be governed by the laws of the State of New York without giving effect to its law of conflict of laws.  The fact that any provisions herein are found to be void or unenforceable by a court of competent jurisdiction shall in no way affect the validity or enforceability of any other provisions.  No waiver by ASCAP of full performance of this Agreement by LICENSEE in any one or more

8

instances shall be deemed a waiver of the right to require full and complete performance of this Agreement thereafter, or of the right to cancel this Agreement in accordance with the terms of this Agreement.

**IN WITNESS WHEREOF**, this Agreement, made at New York, New York, has been duly executed by ASCAP and LICENSEE on _____ .

              *(Month)*        *(Day)*        *(Year)*

AMERICAN SOCIETY OF COMPOSERS,          LICENSEE
AUTHORS AND PUBLISHERS

                                    _____

                                 *(Full corporate or other name of station owner)*

                             By _____

_____    _____
            *(Name and Title)*                            *(Name and Title)*

# Exhibit A



Advocating Fairness in
Music Licensing for
Specialty and Talk Radio

**NRB**
**MLC**
NATIONAL RELIGIOUS
BROADCASTERS
**MUSIC LICENSE COMMITTEE**

November 17, 2015

Re: <u>ASCAP 2008 NRBMLC Radio Station and Group License Agreements</u>

Dear Ms. Matthews:

This letter sets forth the Agreement ("Agreement") reached between the American
Society of Composers, Authors and Publishers ("ASCAP") and the National Religious
Broadcasters Music License Committee ("NRBMLC") pertaining to certain provisions of the
ASCAP 2008 NRBMLC Radio Station License Agreement (the "Station License") and the
ASCAP 2008 NRBMLC Radio Group License Agreement (the "Group License") (together, the
"2008 Licenses") covering the period January 1, 2008 through December 31, 2018 (the "License
Term"). This Agreement is expressly incorporated in Paragraph 2.M of the Station License and
is binding upon all commercial radio stations (collectively, the "Licensees") that (A) enter into
the Station License or the Group License, (B) are otherwise currently paying license fees to
ASCAP pursuant to the terms of the South Florida License Agreements identified in Paragraph
4.A of the Station License, or (C) otherwise satisfy the criteria set forth in Paragraph 14 of this
Agreement and were licensed by virtue of the NRBMLC's request for licenses for stations it
represents for periods after January 1, 2008 (the "NRBMLC Request").

The parties agree as follows:

1.      Except as otherwise provided herein, for the period January 1, 2008 through
December 31, 2013 (the "Retroactive Period"), the interim license terms and interim license fees
billed to and payable by individual radio stations ("Interim Fees") pursuant to the South Florida
License Agreements or the NRBMLC Request shall be considered final terms and license fees;
provided, however, that stations paying interim license fees higher than they would have been
required to pay under the South Florida License Agreements shall be entitled to a credit for
payments in excess of the fees that would have applied under the South Florida License
Agreements. ASCAP's right to collect unpaid license fees shall in no way be prejudiced by this
paragraph. The South Florida License Agreements are incorporated herein by reference.

2.      The percentage of Weighted Programming Periods that are Weighted
Programming Periods Subject to Fee, as used in Paragraph 4.C(2) of the Station License, shall be
determined by a written certification from a Licensee to ASCAP on the form set forth as

Attachment 1.  The certification shall be provided to ASCAP within sixty (60) days following execution of the Station License.  A Licensee shall revise the certification for any Station promptly upon any significant change in a Station's use of music.

3.      For the License Term, there will be no credit against blanket license fees to account for otherwise-licensed ASCAP music.

4.      For avoidance of doubt, the parties intend and agree to the following regarding the scope of license coverage for New Media Transmissions (as that term is defined in the Station License):

> a.  That the Group License covers only those New Media Transmissions made by a radio station owner that are not otherwise licensed under the Station License.  By way of example, the Group License is applicable to Salem Media Group's ChristianRadio.com transmissions that do not originate with a terrestrial radio station.  The Group License is not to be used by radio station owners for the purpose of aggregating reporting to ASCAP for multiple terrestrial radio stations.  Moreover, the Group License does not apply to audiovisual transmissions other than audiovisual advertising.  Nothing herein shall affect any license request made by an applicant under ASCAP's Second Amended Final Judgment with respect to audiovisual transmissions not covered under the Group License or a Station License.

> b.  That New Media Transmissions other than New Media Simulcasts of Your Radio Broadcasting (as that term is defined in the Station License) will be licensed under the Station License and the Group License only when a Licensee (in the case of the Station License) or a Licensee and that Licensee's Radio Group (as that term is defined in the Group License) making such New Media Transmissions in the aggregate (in the case of the Group License) generate substantially more of their revenue from Radio Broadcasting and New Media Simulcasts of Your Radio Broadcasting than from other New Media Transmissions.

5.      ASCAP and the NRBMLC shall work in good faith to agree on the form Statement of Account to be used pursuant to Paragraph 4.G of the Station License.  In the event that a Licensee is unable to file its Annual Report as required in Paragraph 4.G of the Station License due to issues beyond that Licensee's control, *e.g.*, site problems, password issues, power or Internet outages, etc., the Licensee may contact ASCAP by email prior to the April 1 deadline, at radiolicensing@ascap.com, to report the problem.  ASCAP will attempt to resolve any issues within its control promptly and will notify the Licensee when the issue is resolved.  The Licensee shall be granted a 15-day grace period to enable it to file its Annual Report.

6.      If, as of January 1, 2015, there is reliable public information showing that industry-wide HD/multicasting revenues account for at least 25% of total industry-wide revenues, then each HD/multicasting channel shall be treated separately from the Station's terrestrial broadcast for purposes of determining whether fees should be paid on a program-period or blanket basis and the fee that should be paid (pursuant to Paragraphs 4.B and 4.C of the

Station License).

      7.    The deductions taken from Gross Revenues over the period from January 1, 2014 through December 31, 2018 (the "Prospective Period") by all Licensees will be compared to what the deductions would have been had the 11% deduction rate been applied to the sum of Gross Revenue from Radio Broadcasting and Gross Revenue from New Media Transmissions (not just to Gross Revenues from Radio Broadcasting). If the comparison over the entire Prospective Period yields a difference of greater than $100,000 in license fees, ASCAP will be entitled to a refund of the dollars in excess of the $100,000 cap.

          a.   In each year, as part of the Annual Adjustment process pursuant to Paragraph 4.K of the 2008 Licenses, ASCAP will make the comparison described above and will notify the NRBMLC of the results. If the $100,000 cap has been exceeded, ASCAP shall be entitled to recoup the excess by imposing a fee on those Licensees who claimed a 25% standard deduction for Internet, wireless, or other "new media" uses, which fee shall be calculated by allocating the total amount in excess of $100,000 among those Licensees on a pro rata basis in accordance with each Licensee's total license fees paid during the Prospective Period for New Media Transmissions and Radio Group Transmissions.

          b.   In the event that the $100,000 cap has been exceeded, ASCAP will notify Licensees that the deduction applicable to Gross Revenues from all activities covered by the 2008 Licenses will be 11% for the remainder of the License Term.

          c.   In the event that ASCAP determines that the $100,000 cap has been exceeded, the NRBMLC will have the right to review ASCAP's calculations to verify that the $100,000 cap has been exceeded.

      8.    In the event that a Station experiences a significant decrease in Revenue Subject to Fee from Radio Broadcasting due to unforeseen circumstances, ASCAP and the NRBMLC shall meet to discuss a reduction in on-account monthly payments for such Station for the remainder of such calendar year. Notwithstanding any such agreed-upon reduction, fees shall be adjusted in accordance with Paragraph 4.K of the Station License or Group License as the case may be.

      9.    ASCAP represents and warrants to the NRBMLC that: (i) ASCAP has the right, power, and authority to grant the rights provided for in the 2008 Licenses and in this Agreement; (ii) there has been no material diminution of the ASCAP Repertory since January 1, 2008; and (iii) if any ASCAP Member (as that term is defined in the ASCAP Articles of Association) has withdrawn from ASCAP the right to license the right of public performance of New Media Transmissions (as that term is defined in the Compendium of ASCAP Rules and Regulations, and Policies Supplemental to the Articles of Association) or withdraws such rights during the License Term, such withdrawal of licensing rights from ASCAP has not precluded, and will not preclude, ASCAP from granting a through-to-the-audience license to perform any or all of the copyrighted musical works in the ASCAP repertory of that ASCAP Member to the NRBMLC stations pursuant to this Agreement for the duration of the License Term.

10.     In the event that ASCAP shall obtain the right to license performances of works in the ASCAP Repertory by means of New Media Transmissions beyond the U.S. Territory during the term of the 2008 Licenses, Paragraph 3.A of the 2008 Licenses shall be deemed amended so as to include such performances within the scope of rights granted by those Licenses for the duration of the term of those Licenses.

11.     If, during the term of the 2008 Licenses, any dispute arises between ASCAP and any Licensee concerning the interpretation of any of the provisions of this letter agreement or the 2008 Licenses that, in the judgment of ASCAP and/or the NRBMLC, has or may have impact broadly among the stations represented by the NRBMLC, ASCAP and the NRBMLC shall first endeavor to resolve such dispute, failing which either ASCAP or the NRBMLC may refer the matter to the judge with supervisory authority over the ASCAP Consent Decree.  In the event of such a reference, either ASCAP or the NRBMLC, as a preliminary matter, shall be entitled to assert that the dispute between them is not properly dealt with under the terms of this provision.

12.     ASCAP and the NRBMLC agree to confer by no later than February 1, 2018 to seek to agree upon final (and, if necessary, interim) license fees for periods subsequent to December 31, 2018.  Nothing herein shall affect the rights of ASCAP, the NRBMLC, or any Licensees to seek a determination of reasonable fees or the fixing of interim fees for the period commencing January 1, 2019, pursuant to Section IX of the ASCAP Consent Decree.

13.     ASCAP and the NRBMLC are entering into this Agreement without prejudice to any arguments or positions they or any Licensee may assert in any future rate proceeding concerning what constitutes reasonable blanket license or program-period license fees and terms for commercial radio stations.

14.     ASCAP and the NRBMLC have developed a list of radio stations that are currently eligible for the Station License. In addition, ASCAP will offer the Station License to radio stations meeting any of the following criteria:

    a.  Full-power commercial stations not already bound to the terms of the ASCAP-RMLC 2010 Radio Station License Agreement that are acquired, launched, or otherwise owned by owners (or affiliates under common ownership or control of such owners) that own radio stations identified on list of radio stations that are eligible for the Station License.

    b.  Other full-power commercial stations not already bound to the terms of the ASCAP-RMLC 2010 Radio Station License Agreement that broadcast in a religious, mixed music and talk, or spoken word format and that are owned by members of the National Religious Broadcasters Association (or are affiliates under common ownership or control with such members).

    c.  Other full-power commercial stations not already bound to the terms of the ASCAP-RMLC 2010 Radio Station License Agreement that broadcast in a classical music format.

For avoidance of doubt, the exclusion of stations "already bound to the terms of the ASCAP-RMLC 2010 Radio Station License Agreement" refers only to radio stations bound under the terms of that agreement that remain under the same ownership that was in place as of Judge Cote's January 27, 2012 Final Order adopting that agreement or that otherwise agreed to be bound under the terms of that agreement.

Please indicate your agreement to the above by signing and dating on the lines provided below.

Very truly yours,

s/Edward Atsinger
Chairman
National Religious Broadcasters Music License Committee

AGREED TO:

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS

s/Elizabeth Matthews
Chief Executive Officer

Dated: 11/20/15          , 2015

# ATTACHMENT 1



# NRBMLC Radio Station
# Music Usage Certification Form

Date:_____

Call Letters: ☐☐☐☐   ☐AM ☐FM   ASCAP Account Number: ☐☐☐☐☐☐☐☐☐☐☐

Station Frequency:_____ FCC Community of License: City_____ ST_____

Legal Name of Licensee:_____

Group Owner:_____

Format:_____

---

Please provide a contact for Program Period music reporting below:

Contact Name:_____     Contact Email Address_____

Contact Title:_____     Contact Phone #:_____

Please indicate the average number of program periods[1] your station is normally on the air and the estimated number of program periods in which feature music[2] is played on an average weekday, Saturday, and Sunday during each of the following time periods (rounded to the nearest full program period):

| Time Period | Program Periods On Air | Estimated Program Periods With Feature Music |
|---|---|---|
| Average Weekdays: 12am-6am (max 24 periods) | _____ | _____ |
| Average Weekdays: 6am-10am (max 16 periods) | _____ | _____ |
| Average Weekdays: 10am-3pm (max 20 periods) | _____ | _____ |
| Average Weekdays: 3pm-7pm (max 16 periods) | _____ | _____ |
| Average Weekdays: 7pm-12mid (max 20 periods) | _____ | _____ |
| Average Saturday: All Day (max 96 periods) | _____ | _____ |
| Average Sunday:  All Day (max 96 periods) | _____ | _____ |

---

_____
Signature

_____
Print Name of Signatory

_____
Print Title of Signatory

*Please scan and email to **BOTH** ASCAP and the NRBMLC:*

ASCAP
Radiolicensing@ascap.com

NRBMLC
elizabeth.meyer@salem.cc
russh@salem.cc

---

[1] "Program Period" means a fifteen (15)-minute period of Radio Broadcasting (as defined in the license) on Station's primary terrestrial analog broadcast signal commencing on the hour and at fifteen (15), thirty (30), and forty-five (45) minutes past the hour without regard to whether such period contains one or more programs or announcements, subject to Paragraph 6 of the agreement between ASCAP and the NRBMLC.

[2] "Feature Music" means any performance that is either a principal focus of audience attention, such as a song or other musical composition, whether performed "live" or by means of a recording, or other feature musical subject matter on a radio program that is not a performance as a theme or signature, bridge, cue, background music, Jingle, or in conjunction with an advertising, promotional, or public service announcement or logo. Note that your license only requires you to include program periods that contain feature music performances of ASCAP music. If you know that all feature music performances in a program period are not licensed to you by ASCAP (for example, because you have direct licenses), you do not need to include the period in your estimate.

# Exhibit B

ascap

# NRBMLC Radio Station
# Election to Change License Basis Form

Date:_____

Call Letters: [  ][  ][  ][  ]   ☐ AM   ☐ FM   ASCAP Account Number: [  ][  ][  ][  ][  ][  ][  ][  ][  ][  ][  ]

Station Frequency:_____ FCC Community of License: City _____ ST _____

Legal Name of Licensee:_____

Group Owner:_____

Previous Program Format:_____

New Program Format:_____ Date of Change:_____

Check appropriate box:

☐ Convert to Blanket Basis (currently licensed on Program Period Basis)

☐ Convert to Program Period Basis (currently licensed on Blanket Basis)

Effective Date of Conversion*  [ _____ / _____ / _____ ]

* Please note that you may convert prospectively your station's license type as of the first day of any month as long as written notice is provided to ASCAP by at least thirty (30) days prior to that effective date. Your station must be current in both reports and payments due ASCAP as required by your license in order to be eligible.

**Complete this section only if you are converting to a Program Period Basis**

Please provide a contact for Program Period music reporting below:

Contact Name:_____   Contact Email Address:_____

Contact Title:  _____   Contact Phone #:  _____

Please indicate the average number of program periods[1] your station is normally on the air and the estimated number of program periods in which feature music[2] is played on an average weekday, Saturday, and Sunday during each of the following time periods (rounded to the nearest full program period):

| Time Period | Program Periods On Air | Program Periods With Feature Music |
|---|---|---|
| Average Weekdays:12am-6am (max 24 periods) | _____ | _____ |
| Average Weekdays: 6am-10am (max 16 periods) | _____ | _____ |
| Average Weekdays: 10am-3pm (max 20 periods) | _____ | _____ |
| Average Weekdays: 3pm-7pm (max 16 periods) | _____ | _____ |
| Average Weekdays: 7pm-12mid (max 20 periods) | _____ | _____ |
| Average Saturday: All Day (max 96 periods) | _____ | _____ |
| Average Sunday: All Day (max 96 periods) | _____ | _____ |

_____
Signature

_____
Print Name of Signatory

_____
Print Title of Signatory

Please scan and email to *BOTH ASCAP and the NRBMLC:*

ASCAP
Radiolicensing@ascap.com

NRBMLC
russh@salem.cc
elizabeth.meyer@salem.cc

---

[1] "Program Period" means a fifteen (15)-minute period of Radio Broadcasting (as defined in the license) on Station's primary terrestrial analog broadcast signal commencing on the hour and at fifteen (15), thirty (30), and forty-five (45) minutes past the hour without regard to whether such period contains one or more programs or announcements, subject to Paragraph 6 of the agreement between ASCAP and the NRBMLC.
[2] "Feature Music" means any performance that is either a principal focus of audience attention, such as a song or other musical composition, whether performed "live" or by means of a recording, or other feature musical subject matter on a radio program that is <u>not</u> a performance as a theme or signature, bridge, cue, background music, Jingle, or in conjunction with an advertising, promotional, or public service announcement or logo.  Note that your license only requires you to include program periods that contain feature music performances of ASCAP music.  If you know that all feature music performances in a program period are not licensed to you by ASCAP (for example, because you have direct licenses), you do not need to include the period in your estimate.

# Exhibit C



## Local Manager Acknowledgment of ASCAP License Agreement

The undersigned [LOCAL MANAGER] hereby acknowledges and agrees that it has entered into a Local Management Agreement with LICENSEE and that in accordance with Paragraph 9.A of the foregoing ASCAP 2008 NRBMLC Radio Station License Agreement between ASCAP and LICENSEE, it has become a party to such License Agreement and assumes, with LICENSEE, all of the rights and obligations set forth in the foregoing License Agreement for the full period that the LOCAL MANAGER's Local Management Agreement with LICENSEE is in effect (the "Period"). LICENSEE and ASCAP hereby acknowledge that the foregoing License Agreement is hereby amended solely to deem [LOCAL MANAGER] an additional party to the License Agreement for the Period.

Dated: _____


AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS

[INSERT NAME OF LICENSEE]

By: _____
    Name and Title

By: _____

By: _____
    Name and Title

[INSERT NAME OF LOCAL MANAGER]

By: _____
    Name and Title

Station Call Letters: _____

City and State: _____

Effective Date of Local Management Agreement:
_____

Address for Billing and Other Purposes:
_____

_____

_____

# EXHIBIT 3

LIST OF NRBMLC BOUND STATIONS AS OF DECEMBER 15, 2015

| Call Letter | Band | CurrentOwnName | FCCID | FCC City | FCC State | Effective Start Date | Effective End Date |
|---|---|---|---|---|---|---|---|
| KAGC | AM | Bryan Broadcasting Lic Sub Inc | 16983 | Bryan | TX | 1/1/2008 | |
| KAIM | FM | Salem Media Corporation | 10950 | Honolulu | HI | 1/1/2008 | |
| KAJN | FM | Agape Broadcasters, Inc. | 56098 | Crowley | LA | 1/1/2008 | |
| KAPR | AM | Good News Broadcasting Inc | 68768 | Douglas | AZ | 6/1/2001 | 7/31/2012 |
| KART | AM | Kart Broadcasting Co., Inc. | 33445 | Jerome | ID | 1/1/2008 | 4/30/2012 |
| KATY | AM | All Pro Broadcasting | 33611 | Idyllwild | CA | 1/1/2008 | |
| KAYX | FM | Bott Radio Network | 6508 | Richmond | MO | 1/1/2008 | |
| KBCL | AM | Barnabas Center Ministries | 55968 | Bossier City | LA | 1/1/2010 | |
| KBCV | AM | Bott Radio Network | 129517 | Hollister | MO | 1/1/2008 | |
| KBGN | AM | Wilson, Nelson & Karen. | 48249 | Caldwell | ID | 1/1/2008 | |
| KBIF | AM | Gore-Overgaard Broadcasting | 9226 | Fresno | CA | 1/1/2008 | |
| KBIQ | FM | Salem Media Corporation | 73073 | Manitou Springs | CO | 1/1/2008 | |
| KBJD | AM | Salem Media Corporation | 87151 | Denver | CO | 1/1/2010 | |
| KBRT | AM | Crawford Broadcasting Co. | 34588 | Avalon | CA | 1/1/2008 | |
| KBXL | FM | KSPD Inc | 35628 | Caldwell | ID | 1/1/2008 | |
| KCAT | AM | Elijah Mondy Jr | 30138 | Pine Bluff | AR | 1/1/2010 | |
| KCBC | AM | Crawford Broadcasting Co. | 34587 | Manteca | CA | 1/1/2008 | |
| KCBQ | AM | Salem Media Corporation | 13509 | San Diego | CA | 1/1/2008 | |
| KCCV | AM | Bott Radio Network | 6491 | Overland Park | KS | 1/1/2008 | |
| KCCV | FM | Bott Radio Network | 6492 | Olathe | KS | 1/1/2008 | |
| KCEE | AM | Good News Communications, Inc. | 24590 | Tucson | AZ | 6/1/2009 | |
| KCFO | AM | Friendship Broadcasting LP | 22665 | Tulsa | OK | 1/1/2008 | 10/31/2015 |
| KCGS | AM | Southland Broadcasting Corp. | 56054 | Marshall | AR | 1/1/2010 | 12/31/2012 |
| KCIV | FM | Bott Radio Network | 6504 | Mount Bullion | CA | 1/1/2008 | |
| KCMI | FM | Christian Media Inc | 11069 | Terrytown | NE | 1/1/2008 | |
| KCNW | AM | Wilkins Communications Network Inc. | 10826 | Fairway | KS | 1/1/2008 | |
| KCRO | AM | Salem Media Corporation | 54902 | Omaha | NE | 1/1/2008 | |
| KCTA | AM | Broadcasting Corporation of the Sou | 7093 | Corpus Christi | TX | 1/1/2008 | |
| KCVT | FM | Bott Radio Network | 56244 | Silver Lake | KS | 1/1/2008 | |
| KCXX | AM | All Pro Broadcasting | 2398 | Lake Arrowhead | CA | 1/1/2008 | |
| KDAR | FM | Salem Media Corporation | 3077 | Oxnard | CA | 1/1/2008 | |
| KDAZ | AM | Pan American Broadcasting | 51424 | Albuquerque | NM | 1/1/2008 | |
| KDB | AM | Pacific Broadcasting Company | 51169 | Santa Barbara | CA | 1/1/2008 | 8/31/2014 |
| KDIS | FM | Salem Media Corporation | 47309 | Little Rock | AR | 2/1/2014 | |
| KDLF | AM | Truth Broadcasting | 6416 | Boone | IA | 1/1/2010 | 7/31/2011 |
| KDOW | AM | Salem Media Corporation | 65485 | Palo Alto | CA | 1/1/2008 | |
| KDRY | AM | KDRY Radio Inc | 47666 | Alamo Heights | TX | 1/1/2008 | |
| KDZY | AM | KSPD Inc | 82884 | Mccall | ID | 1/1/2008 | |
| KELP | AM | McClatchey Broadcasting | 40831 | El Paso | TX | 1/1/2010 | |
| KERI | AM | Wilkins Communications Network Inc. | 6640 | Bakersfield | CA | 1/1/2015 | |
| KEXB | AM | Salem Media Corporation | 49320 | Plano | TX | 10/1/2015 | |
| KEYS | AM | Malkan Interactive Communications, LLC | 39715 | Corpus Christi | TX | 1/1/2008 | |
| KFAX | AM | Salem Media Corporation | 24510 | San Francisco | CA | 1/1/2008 | |
| KFIA | AM | Salem Media Corporation | 50300 | Carmichael | CA | 1/1/2008 | |
| KFIS | FM | Salem Media Corporation | 50553 | Scappoose | OR | 1/1/2010 | |
| KFSH | AM | Salem Media Corporation | 2195 | Anaheim | CA | 1/1/2008 | |
| KGBI | FM | Salem Media Corporation | 24713 | Omaha | NE | 1/1/2008 | |
| KGDN | FM | Read Broadcasting Network | 71636 | Pasco | WA | 1/1/2010 | |
| KGFL | AM | King-Sullivan Radio | 71396 | Clinton | AR | 1/1/2008 | |
| KGFT | FM | Salem Media Corporation | 20579 | Pueblo | CO | 1/1/2008 | |
| KGGR | AM | Mortenson Broadcasting Co. | 8099 | Dallas | TX | 1/1/2010 | |
| KGLE | AM | Friends of Christian Radio Inc | 11016 | Glendive | MT | 1/1/2008 | |
| KGMS | AM | Good News Communications, Inc. | 53592 | Tucson | AZ | 1/1/2008 | |
| KGNB | AM | New Braunfels Communications | 48378 | New Braunfels | TX | 1/1/2008 | |
| KGNC | AM | MCC Radio, LLC | 63159 | Amarillo | TX | 1/1/2008 | |
| KGNM | AM | Orama, Inc. | 50511 | St. Joseph | MO | 1/1/2010 | |
| KGNW | AM | Salem Media Corporation | 28819 | Burien-seattle | WA | 1/1/2008 | |

LIST OF NRBMLC BOUND STATIONS AS OF DECEMBER 15, 2015

| Call Letter | Band | CurrentOwnName | FCCID | FCC City | FCC State | Effective Start Date | Effective End Date |
|---|---|---|---|---|---|---|---|
| KGRV | AM | Pacific Cascade Communications | 51181 | Redding | CA | 1/1/2010 | |
| KGU | AM | Salem Media Corporation | 53705 | Honolulu | HI | 1/1/2008 | |
| KGU | AM | Salem Media Corporation | 641 | Honolulu | HI | 1/1/2008 | |
| KGVW | AM | Gallatin Valley Witness, Inc. | 11011 | Belgrade | MT | 1/1/2008 | |
| KHAC | AM | Western Indian Ministries Inc. | 71796 | Tse Bonito | NM | 1/1/2010 | |
| KHCA | FM | KHCA Inc | 34525 | Wamego | KS | 1/1/2010 | |
| KHCM | AM | Salem Media Corporation | 10934 | Honolulu | HI | 1/1/2008 | |
| KHCM | FM | Salem Media Corporation | 34620 | Honolulu | HI | 1/1/2008 | |
| KHNR | AM | Salem Media Corporation | 16742 | Honolulu | HI | 1/1/2010 | |
| KHRT | AM | Faith Broadcasting Inc. | 20483 | Minot | ND | 1/1/2010 | |
| KHRT | FM | Faith Broadcasting Inc. | 20488 | Minot | ND | 1/1/2010 | |
| KHVN | AM | Mortenson Broadcasting Co. | 63780 | Fort Worth | TX | 1/1/2010 | |
| KIAM | AM | Voice for Christ Ministries, Inc. | 70450 | Nenana | AK | 1/1/2008 | |
| KIDR | AM | Gore-Overgaard Broadcasting | 6383 | Phoenix | AZ | 2/1/2009 | 12/31/2012 |
| KIOU | AM | Wilkins Communications Network Inc. | 33714 | Shreveport | LA | 12/1/2008 | |
| KIRV | AM | Gore-Overgaard Broadcasting | 48513 | Fresno | CA | 1/1/2008 | 2/28/2013 |
| KJAA | AM | Good News Broadcasting Inc | 24161 | Globe | AZ | 1/1/2008 | 10/31/2008 |
| KJAK | FM | Williams Broadcasting Group | 72773 | Slaton | TX | 1/1/2008 | |
| KJIW | AM | Elijah Mondy Jr | 19237 | Helena | AR | 1/1/2010 | |
| KJJR | AM | Bee Broadcasting | 4578 | Whitefish | MT | 1/1/2008 | |
| KJRG | AM | Bott Radio Network | 35021 | Newton | KS | 1/1/2008 | |
| KJSL | AM | Crawford Broadcasting Co. | 73299 | St. Louis | MO | 1/1/2008 | 9/30/2013 |
| KJTX | FM | Wisdom Ministries, Inc. | 73065 | Jefferson | TX | 1/1/2008 | |
| KKBA | FM | Malkan Interactive Communications, LLC | 34918 | Kingsville | TX | 1/1/2010 | |
| KKFS | AM | Salem Media Corporation | 56366 | Lincoln | CA | 1/1/2008 | |
| KKGM | AM | Mortenson Broadcasting Co. | 87147 | Ft. Worth | TX | 1/1/2008 | |
| KKGO | FM | Mount Wilson FM Broadcasters | 43939 | Los Angeles | CA | 1/1/2008 | |
| KKHT | FM | Salem Media Corporation | 57801 | Winnie | TX | 1/1/2008 | |
| KKIM | AM | Wilkins Communications Network Inc. | 25524 | Albuquerque | NM | 1/1/2015 | |
| KKLA | FM | Salem Media Corporation | 48453 | Los Angeles | CA | 1/1/2008 | |
| KKLL | AM | New Life Evangelistic Center Inc. | 17128 | Webb City | MO | 1/1/2010 | |
| KKLO | AM | New Life Evangelistic Center Inc. | 10345 | Leavenworth | KS | 1/1/2010 | |
| KKMC | AM | Monterey County Broadcasters Inc | 43603 | Gonzales | CA | 1/1/2008 | |
| KKMO | AM | Salem Media Corporation | 33301 | Tacoma | WA | 1/1/2008 | 12/31/2010 |
| KKMS | AM | Salem Media Corporation | 18518 | Eagan | MN | 1/1/2008 | |
| KKNO | AM | Robert C. Blakes Enter. Inc. | 56784 | Gretna | LA | 1/1/2010 | |
| KKNT | AM | Salem Media Corporation | 13508 | Phoenix | AZ | 1/1/2008 | |
| KKOL | AM | Salem Media Corporation | 20355 | Seattle | WA | 1/1/2008 | |
| KKOL | FM | Salem Media Corporation | 70384 | Aiea | HI | 1/1/2010 | |
| KKPZ | AM | Crawford Broadcasting Co. | 4113 | Portland | OR | 1/1/2008 | |
| KKSP | AM | Salem Media Corporation | 39751 | Bryant | AR | 10/1/2015 | |
| KKVV | AM | Las Vegas Broadcasters | 36642 | Las Vegas | NV | 1/1/2008 | |
| KKXX | AM | Butte Broadcasting Company Inc | 7909 | Paradise | CA | 1/1/2008 | |
| KLBW | AM | Chapel of Light | 6559 | New Boston | TX | 1/1/2010 | |
| KLDC | AM | Crawford Broadcasting Co. | 12364 | Brighton | CO | 1/1/2008 | |
| KLEX | AM | Bott Radio Network | 6507 | Lexington | MO | 1/1/2008 | |
| KLFE | AM | Salem Media Corporation | 12031 | Seattle | WA | 1/1/2008 | |
| KLHC | AM | Gore-Overgaard Broadcasting | 61420 | Bakersfield | CA | 1/1/2008 | 1/31/2014 |
| KLHT | AM | Calvary Chapel Honolulu | 8415 | Honolulu | HI | 1/1/2008 | |
| KLIC | AM | Media Ministries | 22171 | Richwood | LA | 1/1/2008 | 2/28/2013 |
| KLIV | AM | Empire Broadcasting Corp | 19531 | San Jose | CA | 1/1/2008 | |
| KLJT | FM | Waller Broadcasting | 57204 | Jacksonville | TX | 1/1/2008 | 12/31/2008 |
| KLJY | FM | Lutheran Church-Missouri Synod | 65924 | Clayton | MO | 1/1/2008 | 6/30/2010 |
| KLLB | AM | United Security Financial Inc | 68865 | West Jordan | UT | 1/1/2010 | |
| KLNG | AM | Wilkins Communications Network Inc. | 72464 | Council Bluffs | IA | 1/1/2008 | |
| KLTE | FM | Bott Radio Network | 66670 | Kirksville | MO | 1/1/2008 | |
| KLTT | AM | Crawford Broadcasting Co. | 35191 | Commerce City | CO | 1/1/2008 | |

LIST OF NRBMLC BOUND STATIONS AS OF DECEMBER 15, 2015

| Call Letter | Band | CurrentOwnName | FCCID | FCC City | FCC State | Effective Start Date | Effective End Date |
|---|---|---|---|---|---|---|---|
| KLTY | FM | Salem Media Corporation | 2809 | Arlington | TX | 1/1/2008 | |
| KLUP | AM | Salem Media Corporation | 34975 | Terrell Hills | TX | 1/1/2008 | |
| KLVZ | AM | Crawford Broadcasting Co. | 35089 | Denver | CO | 1/1/2010 | |
| KLZ | AM | Crawford Broadcasting Co. | 35088 | Denver | CO | 1/1/2010 | |
| KMAN | AM | Seaton Stations | 39783 | Manhattan | KS | 1/1/2008 | |
| KMHM | FM | SOUTHERN GOSPETALITY LLC | 26174 | Lutesville | MO | 1/1/2008 | |
| KMVG | AM | Mortenson Broadcasting Co. | 41561 | Gladstone | MO | 1/1/2010 | |
| KMZT | FM | Mount Wilson FM Broadcasters | 183343 | Big Sur | CA | 1/1/2014 | |
| KNDI | AM | Broadcast House of the Pacific | 37065 | Honolulu | HI | 1/1/2008 | 7/31/2013 |
| KNDR | FM | Central Dakota Enterprises | 9869 | Mandan | ND | 1/1/2008 | |
| KNOF | FM | Selby Gospel Broadcasting | 59624 | St. Paul | MN | 1/1/2008 | |
| KNPT | AM | Yaquina Bay Communications Inc | 9853 | Newport | OR | 1/1/2008 | |
| KNRY | AM | Mount Wilson FM Broadcasters | 35276 | Los Angeles | CA | 1/1/2015 | |
| KNSN | AM | Crawford Broadcasting Co. | 30831 | San Diego | CA | 9/1/2014 | |
| KNTH | AM | Salem Media Corporation | 61174 | Houston | TX | 1/1/2008 | |
| KNTS | AM | Salem Media Corporation | 87153 | Seattle | WA | 1/1/2010 | |
| KNUS | AM | Salem Media Corporation | 42377 | Denver | CO | 1/1/2008 | |
| KNXN | AM | Good News Communications, Inc. | 57528 | Sierra Vista | AZ | 1/1/2008 | |
| KOKE | FM | REO Radio Group, LLC | 88370 | Thorndale | TX | 1/1/2010 | 4/30/2015 |
| KOLE | AM | Voice in the Wilderness Broadcastin | 62238 | Port Arthur | TX | 1/1/2008 | 2/29/2008 |
| KOMY | AM | Zwerling Broadcasting Systems | 22694 | La Selva Beach | CA | 1/1/2008 | |
| KOTK | AM | Salem Media Corporation | 50307 | Omaha | NE | 1/1/2008 | |
| KPCL | FM | Voice Ministries Of Farmington | 70444 | Farmington | NM | 1/1/2010 | |
| KPDQ | AM | Salem Media Corporation | 58628 | Portland | OR | 1/1/2008 | |
| KPDQ | AM | Salem Media Corporation | 58629 | Portland | OR | 1/1/2008 | |
| KPRO | AM | Impact Radio, Inc. | 50281 | Riverside | CA | 1/1/2010 | |
| KPRZ | AM | Salem Media Corporation | 54461 | San Marcos | CA | 1/1/2008 | |
| KPSM | FM | Living Word Church | 73699 | Brownwood | TX | 1/1/2008 | 2/29/2008 |
| KPSM | FM | BLM of Brownwood, Inc. | 73699 | Brownwood | TX | 1/1/2010 | |
| KPXI | FM | Salem Media Corporation | 29916 | Overton | TX | 1/1/2008 | 5/31/2009 |
| KPXQ | AM | Salem Media Corporation | 55912 | Glendale | AZ | 1/1/2008 | |
| KQCV | AM | Bott Radio Network | 6487 | Oklahoma City | OK | 1/1/2008 | |
| KQPN | AM | F.W. Robbert Broadcasting | 48749 | West Memphis | AR | 8/1/2010 | |
| KRCM | AM | Voice in the Wilderness Broadcastin | 14228 | Beaumont | TX | 1/1/2008 | 8/31/2011 |
| KRDY | AM | Salem Media Corporation | 26310 | San Antonio | TX | 2/1/2014 | |
| KRKS | AM | Salem Media Corporation | 58632 | Denver | CO | 1/1/2008 | |
| KRKS | FM | Salem Media Corporation | 58631 | Lafayette | CO | 1/1/2008 | |
| KRLA | AM | Salem Media Corporation | 61267 | Glendale | CA | 1/1/2008 | |
| KRTK | AM | KSPD Inc | 24627 | Chubbuck | ID | 10/1/2011 | |
| KRTY | FM | Empire Broadcasting Corp | 35569 | Los Gatos | CA | 1/1/2008 | |
| KRVA | AM | Mortenson Broadcasting Co. | 54730 | Cockrell Hill | TX | 1/1/2010 | 1/31/2012 |
| KRYP | FM | Salem Media Corporation | 82062 | Gladstone | OR | 1/1/2008 | |
| KSAC | AM | Salem Media Corporation | 51220 | Dunnigan | CA | 1/1/2010 | |
| KSCO | AM | Zwerling Broadcasting Systems | 41594 | Santa Cruz | CA | 1/1/2008 | |
| KSGL | AM | Agape Communications, Inc. | 610 | Wichita | KS | 1/1/2008 | |
| KSIV | AM | Bott Radio Network | 6499 | Clayton | MO | 1/1/2008 | |
| KSKY | AM | Salem Media Corporation | 6591 | Balch Springs | TX | 1/1/2008 | |
| KSLR | AM | Salem Media Corporation | 58634 | San Antonio | TX | 1/1/2008 | |
| KSPD | AM | KSPD Inc | 35627 | Boise | ID | 1/1/2008 | |
| KSPO | FM | Read Broadcasting Network | 31495 | Dishman | WA | 1/1/2010 | |
| KSTL | AM | Crawford Broadcasting Co. | 73300 | St. Louis | MO | 1/1/2008 | 5/31/2014 |
| KSUN | AM | Fiesta Radio Inc | 21430 | Phoenix | AZ | 1/1/2008 | |
| KTAC | FM | Read Broadcasting Network | 68158 | Ephrata | WA | 1/1/2010 | |
| KTBA | AM | Western Indian Ministries Inc. | 71794 | Tuba City | AZ | 1/1/2010 | |
| KTBI | AM | Read Broadcasting Network | 68159 | Ephrata | WA | 1/1/2010 | |
| KTEK | AM | Salem Media Corporation | 10827 | Alvin | TX | 1/1/2008 | 2/29/2008 |
| KTEK | AM | Salem Media Corporation | 10827 | Alvin | TX | 12/1/2011 | |

LIST OF NRBMLC BOUND STATIONS AS OF DECEMBER 15, 2015

| Call Letter | Band | CurrentOwnName | FCCID | FCC City | FCC State | Effective Start Date | Effective End Date |
|---|---|---|---|---|---|---|---|
| KTIA | FM | Truth Broadcasting | 6417 | Boone | IA | 1/1/2010 | |
| KTIE | AM | Salem Media Corporation | 58808 | San Bernardino | CA | 1/1/2008 | |
| KTIP | AM | Stoneburner, Larry & Marilyn | 17388 | Porterville | CA | 1/1/2008 | |
| KTKZ | AM | Salem Media Corporation | 59599 | Sacramento | CA | 1/1/2008 | |
| KTLV | AM | First Choice Broadcasting | 21555 | Midwest City | OK | 1/1/2008 | |
| KTNO | AM | Mortenson Broadcasting Co. | 34562 | University Park | TX | 1/1/2010 | 12/31/2011 |
| KTNO | AM | Salem Media Corporation | 34562 | University Park | TX | 1/1/2012 | |
| KTRW | AM | Read Broadcasting Network | 13560 | Opportunity | WA | 1/1/2010 | |
| KUIK | AM | Dolphin Communications, Inc. | 17063 | Hillsboro | OR | 1/1/2008 | |
| KUTR | AM | Julie Epperson | 129372 | Taylorsville | UT | 1/1/2010 | 12/31/2010 |
| KUTR | AM | Truth Broadcasting | 129372 | Taylorsville | UT | 1/1/2011 | |
| KVOI | AM | Good News Communications, Inc. | 13969 | Cortaro | AZ | 1/1/2008 | |
| KWDF | AM | Wilkins Communications Network Inc. | 3641 | Ball | LA | 8/1/2008 | |
| KWIM | FM | Western Indian Ministries Inc. | 71795 | Window Rock | AZ | 1/1/2010 | |
| KWKY | AM | Putbrese Communications,Ltd. | 49099 | Des Moines | IA | 1/1/2008 | |
| KWRD | FM | Salem Media Corporation | 6560 | Highland Village | TX | 1/1/2008 | |
| KWVE | AM | Calvary Chapel of Costa Mesa, Inc. | 54760 | Oildale | CA | 10/1/2009 | |
| KWVE | FM | Calvary Chapel of Costa Mesa, Inc. | 8410 | San Clemente | CA | 1/1/2008 | |
| KWWJ | AM | Martin Broadcasting Inc. | 58724 | Baytown | TX | 1/1/2010 | |
| KXEN | AM | Radio Property Ventures | 54739 | St. Louis | MO | 1/1/2008 | |
| KXKS | AM | Wilkins Communications Network Inc. | 13789 | Albuquerque | NM | 1/1/2008 | |
| KXLE | AM | KXLE Inc | 35958 | Ellensburg | WA | 1/1/2008 | |
| KXMX | AM | Salem Media Corporation | 2194 | Paramount | CA | 1/1/2008 | 1/31/2011 |
| KXXT | AM | Salem Media Corporation | 54742 | Tolleson | AZ | 10/1/2014 | |
| KYAK | AM | Read Broadcasting Network | 36030 | Yakima | WA | 1/1/2010 | |
| KYCA | AM | Southwest Broadcasting Co. | 61433 | Prescott | AZ | 1/1/2010 | |
| KYCR | AM | Salem Media Corporation | 10828 | Golden Valley | MN | 1/1/2008 | |
| KYIX | FM | Butte Broadcasting Company Inc | 7914 | South Oroville | CA | 1/1/2008 | |
| KYKD | FM | Voice for Christ Ministries, Inc. | 70442 | Bethel | AK | 1/1/2008 | |
| KYTT | FM | Lighthouse Radio Corp. | 29596 | Coos Bay | OR | 1/1/2010 | |
| KZNT | AM | Salem Media Corporation | 70825 | Colorado Springs | CO | 1/1/2008 | |
| WABJ | AM | Friends Communications | 22648 | Adrian | MI | 1/1/2008 | |
| WACE | AM | Carter Broadcasting Corporation | 9194 | Chicopee | MA | 1/1/2010 | |
| WADV | AM | Wadv Radio, Inc. | 20401 | Lebanon | PA | 1/1/2010 | |
| WAEC | AM | Beasley Broadcast Group | 22132 | Atlanta | GA | 1/1/2008 | |
| WAFS | AM | Salem Media Corporation | 72111 | Atlanta | GA | 1/1/2008 | |
| WAIM | AM | Palmetto Broadcasting Corp | 51346 | Anderson | SC | 1/1/2010 | |
| WALO | AM | Ochoa Broadcasting Corporation | 50011 | Humacao | PR | 1/1/2008 | |
| WAMD | AM | Salem Media Corporation | 39550 | Aberdeen | MD | 3/1/2009 | 2/28/2011 |
| WAMN | AM | Baker Family Stations | 70851 | Green Valley | WV | 1/1/2008 | 11/30/2009 |
| WAMT | AM | Genesis Communications | 15877 | Pine Castle-sky Lake | FL | 1/1/2008 | |
| WARV | AM | Blount Communications Group | 5882 | Warwick | RI | 1/1/2008 | |
| WASG | AM | Wilkins Communications Network Inc. | 51141 | Atmore | AL | 11/1/2011 | |
| WATX | AM | JWC Broadcasting GP | 39797 | Algood | TN | 1/1/2008 | 1/31/2012 |
| WAUK | AM | Salem Media Corporation | 10824 | Jackson | WI | 1/1/2008 | 3/31/2008 |
| WAVA | AM | Salem Media Corporation | 54465 | Arlington | VA | 1/1/2008 | |
| WAVA | FM | Salem Media Corporation | 4644 | Arlington | VA | 1/1/2008 | |
| WAYE | AM | Richmond Broadcasting,Inc. | 5354 | Birmingham | AL | 11/1/2011 | |
| WBCI | FM | Blount Communications Group | 33288 | Bath | ME | 1/1/2008 | |
| WBCR | AM | Blount County Broadcasting | 5887 | Alcoa | TN | 1/1/2008 | |
| WBGS | AM | Baker Family Stations | 5284 | Point Pleasant | WV | 1/1/2008 | |
| WBGX | AM | Great Lakes Radio, Inc. | 40147 | Harvey | IL | 1/1/2008 | |
| WBHY | AM | Goforth Media Inc | 24453 | Mobile | AL | 1/1/2008 | |
| WBIX | AM | Salem Media Corporation | 48403 | Boston | MA | 10/1/2015 | |
| WBLA | AM | Christan Listening Network Inc | 59467 | Elizabethtown | NC | 1/1/2010 | 1/31/2013 |
| WBLA | AM | Baldwin Branch Missionary Baptist Church | 59467 | Elizabethtown | NC | 2/1/2013 | |
| WBLB | AM | WBLB Radio, Inc | 48921 | Pulaski | VA | 1/1/2008 | |

4

LIST OF NRBMLC BOUND STATIONS AS OF DECEMBER 15, 2015

| Call Letter | Band | CurrentOwnName | FCCID | FCC City | FCC State | Effective Start Date | Effective End Date |
|---|---|---|---|---|---|---|---|
| WBOB | AM | Chesapeake-Portsmouth Bcg.Corp | 29736 | Jacksonville | FL | 1/1/2008 | 4/30/2010 |
| WBOB | AM | Chesapeake-Portsmouth Bcg.Corp | 53588 | Jacksonville | FL | 12/1/2010 | |
| WBOB | FM | Julie Epperson | 164202 | Enfield | NC | 1/1/2008 | 3/31/2011 |
| WBOB | FM | Truth Broadcasting | 164202 | Enfield | NC | 4/1/2011 | 4/30/2010 |
| WBOZ | FM | Salem Media Corporation | 15531 | Woodbury | TN | 1/1/2008 | |
| WBRG | AM | Tri-County Broadcasting Incorporate | 67704 | Lynchburg | VA | 1/1/2008 | |
| WBRI | AM | Wilkins Communications Network Inc. | 54706 | Indianapolis | IN | 1/1/2008 | |
| WBTX | AM | Massanutten Broadcasting Co. Inc. | 40649 | Broadway-timberville | VA | 1/1/2010 | |
| WBXR | AM | Wilkins Communications Network Inc. | 8999 | Hazel Green | AL | 1/1/2008 | |
| WBYG | FM | Baker Family Stations | 5283 | Point Pleasant | WV | 1/1/2008 | |
| WBYN | AM | Wdac Radio Company | 71310 | Boyertown | PA | 1/1/2008 | |
| WBZS | AM | Salem Media Corporation | 67578 | Pawtucket | RI | 3/1/2011 | 3/31/2012 |
| WBZW | AM | Salem Media Corporation | 1185 | Apopka | FL | 1/1/2008 | |
| WCAA | FM | New York Times Co | 29022 | New York | NY | 1/1/2008 | 9/30/2009 |
| WCBM | AM | Mangione Broadcasting | 4759 | Baltimore | MD | 1/1/2008 | |
| WCBR | AM | W.C.B.R. Radio, Inc. | 70617 | Richmond | KY | 1/1/2008 | |
| WCCC | AM | Marlin Broadcasting LLC | 25073 | West Hartford | CT | 1/1/2008 | 7/31/2014 |
| WCGL | AM | Jbd Communications Inc | 30609 | Jacksonville | FL | 1/1/2010 | |
| WCGW | AM | Christian Broadcasting Systems | 43865 | Nicholasville | KY | 1/1/2010 | |
| WCHP | AM | Butte Broadcasting Company Inc | 10130 | Champlain | NY | 1/1/2008 | |
| WCLN | FM | Christan Listening Network Inc | 11066 | Clinton | NC | 1/1/2010 | |
| WCLV | FM | RADIO SEAWAY, INC. | 70109 | Lorain | OH | 1/1/2008 | 12/31/2012 |
| WCMR | AM | Progressive Bcg. System, Inc. | 53650 | Elkhart | IN | 1/1/2010 | |
| WCPK | AM | Chesapeake-Portsmouth Bcg.Corp | 64003 | Chesapeake | VA | 4/1/2015 | |
| WCRM | AM | Manna Christian Mission | 39798 | Fort Myers | FL | 1/1/2008 | 10/31/2008 |
| WCRN | AM | Carter Broadcasting Corporation | 9201 | Worcester | MA | 1/1/2008 | |
| WCRT | AM | Bott Radio Network | 25031 | Donelson | TN | 1/1/2008 | |
| WCRU | AM | Truth Broadcasting | 8503 | Dallas | NC | 1/1/2010 | |
| WCRV | AM | Bott Radio Network | 6486 | Collierville | TN | 1/1/2008 | |
| WCTL | FM | Inspiration Time | 28774 | Union City | PA | 1/1/2008 | |
| WCVG | AM | Great Lakes Radio, Inc. | 56220 | Covington | KY | 6/1/2010 | |
| WCVX | AM | Christian Broadcasting Systems | 35065 | Florence | KY | 1/1/2010 | |
| WDAC | FM | Wdac Radio Company | 71309 | Lancaster | PA | 1/1/2008 | |
| WDAY | AM | Forum Communications Co | 22126 | Fargo | ND | 1/1/2008 | |
| WDCD | AM | Crawford Broadcasting Co. | 833 | Albany | NY | 1/1/2008 | 1/31/2008 |
| WDCT | AM | Family Radio Ltd | 20668 | Fairfax | VA | 1/1/2008 | |
| WDCX | AM | Crawford Broadcasting Co. | 1906 | Rochester | NY | 1/1/2008 | |
| WDCX | FM | Crawford Broadcasting Co. | 34820 | Buffalo | NY | 1/1/2008 | |
| WDCZ | AM | Crawford Broadcasting Co. | 27668 | Buffalo | NY | 12/1/2012 | |
| WDER | AM | Blount Communications Group | 61615 | Derry | NH | 1/1/2008 | |
| WDER | FM | Blount Communications Group | 52399 | Peterborough | NH | 8/1/2012 | |
| WDFB | AM | Alum Springs Vision & Outreach | 1197 | Junction City | KY | 1/1/2010 | |
| WDJC | FM | Crawford Broadcasting Co. | 34819 | Birmingham | AL | 1/1/2010 | |
| WDRU | AM | Truth Broadcasting | 53104 | Wake Forest | NC | 1/1/2008 | |
| WDTK | AM | Salem Media Corporation | 68641 | Detroit | MI | 1/1/2008 | |
| WDWD | AM | Salem Media Corporation | 8623 | Atlanta | GA | 5/1/2015 | |
| WDYZ | AM | Salem Media Corporation | 23442 | Orlando | FL | 4/1/2015 | |
| WDZY | AM | Wilkins Communications Network Inc. | 21723 | Colonial Heights | VA | 1/1/2014 | |
| WEBJ | AM | Brewton Broadcasting Inc | 19823 | Brewton | AL | 1/1/2008 | |
| WECK | AM | Culver Communications | 1914 | Cheektowaga | NY | 2/1/2008 | |
| WEDJ | FM | Continental Broadcast Group LLC | 13794 | Danville | IN | 1/1/2008 | |
| WEGO | AM | Truth Broadcasting | 40996 | Winston-salem | NC | 1/1/2010 | 8/31/2010 |
| WEGO | AM | Truth Broadcasting | 40996 | Winston-salem | NC | 1/1/2013 | |
| WEIC | AM | Miller Group | 12485 | Charleston | IL | 10/1/2011 | 12/31/2013 |
| WEJS | AM | Covenant Broadcasting Company | 14223 | Jersey Shore | PA | 1/1/2008 | 12/31/2013 |
| WEKT | AM | M & R Broadcasting Inc | 39460 | Elkton | KY | 1/1/2010 | |

LIST OF NRBMLC BOUND STATIONS AS OF DECEMBER 15, 2015

| Call Letter | Band | CurrentOwnName | FCCID | FCC City | FCC State | Effective Start Date | Effective End Date |
|---|---|---|---|---|---|---|---|
| WELP | AM | Wilkins Communications Network Inc. | 27423 | Easley | SC | 1/1/2010 | |
| WEMM | FM | Mortenson Broadcasting Co. | 43860 | Huntington | WV | 1/1/2010 | |
| WESY | AM | East Delta Communications Inc. | 18211 | Leland | MS | 1/1/2010 | |
| WETR | AM | Tom Moffit | 65205 | Knoxville | TN | 1/1/2008 | |
| WEXL | AM | Crawford Broadcasting Co. | 61679 | Royal Oak | MI | 1/1/2010 | |
| WEZE | AM | Salem Media Corporation | 3594 | Boston | MA | 1/1/2008 | |
| WFAM | AM | Wilkins Communications Network Inc. | 20595 | Augusta | GA | 1/1/2008 | |
| WFAX | AM | Newcomb Broadcasting | 48732 | Falls Church | VA | 1/1/2008 | |
| WFCA | FM | French Camp Academy Radio Inc | 22628 | Ackerman | MS | 1/1/2008 | |
| WFCC | FM | Charles River Broadcasting | 17066 | Chatham | MA | 1/1/2008 | 1/31/2008 |
| WFCJ | FM | Miami Valley Christian Broadcasting | 41457 | Miamisburg | OH | 1/1/2008 | |
| WFCV | AM | Bott Radio Network | 6489 | Fort Wayne | IN | 1/1/2008 | |
| WFCV | FM | Bott Radio Network | 71464 | Bluffton | IN | 9/1/2011 | |
| WFFG | AM | Great Marathon Radio Co | 65664 | Marathon | FL | 1/1/2008 | |
| WFFH | FM | Salem Media Corporation | 68347 | Smyrna | TN | 1/1/2010 | |
| WFFI | FM | Salem Media Corporation | 18714 | Kingston Springs | TN | 1/1/2010 | |
| WFGW | FM | Billy Graham Evangelistic Associati | 76263 | Norris | TN | 3/1/2012 | |
| WFHM | FM | Salem Media Corporation | 54778 | Cleveland | OH | 1/1/2008 | |
| WFIA | AM | Salem Media Corporation | 55504 | Indian Hills | KY | 1/1/2008 | |
| WFIA | FM | Salem Media Corporation | 48371 | New Albany | IN | 1/1/2008 | |
| WFIF | AM | Blount Communications Group | 33246 | Milford | CT | 1/1/2008 | |
| WFIL | AM | Salem Media Corporation | 52193 | Philadelphia | PA | 1/1/2008 | |
| WFMO | AM | Truth Broadcasting | 53609 | Fairmont | NC | 4/1/2015 | |
| WFMT | FM | Window to the World Comm Inc | 10801 | Chicago | IL | 1/1/2008 | |
| WFRI | FM | Progressive Bcg. System, Inc. | 53645 | Winamac | IN | 1/1/2010 | |
| WFRN | FM | Progressive Bcg. System, Inc. | 53639 | Elkhart | IN | 1/1/2010 | |
| WFRR | AM | Christian Friends Bcg. Inc. | 11041 | Walton | IN | 1/1/2010 | |
| WFSH | FM | Salem Media Corporation | 56390 | Athens | GA | 1/1/2008 | |
| WGAS | AM | Victory Christian Center Inc | 39515 | South Gastonia | NC | 1/1/2008 | |
| WGBW | AM | WTRW Inc | 74127 | Two Rivers | WI | 1/1/2008 | |
| WGCL | AM | Sarkes Tarzian Inc. | 59131 | Bloomington | IN | 1/1/2008 | |
| WGGN | FM | Christian Faith Broadcasting | 11028 | Castalia | OH | 1/1/2010 | |
| WGKA | AM | Salem Media Corporation | 65976 | Atlanta | GA | 1/1/2008 | |
| WGMA | AM | Moonglow Broadcasting, Inc. | 43713 | Spindale | NC | 1/1/2010 | 9/30/2012 |
| WGMD | FM | Resort Broadcasting Co | 55906 | Rehoboth Beach | DE | 1/1/2008 | |
| WGNU | AM | Radio Property Ventures | 49042 | Granite City | IL | 1/1/2008 | |
| WGQR | FM | Christian Listening Network Inc | 60881 | Elizabethtown | NC | 1/1/2010 | |
| WGRI | AM | Christian Broadcasting Systems | 25525 | Cincinnati | OH | 1/1/2010 | |
| WGTI | FM | Lifeline Ministries Inc | 173 | Windsor | NC | 1/1/2010 | 11/30/2011 |
| WGTK | AM | Salem Media Corporation | 63936 | Louisville | KY | 1/1/2008 | |
| WGTK | AM | Salem Media Corporation | 73296 | Greenville | SC | 1/1/2013 | |
| WGUL | AM | Salem Media Corporation | 1177 | Dunedin | FL | 1/1/2008 | |
| WHBK | AM | Southern Broadcasting Inc (NC) | 61264 | Marshall | NC | 1/1/2008 | 4/30/2010 |
| WHBK | AM | Seay Broadcasting, Inc. | 61264 | Marshall | NC | 5/1/2010 | |
| WHBO | AM | Genesis Communications | 41383 | Pinellas Park | FL | 1/1/2008 | |
| WHIM | AM | Salem Media Corporation | 74165 | Coral Gables | FL | 4/1/2008 | |
| WHIT | AM | Mid-West Management, Inc. | 19622 | Madison | WI | 1/1/2008 | |
| WHK | AM | Salem Media Corporation | 72299 | Cleveland | OH | 1/1/2008 | |
| WHKT | AM | Chesapeake-Portsmouth Bcg.Corp | 87170 | Portsmouth | VA | 5/1/2010 | |
| WHKW | AM | Salem Media Corporation | 14772 | Cleveland | OH | 1/1/2008 | |
| WHKZ | AM | Salem Media Corporation | 57235 | Warren | OH | 1/1/2008 | |
| WHME | FM | LeSEA Broadcasting Corp. | 37149 | South Bend | IN | 1/1/2010 | |
| WHOO | AM | Genesis Communications | 54573 | Kissimmee | FL | 1/1/2008 | |
| WIAM | AM | Lifeline Ministries Inc | 37450 | Williamston | NC | 1/1/2010 | |
| WIBT | FM | Elijah Mondy Jr | 43459 | Greenville | MS | 1/1/2010 | |
| WIBW | AM | MCC Radio, LLC | 63169 | Topeka | KS | 1/1/2008 | |
| WIDS | AM | Hammond Broadcasting Inc | 37447 | Russell Springs | KY | 1/1/2008 | |

LIST OF NRBMLC BOUND STATIONS AS OF DECEMBER 15, 2015

| Call Letter | Band | CurrentOwnName | FCCID | FCC City | FCC State | Effective Start Date | Effective End Date |
|---|---|---|---|---|---|---|---|
| WIGN | AM | Sunshine Broadcasters Inc | 63979 | Bristol | TN | 1/1/2008 | 3/31/2011 |
| WIJD | AM | Wilkins Communications Network Inc. | 53144 | Prichard | AL | 1/1/2008 | |
| WIMG | AM | Morris Broadcasting Company | 14635 | Ewing | NJ | 1/1/2008 | |
| WIND | AM | Salem Media Corporation | 67068 | Chicago | IL | 1/1/2008 | |
| WIOK | FM | Hammond Broadcasting Inc | 1298 | Falmouth | KY | 1/1/2008 | |
| WITA | AM | F.W. Robbert Broadcasting | 73076 | Knoxville | TN | 1/1/2008 | |
| WITK | AM | Wilkins Communications Network Inc. | 70868 | Pittston | PA | 1/1/2008 | |
| WIXC | AM | Genesis Communications | 54505 | Titusville | FL | 1/1/2008 | |
| WJBZ | AM | Seymour Comms | 59808 | Seymour | TN | 1/1/2010 | |
| WJCV | AM | Down East Broadcasting Co Inc | 8183 | Jacksonville | NC | 1/1/2008 | |
| WJIV | AM | Christian Broadcasting Systems | 73138 | Cherry Valley | NY | 1/1/2010 | |
| WJJO | FM | Mid-West Management, Inc. | 73142 | Watertown | WI | 1/1/2008 | |
| WJKW | FM | Christian Faith Broadcasting | 11035 | Athens | OH | 1/1/2010 | |
| WJLD | AM | Richardson Broadcasting Corporation | 56299 | Fairfield | AL | 1/1/2008 | |
| WJMD | FM | Hazard BCG Services | 26496 | Hazard | KY | 1/1/2010 | |
| WJMM | AM | Christian Broadcasting Systems | 22085 | Keene | KY | 1/1/2010 | |
| WJSA | FM | Covenant Broadcasting Company | 33085 | Jersey Shore | PA | 1/1/2008 | |
| WKAT | AM | Salem Media Corporation | 27713 | North Miami | FL | 1/1/2008 | |
| WKBA | AM | Moran, David H. | 67180 | Vinton | VA | 1/1/2010 | |
| WKDI | AM | Baker Family Stations | 4131 | Denton | MD | 1/1/2008 | |
| WKEI | AM | Virden Broadcasting Corp. | 70276 | Kewanee | IL | 1/1/2008 | |
| WKEW | AM | Truth Broadcasting | 73156 | Greensboro | NC | 1/1/2008 | |
| WKGM | AM | Baker Family Stations | 73160 | Smithfield | VA | 1/1/2008 | |
| WKPA | AM | Moran, David H. | 59709 | Lynchburg | VA | 1/1/2010 | |
| WKQA | AM | BOOTH - COBB MEDIA, LLC | 29597 | Norfolk | VA | 7/1/2014 | |
| WKRA | AM | Autry, Billy | 5333 | Holly Springs | MS | 1/1/2008 | |
| WKRA | FM | Autry, Billy | 5334 | Holly Springs | MS | 1/1/2008 | |
| WKTR | AM | Baker Family Stations | 73191 | Earlysville | VA | 1/1/2008 | |
| WKTX | AM | Kossanyi Family | 42365 | Cortland | OH | 1/1/2008 | |
| WKVG | AM | Martins & Assoc Inc | 40502 | Jenkins | KY | 1/1/2008 | |
| WKWL | AM | Robert John Williamson | 21743 | Florala | AL | 1/1/2008 | |
| WLCC | AM | Salem Media Corporation | 71212 | Brandon | FL | 8/1/2012 | |
| WLCM | AM | Christian Broadcasting Systems | 42076 | Charlotte | MI | 1/1/2010 | |
| WLEO | AM | Uno Radio Group | 52943 | Ponce | PR | 1/1/2010 | |
| WLES | AM | Chesapeake-Portsmouth Bcg.Corp | 72504 | Lawrenceville | VA | 1/1/2010 | |
| WLGZ | FM | Crawford Broadcasting Co. | 34818 | Webster | NY | 1/1/2008 | 11/30/2009 |
| WLIH | FM | Good Christian Radio Inc | 24576 | Whitneyville | PA | 1/1/2010 | |
| WLKX | FM | LAKES BROADCASTING CO INC | 36404 | Forest Lake | MN | 1/1/2008 | |
| WLMR | AM | Wilkins Communications Network Inc. | 24721 | Chattanooga | TN | 1/1/2008 | |
| WLMV | AM | Mid-West Management, Inc. | 41901 | Madison | WI | 1/1/2008 | |
| WLNL | AM | Trinity Media Ltd | 37481 | Horseheads | NY | 1/1/2008 | |
| WLOK | AM | Gilliam Communications, Inc. | 24214 | Memphis | TN | 1/1/2010 | |
| WLPR | AM | Goforth Media Inc | 24454 | Prichard | AL | 1/1/2008 | |
| WLQV | AM | Salem Media Corporation | 42081 | Detroit | MI | 1/1/2008 | |
| WLRD | FM | Christian Faith Broadcasting | 81963 | Willard | OH | 1/1/2010 | |
| WLRM | AM | F.W. Robbert Broadcasting | 15670 | Millington | TN | 1/1/2010 | |
| WLRT | AM | Christian Broadcasting Systems | 36525 | Nicholasville | KY | 1/1/2008 | |
| WLSG | AM | Carolina Christian Radio | 58364 | Wilmington | NC | 1/1/2010 | 11/30/2011 |
| WLSS | AM | Salem Media Corporation | 59126 | Sarasota | FL | 1/1/2008 | |
| WLTA | AM | Salem Media Corporation | 42660 | Alpharetta | GA | 1/1/2008 | |
| WLTE | AM | Salem Media Corporation | 170949 | Pendleton | SC | 4/1/2015 | |
| WLTG | AM | Hour Group Broadcasting Inc | 27694 | Panama City | FL | 1/1/2008 | |
| WLTK | FM | Massanutten Broadcasting Co. Inc. | 12600 | New Market | VA | 1/1/2008 | 1/31/2010 |
| WLTT | AM | Carolina Christian Radio | 25586 | Wilmington | NC | 10/1/2014 | |
| WLVA | AM | Chesapeake-Portsmouth Bcg.Corp | 39579 | Lynchburg | VA | 1/1/2009 | 1/31/2014 |
| WLVA | AM | Tri-County Broadcasting Incorporate | 39579 | Lynchburg | VA | 2/1/2014 | |
| WLVL | AM | Culver Communications | 14714 | Lockport | NY | 1/1/2008 | |

LIST OF NRBMLC BOUND STATIONS AS OF DECEMBER 15, 2015

| Call Letter | Band | CurrentOwnName | FCCID | FCC City | FCC State | Effective Start Date | Effective End Date |
|---|---|---|---|---|---|---|---|
| WLXN | AM | Davidson County Broadcasting | 15838 | Lexington | NC | 1/1/2008 | |
| WLYT | AM | Billy Graham Evangelistic Associati | 5972 | Black Mountain | NC | 1/1/2008 | 7/31/2013 |
| WMCA | AM | Salem Media Corporation | 58626 | New York | NY | 1/1/2008 | |
| WMGG | AM | Genesis Communications | 67135 | Dunedin | FL | 1/1/2008 | |
| WMGN | FM | Mid-West Management, Inc. | 41900 | Madison | WI | 1/1/2008 | |
| WMIK | AM | Gateway Broadcasting Inc. | 23335 | Middlesboro | KY | 1/1/2008 | |
| WMIK | FM | Gateway Broadcasting Inc. | 14731 | Middlesboro | KY | 1/1/2008 | |
| WMIT | FM | Billy Graham Evangelistic Associati | 5970 | Black Mountain | NC | 1/1/2008 | |
| WMKM | AM | Great Lakes Radio, Inc. | 24966 | Inkster | MI | 10/1/2014 | |
| WMOX | AM | Magnolia State Broadcasting | 7073 | Meridian | MS | 1/1/2008 | |
| WMQM | AM | F.W. Robbert Broadcasting | 42369 | Lakeland | TN | 1/1/2008 | |
| WMUU | FM | WMUU Inc | 73296 | Greenville | SC | 1/1/2008 | 12/31/2012 |
| WMUV | FM | Chesapeake-Portsmouth Bcg.Corp | 48243 | Brunswick | GA | 1/1/2015 | |
| WMUX | AM | Baker Family Stations | 42653 | Hurricane | WV | 1/1/2008 | 2/29/2012 |
| WMUZ | FM | Crawford Broadcasting Co. | 73298 | Detroit | MI | 1/1/2010 | |
| WMVR | FM | Dean Miller Broadcasting Co | 15998 | Sidney | OH | 1/1/2008 | |
| WMYT | AM | Carolina Christian Radio | 34006 | Carolina Beach | NC | 1/1/2011 | |
| WNEB | AM | Blount Communications Group | 249 | Worcester | MA | 1/1/2008 | 12/31/2010 |
| WNIV | AM | Salem Media Corporation | 23607 | Atlanta | GA | 1/1/2008 | |
| WNOS | AM | Ctc, Media Group, Inc. | 54363 | New Bern | NC | 1/1/2010 | |
| WNQM | AM | F.W. Robbert Broadcasting | 73349 | Nashville | TN | 1/1/2008 | |
| WNTP | AM | Salem Media Corporation | 52194 | Philadelphia | PA | 1/1/2008 | |
| WNTW | AM | Delmarva Educational Association | 27440 | Chester | VA | 1/1/2015 | |
| WNVY | AM | Wilkins Communications Network Inc. | 4130 | Cantonment | FL | 1/1/2008 | |
| WNYM | AM | Salem Media Corporation | 58635 | Hackensack | NJ | 1/1/2008 | |
| WOAY | AM | Tom Moffit | 12550 | Oak Hill | WV | 1/1/2008 | 12/31/2010 |
| WOAY | AM | Foothills Broadcasting Inc | 12550 | Oak Hill | WV | 1/1/2011 | |
| WOCN | AM | Salem Media Corporation | 43034 | Miami | FL | 6/1/2014 | |
| WODY | AM | Baker Family Stations | 69983 | Fieldale | VA | 1/1/2010 | |
| WOGO | AM | Stewards Of Sound Inc | 63427 | Hallie | WI | 1/1/2010 | |
| WOGR | AM | Victory Christian Center Inc | 70092 | Charlotte | NC | 1/1/2008 | |
| WOGR | FM | Victory Christian Center Inc | 48451 | Salisbury | NC | 1/1/2008 | |
| WONQ | AM | Q Broadcasting Corporation Inc | 21760 | Oviedo | FL | 1/1/2008 | |
| WORD | FM | Salem Media Corporation | 58627 | Pittsburgh | PA | 1/1/2008 | |
| WORL | AM | Salem Media Corporation | 21810 | Altamonte Springs | FL | 1/1/2008 | |
| WOSW | AM | Craig Fox | 52370 | Fulton | NY | 1/1/2008 | |
| WOTR | FM | Allman, James W. | 1103 | Lost Creek | WV | 1/1/2008 | 3/31/2009 |
| WOZN | AM | Mid-West Management, Inc. | 87154 | Madison | WI | 1/1/2008 | |
| WPEO | AM | Pinebrook Foundation Inc | 52641 | Peoria | IL | 1/1/2008 | 3/31/2012 |
| WPEO | AM | WPEO Radio Foundation | 52641 | Peoria | IL | 4/1/2012 | |
| WPGP | AM | Salem Media Corporation | 65691 | Pittsburgh | PA | 5/1/2015 | |
| WPHE | AM | Radio Salvacion Inc | 58738 | Phoenixville | PA | 1/1/2008 | |
| WPIT | AM | Salem Media Corporation | 58624 | Pittsburgh | PA | 1/1/2008 | |
| WPJF | AM | WMUU Inc | 73297 | Greenville | SC | 1/1/2008 | 4/30/2008 |
| WPJL | AM | Suttles, William/WPJL Inc | 73884 | Raleigh | NC | 1/1/2008 | |
| WPMH | AM | Chesapeake-Portsmouth Bcg.Corp | 10759 | Portsmouth | VA | 5/1/2010 | |
| WPOL | AM | Truth Broadcasting | 72970 | Winston-salem | NC | 1/1/2008 | |
| WPSP | AM | Q Broadcasting Corporation Inc | 23822 | Royal Palm Beach | FL | 1/1/2008 | |
| WPTR | AM | Crawford Broadcasting Co. | 30571 | Clifton Park | NY | 1/1/2008 | 1/31/2008 |
| WPWX | FM | Crawford Broadcasting Co. | 17304 | Hammond | IN | 1/1/2008 | |
| WQLL | AM | M-10 Broadcasting, Inc. | 27691 | Pikesville | MD | 1/1/2010 | |
| WRAN | FM | Miller Group | 79008 | Taylorville | IL | 1/1/2008 | |
| WRBS | AM | Peter & John Radio Fellowship Inc | 25527 | Baltimore | MD | 1/1/2008 | |
| WRBS | FM | Peter & John Radio Fellowship Inc | 52353 | Baltimore | MD | 1/1/2008 | |
| WRCW | AM | Salem Media Corporation | 53368 | Warrenton | VA | 4/1/2012 | |
| WRDT | AM | Crawford Broadcasting Co. | 25083 | Monroe | MI | 1/1/2008 | |
| WRFD | AM | Salem Media Corporation | 58630 | Columbus-worthingtor | OH | 1/1/2008 | |

LIST OF NRBMLC BOUND STATIONS AS OF DECEMBER 15, 2015

| Call Letter | Band | CurrentOwnName | FCCID | FCC City | FCC State | Effective Start Date | Effective End Date |
|---|---|---|---|---|---|---|---|
| WRJR | AM | Chesapeake-Portsmouth Bcg.Corp | 68741 | Claremont | VA | 1/1/2008 | 9/30/2012 |
| WRJZ | AM | Tom Moffit | 65209 | Knoxville | TN | 1/1/2008 | |
| WRKB | AM | Ford Broadcasting Incorporated | 22029 | Kannapolis | NC | 1/1/2008 | |
| WRMQ | AM | Q Broadcasting Corporation Inc | 21759 | Goldenrod | FL | 1/1/2008 | |
| WRNA | AM | Ford Broadcasting Incorporated | 61153 | China Grove | NC | 1/1/2008 | |
| WROL | AM | Salem Media Corporation | 9139 | Boston | MA | 1/1/2008 | |
| WROS | AM | Rose Of Jacksonville | 66333 | Jacksonville | FL | 1/1/2010 | |
| WRR | FM | City of Dallas | 11451 | Dallas | TX | 1/1/2008 | |
| WRTH | AM | Salem Media Corporation | 73241 | Greer | SC | 5/1/2014 | |
| WRVI | FM | Salem Media Corporation | 50764 | Valley Station | KY | 1/1/2008 | 11/30/2008 |
| WSBB | AM | Gore-Overgaard Broadcasting | 64368 | New Smyrna Beach | FL | 1/1/2008 | 2/29/2008 |
| WSDK | AM | Blount Communications Group | 37804 | Bloomfield | CT | 2/1/2011 | |
| WSHO | AM | Shadowlands Communications L | 9235 | New Orleans | LA | 1/1/2010 | |
| WSIV | AM | Craig Fox | 22133 | E. Syracuse | NY | 1/1/2008 | |
| WSKY | AM | Wilkins Communications Network Inc. | 56521 | Asheville | NC | 1/1/2008 | |
| WSLM | AM | Martin, Don H. | 17153 | Salem | IN | 1/1/2008 | |
| WSLM | FM | White, Rebecca | 55319 | Salem | IN | 1/1/2008 | |
| WSMX | AM | Truth Broadcasting | 24682 | Winston-salem | NC | 1/1/2010 | |
| WSNL | AM | Christian Broadcasting Systems | 42078 | Flint | MI | 1/1/2010 | |
| WSOS | FM | Chesapeake-Portsmouth Bcg.Corp | 74071 | Winston-salem | NC | 1/1/2015 | |
| WSRB | FM | Crawford Broadcasting Co. | 6590 | Lansing | IL | 1/1/2008 | |
| WSTS | FM | Truth Broadcasting | 53608 | Fairmont | NC | 4/1/2015 | |
| WSVZ | FM | Miller Group | 78691 | Tower Hill | IL | 1/1/2008 | |
| WSYW | AM | Continental Broadcast Group LLC | 13795 | Indianapolis | IN | 1/1/2008 | |
| WTBI | AM | Tabernacle Christian Schools | 64497 | Greenville | SC | 1/1/2010 | |
| WTBN | AM | Salem Media Corporation | 51985 | Pinellas Park | FL | 1/1/2008 | |
| WTGR | FM | Baker Family Stations | 15169 | Union City | OH | 1/1/2008 | |
| WTIM | AM | Kaskaskia Broadcasting, Inc. | 73996 | Shelbyville | IL | 5/1/2014 | |
| WTIS | AM | Westshore Broadcasting Inc | 74088 | Tampa | FL | 1/1/2008 | |
| WTJZ | AM | Chesapeake-Portsmouth Bcg.Corp | 3533 | Newport News | VA | 1/1/2008 | |
| WTKD | AM | Wabb Fm Inc. | 70656 | Mobile | AL | 1/1/2008 | 7/31/2014 |
| WTLN | AM | Salem Media Corporation | 48731 | Orlando | FL | 1/1/2008 | |
| WTMR | AM | Beasley Broadcast Group | 24658 | Camden | NJ | 1/1/2010 | |
| WTOH | FM | Salem Media Corporation | 73972 | Upper Arlington | OH | 3/1/2013 | |
| WTPL | FM | Great Eastern Radio LLC | 54910 | Hillsboro | NH | 1/1/2008 | |
| WTRU | AM | Truth Broadcasting | 63478 | Kernersville | NC | 1/1/2008 | |
| WTWD | AM | Salem Media Corporation | 26145 | Plant City | FL | 1/1/2008 | |
| WUIN | AM | Carolina Christian Radio | 25586 | Carolina Beach | NC | 1/1/2010 | 12/31/2010 |
| WULR | AM | Truth Broadcasting | 74380 | York | SC | 10/1/2010 | 12/31/2012 |
| WURL | AM | Bill Davison Evang Assoc In | 65459 | Moody | AL | 1/1/2010 | |
| WVCH | AM | Tom Moffit | 74166 | Chester | PA | 1/1/2010 | |
| WVGB | AM | Vivian Broadcasting Corp | 70408 | Beaufort | SC | 1/1/2010 | 11/30/2011 |
| WVNE | AM | Blount Communications Group | 5890 | Leicester | MA | 1/1/2008 | |
| WVOG | AM | F.W. Robbert Broadcasting | 20415 | New Orleans | LA | 1/1/2008 | |
| WVTJ | AM | Wilkins Communications Network Inc. | 9319 | Pensacola | FL | 1/1/2008 | |
| WWBA | AM | Genesis Communications | 51971 | Largo | FL | 1/1/2009 | |
| WWDJ | AM | Salem Media Corporation | 25051 | Boston | MA | 1/1/2008 | |
| WWIB | FM | Stewards Of Sound Inc | 63428 | Hallie | WI | 1/1/2010 | |
| WWIL | AM | Carolina Christian Radio | 20662 | Wilmington | NC | 1/1/2010 | |
| WWLV | FM | Davidson County Broadcasting | 15839 | Lexington | NC | 1/1/2008 | 1/31/2014 |
| WWNB | AM | Ctc, Media Group, Inc. | 14672 | New Bern | NC | 1/1/2010 | |
| WWNL | AM | Wilkins Communications Network Inc. | 18517 | Pittsburgh | PA | 1/1/2008 | |
| WWOL | AM | Holly Springs Baptist | 27479 | Forest City | NC | 1/1/2008 | |
| WWQM | FM | Mid-West Management, Inc. | 19623 | Middleton | WI | 1/1/2008 | |
| WWRC | AM | Salem Media Corporation | 8681 | Washington | DC | 8/1/2010 | |
| WWTC | AM | Salem Media Corporation | 9676 | Minneapolis | MN | 1/1/2008 | |
| WWWE | AM | Beasley Broadcast Group | 71603 | Hapeville | GA | 1/1/2010 | |

LIST OF NRBMLC BOUND STATIONS AS OF DECEMBER 15, 2015

| Call Letter | Band | CurrentOwnName | FCCID | FCC City | FCC State | Effective Start Date | Effective End Date |
|---|---|---|---|---|---|---|---|
| WXAN | FM | Lawder, Harold L | 26173 | Ava | IL | 1/1/2008 | |
| WXJC | AM | Crawford Broadcasting Co. | 74245 | Birmingham | AL | 1/1/2008 | |
| WXJC | AM | Crawford Broadcasting Co. | 77749 | Cordova | AL | 1/1/2008 | |
| WXLZ | AM | Yeary Broadcasting Inc | 74348 | St. Paul | VA | 1/1/2008 | |
| WXLZ | FM | Yeary Broadcasting Inc | 74349 | Lebanon | VA | 1/1/2008 | |
| WXRQ | AM | New Life Broadcasting Inc | 48497 | Mount Pleasant | TN | 1/1/2010 | |
| WYCA | FM | Crawford Broadcasting Co. | 73700 | Crete | IL | 1/1/2010 | |
| WYCV | AM | Freedom Broadcasting Corp | 22552 | Granite Falls | NC | 1/1/2008 | |
| WYDE | AM | Crawford Broadcasting Co. | 34822 | Birmingham | AL | 1/1/2008 | |
| WYDE | FM | Crawford Broadcasting Co. | 70452 | Cullman | AL | 1/1/2008 | |
| WYGE | FM | Huff, Ethel | 19794 | London | KY | 1/1/2008 | |
| WYGH | AM | Hammond Broadcasting Inc | 25901 | Paris | KY | 1/1/2008 | |
| WYHY | AM | Baker Family Stations | 73185 | Cannonsburg | KY | 1/1/2008 | 9/30/2014 |
| WYLL | AM | Salem Media Corporation | 28630 | Chicago | IL | 1/1/2008 | |
| WYRB | FM | Crawford Broadcasting Co. | 21202 | Genoa | IL | 1/1/2008 | |
| WYSL | AM | Radio Livingston Ltd | 54665 | Avon | NY | 1/1/2008 | |
| WYYC | AM | Wilkins Communications Network Inc. | 52172 | York | PA | 1/1/2008 | |
| WZAB | AM | Florida City Radio | 21763 | Sweetwater | FL | 10/1/2008 | 7/31/2009 |
| WZAB | AM | Salem Media Corporation | 21763 | Sweetwater | FL | 8/1/2009 | |
| WZAP | AM | RAM Communications Inc | 55004 | Bristol | VA | 1/1/2008 | |
| WZAR | FM | Uno Radio Group | 52946 | Ponce | PR | 1/1/2008 | |
| WZCT | AM | Bonner-Carlile Enterprises | 6357 | Scottsboro | AL | 1/1/2008 | |
| WZEZ | FM | Delmarva Educational Association | 87127 | Goochland | VA | 1/1/2015 | |
| WZNZ | AM | Chesapeake-Portsmouth Bcg.Corp | 51976 | Jacksonville | FL | 1/1/2008 | 6/30/2008 |
| WZPS | AM | Mortenson Broadcasting Co. | 61277 | Huntington | WV | 1/1/2010 | |