# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN SOCIETY OF COMPOSERS,<br>AUTHORS AND PUBLISHERS,<br><br>        Defendant. | Supplemental to Case No. 41-1395 (DLC) |

## PETITION OF THE UNITED STATES
## FOR AN ORDER TO SHOW CAUSE WHY RESPONDENT
## AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS
## SHOULD NOT BE FOUND IN CIVIL CONTEMPT

The United States of America, by its attorneys, acting under the direction of the Attorney General of the United States, respectfully petitions for an Order to Show Cause why respondent American Society of Composers, Authors and Publishers ("ASCAP") should not be found in civil contempt of the Second Amended Final Judgment entered by this Court in *United States v. American Society of Composers, Authors and Publishers*, Civil Action No. 41-1395 (June 11, 2001) ("AFJ2"). In support of this petition to show cause, the United States represents as follows:

## I.     JURISDICTION OF THE COURT

1.     This petition alleges that ASCAP violated AFJ2. This Court has jurisdiction under its inherent power to enforce compliance with its orders and under Section XIV of AFJ2.

2.     Section XIV of AFJ2 provides, in part:

> Jurisdiction of this cause is retained for the purpose of enabling any of the parties to this Second Amended Final Judgment to make application to the Court for such further orders and directions as may be necessary or appropriate in relation to the

construction of or carrying out of this Second Amended Final Judgment, for the modification thereof, for the enforcement of compliance therewith and for the punishment of violations thereof.

## II.   THE RESPONDENT

3.      ASCAP is a performing rights licensing organization with its principal place of business in New York, New York.

4.      As the agent for musical copyright holders, ASCAP sells public performance licenses to those compositions in its repertory collectively on behalf of its composer, songwriter, and publisher members.  ASCAP generates more than $1 billion in revenue each year.  Courts have long recognized that "ASCAP indisputably exercises market power."  *See, e.g.*, *In re THP Capstar Acquisition Corp.*, 756 F. Supp. 2d 516, 541 (S.D.N.Y. 2010).

## III.   PROCEDURAL BACKGROUND

5.      On February 26, 1941, the United States filed an antitrust complaint against ASCAP alleging that ASCAP and its members violated § 1 of the Sherman Act by, among other things, agreeing to eliminate competition among ASCAP's members and to grant ASCAP the exclusive right to license the works of its members.

6.      ASCAP and the United States agreed to the entry of a Civil Decree and Judgment, filed March 4, 1941.  The original Judgment has been significantly amended twice.  Most recently, on June 11, 2001, the Court adopted AFJ2, a copy of which is appended to this Petition as Exhibit A.  This consent decree has been in effect at all times relevant to this Petition and will continue in effect until this Court orders its termination.

## IV.   CONDUCT PROHIBITED BY AFJ2

7.      Section IV(A) of AFJ2 prohibits ASCAP from entering, acquiring, or marketing any licenses on an exclusive basis:  "ASCAP is hereby enjoined and restrained from . . .

2

[h]olding, acquiring, licensing, enforcing, or negotiating concerning any foreign or domestic rights in copyrighted musical compositions other than rights of public performance on a non-exclusive basis . . . ."

8.     Section IV(B) bars ASCAP from "[l]imiting, restricting, or interfering with the right of any member to issue, directly or through an agent other than a performing rights organization, non-exclusive licenses to music users for rights of public performance."

9.     As this Court has explained, the prohibition on exclusive licenses ensures that a "music user may therefore approach an ASCAP member directly. . . . The availability of source or direct licensing has been recognized as a counterweight to ASCAP's bargaining power." *U.S. v. ASCAP (In re Salem Media of Cal. Inc.)*, 902 F. Supp. 411, 422 (S.D.N.Y. 1995).  In other words, a music user wishing to license a song in ASCAP's repertory should have at least two options – licensing from ASCAP and licensing from the owner of the work itself.  If ASCAP obtains an exclusive right to license a particular musical work, the option to license directly from the rightsholder is extinguished.

## V.     ACTS IN VIOLATION OF AFJ2

10.     ASCAP violated AFJ2 by entering into approximately 150 exclusive contracts with its composer, songwriter, and publisher members.  These contracts each provided, in essentially identical terms, that the member granted to ASCAP "the exclusive right" to license his or her works for the length of the contract.  *See* Affidavit of Kelsey W. Shannon ¶ 3.

11.     ASCAP has form membership agreements that all of its members sign when joining ASCAP.  These agreements do not contain any exclusivity requirement.  However, many members who have particularly valuable collections of works negotiate separate agreements with ASCAP.  These agreements often call for ASCAP's payment of "advances" – upfront payments

to be recouped over a period of years – or "guarantees" – where ASCAP promises that payouts to the particular member will exceed some threshold.  (Some agreements contain elements of both advances and guarantees.)  ASCAP also sometimes provides loans to members, which may come with conditions.  ASCAP offers advances, guarantees, and loans as part of its efforts to convince valuable rightsholders to affiliate with it, rather than competing performing rights organizations such as BMI or SESAC.

12.     Beginning in approximately 2008, ASCAP inserted into many advance and guarantee agreements and loan side letters language making ASCAP the exclusive licensor of the members' rights for some period of time.

13.     There is no dispute that these agreements included an exclusive grant of rights to ASCAP – indeed, the contracts expressly provide that ASCAP will be the "exclusive" provider of licenses.  And there is no dispute that this exclusivity violates Section IV(A) of AFJ2, which prohibits ASCAP from "holding [or] acquiring . . . any foreign or domestic rights in copyrighted musical compositions other than rights of public performance on a non-exclusive basis . . . ."  By making ASCAP the sole licensor of the members' works, the exclusives also interfere with the ability of the members to license their music directly to music users, in violation of Section IV(B).

PRAYER

WHEREFORE, for the foregoing reasons, the United States respectfully requests that this Court enter an Order directing Respondent to appear before this Court, at a time and place to be fixed in said Order, to show cause why it should not be adjudged in civil contempt of this Court and prays for the following relief:

(a)     find ASCAP in civil contempt;

4

    (b)      impose upon ASCAP an obligation to make an appropriate civil payment to the

           United States;

    (b)      award the United States its costs and attorneys' fees incurred in filing this petition

           to show cause; and

    (c)      issue such other Orders as are appropriate to punish ASCAP's actions.


Dated:  May 12, 2016

Respectfully submitted,


 /s/Renata B. Hesse                           /s/Kelsey W. Shannon
RENATA B. HESSE                         KELSEY W. SHANNON
Acting Assistant Attorney General         JEFFREY G. VERNON
                                         Attorneys for the United States
 /s/Sonia K. Pfaffenroth                   Litigation III Section
SONIA K. PFAFFENROTH            450 Fifth Street, N.W., Suite 4000
Deputy Assistant Attorney General       Washington, D.C., 20530
                                           Telephone:  (202) 598-2854
 /s/Patricia A. Brink                      Facsimile:  (202) 514-7308
PATRICIA A. BRINK                   kelsey.shannon@usdoj.gov
Director of Civil Enforcement            jeffrey.vernon@usdoj.gov

 /s/David C. Kully
DAVID C. KULLY
Chief, Litigation III Section

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**(WHITE PLAINS)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. Action No. 41-1395 |
| | ) | (WCC) |
| v. | ) | |
| | ) | |
| AMERICAN SOCIETY OF COMPOSERS, | ) | SECOND AMENDED |
| AUTHORS AND PUBLISHERS, | ) | FINAL JUDGMENT |
| | ) | |
| Defendants. | ) | |

Plaintiff having filed its complaint herein on February 26, 1941, the original defendants

having appeared and filed their answer to the complaint denying the substantive allegations

thereof, all parties having consented, without trial or adjudication of any issue of fact or law

therein, to the entry of a Civil Decree and Judgment, filed March 4, 1941, to the entry of an

Amended Final Judgment on March 14, 1950, as subsequently amended and modified and to the

entry of an Order thereunder issued on January 7, 1960, as subsequently amended and modified;

The parties having moved the Court to amend the Amended Final Judgment,

NOW, THEREFORE, before the taking of any testimony, and without trial or

adjudication of any issue of fact or law herein, without admission by the defendant American

Society of Composers, Authors and Publishers with respect to any such issue, and upon consent

of all remaining parties hereto, it is hereby

ORDERED, ADJUDGED, AND DECREED that the Amended Final Judgment be

amended as follows:

I. **Jurisdiction.**  This Court has jurisdiction of the subject matter hereof and of all parties hereto. The complaint states a claim upon which relief may be granted against ASCAP under Section 1 of the Sherman Act, 15 U.S.C. § 1.


II. **Definitions.**  As used in this Second Amended Final Judgment:

    (A)    "ASCAP" means the American Society of Composers, Authors and Publishers;

    (B)    "ASCAP music" means any work in the ASCAP repertory;

    (C)    "ASCAP repertory" means those works the right of public performance of which ASCAP has or hereafter shall have the right to license at the relevant point in time;

    (D)    "Background/foreground music service" means a person that transmits performances of music to subscribers and that furnishes to those subscribers equipment not otherwise available to the general public that enables subscribers to make the transmitted performances on their premises.  A background/foreground music service does not include radio or television stations or networks, cable television networks or systems, persons that transmit renditions of music to private homes, apartments, or hotel or motel guest rooms, or persons that transmit renditions of music to subscribers that charge admission;

    (E)    "Blanket License" means a non-exclusive license that authorizes a music user to perform ASCAP music, the fee for which does not vary depending on the extent to which the music user in fact performs ASCAP music;

2

(F)    "Broadcaster" means any person who transmits audio or audio-visual content substantially similar to content that is transmitted by over-the-air or cable radio or television stations or networks as they existed on the date of entry of this Second Amended Final Judgment or that transmits the signal of another broadcaster: (1) over the air, (2) via cable television or direct broadcast satellite, or (3) via other existing or yet-to-be-developed transmission technologies, to audiences using radios, television sets, computers, or other receiving or playing devices;

(G)    "Music user" means any person that (1) owns or operates an establishment or enterprise where copyrighted musical compositions are performed publicly, or (2) is otherwise directly engaged in giving public performances of copyrighted musical compositions;

(H)    "On-line music user" means a person that publicly performs works in the ASCAP repertory via the Internet or similar transmission facility including any succeeding transmission technologies developed after entry of this Second Amended Final Judgment;

(I)    "Performing rights organization" means an association or corporation, such as ASCAP, Broadcast Music, Inc., or SESAC, Inc., that collectively licenses rights of public performance on behalf of numerous copyright owners;

(J)    "Per-program license" means a non-exclusive license that authorizes a broadcaster to perform ASCAP music in all of the broadcaster's programs, the fee for which varies depending upon which programs contain ASCAP music not otherwise licensed for public performance;

3

(K)   "Per-segment license" means a non-exclusive license that authorizes a music user to perform any or all works in the ASCAP repertory in all segments of the music user's activities in a single industry, the fee for which varies depending upon which segments contain ASCAP music not otherwise licensed for public performance;

(L)   "Person" means an individual, partnership, firm, association, corporation or other business or legal entity;

(M)   "Program" means either a discrete program exhibited by a broadcaster or on-line music user or, if such broadcaster or on-line music user does not exhibit discrete programs, such other portion of the transmissions made by the broadcaster or on-line music user as shall be agreed to by ASCAP and the broadcaster or on-line music user or as shall be determined by the Court in a proceeding conducted under Section IX of this Second Amended Final Judgment;

(N)   "Public list" means such records that indicate the title, date of U.S. copyright registration, if any, writer and current publisher or other copyright owner of all works in the ASCAP repertory, including, but not limited to, the public electronic list;

(O)   "Public electronic list" means separate databases of: (1) works in the ASCAP repertory that have been registered with ASCAP since January 1, 1991, or identified in ASCAP's surveys of performed works since January 1, 1978, identifying the title, writer, and current publisher or other copyright owner of each work; and (2) current ASCAP members;

4

(P)   "Representative music user" means a music user whose frequency, intensity and type of music usage is typical of a group of similarly situated music users;

(Q)   "Right of public performance" means, and "perform" refers to, the right to perform a work publicly in a nondramatic manner, sometimes referred to as the "small performing right," and any equivalent rights under foreign copyright law, including, but not limited to, rights known as the rights of transmission, retransmission, communication, diffusion and rediffusion;

(R)   "Similarly situated" means music users or licensees in the same industry that perform ASCAP music and that operate similar businesses and use music in similar ways and with similar frequency; factors relevant to determining whether music users or licensees are similarly situated include, but are not limited to, the nature and frequency of musical performances, ASCAP's cost of administering licenses, whether the music users or licensees compete with one another, and the amount and source of the music users' revenue;

(S)   "Through-to-the-Audience License" means a license that authorizes the simultaneous or so-called "delayed" performances of ASCAP music that are contained in content transmitted or delivered by a music user to another music user with whom the licensee has an economic relationship relating to that content;

(T)   "Total license fee" means the sum of all fees paid by the music user in connection with the license, including any fee for ambient or incidental uses but excluding the administrative charges authorized by Section VII(B) of this Second Amended Final Judgment;

(U)     "Work" means any copyrighted musical composition; and

(V)     "Writer" means a person who has written the music or lyrics of a work.

III.  **Applicability.**  The provisions of this Second Amended Final Judgment shall apply to

ASCAP, its successors and assigns, and to each of its officers, directors, agents, employees, and

to all other persons in active concert or participation with any of them who shall have received

actual notice of this Second Amended Final Judgment by personal service or otherwise.  Except

as provided in Sections IV(A) and (B) of this Second Amended Final Judgment, none of the

injunctions or requirements herein imposed upon ASCAP shall apply to the acquisition or

licensing of the right to perform musical compositions publicly solely outside the United States

of America, its territories or possessions.

IV.  **Prohibited Conduct.**  ASCAP is hereby enjoined and restrained from:

(A)     Holding, acquiring, licensing, enforcing, or negotiating concerning any foreign or

domestic rights in copyrighted musical compositions other than rights of public

performance on a non-exclusive basis; provided, however, that ASCAP may

collect and distribute royalties for home recording devices and media to the extent

such royalty collection is required or authorized by statute;

(B)     Limiting, restricting, or interfering with the right of any member to issue, directly

or through an agent other than a performing rights organization, non-exclusive

licenses to music users for rights of public performance;

6

(C)     Entering into, recognizing, enforcing or claiming any rights under any license for

rights of public performance which discriminates in license fees or other terms

and conditions between licensees similarly situated;

(D)     Granting any license to any music user for rights of public performance in excess

of five years' duration;

(E)     Granting to, enforcing against, collecting any monies from, or negotiating with

any motion picture theater exhibitor concerning the right of public performance

for music synchronized with motion pictures;

(F)     Asserting or exercising any right or power to restrict from public performance by

any licensee of ASCAP any work in order to exact additional consideration for the

performance thereof, or for the purpose of permitting the fixing or regulating of

fees for the recording or transcribing of such work; nothing in this Section IV(F)

shall be construed to prevent ASCAP, when so directed by the member in interest

in respect of a work, from restricting performances of a work in order reasonably

to protect the work against indiscriminate performances, or the value of the public

performance rights therein, or the dramatic or "grand" performing rights therein,

or to prevent ASCAP from restricting performances of a work so far as may be

reasonably necessary in connection with any claim or litigation involving the

performing rights in any such work;

(G)     Instituting, threatening to institute, maintaining, continuing, sponsoring, funding

or providing any legal services for any suit or proceeding against any motion

picture theater exhibitor for copyright infringement relating to the nondramatic

7

public performance of any work contained in a motion picture, provided, however, that nothing in this Section IV(G) shall preclude ASCAP from pursuing its own *bona fide* independent interest in any such suit or proceeding; and

(H)     Issuing to any broadcaster any license the fee for which is based upon a percentage of the income received by the licensee from programs that include no ASCAP music unless the broadcaster to whom such license shall be issued shall desire a license on such a basis; provided, however, that this Section IV(H) shall not limit the discretion of the Court in a proceeding conducted under Section IX of this Second Amended Final Judgment to determine a license fee on any appropriate basis.

V.  **Through-to-the-Audience Licenses.**  ASCAP is hereby ordered and directed to issue, upon request, a through-to-the-audience license to a broadcaster, an on-line user, a background/foreground music service, and an operator of any yet-to-be-developed technology that transmits content to other music users with whom it has an economic relationship relating to that content; provided, however, that, in accordance with Section III of this Second Amended Final Judgment, ASCAP shall not be required to issue a through-to-the-audience license to perform ASCAP music outside the United States.  The fee for a through-to-the-audience license shall take into account the value of all performances made pursuant to the license.

VI.  **Licensing.**  ASCAP is hereby ordered and directed to grant to any music user making a written request therefor a non-exclusive license to perform all of the works in the ASCAP

repertory; provided, however, that ASCAP shall not be required to issue a license to any music user that is in material breach or default of any license agreement by failing to pay to ASCAP any license fee that is indisputably owed to ASCAP. ASCAP shall not grant to any music user a license to perform one or more specified works in the ASCAP repertory, unless both the music user and member or members in interest shall have requested ASCAP in writing to do so, or unless ASCAP, at the written request of the prospective music user shall have sent a written notice of the prospective music user's request for a license to each such member at the member's last known address, and such member shall have failed to reply within thirty (30) days thereafter.

VII.  **Per-Program and Per-Segment Licenses.**

    (A)    ASCAP is ordered and directed to offer, upon written request:

        (1)    To a broadcaster, a per-program license that shall, in addition, cover ambient and incidental uses and shall not require any record-keeping or monitoring of ambient and incidental uses; and

        (2)    To a background/foreground music service or to an on-line music user, a per-segment license if (a) the music user's performances of music can be tracked and monitored to determine with reasonable accuracy which segments of the music user's activity are subject to an ASCAP license fee; (b) the music user's performances of music can be attributed to segments commonly recognized within the music user's industry for which a license fee can be assessed; and (c) administration of the license will not impose an unreasonable burden on ASCAP; the per-segment license shall, in

9

addition, cover ambient and incidental uses without any record-keeping or monitoring of those uses if that is reasonably necessary to afford a genuine choice among the various types of licenses offered, or of the benefits of any of those types of licenses; if a portion of any on-line music user's transmissions consists of programs substantially similar to those transmitted by over-the-air or cable radio or television stations or networks as they existed on the date of entry of this Second Amended Final Judgment, or is a retransmission of any broadcaster's programs, it shall be presumed that each individual program shall constitute a segment and for those segments the on-line music user need not meet the requirements of subsections (a), (b) and (c) of this section.

(B)   ASCAP may charge any music user that selects a per-program license or a per-segment license a fee to recover its reasonable cost of administering the license.

(C)   Nothing in this Second Amended Final Judgment shall prevent ASCAP and any music user from agreeing on any other form of license.

(D)   The fee for a per-program license and for any per-segment license issued to an on-line user shall be at the option of ASCAP either:

(1)   Expressed in terms of dollars, requiring the payment of a specified amount for each program or segment that contains works in the ASCAP repertory not otherwise licensed for public performance, or

(2)     Expressed as a percentage of the music users' revenue attributable to each program or segment that contains works in the ASCAP repertory not otherwise licensed for public performance.

VIII.  **Genuine Choice.**

(A)     ASCAP shall use its best efforts to avoid any discrimination among the various types of licenses offered to any group of similarly situated music users that would deprive those music users of a genuine choice among the various types of licenses offered, or of the benefits of any of those types of licenses.

(B)     For a representative music user, the total license fee for a per-program or per-segment license shall, at the time the license fee is established, approximate the fee for a blanket license; for the purpose of making that approximation, it shall be assumed for the purposes of this Section VIII(B) that all of the music user's programs or segments that contain performances of ASCAP music are subject to an ASCAP fee.

(C)     ASCAP shall maintain an up-to-date system for tracking music use by per-program and per-segment licensees; ASCAP shall not be required to incur any unreasonable costs in maintaining such system; ASCAP may require its members and such licensees to provide ASCAP with all information reasonably necessary to administer the per-program or per-segment license including, but not limited to:

(1)     cue sheets or music logs;

11

(2)     the date of performance of a work and identification of the program or other segment of the music user's activities that contained the performance;

(3)     the title of the work performed; and

(4)     the writer, publisher or performing artist;

such requirements shall be designed to avoid unreasonable burdens on ASCAP, ASCAP members and licensees.

(D)     The terms and requirements of any license shall be designed to avoid imposing any unreasonable burdens or costs on licensees or ASCAP.


IX.    **Determination of Reasonable Fees.**

(A)     ASCAP shall, upon receipt of a written request for a license for the right of public performance of any, some or all of the works in the ASCAP repertory, advise the music user in writing of the fee that it deems reasonable for the license requested or the information that it reasonably requires in order to quote a reasonable fee. In the event ASCAP requires such additional information, it shall so advise the music user in writing, and shall advise the music user in writing of the fee that it deems reasonable within sixty (60) days of receiving such information. If the parties are unable to reach agreement within sixty (60) days from the date when the request for a license is received by ASCAP, or within sixty (60) days of ASCAP's request for information, whichever is later, the music user may apply to the Court for a determination of a reasonable fee retroactive to the date of the

12

written request for a license, and ASCAP shall, upon receipt of notice of the filing

of such request, promptly give notice of the filing to the Assistant Attorney

General in charge of the Antitrust Division.  If the parties are unable to agree upon

a reasonable fee within ninety (90) days from the date when ASCAP advises the

music user of the fee that it deems reasonable or requests additional information

from the music user, and if the music user has not applied to the Court for a

determination of a reasonable fee, ASCAP may apply to the Court for the

determination of a reasonable fee retroactive to the date of a written request for a

license and ASCAP shall upon filing such application promptly give notice of the

filing to the Assistant Attorney General in charge of the Antitrust Division.

(B)   In any such proceeding, the burden of proof shall be on ASCAP to establish the

reasonableness of the fee it seeks except that, where a music user seeks a per-

segment license, the music user shall have the burden of demonstrating that its

performances of music can be tracked and monitored to determine with reasonable

accuracy which segments of the music user's activity are subject to an ASCAP fee

and of demonstrating that the music user's performances of music can be

attributed to segments commonly recognized within the music user's industry for

which a license fee can be assessed.

(C)   The fees negotiated by ASCAP and any music user during the first five years that

ASCAP licenses music users in that industry shall not be evidence of the

reasonableness of any fees (other than an interim fee as provided in Section IX(F)

13

of this Second Amended Final Judgment) for any license in any proceeding under this Section IX.

(D)    Should ASCAP not establish that the fee it requested is reasonable, then the Court shall determine a reasonable fee based upon all the evidence.

(E)    The parties shall have the matter ready for trial by the Court within one year of the filing of the application unless ASCAP and at least one music user request that the Court delay the trial for an additional period not to exceed one year.  No other delay shall be granted unless good cause is shown for extending such schedule. Pending the completion of any such negotiations or proceedings, the music user shall have the right to perform any, some or all of the works in the ASCAP repertory to which its application pertains, without payment of any fee or other compensation, but subject to the provisions of Section IX(F) of this Second Amended Final Judgment, and to the final order or judgment entered by the Court in such proceeding.

(F)    When a music user has the right to perform works in the ASCAP repertory pending the completion of any negotiations or pending proceedings provided for in Section IX(A) of this Second Amended Final Judgment, either the music user or ASCAP may apply to the Court to fix an interim fee pending final determination or negotiation of a reasonable fee.  The Court shall then fix an interim fee within ninety (90) days of such application for an interim fee retroactive to the date of the written request for a license, allowing only such limited discovery, if any, that the Court deems necessary to the fixing of such

14

interim fee. In fixing such interim fee, there shall be a presumption that the last existing license (if any) between the music user and ASCAP, or between licensees similarly situated to the music user and ASCAP, sets forth the appropriate interim fee. If the Court fixes such interim fee, ASCAP shall then issue and the music user shall accept a license providing for the payment of a fee at such interim rate from the date of the request by such music user for a license pursuant to Section IX(A) of this Second Amended Final Judgment. If the music user fails to accept such a license or fails to pay the interim fee in accordance therewith, such failure shall be ground for the dismissal of its application for a reasonable fee, if any.

(G)  When a reasonable fee has been determined by the Court, ASCAP shall be required to offer a license at a comparable fee to all other similarly situated music users who shall thereafter request a license of ASCAP; provided, however, that any license agreement that has been executed between ASCAP and another similarly situated music user prior to such determination by the Court shall not be deemed to be in any way affected or altered by such determination for the term of such license agreement.

(H)  Nothing in this Section IX shall prevent any applicant or licensee from attacking in the aforesaid proceedings or in any other controversy the validity of the copyright of any of the compositions in the ASCAP repertory, nor shall this Second Amended Final Judgment be construed as importing any validity or value to any of said copyrights.

15

(I)     Pursuant to its responsibility to monitor and ensure compliance with this Second

Amended Final Judgment, the United States may participate fully in any

proceeding brought under this Section IX.  Any order or agreement governing the

confidentiality of documents or other products of discovery in any such

proceeding shall contain the following provisions:

(1)     The Department of Justice (the "Department") may make a written
request for copies of any documents, deposition transcripts or other
products of discovery ("products of discovery") produced in the
proceeding.  If the Department makes such a request to a party
other than the party who produced the materials in the proceeding
or to a deponent ("the producing party"), the Department and the
party to whom it directed the request shall provide a copy of the
request to the producing party.  The producing party must file any
objection to the request with the Court within thirty days of
receiving the request; if the producing party does not file such an
objection, the person to whom the Department directed its request
shall provide the materials to the Department promptly;

(2)     Any party to the proceeding may provide the Department with
copies of any products of discovery produced in the proceeding.
Any party who provides the Department with copies of any product
of discovery shall inform the other parties to the proceeding within
fifteen days of providing such materials to the Department.  The
producing party must file any objection to the production within
fifteen days of receiving such notice; and

(3)     The Department shall not disclose any products of discovery that it
obtains under this order that have been designated as "confidential"
in good faith or as otherwise protectable under Fed. R. Civ. P.
26(c)(7) to any third party without the consent of the producing
party, except as provided in the Antitrust Civil Process Act, 15
U.S.C. § 1313(c)-(d), or as otherwise required by law.

16

X.    **Public Lists.**

    (A)    Within 90 days of entry of this Second Amended Final Judgment, ASCAP shall, upon written request from any music user or prospective music user:

        (1)    Inform that person whether any work identified by title and writer is in the ASCAP repertory; or

        (2)    Make a good faith effort to do so if identifying information other than title and writer is provided.

    (B)    Within 90 days of entry of this Second Amended Final Judgment, ASCAP shall:

        (1)    Make the public list available for inspection at ASCAP's offices during regular business hours, maintain it thereafter, and update it annually; and

        (2)    Make the public electronic list available through on-line computer access (*e.g.*, the Internet), update it weekly, make copies of it available in a machine-readable format (*e.g.*, CD-ROM) for the cost of reproduction, and update the machine-readable copies semi-annually.

    (C)    Beginning 90 days after entry of this Second Amended Final Judgment, the first written offer of a license that ASCAP makes to a music user or prospective music user shall describe how to gain access to the public list and public electronic list and describe the variety of works in the ASCAP repertory, including, but not limited to, a list of writers, genres of music and works that illustrates that variety.

    (D)    After the date on which ASCAP makes the public electronic list available pursuant to Section X(B)(2) of this Second Amended Final Judgment, ASCAP

17

shall not institute or threaten to institute, maintain, continue, sponsor, fund
(wholly or partially, directly or indirectly) or provide any legal services for, any
suit or proceeding against any music user for copyright infringement relating to
the right of nondramatic public performance of any work in the ASCAP repertory
that is not, at the time of the alleged infringement, identified on the public
electronic list; provided, however, that nothing in this Section X shall preclude
ASCAP from pursuing its own *bona fide* independent interest in any such suit or
proceeding.  This Section X(D) shall not apply to any such suit or proceeding
pending on the date of entry of this Second Amended Final Judgment.

XI.   **Membership.**

   A.   ASCAP is hereby ordered and directed to admit to membership, non-participating
   or otherwise:

   (1)   Any writer who shall have had at least one work regularly published,
   whether or not performance of the work has been recorded in an ASCAP
   survey; or

   (2)   Any person actively engaged in the music publishing business, whose
   musical publications have been used or distributed on a commercial scale
   for at least one year, and who assumes the financial risk involved in the
   normal publication of musical works.

   B.   (1)   ASCAP shall distribute to its members the monies received by licensing
   rights of public performance, less its costs, primarily on the basis of

18

performances of its members' works (excluding those works licensed by the member directly) as indicated by objective surveys of performances periodically made by or for ASCAP, provided, however, that ASCAP may make special awards of its distributable revenues to writers and publishers whose works have a unique prestige value, or which make a significant contribution to the ASCAP repertory.  Distribution of ASCAP's distributable revenue based on such objective surveys shall reflect the value to ASCAP of performances in the various media, and the method or formula for such distribution shall be fully and clearly disclosed to all members.  Upon written request of any member, ASCAP shall disclose information sufficient for that member to determine exactly how that member's payment was calculated by ASCAP.

(2) Where feasible, ASCAP shall conduct, or cause to have conducted, a census or a scientific, randomly selected sample of the performances of the works of its members.  Such census or sample shall be designed to reflect accurately the number and identification of performances and the revenue attributable to those performances, made in accordance with a design made and periodically reviewed by an independent and qualified person.

(3) ASCAP shall not restrict the right of any member to withdraw from membership in ASCAP at the end of any calendar year upon giving three months' advance written notice to ASCAP; provided, however, that any writer or publisher member who resigns from ASCAP and whose works

19

continue to be licensed by ASCAP by reason of the continued membership of a co-writer, writer or publisher of any such works, may elect to continue receiving distribution for such works on the same basis and with the same elections as a member would have, so long as the resigning member does not license the works to any other performing rights licensing organization for performance in the United States.  ASCAP may require a written acknowledgment from such resigning member that the works have not been so licensed.

(a)     A resigning member shall receive distribution from ASCAP for performances occurring through the last day of the member's membership in ASCAP, regardless of the date the revenues are received.

(b)     ASCAP shall not, in connection with any member's resignation, change the valuation of that member's works or the basis on which distribution is made to that member, unless such changes are part of similar changes applicable to all members in the resigning member's classification.

(c)     Notwithstanding the foregoing, for any member who resigns from ASCAP, ASCAP is enjoined and restrained from requiring that member to agree that the withdrawal of such works be subject to any rights or obligations existing between ASCAP and its licensees, provided, however, that ASCAP may make withdrawal

of any works from the ASCAP repertory subject to any license agreement between ASCAP and any licensee that is in effect on the date that this provision becomes effective.

C.     Each provision of Section XI(B) of this Second Amended Final Judgment shall only be effective upon entry of an order in United States v. Broadcast Music, Inc., No. 64 Civ. 3787 (S.D.N.Y.), that contains a substantially identical provision. Until the provisions of Section XI(B)(3) of this Second Amended Final Judgment become effective, ASCAP shall not enter into any contract with a writer or publisher requiring such writer or publisher to grant to ASCAP performing rights for a period in excess of five years.

D.     Notwithstanding the provisions of Section XI (B)(3) and (C) of this Second Amended Final Judgment, a member who requests and receives an advance from ASCAP shall remain a member of ASCAP and shall not be entitled to exercise any right to resign until the advance has been fully recouped or repaid.

XII.   **Plaintiff's Access.**

(A)    For the purposes of determining or securing compliance with this Second Amended Final Judgment or determining whether this Second Amended Final Judgment should be modified or terminated, and subject to any legally recognized privilege, authorized representatives of the Antitrust Division of the United States Department of Justice, shall upon written request of the Assistant Attorney

21

General in charge of the Antitrust Division and on reasonable notice to ASCAP, be permitted:

(1)     Access during regular business hours to inspect and copy all records and documents in the possession, custody, or under the control of ASCAP, which may have counsel present, relating to any matters contained in this Second Amended Final Judgment;

(2)     To interview ASCAP's members, officers, directors, employees, agents, and representatives, who may have counsel present, concerning such matters; and

(3)     To obtain written reports from ASCAP, under oath if requested, relating to any matters contained in this Second Amended Final Judgment.

(B)     ASCAP shall have the right to be represented by counsel in any process under this Section.

(C)     No information or documents obtained by the means provided in this Section shall be divulged by the plaintiff to any person other than duly authorized representatives of the Executive Branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Second Amended Final Judgment, or as otherwise required by law.

(D)     If, at the time information or documents are furnished by defendant to plaintiff, ASCAP represents and identifies, in writing, the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7)

22

of the Federal Rules of Civil Procedure, and ASCAP marks each pertinent page of

such material, "subject to claim of protection under Rule 26(c)(7) of the Federal

Rules of Civil Procedure," then 10-days notice shall be given by plaintiff to

ASCAP prior to divulging such material in any legal proceeding (other than a

grand jury proceeding) to which ASCAP is not a party.

XIII.   **Dismissal of Individual Defendants.**  This action is dismissed with respect to Gene

Buck, George Meyer and Gustave Schirmer and their estates.

XIV.   **Retention of Jurisdiction.**  Jurisdiction of this cause is retained for the purpose of

enabling any of the parties to this Second Amended Final Judgment to make application to the

Court for such further orders and directions as may be necessary or appropriate in relation to the

construction of or carrying out of this Second Amended Final Judgment, for the modification

thereof, for the enforcement of compliance therewith and for the punishment of violations

thereof.  It is expressly understood, in addition to the foregoing, that:

(A)   The plaintiff may at any time after entry of this Second Amended Final Judgment,

upon reasonable notice,  apply to the Court for the vacation of said Judgment, or

its modification in any respect, including the dissolution of ASCAP; and

(B)   If, at any time after the entry of this Second Amended Final Judgment, a stipulated

amended final judgment is entered in United States v. Broadcast Music, Inc., No.

64 Civ. 3787 (S.D.N.Y.), ASCAP may move the Court, and the Court shall grant

such motion, to substitute the relevant terms of that stipulated amended final judgment for those of this Second Amended Final Judgment.

XV.   **Effective Date.**  This Second Amended Final Judgment shall become effective three months from the date of entry hereof whereupon the Amended Final Judgment entered on March 14, 1950, all modifications or amendments thereto, the Order entered thereunder on January 7, 1960, and all modifications and amendments thereto (collectively the "Amended Final Judgment") and the Final Judgment in <u>United States v. The American Society of Composers, Authors and Publishers,</u> (formerly Civ. No. 42-245 (S.D.N.Y.)) entered on March 14, 1950 and all modifications and amendments thereto (the "Foreign Decree") shall be vacated.  This Second Amended Final Judgment shall not be construed to make proper or lawful or sanction any acts which occurred prior to the date hereof which were enjoined, restrained or prohibited by the Amended Final Judgment or the Foreign Decree.

Dated: June 11, 2001

                                        s/ William C. Conner
                                        United States District Judge

24

## **CERTIFICATE OF SERVICE**

I certify that on May 12, 2016, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record in this matter who are registered with the Court's ECF system.  I also served an electronic copy of the forgoing on the following counsel for Defendant American Society of Composers, Authors and Publishers, who have agreed to accept electronic service pursuant to Fed. R. Civ. P. 5(b)(2)(E):

Jay Cohen
Andrew Finch
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
jaycohen@paulweiss.com
afinch@paulweiss.com

 /s/ Kelsey W. Shannon
Kelsey W. Shannon