UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAN SOCIETY OF COMPOSERS,<br>AUTHORS AND PUBLISHERS,<br><br>    Defendant. | Supplemental to Case No. 41-1395 (DLC) |

## [PROPOSED] SETTLEMENT AGREEMENT AND ORDER

  WHEREAS, the United States of America, having filed its Petition for an Order to Show Cause Why Respondent American Society of Composers, Authors and Publishers ("ASCAP") Should Not Be Found in Civil Contempt ("Petition to Show Cause"), on May 12, 2016;

  AND WHEREAS, ASCAP entered into approximately 150 agreements that, by their terms, granted to ASCAP exclusive rights to license the rights of public performance in the musical works of certain songwriters, composers, or music publishers, allegedly in violation of Sections IV(A) and IV(B) of the Second Amended Final Judgment entered by this Court in *United States v. American Society of Composers, Authors and Publishers*, Civ. Action No. 41-1395 (June 11, 2001) ("AFJ2");

  AND WHEREAS, each of those approximately 150 agreements either has expired or ASCAP has expressly rescinded the exclusivity provisions contained therein;

  AND WHEREAS, the Respondent, ASCAP, having consented to the entry of this Settlement Agreement and Order;

  NOW, THEREFORE, before the taking of any testimony and without trial or adjudication of any issue of fact or law herein, and upon the consent of the parties hereto, and

without this Settlement Agreement and Order constituting any evidence against or an admission by any party with respect to any allegation contained in the Petition to Show Cause, it is hereby ORDERED as follows:

**I.        JURISDICTION**

This Court has jurisdiction over the subject matter herein and over each of the parties consenting hereto under the Court's inherent power to enforce compliance with its orders and Section XIV of AFJ2.

**II.       DEFINITIONS**

A.        "Licensing Activities" means the negotiation of, or determination to enter into, any license agreement by ASCAP with a licensee (a "music user" as defined in AFJ2) to publicly perform musical works in the ASCAP repertory, including specifically any discussion of proposed license rates and terms, or the oversight of negotiation or execution of license agreements.  Licensing Activities shall not include communications regarding (i) the status of licensing negotiations (other than proposed rates and other terms of potential license agreements); (ii) terms and conditions of executed license agreements; or (iii) the conduct or resolution of a proceeding under Section IX of AFJ2.

B.        "Publisher Board Member" means any person, natural or artificial, who is elected to the ASCAP Board of Directors as a publisher member pursuant to ASCAP's Articles of Association, and any employee, officer, director, or legal representative of such a person or of a Music Publisher with which such a person is an employee or officer.

C.        "Music Publisher" means any person actively engaged in the music publishing business, and who assumes the financial risk involved in the normal publication of musical works or whose compositions are regularly performed by ASCAP's licensees, and any employee,

officer, director, or legal representative of such a person.  Music Publisher shall not include any person primarily engaged as a composer or author of musical works.  For the avoidance of doubt, a person elected to the ASCAP Board of Directors as a writer member pursuant to ASCAP's Articles of Association shall be deemed to be primarily engaged as a composer or author of musical works.

### III. APPLICABILITY

A. This Settlement Agreement and Order applies to ASCAP and each of its successors, assigns, employees, officers, directors, agents, and to all other persons in active concert or participation with it who shall have received actual notice of the Settlement Agreement and Order by personal service or otherwise.

B. This Order constitutes a full and complete disposition of ASCAP's alleged violation of Sections IV(A) and IV(B) of AFJ2 and the other matters described in the Petition to Show Cause and the accompanying Memorandum in Support.  No further action, petition, enforcement proceeding, motion, or other form of requested relief will be taken by the United States against ASCAP with respect to the alleged violation of Sections IV(A) and IV(B) of AFJ2 and the other matters described in the Petition to Show Cause and the accompanying Memorandum in Support.

### IV. PROHIBITED FUTURE CONDUCT

A. ASCAP shall abide by Sections IV(A) and IV(B) of AFJ2 and shall not enter into any agreement under which a songwriter, composer, or music publisher grants ASCAP the exclusive right to license the right of public performance in musical works.

B. ASCAP shall not (i) permit any Publisher Board Member to participate in any manner in ASCAP Licensing Activities as defined herein; or (ii) permit any Music Publisher to

exercise any responsibility for overseeing and approving Licensing Activities on behalf of ASCAP.

        C.     ASCAP shall require that any Publisher Board Member whose company is engaged in continuing direct license negotiations promptly recuse himself or herself from participating in, discussing, or voting on (i) any license agreement between ASCAP and that licensee or (ii) the conduct or resolution of a proceeding under Section IX of AFJ2 concerning that licensee.

## V.    CIVIL PAYMENT AND COSTS

Within sixty (60) days of the entry of this Settlement Agreement and Order, ASCAP shall pay to the United States the sum of $1,750,000 as a civil payment, which includes reimbursement to the United States for its investigation of these alleged violations of AFJ2.

## VI.    COMPLIANCE AND INSPECTION

        A.     To ensure its compliance with this Order, AFJ2, and the antitrust laws, ASCAP shall perform the activities enumerated below. The General Counsel of ASCAP (or other executive in the Business & Legal Affairs group designated by ASCAP and agreed to by the United States to ensure compliance with this Order and AFJ2) shall be responsible for supervising ASCAP's efforts to comply with this Order and AFJ2, as may be amended in the future or replaced by subsequent final judgments, and performance of the following:

                1.     furnishing a copy of this Order and AFJ2, within thirty (30) days of the Effective Date of this Order, to each officer and director of ASCAP and to each ASCAP employee with supervisory or managerial authority in the Licensing group, Membership group, or Business & Legal Affairs group who engages in negotiations with ASCAP members or licensees, or who is the immediate supervisor of such ASCAP employees;

    2.  furnishing a copy of this Order and AFJ2 within thirty (30) days of the start date of each officer, director, or employee who succeeds to any position identified in Section VI.A.1 of this Order;

    3.  ensuring that each person identified in Sections VI.A.1 and VI.A.2 of this Order receives training annually on the meaning, obligations, restrictions, and requirements of AFJ2, this Order, and the antitrust laws;

    4.  obtaining and maintaining certifications that each person identified in Sections VI.A.1 and VI.A.2 of this Order (i) has read, understands, and agrees to abide by the terms of this Order, AFJ2, and the antitrust laws; (ii) is not aware of any failure to comply with any specific provision(s) of this Order, AFJ2, or the antitrust laws or has reported any such failure to comply to the General Counsel of ASCAP; and (iii) has received the training required by Section IV.A.3 of this Order;

    5.  communicating annually to ASCAP's employees that they may disclose to the General Counsel of ASCAP, without reprisal, information concerning any failure to comply with any specific provision(s) of AFJ2, this Order, or the antitrust laws;

    6.  taking remedial measures, within twenty (20) business days of the General Counsel of ASCAP (or other executive in the Business & Legal Affairs group designated by ASCAP and agreed to by the United States to ensure compliance with this Order and AFJ2) discovering or receiving credible information concerning any failure to comply with any specific provision(s) of this Order, AFJ2, or the antitrust laws, to assure future compliance with this Order, AFJ2, and the antitrust laws; and, within thirty (30) business days of the General Counsel of ASCAP (or other executive in the Business & Legal Affairs group designated by ASCAP and agreed to by the United States to ensure compliance with this Order and AFJ2) discovering or

receiving such information, providing to the Department of Justice a description of any failure to comply with any such specific provision(s) and the remedial measures taken;

       7.    furnishing to the Department of Justice on a quarterly basis a log of any communications discovered or received by the General Counsel of ASCAP (or other executive in the Business & Legal Affairs group designated by ASCAP and agreed to by the United States to ensure compliance with this Order and AFJ2) that concern or discuss credible information concerning any failure to comply with any specific provision(s) of this Order, AFJ2, or the antitrust laws, and that are not protected by a valid claim of attorney-client privilege or work product doctrine protection; and

       8.    providing to the Department of Justice annually, on or before the anniversary of the Effective Date of this Order, a written statement affirming ASCAP's compliance with Section IV of this Order, and including the training or instructional materials used or supplied by ASCAP in connection with the training, as required by Section VI.A.3 of this Order, of ASCAP employees with supervisory or managerial authority in the Licensing group, Membership group, or Business & Legal Affairs group who engage in negotiations with ASCAP members or licensees.

    B.    For purposes of determining or securing compliance with this Order, or of determining whether the Order should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the Department of Justice, including consultants and other persons retained by the Department of Justice, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to ASCAP, be permitted:

        1.      access during ASCAP's office hours to inspect and copy, or at the United States' option, to require Respondent to provide copies of, all books, ledgers, accounts, records and documents in the possession, custody, or control of ASCAP, relating to any matters contained in this Order; and

        2.      to interview, either informally or on the record, ASCAP's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by ASCAP.

    C.      Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, ASCAP shall submit written reports or interrogatory responses, under oath if requested, relating to any of the matters contained in this Order as may be requested, subject to any legally recognized privilege or protection against disclosure, including the work product protection.

    D.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Settlement Agreement and Order, or as otherwise required by law.

## VII. RETENTION OF JURISDICTION

    A.      This Court retains jurisdiction to enable any party to this Order to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Order, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.  This Order shall expire ten (10) years from the date of its entry.

Notwithstanding the foregoing, ASCAP may request after five years that the Department of Justice examine whether the Order continues to be necessary to protect competition and ensure ASCAP's compliance with AFJ2.  If, after examination of competitive conditions and ASCAP's compliance with AFJ2 and this Order, the Department of Justice, in its sole discretion, concludes that the Order should be terminated, it will recommend to the Court that the Order be terminated.

IT IS SO ORDERED

Dated: _____

_____
United States District Judge