# Exhibit B

**AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS**

**CODE OF BUSINESS CONDUCT AND ETHICS
FOR DIRECTORS**

Effective as of September 11, 2015

The American Society of Composers, Authors and Publishers ("ASCAP") is committed to conducting its business in accordance with the highest standards of ethics and integrity. The board of directors (the "Board") has adopted this Code of Business Conduct and Ethics (the "Code") to provide the members of its board (each, a "Director" and, collectively, the "Directors") with guidance to recognize and address ethical issues. The Code applies to Directors of ASCAP and its majority-owned subsidiaries, and must be affirmed annually by each Director. Each Director must comply with the letter and spirit of the Code.

## I.    INTRODUCTION

The Code provides a convenient summary of the guiding principles for Directors in a number of areas that are commonly confronted by directors of companies and other types of entities, including conflicts of interest, corporate opportunities, confidentiality, fair dealing with third parties and certain other areas.

No code or policy can anticipate every situation that may arise. In order to assist the Board in complying with applicable laws and regulations, the General Counsel of ASCAP (the "General Counsel") together with the Counsel to the Board of ASCAP (the "Counsel to the Board") will apprise the Board on an on-going basis about significant legal and regulatory developments affecting the Directors' responsibilities and potential liability. If Directors have questions about these guidelines, or concerns about a potential violation of these guidelines, they should contact both the Counsel to the Board and the General Counsel. The Counsel to the Board and the General Counsel will work together to determine how to best address any of these questions or potential concerns. Finally, the Code is not intended to be an exhaustive description of the rules that apply to Directors.

## II.    GENERAL LEGAL DUTIES

A.    Under New York law, Directors are subject to the fiduciary duty of care and duty of loyalty to ASCAP and all of its members ("Members"). These duties are owed by each Director to ASCAP and its Members as a whole, and not to any particular group or subset of Members.

The "*duty of care*" under New York law requires Directors to (i) exercise the level of care that a person of ordinary prudence would exercise under similar circumstances and (ii) act on an informed basis after due consideration of the relevant information that is reasonably available. In general, in discharging their duty of care,

Directors are entitled to rely on management and outside advisors acting within their areas of expertise.

The "***duty of loyalty***" under New York law requires that Directors act in good faith with the honest belief that their actions are in the best interest of ASCAP and all of its Members as a whole and not in a manner that involves self-dealing or a conflict of interest.

Recognizing that ASCAP's unique organizational structure includes a Board of Directors that is required by the Articles of Association of ASCAP (the "Articles of Association") to be composed of industry representatives, some of ASCAP's Directors will also be directors, officers or employees of Members (such Members are sometimes referred to as "Director-Affiliated Members") that may from time to time in the ordinary course of their businesses compete with ASCAP or engage in activities that may not be in the interests of ASCAP, and nothing in the Code is intended to limit the right of Director-Affiliated Members to so compete or act. Therefore, Directors are advised that, in those situations where a Director's obligations to his or her Director-Affiliated Member creates a conflict, or the appearance of a conflict, with the interests of ASCAP, that Director should take appropriate actions under the circumstances (which may be determined in consultation with counsel), including recusing himself or herself from participating in the matters that give rise to the potential conflict.

B.  For the avoidance of doubt and consistent with the requirements of ASCAP's Consent Decree (the "Consent Decree") with the U.S. Department of Justice, the direct licensing of non-dramatic public performance rights by a Director or a Director-Affiliated Member to a party that publicly performs music (a "Music User"), in and of itself, should not ordinarily be a violation of any duty owed by the Director to ASCAP and all of its Members as a whole, including the duty of loyalty (such as corporate opportunities discussed in Section IV.B below or conflicts of interest discussed in Section IV.A below) or the duty of care. Even if a Director becomes aware of ASCAP's Confidential Information (as hereinafter defined in Section IV.E), it should not ordinarily be a violation of any duty owed by the Director to ASCAP and all of its Members as a whole, including the duty of loyalty or conflicts of interest or duty of care, for the Director or a Director-Affiliated Member to engage in direct licensing with a Music User, so long as the Director does not use such Confidential Information and recuses himself or herself from participation in all relevant Board matters. Similarly, it should not ordinarily be a violation of the duty of loyalty where a Music User approaches a Director-Affiliated Member to initiate direct licensing discussions, or if a Director or a Director-Affiliate Member becomes aware of a direct licensing opportunity, if such Director or Director-Affiliated Member engages in such direct licensing without using any Confidential Information and provided that the Director recuses himself or herself from participation in all relevant Board matters.

The foregoing Section II.B shall be referred to as the "Director Member Reservation."

### III.     ANTITRUST LAWS AND THE CONSENT DECREE

Antitrust laws generally restrict and/or prohibit certain agreements among competitors that restrain or reduce competition such as (but not limited to) price-fixing agreements and customer allocation agreements. By virtue of its structure as a membership organization composed of composers, authors, and publishers who may from time to time compete with it and with each other, both ASCAP and its Members need to be particularly cognizant of these laws, and Directors are required to comply with the antitrust laws in carrying out their duties. Directors therefore should remain mindful that they may not, for example, use Board meetings or ASCAP-related communications to:

- Exchange competitively sensitive information pertaining to their business activities outside of ASCAP with one another;

- Discuss or enter into price-related agreements with one another or their affiliates;

- Discuss or enter into agreements to allocate markets or customers among themselves or their affiliates; or

- Discuss or enter into agreements restricting direct licensing activities (*i.e.*, licensing by the Members of non-dramatic public performance rights directly to those who publicly perform music).

As the Directors are aware, ASCAP operates under the Consent Decree, which imposes certain restrictions and obligations on ASCAP in addition to its obligation to comply with the antitrust laws generally. The currently operative version of the Consent Decree, the Second Amended Final Judgment or "AFJ2," took effect in 2001.

All Directors must strictly comply with the antitrust laws and work to ensure that ASCAP does not violate the Consent Decree. Violations should be reported immediately to both the Counsel to the Board <u>and</u> the General Counsel. A copy of the Consent Decree is available on ASCAP's website at http://www.ascap.com/~/media/Files/Pdf/members/governing-documents/ascapafj2.pdf.

### IV.     STANDARDS OF CONDUCT IN KEY AREAS

#### A.     Conflicts of Interest

Under New York law as well as Article 5, Section 7 of the Articles of Association, Directors should refrain from taking actions that create, either in fact or in appearance, a situation in which a Director's private or professional interests conflict or interfere with, or are adverse to, the interests of ASCAP. Conflicts of interest may also

arise when a Director, or his or her family members,[1] or an organization with which the Director is affiliated (such as the Director's employer), receives improper benefits as a result of the Director's position as such. This Section IV.A should be read in conjunction with and is not in derogation of Section II and/or the Director Member Reservation.

Although it would not be possible to describe every situation in which a conflict of interest may arise, the following are examples of situations where the rules are clear. No Director, when acting for ASCAP, may directly or indirectly (such as through a family member or an affiliated entity):

- Accept any benefit, gift or entertainment that would be illegal or result in any violation of law; or

- Accept or request anything as a "quid pro quo," or as part of an agreement to do anything in return for the benefit, gift or entertainment.

The following are examples of situations that *may or may not* constitute a conflict of interest. Situations such as these should be brought to the attention of both the Counsel to the Board and the General Counsel for review and clearance before any action is taken (it being understood that specific information about the nature of the conflict need not be shared with them in the event such disclosure would conflict with the Director's duties or obligations to another party):

- Competing with ASCAP for the sale of property, services or other interests, subject to Section II and the Director Member Reservation;

- Situations involving "corporate opportunities" (see Section IV.B below);

- Transactions subject to the "Related-Person Transactions" policies (see Section IV.D below);

- Except as may be approved in advance by the Board, the Governance Committee or the Compliance Committee (as defined below), receiving an advance, loan or guarantee of an obligation as a result of a Director's position with ASCAP;

- Engaging in any conduct or activities that is intended to disrupt or impair ASCAP's relationship with any person or entity with which ASCAP has or proposes to enter into a business or contractual relationship (expressly excluding the Director Member Reservation where the Director has not

---

[1] "Family members" for purposes of the Code means a person's spouse, domestic partner, parents, children, brothers and sisters, mothers and fathers-in-law, sons and daughters-in-law, and brothers and sisters-in-law (including adoptive and step relationships), and anyone (other than domestic employees) who shares such person's home.

4

otherwise breached his or her fiduciary duties of care and loyalty to ASCAP); <u>provided, however</u>, it is understood that a Director-Affiliated Member is not required to seek the clearance of the Counsel to the Board and the General Counsel to remove its publisher's share of any works associated with a writer that has voluntarily resigned his or her ASCAP membership; or

- Accepting compensation, in any form, for services performed for ASCAP from any source other than ASCAP.

If a Director has a financial or other interest in a transaction to be considered by the Board (except such interest as is shared on a proportionate basis by all Members), the Director should disclose that interest to both the Counsel to the Board and the General Counsel and abstain from both participating in discussing and voting on the matter.

### B.  Corporate Opportunities

Directors may from time to time be offered a business opportunity directly or indirectly (for example, through their family members or one or more of their affiliates) that conflicts with his or her duty of loyalty to ASCAP.  Directors may not appropriate for themselves or for their affiliates an opportunity that rightfully belongs to ASCAP.  Determining whether an opportunity rightfully belongs to ASCAP depends on a number of facts and circumstances, including, without limitation, (i) the link between ASCAP's business and the opportunity, (ii) ASCAP's interest in, or expectation of, the opportunity, (iii) ASCAP's financial ability to exploit the opportunity, (iv) whether the opportunity was presented to the Director in a personal or corporate capacity, and (v) whether pursuing the opportunity would result in the Director competing with ASCAP.  If the Director advises ASCAP about such an opportunity, and ASCAP determines not to pursue such opportunity, the Director may pursue the opportunity for his or her personal benefit, subject to there being no conflict with any other aspect of the Director's duty of loyalty to ASCAP.

This <u>Section IV.B</u> should be read in conjunction with and is not in derogation of <u>Section II</u> and/or the Director Member Reservation.

### C.  Candor

Generally, Directors are required to disclose all non-public information in the Director's possession that would be material to Board action unless the Director is unable to disclose such information (i) due to a competing duty of loyalty or confidentiality to another company or (ii) because of its competitively sensitive nature, such that sharing the information with ASCAP would create the appearance of an opportunity for ASCAP to engage in price fixing, customer allocation or other potential violations of antitrust laws.  In cases where a Director is unable to disclose such information, the Director should abstain from participating in discussing and voting on the matter.

### D. Related-Person Transactions

Each Director should disclose any "related-person transaction" (as defined below), or proposed related-person transaction, to both the Counsel to the Board <u>and</u> the General Counsel promptly after becoming aware of the transaction. For the purposes of the Code, a "related-person transaction" is generally any transaction, arrangement or relationship (or any series of similar transactions, arrangements or relationships) in which ASCAP (including any of its subsidiaries) was, is or will be a participant and the amount involved exceeds $25,000, and in which any related person had, has or will have a direct or indirect material interest. A "related person" includes, generally, any (i) director or executive officer of ASCAP, (ii) nominee for Director and (iii) family members of any of the persons set forth in (i) and (ii) above.

It is the responsibility of each Director to inform both the Counsel to the Board <u>and</u> the General Counsel and obtain the requisite approval described below prior to entering into any related-person transaction. Any proposed related-person transaction involving ASCAP and one of the Directors must be pre-approved by the Compliance Committee of the Board (the "<u>Compliance Committee</u>").

From time to time, the Compliance Committee shall review any previously approved or ratified related-person transactions that remain ongoing and have a remaining term of more than six months or remaining amounts payable to or receivable from ASCAP of more than $25,000. Based on all relevant facts and circumstances, and taking into consideration ASCAP's contractual obligations, the Compliance Committee shall determine if it is in the best interests of ASCAP and its members to continue, modify or terminate the related-person transactions.

### E. Confidentiality

Directors must maintain the confidentiality of information entrusted to them by ASCAP, or that otherwise comes into their possession, while carrying out their duties and responsibilities (which is referred to herein as "<u>Confidential Information</u>"), except when disclosure is authorized by ASCAP or legally mandated. In addition, Directors should not use that Confidential Information, including without limitation information learned during discussions and deliberations relating to ASCAP business issues and decisions or any other information learned during the course of service on the Board, other than for ASCAP business.

Confidential Information encompasses all non-public information (including, for example, information that licensors and licensees have entrusted to ASCAP) that may be of use to competitors, or may otherwise be harmful to ASCAP or its key stakeholders, if disclosed. Financial information is of special sensitivity and should under all circumstances be considered confidential, except where its disclosure is approved by ASCAP or when the information has been publicly disseminated. Confidential Information does not, however, include information that (i) is generally known to the public (but not as a result of a violation of the Director's obligation of confidentiality to ASCAP), (ii) is received lawfully and in good faith by a Director from a third party not

bound by a contractual, legal, fiduciary or other obligation to ASCAP to not transmit the information, (iii) is in the possession of the Director prior to its disclosure by ASCAP to the Director, unless the Director is aware that the source of such information was bound by a confidentiality agreement with ASCAP or otherwise under a contractual, legal, fiduciary or other obligation not to transmit the information to the Director, or (iv) is independently developed by the Director without reference to or use of any of the Confidential Information.

The obligation to preserve Confidential Information continues even after a Director leaves the Board.

### F.  Fair and Ethical Dealing with Third Parties and Employees

ASCAP adheres to a policy of fair dealing in all of its activities. Accordingly, Directors (i) should endeavor to deal fairly with ASCAP's members, customers, service providers, suppliers, competitors and employees; and (ii) should not take unfair advantage of anyone through manipulations, concealment, abuse of privileged information, misrepresentation of material facts, or any other unfair-dealing practice.

1. **Work Environment.** Federal, state, and certain applicable local laws collectively prohibit discrimination and harassment in the workplace based on race, color, national origin, religion, sex, disability and sexual orientation. With particular reference to sexual harassment, the law prohibits unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature that is made a term or condition of employment, is used as the basis of employment or advancement decisions, or has the purpose or effect of unreasonably interfering with work or creating an intimidating, hostile or offensive work environment. If a Director has a concern about such conduct, he or she should contact both the Counsel to the Board and the General Counsel.

2. **Gifts.** Accepting gifts from, or giving gifts to, third parties in connection with the performance of a Director's duties is permissible only when a Director does not ask for the gift and the gift does not influence, or have the appearance of influencing, the Director's objectivity or decision-making. To be safe, gifts should never be in cash and should be limited to those that are reasonable and customary in the business context.

3. **Political Contributions.** Directors are free to use their own time and resources to engage in political activities, including supporting candidates for public office. It is not permissible, however, for Directors to use ASCAP's resources to further their own personal political activities. Directors should address requests or questions regarding political contributions by ASCAP to both the Counsel to the Board and the General Counsel.

4. **Foreign Corrupt Practices Act.** There are a number of federal and state laws prohibiting bribery, including the Foreign Corrupt Practices Act, which prohibits bribery of foreign government officials and imposes accounting

7

and record-keeping requirements. A Director should consult with both the Counsel to the Board and the General Counsel prior to providing any gift or making any direct or indirect payment to a government official (including paying for travel, lodging, entertainment, etc.) in connection with the performance of a Director's duties on behalf of ASCAP.

### G. Protections and Proper Use of ASCAP's Assets

Directors should seek to protect ASCAP's assets and ensure their efficient use for legitimate business purposes.

### H. Communications with the Media and the Public

Directors may not, with respect to or on behalf of ASCAP, (1) respond to inquiries from or speak with the media, including newspapers, television, radio, magazines, online publications or social media, or (2) provide public testimony or participate in any public speaking engagements such as panels, conferences, or other public or industry events, without ASCAP's prior knowledge and approval. When expressing their personal views or the views of Director-Affiliated Members to the media or the public, Directors will take care to ensure that they are not perceived to be speaking for ASCAP. Any inquiries from the media should be referred to ASCAP's Marketing and Communications department, and requests by a Director to participate in an event should be discussed with ASCAP's CEO and Chief Marketing Officer.

## V. ENFORCEMENT

The Board is committed to full, prompt and fair enforcement of the Code. If ASCAP receives information regarding an alleged violation of the Code, the Compliance Committee will, as appropriate, investigate the alleged violation of the Code.

If it is determined that a violation of the Code occurred, the Board will determine the appropriate actions to be taken after considering all relevant facts and circumstances. The Board may, under appropriate circumstances, remove the Director from office in accordance with the provisions set forth in Article V, Section 5 of the Articles of Association. Nothing in the foregoing sentence shall limit the Board from taking other action available under applicable law.

Any enforcement actions by the Board shall be reasonably designed to deter wrongdoing and to promote accountability for adherence to the Code. In determining what action is appropriate in a particular case, the Board shall take into account all relevant information, including the nature and severity of the violation, whether the violation appears to have been intentional or inadvertent, and whether the individual in question has been advised prior to the violation as to the proper course of action.

## VI. REPORTING CODE VIOLATIONS

ASCAP wants to promote an open culture, where Directors ask questions if they are unsure and raise concerns if they believe the Code has been violated. ASCAP will

8

not tolerate retaliation or retribution against a person for providing information or assisting in an investigation the person reasonably believed constituted a violation of the provisions of the Code.

## VII. PROCESSES

### A. Ongoing Obligations

Each Director has primary responsibility for fulfilling his or her fiduciary duties of care and loyalty to ASCAP and complying with the foregoing standards of conduct. Directors, much like what is required of ASCAP's employees, should not only promote ASCAP's compliance with laws and regulations, but also encourage ethical behavior at ASCAP. Through their conduct, Directors should encourage employees to raise legitimate questions regarding, or report potential violations of, the laws, regulations, and other applicable codes of conduct.

**If a Director has a question or concern about one of these matters, the Director should promptly bring the issue to the attention of both the Counsel to the Board and the General Counsel. The Counsel to the Board and the General Counsel may consult with the Chairman, Chief Executive Officer, other officers and advisors, and the Compliance Committee in determining how best to address a potential issue.**

### B. Certification

In addition to a Director's ongoing obligation to inform both the Counsel to the Board and the General Counsel regarding questions or concerns related to this Code, each Director will be required to certify as to his or her understanding of, and compliance with, the Code on an annual basis by completing a Certification in substantially the form attached hereto. The Business and Legal Affairs Department will send the Certification to each Director and, based on the responses received and the Department's oversight of the Code generally, the General Counsel shall provide a report on Code compliance on an annual basis to the Governance Committee, with a copy of the report being provided to the Counsel to the Board.

### C. Waivers

Any waiver of this Code must be approved by the Compliance Committee. The Compliance Committee will promptly disclose any waiver of this Code to the Board.

## VIII. REVIEW

As noted in the Introduction, the Counsel to the Board and the General Counsel will inform the Governance Committee of legal and regulatory changes that affect the obligations of Directors. The Governance Committee shall review this Code no less than annually and recommend any changes to the Board for its approval.

## AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS

## CODE OF BUSINESS CONDUCT AND ETHICS
## FOR DIRECTORS

## CERTIFICATION

I, _____, do hereby certify that:
      (print name above)

1. I have received and, within the past twelve months, carefully read the Code of Business Conduct and Ethics for Directors (the "Code") of the American Society of Composers, Authors and Publishers.

2. I understand the Code.

3. Other than the exceptions described in this Certification, I have not, to the best of my knowledge, violated the Code within the past twelve months, nor am I aware of any violations of the Code by others. I will act in accordance with my responsibilities and obligations as set forth in the Code.

Signature:_____

Date:_____

Please provide details of exceptions below or on separate sheets of paper attached to this Certification, if necessary.

_____

_____

_____

_____

_____

_____